EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

MAURA O'NEILL,

     Plaintiffs,

v.

NYU LANGONE MEDICAL CENTER,
NEW YORK-PRESBYTERIAN
QUEENS, LENOX HILL HOSPITAL,
GRADY HEALTH SYSTEM, MOUNT
SINAI BETH ISRAEL, NORTHSIDE
HOSPITAL FORSYTH, COLLEGE
PARK POLICE DEPARTMENT,

     Defendant.

CIVIL ACTION NO.:

**1:22-CV-0011**

### DEFENDANT LENOX HILL HOSPITAL'S MOTION TO DISMISS

COMES NOW Lenox Hill Hospital, Defendant in the above captioned matter,

and hereby moves to dismiss O'Neill's Complaint under Federal Rules of Civil

Procedure 12(b)(2) and (b)(6), showing the Court as follows:

### SUMMARY OF MOTION

This case arises from at least five alleged sexual harassment and assaults by

non-party Chris Wilder of Plaintiff Maura O'Neill beginning in 2007. O'Neill claims

Lenox Hill Hospital and five other Defendant hospitals conspired with Wilder and

two Georgia and New York local police departments to protect and cover up at least four separate rapes O'Neill reported in 2017 and early 2018.

O'Neill claims Lenox Hill acted with Wilder's agents to refuse her access to evidence collection kits and falsify her medical records to insulate Wilder from investigation for the assaults. Although O'Neill's claims are entitled to all reasonable inferences of fact, the Court should dismiss her claims against Lenox Hill for three reasons, each of which is an independent ground for relief.

First, this Court lacks personal jurisdiction over non-resident defendants with no contacts with Georgia like Lenox Hill. Lenox Hill is a New York corporation with no registered agent or offices in Georgia. It performs no services or business within the State of Georgia or any other act establishing jurisdiction under the Georgia Long-Arm Statute. As a result, maintaining O'Neill's suit in this jurisdiction would violate traditional notions of fair play and substantial justice and deprive Lenox Hill of its statutory and constitutional Due Process rights.

Second, even if the Court could assert personal jurisdiction over Lenox Hill, O'Neill's Complaint on its face leaves no dispute that each of O'Neill's claims are barred by the statute of limitations. The Complaint admits O'Neill knew of the facts establishing a *prima facie* fraud and RICO claims in late 2017, well beyond Georgia's statute of limitations period for fraud and the federal RICO counterpart.

What is more, despite characterizing her claims as "New York common law fraud," Georgia courts and their federal counterparts may only apply the statutory law of another state, not its common law. Thus, Georgia's statute of limitations period applies and bars O'Neill's fraud claims.

Finally, O'Neill's Complaint fails to state a claim for fraud and federal RICO because O'Neill also never alleges a continuity of racketeering acts or any other *prima facie* elements of a civil RICO claim against Lenox Hill Therefore, these claims should be dismissed for failure to state a claim under Rule 12(b)(6).

## BACKGROUND AND STATEMENT OF FACTS

O'Neill's Complaint describes a complex conspiracy in which a former co-worker, Christopher Wilder, drugged and raped her on at least four occasions, then conspired with six different hospital systems, two state police departments, and two of the largest investment banks in the world to protect Wilder from criminal investigation and to perpetuate a "sex trafficking operation" against her. O'Neill's first allegation of this scheme begins in 2007 while she was working Deutsche Bank in New York City. That year, Deutsche Bank terminated O'Neill for refusing her then-coworker Wilder's sexual advances. After her termination, she began working at Lehman Brothers where she claims Wilder continued to "stalk" and harass her

3

over the next 10 years. Complaint, para. 12. The Complaint never mentions any of the named Defendants between 2007 and 2017.

Ten years after her termination at Deutsche Bank, on January 6, 2017, a colleague told O'Neill that Wilder had mentioned he planned to drug and rape O'Neill. *Id.*, para. 15. That same day, O'Neill claims Wilder broke into her apartment and assaulted her. *Ibid*. Over the next 12 months, she claims Wilder broke into her home and assaulted her three more times—once in the summer of 2018, then the day before Thanksgiving 2017, and again on December 10, 2017, by injecting date-rape drugs under her toenail while she slept. *Id.*, para. 60 – 70.

The day after the Thanksgiving assault, O'Neill presented to Lenox Hill Hospital for the first time for an evidence collection kit. *Id.*, para. 50. She told Lenox Hill providers she believed Wilder had assaulted her, but the attending physician questioned her need for a rape kit and said he would need to confirm her story from someone else before ordering a kit. *Id.*, para. 54. O'Neill requested another physician, and Lenox Hill administration assigned her to a new physician. *Id.*, para. 58.

The Complaint is silent about whether O'Neill received a collection kit while at Lenox Hill, but she claims Lenox Hill falsified her records' recollection of the assault because Wilder's attorney had preemptively called Lenox Hill to discredit

her. *Id*., para. 31. O'Neill claims Wilder's attorney told Lenox Hill hospital providers O'Neill was a drug addict, child abuse victim, and "used 'circular' reasoning'" in describing her alleged assault. *Id*., para. 31. Before leaving, O'Neill began to record her conversations with Lenox Hill staff and claims she recorded them telling lies and rebuking her for seeking treatment, which she says contradict the medical records from her visit. *Id*., para. 109.[1]

About two weeks after her visit to Lenox Hill, O'Neill visited Beth Israel Hospital and NYP Queens requesting another rape kit. *Id*., para. 94 (December 10, 2017). She discussed with Beth Israel providers that Lenox Hill had misrepresented her condition and medical records. *Id*., para. 71. Beth Israel provided her a rape kit, but O'Neill claims Beth Israel improperly administered the kit or falsified its results to destroy evidence of Wilder's assault on her. *Id*., para. 94. She requested both facilities correct the records to include information about Wilder and the potential assaults. *Id*. para 95.

After these discussions with Lenox Hill and Beth Israel, O'Neill took a new job in January 2018 and moved to Georgia. *Id*., para. 107. She alleges Wilder stalked her to Georgia and drugged her again less than a month later. She then went to NFH

---

[1] Adding 122 days for the Court's COVID-extension for statute of limitations issues, the tolling date for November 25, 2017 is March 27, 2018.

for additional treatment and, while she was away, Wilder broke into her apartment and "stole copies of the medical records he had falsified from Plaintiff's rape exams," confirming she had the allegedly false records in her possession as early as January 2018. *Id*., para. 109.

Two weeks later, O'Neill sought another rape kit from Grady Hospital, but believes Grady falsified the "requisition form" to "test for opioids, not opiates." *Id*. para. 112. She then returned to New York to have a urine test performed at Beth Israel. *Id*. para, 113.

The rest of the Complaint claims Lenox Hill and the other defendant hospitals owe O'Neill damages for lost job opportunities, damage to her reputation[2] and for general and punitive damages arising from the alleged scheme to cover up the assaults committed against her. She seeks to recover damages under three explicit causes of action: (1) NY Common law fraud; (2) GA common law fraud; and (3) Civil RICO. For Lenox Hill specifically, O'Neill claims Lenox Hill spoke with Wilder's attorney once in November 2017 and falsified her medical records during her post-assault visit there to defame her and protect Wilder from prosecution.

---

[2] Although not explicitly pleaded as a theory of recovery, Georgia's and New York's defamation statute of limitations both are one year. O.C.G.A. 9-3-33; CPLR 215(3).

While O'Neill's allegations receive the benefit of all favorable inferences, they fail nonetheless because each essential element of both her fraud and RICO claims accrued in 2017, placing both causes of action outside their limitations periods. The claims likewise fail to state a claim upon which relief can be granted because O'Neill has not established any of the elements of a civil RICO claim, which requires showing Lenox Hill was an enterprise committing a pattern of racketeering activity.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. Lack of Personal Jurisdiction over Lenox Hill Requires Dismissal

A party cannot maintain an action in a forum in which the forum lacks personal jurisdiction over the served Defendant *vis-à-vis* constitutional Due Process and state long-arm requirements. Georgia federal courts must analyze two factors to determine whether they may assert personal jurisdiction over a non-resident defendant like Lenox Hill: (1) whether the exercise of jurisdiction satisfies Georgia's long-arm statute; and (2) whether asserting jurisdiction under the statute would violate Due Process. *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). O'Neill has the initial burden to establish a *prima facie* case of personal jurisdiction through a well-pleaded complaint. *Stubbs v. Wyndham Nassau resort and Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006).

Turning first to the Georgia Long-Arm Statute, a party cannot hale a non-resident civil defendant into Georgia courts except in four limited circumstances, that is, if the non-resident defendant:

(1) transacts any business within this state;
(2) commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
(3) commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of

8

conduct, or derives substantial revenue from goods used or
consumed or services rendered in this state;
(4) owns, uses, or possesses any real property situated within this
state;

O.C.G.A. 9-10-91(1-4). While pleading a defendant is subject to a Georgia court's jurisdiction first satisfies the jurisdictional requirements of the statute, the non-resident defendant may provide competent evidence showing it has not conducted itself to avail itself of Georgia's personal jurisdiction. *Polskie Linie Oceanizcne v. Seasafe Transp. A/S*, 795 F.2d 968 (11th Cir. 1986). This evidence production then switches the burden to the suing party to provide competent rebuttal evidence or else their claims are subject to dismissal. *Id*.

Lenox Hill has provided an affidavit showing it satisfies none of these four criteria. Lenox Hill transacts no business in Georgia. Ex. A, Aff., of Mike Gloade, Esq. Lenox Hill owns no real property in Georgia. *Id*. Lenox Hill has no regular business Georgia, does not regularly solicit business in Georgia or engage in any other persistent course of conduct sufficient to establish minimum contacts under the long-arm statute. *Id*.  Lenox Hill's affidavit shows O'Neill Complaint satisfies neither constitutional Due Process nor the Georgia Long-Arm Statute.

This affidavit similarly supports dismissal because O'Neill cannot provide sufficient competent evidence to support personal jurisdiction under a traditional Due Process minimum-contacts test either. The Fourteenth Amendment's Due

9

Process clause requires a showing of minimum contacts with a forum state before a court may establish personal jurisdiction over a non-resident. *Burger King Corp v. Rudzewicz*, 471 U.S. 462 (1985). These contacts must lead the defendant to "reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1985). Even if some contact exists, the Court should determine that the contact is not solely from "random, fortuitous, or attenuated contacts." *Paxton v. Citizens Bank & Tr. of W. Ga.*, 307 Ga. App. 112, 116 (2010). Like the Georgia long-arm inquiry, Lenox Hill's affidavit shows there are no sufficient contacts with Georgia to establish personal jurisdiction over Lenox Hill Hospital. Thus, both inquiries support dismissal of Lenox Hill Hospital for lack of personal jurisdiction.

### B. Statute of Limitations Bars Both O'Neill's Fraud and RICO Claims

Besides lacking personal jurisdiction over Lenox Hill**,** O'Neill's claims also fail because they are time-barred. To be sure, O'Neill claims Lenox Hill committed New York common law fraud, which has a six-year limitations period. CPLR 213[8]. But a party's labeling of their causes of action does not control the substantive law applied to the case. Instead, Georgia federal court's follow Georgia choice-of-law principles to determine whether a potential claim's elements of recovery track

Georgia common law or the law of another jurisdiction. *Fed. Rural Elect. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322 (11th Cir. 2006).

Generally, Georgia choice-of-law rules require a diversity court to apply the substantive law of the place where an alleged tort occurred,[3] but this choice-of-law rule only applies to another jurisdiction's "statutes and decisions construing those statutes, even for tort claims." *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500 (11th Cir. 1983). Thus, if a party alleges a common law tort like O'Neill has here for her common law fraud counts, "Georgia courts apply the common law as developed in Georgia rather than foreign case law." *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987). Both Georgia common law and its fraud statute bar fraud claims after four years. O.C.G.A. 9-3-31; *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416 (2004). The statute of limitations for federal civil RICO actions is four years. *Lehman v. Lucom*, 727 F.3d 1326 (11th Cir. 2013).[4]

---

[3] O'Neill also alleges that the substantial part of the torts committed occurred in Georgia rather than New York state. *Id.*, para. 41.

[4] Although her claims would still fall outside the statute of limitations, O'Neill is not entitled to a 122-day extension through the Georgia Supreme Court's Emergency Order extending deadlines for limitations periods ending between March 14 and July 14, 2020. *Owens v. Perdue Farms, Inc.*, 2021 WL 1701922 (M.D. Ga. 2021). ("The Georgia Supreme Court's choice of phrasing . . . clearly refers only to [extending limitations periods expiring] between March 14 through July 14, 2020.").

With the limitation periods set at four years, the Court should then determine whether it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (2004). That is, the Court should look to the factual allegations making all reasonable inferences in O'Neill's favor to determine whether her claims accrued four years before suing.

A fraud action accrues when (1) the necessary facts to state a claim for relief have occurred and (2) the party reasonably knows of the facts supporting the claim. *See King v. Seitzingers, Inc.*, 160 Ga. App. 318 (1981). Since her claims are based upon the allegedly fraudulent records created during her visit to Lenox Hill hospital in late 2017/early 2018, O'Neill admits she was aware of these alleged fraudulent medical records and misrepresentations by Lenox Hill employees in in 2017 and early 2018 at least nine separate times:

- "The events described in this complaint are an extension of a pattern of racketeering activity the Wilder and DB teams engaged in since 2007 . . . ."

- "O'Neill reported several crimes . . . and the forgery of her medical records and writings to the NYPD in 2017 and 2018 and CPPD in 2018 . . . ."

- "Since the first time O'Neill walked into a police station in 2017 to report Wilder's sex crimes . . . ."

- "The theft of keys in November [2017] was designed to cover for Wilder's break-in to Plaintiff's apartment and rape of Plaintiff on January 6, 2017 and/or July 28, 2017."

- "Given the . . . theft of her keys and [conversations with officers] on November 25, 2017, O'Neill went to Lenox Hill Hospital to get a rape kit." "Dr. Huang also lied to Plaintiff that LHH would need to speak to someone O'Neill knew to very [her] story."

- That same day, after requesting a new physician, Plaintiff recorded Lenox Hill staff claiming she recorded "LHH personnell [repeatedly lying] and repeat[ing] Wilder's and DB's baseless propaganda."

- "O'Neill submitt[ed] the recordings to LHH and requested to have her medical records fixed due to all the egregious lies and errors in her medical record."

- After another alleged assault in, O'Neill went to Beth Israel hospital on December 10, 2017, where she claims providers told her "that unlike LHH, Beth Israel did not want to be 'sued.' Thus, Beth Israel had been told that LHH's treatment of Plaintiff was so atrocious it warranted legal action even though O'Neill did not mention LHH or suing LHH."[5]

- She then went to NFH for additional treatment and, while she was away, Wilder broke into her apartment and "stole copies of the medical records he had falsified from Plaintiff's rape exams," confirming she had the allegedly false records in her possession as early as January 2018.

By her own Complaint's admission, not only did O'Neill know of (and possess) the allegedly fraudulent documents before January 2018, the entire interaction between her, Lenox Hill providers, and any alleged agent of Wilder or

---

[5] Citations to each respective bullet in order: Complaint, para. 24; Complaint, para. 10; Complaint para. 20; Complaint, para. 47; Complaint, para. 50. and 54; Para. 59; para. 65, para. 71; Complaint, para. 109.

his attorney occurred in November 2017 with no other allegations of misconduct afterward. Thus, it is clear from the Complaint's face that if O'Neill had any claim to state, it accrued no later than January 2018. Having failed to serve her Complaint on Lenox Hill until April 2022, these claims are time-barred, and the Court should dismiss them with prejudice.[6]

### C. One Interaction with Lenox Hill Providers Fails to Satisfy the Predicate Acts or Continuity Requirements to State a Claim for RICO Liability

O'Neill's RICO claims against Lenox Hill Hospital are not only untimely from a limitations standpoint, but they also to state a claim for the essential elements of a RICO claim. To state a claim under the federal RICO statute, a party must show not only that a party committed some form of "racketeering activity," but it must also show the defendant's conduct constituted a pattern criminal conduct of a continuing nature. "The continuity element . . . is crucial to a valid RICO claim [to] ensure that the crime alleged is the sort of offense that RICO is designed to address—

---

[6] O'Neill's claims accrued on the day of her visit to Lenox Hill, November 25, 2017. But even if the Court assumes they did not accrue until her last visit at Beth Israel in January 2018, O'Neill unreasonably delayed from her January 1, 2022 filing to serving Lenox Hill in April 2022. O.C.G.A. 9-2-61 ("NOTE: for the Complaint to relate back to the date of filing, in-state service must be made "within five days from the time of receiving the summons and complaint" (O.C.G.A. § 9-11-4(c)); if not, the plaintiff must have "acted in a reasonable and diligent manner in attempting to effectuate proper service as quickly as possible" (Livingston v. Taylor, 284 Ga. App. 638, 639 (2007)).

one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (requiring at least two predicate acts).

Here, O'Neill claims Lenox Hill Hospital treated her one time and falsified her medical records. This one transaction cannot constitute a pattern of racketeering, nor does it show a criminal conduct with a likelihood of continued criminal activity affecting more than one individual. *Id*. at 1264 ("In addition to alleging the requisite number of individually chargeable predicate acts, a plaintiff must plausibly allege that the defendant is engaged in "criminal conduct of a continuing nature."). Federal courts routinely dismiss these claims in favor of more appropriate single-scheme claims such as fraud, misrepresentation, or the like. *See, e.g., Cisneros v. Petland, Inc.*, 972 F.3d 1204 (11th Cir. 2020) ("Moreover, as our sister circuits have held, independently chargeable instances of mail or wire fraud cannot constitute a "pattern of racketeering activity" when they arise from a single transaction."). O'Neil's RICO action is also subject to dismissal without pleading plausible facts supporting any continuing criminal enterprise.

## CONCLUSION

This Court should dismiss Lenox Hill Hospital because O'Neill cannot provide competent evidence to support personal jurisdiction. O'Neill's claims against Lenox Hill are also time-barred and on their face fail to state claims for fraud and RICO liability. Lenox Hill asks the Court to dismiss it from this suit under FRCP 12(b)(2) and 12(b)(6), and any other relief which the Court finds proper.

Respectfully submitted this 21st day of April, 2022.

*/s/S. Chase Parker*
Brantley C. Rowlen
GA Bar No.: 153031
S. Chase Parker
GA Bar No.: 155875

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
24 Drayton Street, Suite 300
Savannah, Georgia  31401
912.525.4960 (Telephone)
912.525.4961 (Facsimile)
brantley.rowlen@lewisbrisbois.com
chase.parker@lewisbrisbois.com

*Counsel for Defendant Lenox Hill Hospital*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

This is to certify that the above-brief and motion comply with the Court's font type and size, as well as page-limit and other formatting requirements outlined in this Court's Local Rules.

Respectfully submitted this 21st day of April, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP
24 Drayton Street, Suite 300
Savannah, Georgia  31401
912.525.4960 (Telephone)
912.525.4961 (Facsimile)
brantley.rowlen@lewisbrisbois.com
chase.parker@lewisbrisbois.com

<u>/s/S. Chase Parker</u>
Brantley C. Rowlen
GA Bar No.: 153031
S. Chase Parker
GA Bar No.: 155875

*Counsel for Defendant Lenox Hill Hospital*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that we have this day served on all counsel of record the within and foregoing ***Defendant Lenox Hill Hospital's Motion to Dismiss*** via e-mail and by depositing a copy of the same in the United States Mail, proper postage prepaid, to the following:

Maura O'Neill
712 H Street NE, #1707
Washington, DC 20002
*moneill@rahillco.com*

*Plaintiff*

Respectfully submitted this 21st day of April, 2022.

*/s/S. Chase Parker*
Brantley C. Rowlen
GA Bar No.: 153031
S. Chase Parker
GA Bar No.: 155875

*Counsel for Defendant Lenox Hill Hospital*

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
24 Drayton Street, Suite 300
Savannah, Georgia  31401
912.525.4960 (Telephone)
912.525.4961 (Facsimile)
brantley.rowlen@lewisbrisbois.com
chase.parker@lewisbrisbois.com