**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Maura O'Neill, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-0011(SEG) |
| | ) | |
| v. | ) | |
| | ) | |
| NYU Langone Medical Center | ) | |
| New York-Presbyterian Queens, | ) | |
| Lenox Hill Hospital, | ) | |
| Grady Health System, | ) | |
| Mount Sinai Beth Israel | ) | |
| Northside Hospital Forsyth | ) | |
| College Park Police Department | ) | |
| | ) | |
| Defendants. | ) | |

**Defendant New York-Presbyterian Hospital/ Queens'
Brief in Support of its Motion to Dismiss**

**<u>Preliminary Statement</u>**

New York-Presbyterian Hospital Queens (NYPQ) (s/h/a New York-Presbyterian Queens) is a hospital in New York City that rendered emergency room care to pro se plaintiff Maura Ms. O'Neill on one occasion, on January 1, 2018. It is Ms. O'Neill's claim that the visit was precipitated by her having been raped by a known (and repeat) perpetrator, Mr. Christopher Wilder. Ms. O'Neill alleges that in handling her visit, care and records, NYPQ conspired with Mr. Wilder and others to aid and abet ongoing sex trafficking by Mr. Wilder. Ms. O'Neill's complaint sounds in RICO violations as well as common law fraud.

1

The allegations fail to give rise to jurisdiction in Georgia over NYPQ because (a) the claims are insufficient to warrant application of the nationwide service provisions of RICO and (b) asserting jurisdiction over NYPQ would not comport with basic notions of fairness. In any event, the complaint must be dismissed because it is time barred and in any event fails to state causes of action in RICO or fraud.

## The Relevant Facts

This being a pre-answer motion to dismiss, the facts recited below are lifted from the complaint. Their truth is not conceded.

--- *The Claims of the Complaint, Generally*

It is pro se plaintiff Maura Ms. O'Neill's claim that over many months, she was repeatedly raped by non-party, Christopher Wilder who is one of Ms. O'Neill's former co-workers. (Complaint at ¶ 10). Ms. O'Neill alleges that Mr. Wilder repeatedly stole her keys, used those keys to break into her apartment, drugged her in her sleep by injecting her under her nails and then assaulted her. (Complaint at ¶ 25).

It is Ms. O'Neill's claim that she sought treatment with the defendant hospitals, including by requesting a "rape kit" and toxicology testing in the aftermath of these assaults. (Complaint at ¶ 29). It is Ms. O'Neill's theory of the case that each of the defendant hospitals, including movant NYPQ, as well as the co-defendant police department and non-party New York City Police Department, conspired with

Mr. Wilder to "aid and abet a sex trafficking operation" by Mr. Wilder. (Complaint at ¶¶ 10, 35).

---     *The Claims against NYPQ*

With respect to NYPQ, it is Ms. O'Neill's claim that she sought treatment from this hospital on January 1, 2018, in Queens, New York. (Complaint at ¶ 92). Ms. O'Neill alleges that she reported to NYPQ that she was "terrified and was being stalked by Wilder, a rapist who drugs women." (Complaint at ¶ 93).

Ms. O'Neill claims that despite her having made statements to the contrary, the hospital record incorrectly reflects that she was living with her assailant who had known access to their residence. (Complaint at ¶ 94-95). Ms. O'Neill claims that she informed NYPQ of these errors in its medical records and that the hospital promised (but failed) to make corrections. (Complaint at ¶ 95).

Ms. O'Neill claims that the physician's assistant whose entries she had taken issue with was "competent and ethical" and that Ms. O'Neill did not believe that the entries were actually made by this person. (Complaint at ¶ 96). Instead, Ms. O'Neill appears to be claiming the hospital records may have been altered by cyberhacking by Wilder. (Complaint at ¶97).

Ms. O'Neill alleges that "several hospitals have had to correct fraudulent references to [Ms. O'Neill having exhibited during her visits] 'pressured speech'." (Complaint at ¶ 120). It is unclear whether NYPQ is meant to be among the hospitals

that, in Ms. O'Neill's view, had made this notation. Ms. O'Neill does claim that the fact that this notation appears in the records of multiple hospitals is evidence of a conspiracy. (Complaint at ¶ 126). In any event, Ms. O'Neill alleges that she "stopped the amendment [of the medical records] process since the hospitals were not acting in good faith due to interference from Wilder…." (Complaint at ¶ 139).

Ms. O'Neill also claims that the hospitals (though it is not specified which ones) disclosed her medical information in violation of HIPAA and face criminal liability. (Complaint at ¶ 141-142).

---   *The Alleged Fraud*

Ms. O'Neill claims that when she "went to [the defendant hospitals], to have rape exams, Wilder's attorney … called and/or had other call on her behalf and provided hospitals with the ludicrous Trump has Malaria Defense." (Complaint at ¶ 155).[1] As a consequence of this call, Ms. O'Neill claims, the hospital defendants had no intention of providing her with medical care and instead subjected her to "abuse" and falsified her medical records. (Complaint at ¶¶ 154, 156, 158).

---

[1] The "Trump has malaria defense", according to Ms. O'Neill, consists of Wilder "and his team" telling people, including the defendant hospitals, that Ms. O'Neill was taking Zoloft for depression or paranoia. (Complaint at ¶ 30). Ms. O'Neill explains in the section of her complaint devoted to the "Trump has malaria defense" that, in fact, she was wrongly prescribed this medication or that she possibly was taking it as off-label use to treat hyperthyroidism and was not taking for depression or paranoia. (Complaint at ¶ 30). As Ms. O'Neill explains, her situation in this regard is akin to media reports of former President Trump taking the malaria drug hydroxychloroquine as a Covid-19 prophylaxis while he did not have malaria. (Complaint at ¶ 27).

O'Neill claims that she was aware of the ongoing conspiracy against her when she sought treatment from the hospital defendants, including NYPQ and that, anticipating that they would falsify her records, she recorded her interactions with hospital staff. (Complaint at ¶ 95). O'Neill claims in the aftermath of her treatment, she shared the recordings with NYPQ (complaint at ¶ 95) but that ultimately Mr. Wilder was able to steal the recordings from O'Neill. (Complaint at ¶ 130).

--- *The Alleged RICO Violations*

Ms. O'Neill claims that the hospital defendants, the defendant police department and non-parties NYPD, Lehman Brothers, Deutsche Bank and others are engaged in a "Predator-Protection Enterprise." (Complaint at ¶ 180). The goal of this enterprise is to protect Wilder (and his employer) from harm to their reputation. (Complaint at ¶ 180).

The "Predator-Protection Enterprise" used, according to Ms. O'Neill, interstate commerce, including wire transfers and phone calls to effectuate its purpose. (Complaint at ¶ 181). The defendants are alleged to have committed mail and wire fraud in furtherance of this enterprise. (Complaint at ¶ 182). Ms. O'Neill alleges that the hospital defendants committed fraud, in that they falsified medical records, to protect Wilder. (Complaint at ¶¶ 184, 188).

## **Legal Standard**

---   *Rule 12(b)(2), (b)(6) and (c) Motions*

To state a legally sufficient claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*., quoting *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id.,* quoting *Twombly,* 550 U.S. at 557. If the plaintiff "ha[s] not nudged [a] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twomblv*, 550 U.S. at 570.

The standard applicable to a motion for judgment on the pleadings under Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverley Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

---   *Pro Se Complaints*

"[C]ourts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks and citation omitted). But, "[e]ven in a pro se

case … threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010).

--- *RICO Pleading Standard*

To be sustainable, RICO claims must meet the "heightened" pleading requirement of Rule 9(b). *Joseph v. Bernstein*, 612 F.App'x 551, 555-556 (11th Cir. 2015) (unpublished) (holding that where "[the plaintiff's] claims of fraud, which, as relevant to this appeal, include the RICO claims, did not comply with the heightened pleading standard of Rule 9(b)" they would be dismissed), citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (noting that civil claims "are essentially a certain breed of fraud claims" and thus must comply with Rule 9(b).")

This pleading requirements means that the plaintiff is required to "plead the who, what, when, where, and how of the allegedly false statements." *Joseph*, 612 F.App'x at 555-556, citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

In addition, RICO claims are sustainable only where there are claims of at least two predicate acts of racketeering activity such as would create the requisite "pattern" of such activity for a RICO claim. *Joseph*, 612 F.App'x at 556, citing *Williams v. Mohawk Indus. Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006).

## Argument

**Point I**     **This Court has No Jurisdiction for the RICO Claim
Over NYPQ**

---     *There are Insufficient Jurisdictional Allegations to Warrant
Personal Jurisdiction in the First Place*

Ms. O'Neill has not made any allegations that would establish jurisdiction in this forum over NYPQ. This deficiency is not one of form; it is one of substance. As is explained in the accompanying declaration of Vanessa Murphy, there are no jurisdictional facts to be alleged that would warrant hailing NYPQ into this Georgia District court except with grave constitutional unfairness. Given this reality, the complaint must be dismissed without leave to permit its amendment of jurisdictional grounds. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (holding that while a plaintiff may amend a complaint's jurisdictional allegations, where jurisdictional facts are absent, leave to amend is not warranted).

Indeed, even if pleading deficiency were overlooked, for the reasons that follow, the reality is that this court does not have personal jurisdiction over NYPQ.

---     *The Rico Allegations are Insufficient to Warrant Application of
the Nationwide Service Provision*

RICO contains a nationwide service of process provision that provides that, process may be served "on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). While this provision, theoretically, can give rise to jurisdiction in any District Court over a

defendant present there, the provision is not triggered where the RICO claims are "whole immaterial or insubstantial." *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 941-42 (11th Cir. 1997). Here, Ms. O'Neill's claims are deficient in precisely this manner.

To start, as the annexed declaration shows, NYPQ is not present in Georgia. It has no contact with the state, no presence in the state and provides no services here. Second, while Ms. O'Neill claims broadly and generally that NYPQ engaged in mail and wire fraud in furtherance of its alleged conspiracy, these conclusory allegations are not sufficient to sustain her RICO claims. *Courboin v. Scott*, 596 Fed. Appx. 729 (11th Cir. 2014) (unpublished).

*Courboin* involved a *pro se* plaintiff who alleged that during his New Jersey divorce proceedings, his attorneys, his (ex-)wife's attorneys and the appraisers hired to value the marital assets had conspired to inflate costs which ultimately depleted the marital assets. 596 Fed. Appx. 729. *Courboin* brought RICO and antitrust claims against everyone (allegedly) involved with the scheme. He sued in a Florida District. The defendants challenged jurisdiction. *Id.*

In evaluating jurisdiction, the 11th Circuit concluded that the complaint "has not stated a colorable federal RICO claim, so [the plaintiff] may not rely on RICO's nationwide service-of-process provision." *Id.* The court came to this conclusion based on the plaintiff's failure to "identify any predicate acts that could constitute

'racketeering activity' under RICO." *Id.* In particular, the court observed, that while "[the plaintiff] ma[de] broad allegations of corruption and theft in New Jersey …he does not connect these allegations to any predicate act as defined by 18 U.S.C. § 1961." *Id.*

In addition, the court observed that the plaintiff had failed to "allege any facts plausibly supporting an inference that the defendants 'conducted an enterprise.'" *Id.* This was so, held the court, because the various improprieties alleged by the plaintiff (including theft and corruption) "does not mean or even plausibly suggest, in and of itself, that all of the defendants were in cahoots and were conducting an 'enterprise'." *Id.*

The same conclusion must be drawn here. While Ms. O'Neill makes claims about various improprieties by NYPQ, she fails to plausibly allege any predicate act to support RICO liability. Certainly, the alleged alterations of her medical records and HIPAA violations are not sufficient in this regard. Thus this court is constrained to hold, as did the 11th Circuit in *Courboin*, that the plaintiff has failed to "allege any facts plausibly supporting" any RICO claim, such as would qualify her to claim the benefit of nationwide service. *Courboin*, 596 Fed. Appx. 729.

---    *It Would not Comport with Traditional Notions of Justice for NYPQ to be Hailed into Court in Georgia*

Even if this court were to hold that there are sufficient RICO allegations here to trigger the nationwide service provision, this court would still have to conclude

that jurisdiction over NYPQ is absent. This is because, as the 11th Circuit explained in *Republic of Panama*, 119 F.3d at 935, RICO's nationwide service provision allows for personal jurisdiction in any court only if asserting jurisdiction is also compatible with Due Process and where the federal interest outweighs unfairness to the defense. *Id.* at 939 (holding that "the Due Process Clause of the Fifth Amendment provides an independent constitutional limitation on the court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision.")[2]

Therefore, jurisdiction for purposes of a RICO claim over NYPQ may only be had in this forum if it does not rise to the level of constitutional unfairness for NYPQ to have to defend this suit here.

**Point II        This Court has No Jurisdiction Over NYPQ for the State Law Claims**

---        *This Court should not Reach the State Law Claims under Pendent Jurisdiction*

Since this court has no jurisdiction over NYPQ for the federal claim, the RICO cause of action must be dismissed. In the absence of jurisdiction here over the federal claim, this court should not exercise pendent jurisdiction over the remaining state

---

[2] We note here that the 11th Circuit is among the minority of the Courts of Appeals in interpreting civil RICO jurisdiction in this manner. The majority of courts follow a more traditional "minimum contacts" analysis in one form or another, in evaluating whether civil RICO jurisdiction exists. See generally *Kyko Global, Inc. v. Prithvi Info. Solutions Ltd.*, 2020 US Dist LEXIS 41532, at *104, 2:18-cv-01290(WSS) (W.D.Pa, Stickman, W., U.S.D.J., Mar. 10, 2020) (collecting cases).

law claims. *Cf. Shahawy v. Harrison*, 778 F.2d 636, 644 (11th Cir. 1985) (holding that "[f]or a federal court to exercise 'pendent jurisdiction' over state law claims, 'the court *must have jurisdiction over a substantial federal claim* and the federal and state claims must derive from a common nucleus of operative fact'") citing *L.A. Draper and Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414 (11th Cir. 1984) and *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir.1981). Here, since jurisdiction over the federal claim is wholly absent and in any even the federal claim not being "substantial" (which is also why there is no jurisdiction), this court should not exercise its pendent jurisdiction to retain the state law claims.

Were this court to exercise pendent jurisdiction over the remaining state law claims, however, it would have to dismiss those as well, for lack of personal jurisdiction.

--- *There is no Jurisdiction under Georgia's Long-Arm Statute*

In looking first to Georgia's long-arm statute (as this court would do in evaluating such a remaining pendent claim), it would have to conclude that under none of the six prongs of the statute can there be jurisdiction in this forum over NYPQ. Under GA Code § 9-10-91, jurisdiction in Georgia may be had over a defendant who (1) transacts business within the state; (2) commits a tort within the state; (3) causes injury within the state through a tort committed elsewhere provided that the tortfeasor "regularly does ... business [in Georgia]"; (4) has real property

here (5) maintains a matrimonial domicile here and the case concerns a divorce; or (6) owes child support here and the case concerns this issue. Certainly, the last two of these are not at issue here in that none of the claims concern a divorce or child support. The remaining prongs are also inapplicable.

There is no allegation in the complaint that NYPQ transacts business in Georgia. Indeed, it does not. As the annexed Murphy declaration makes clear, NYPQ is a New York hospital that provides care in New York – and only there.

It is for this same reason that the second prong of Georgia's long-arm statute also does not apply; NYPQ has done nothing in Georgia. It has not treated the plaintiff or any other patient here because it does not treat patients here and it does not operate any business here. Thus, it cannot be said that it committed a tort here.

Given that NYPQ does not do business in Georgia, regardless of where any alleged injury caused by its allegedly tortious conduct may have occurred, the third prong of the long-arm statute also does not apply. We do observe, however, that at the time of the alleged treatment at issue, Ms. O'Neill was a New York resident. And now, she lives in Delaware. Not Georgia.

Lastly, the fourth possible alternative to assert long-arm jurisdiction is also not viable because, as the Murphy declaration makes clear, NYPQ does not have any assets in the state, real or otherwise.

13

NYPQ' activities simply do not satisfy any element of Georgia's long-arm statute. Consequently, there is no jurisdiction over NYPQ in Georgia and this court must dismiss any remaining claims against it on this ground.

---   *Jurisdiction is Incompatible with Due Process*

While the personal jurisdictional inquiry looks to the Fifth Amendment in connection with the federal statutory RICO claims, with respect to the pendant claims the Fourteenth Amendment controls the analysis. *Republic of Panama*, 119 F.3d at 935. The question under the Fourteenth Amendment is whether NYPQ has had sufficient contacts for suit with Georgia. It hasn't. Not even close. In fact, as the annexed declaration of Vanessa Murphy details, NYPQ has no contacts with Georgia.

NYPQ is a New York state based hospital that provides care in New York. It has no employees, contacts, agents, operations or any other relevant contacts with Georgia. It does not provide services in Georgia. Thus, it cannot be said that there exists general jurisdiction over NYPQ in Georgia. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (holding that "the constitutional touchstone [of the Article 14 Due Process analysis] remains whether the defendant purposefully established 'minimum contacts' in the forum State"), citing *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, 926 F.Supp 1106, 1110 (N.D.Ga., Hull, F., U.S.D.J., April 15, 1996) (holding that where an out-

of-state hospital contracted for services to be provided at its out-of-state location by a Georgia entity, it did not have sufficient contacts with Georgia to be subject to jurisdiction here).

Notably, while in *Allegiant Physicians* the defendant hospital had entered into a contract with a Georgia service provider (thus establishing at least some connection to the state), here not even that single connection exists. Ms. O'Neill is not now (nor was she at the time of her treatment) a resident of Georgia. Certainly if there were insufficient factual predicates for jurisdiction over the hospital in *Allegiant Physicians*, the same is true with greater force here.

It also cannot be said that specific jurisdiction exists because none of the alleged conduct occurred in Georgia, the plaintiff did not at the time live in Georgia (and, in fact, she doesn't even live here now) and nothing about the claims relates in any way to Georgia. Given this reality, this court does not have jurisdiction over NYPQ. *Burger King*, 471 U.S. at 474; *Allegiant Physicians*, 926 F.Supp at 1110.

**Point III      Ms. O'Neill has Failed to State a RICO Claim against NYPQ**

Preliminarily, we observe that the jurisdictional analysis is dispositive of this matter and that given the absence of jurisdiction, this court should not reach the merits of the claims. *Republic of Panama*, 119 F.3d at 940 (holding that dismissal without discussion of the merits is warranted where there is no personal jurisdiction

over the defendant). That said should this court desire to review the merits, it would be constrained to observe that the complaint fails to state a claim against NYPQ.

---        *The Civil RICO Claims against NYPQ are Time-Barred*

"The statute of limitations for civil RICO actions is four years." *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 751 (11th Cir. 2000), citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997). The statute begins to run "as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of [their] injury and that the injury is part of a pattern." *McCaleb*, 200 F.3d at 751, citing *Bivens Gardens Office Bldg., Inc. v. Barnett Bank, Inc.*, 906 F.2d 1546, 1554-55 (11th Cir. 1990).

Here Ms. O'Neill's claims is that by the time she came to the NYPQ emergency room on January 1, 2018, she was fully aware of the ongoing conspiracies and sex trafficking. In fact, it is Ms. O'Neill's claim that she recorded her conversations with NYPQ staff precisely because she believed that this hospital (like the co-defendant hospital, in Ms. O'Neill's view) was conspiring with Mr. Wilder in real-time to falsify her records. (Complaint at 95). Thus, the date on which Ms. O'Neill became aware of the alleged conspiracy between NYPQ and Wilder was the date of her treatment; January 1, 2018.

The complaint was filed on January 4, 2022. Therefore, Ms. O'Neill's RICO claims against NYPQ are time-barred. *McCaleb*, 200 F.3d at 751.

16

---     *The Civil RICO Claims against NYPQ are Insufficiently Stated*

As is explained above, Ms. O'Neill's RICO claims are deficient in their failure to claim sufficient predicate acts and an "enterprise" such as would warrant the application of RICO. For these reasons, even if this court had jurisdiction over NYPQ and even if the claims were not time-barred, the RICO claim would have to be dismissed. *Republic of Panama*, 119 F.3d at 941-42; *Courboin*, 596 Fed. Appx. at 729.

**Point IV      Ms. O'Neill's Fraud Claims must also be Dismissed**

---     *The Fraud Claims are Time-Barred*

The Georgia statute of limitations for fraud is four years from the time of the plaintiff's discovery of the fraud. *Anthony v Am. Gen. Fin. Servs.*, 626 F.3d 1318, 1321 (11th Cir. 2010). This is the statute of limitations that applies (over New York's six year statute) because this court must look to its forum state for its choice-of-law analysis on this issue and a Georgia court would apply the Georgia statute of limitations in this circumstance. Specifically, since fraud is a common law (rather than statutory) claim, a Georgia court would hold that "it is well settled that the Statute of Limitations of the country, or state, where the action is brought and the remedy is sought to be enforced, controls, in the event of the conflict of laws" because "the lex fori determines the time within which a cause of action may be enforced." *Taylor v. Murray*, 204 S.E.2d 747 (Ga. 1974).

Ms. O'Neill's treatment with NYPQ was in the overnight hours from January 1 to January 2, 2018. The complaint in this case was filed on January 4, 2022. Thus, the fraud claims against NYPQ are time-barred.

---    *The Fraud Claims are Insufficiently Stated*

Further, under Georgia's choice-of-law rules (which this court must apply given that it is the forum state), Georgia would look to its own interpretation of what constitutes common law "fraud." *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 829 ( Ga. 2017) (holding that where a common law cause of action is at issue, Georgia courts take the position that there is but one, universal common law which its own courts are best qualified to interpret and thus must rule on the case by applying Georgia precedent).

Under Georgia law, there are five elements of fraud; "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Next Century Communs. Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003), citing *Ades v. Werther*, 567 S.E.2d 340, 343 (Ga. Ct. App. 2002). Further, a Georgia fraud claim is only sustainable if the plaintiff can "show not only that he relied on some misrepresentation, but also that [their] reliance was reasonable. *Alvear v Sandy Springs Toyota, Inc.*, 775 S.E.2d 172, 175-176 ( Ga. App. 2015), citing *Raysoni v. Payless Auto Deals*, 766 S.E.2d 24 (Ga. 2014)

Even if this court were to accept all of the allegations of the complaint as true, it would still be the case that the claims fall short of what is necessary to plead fraud. In particular, Ms. O'Neill has not (and cannot in good faith) make claims relating to the third or fourth elements of the tort. In particular, while Ms. O'Neill claims that NYPQ altered her medical records in an effort to cover up Mr. Wilder's sex trafficking, she makes no claim that any wrongdoing by NYPQ was meant to influence her own actions or behavior. Thus, the third element is missing entirely.

In addition, it is Ms. O'Neill's theory of the case that she had long been aware of the ongoing conspiracy masterminded by Mr. Wilder. It was this awareness, according to her complaint, that prompted her to record her conversations with the NYPQ staff. Thus, Ms. O'Neill's own theory of the case negates any possible inference that she would have *relied* on any representation by NYPQ (or that she would have done so reasonably). Therefore, the fourth element is also and fatally absent from the case.

It must therefore be concluded that Ms. O'Neill's complaint simply does not make out a claim of fraud against NYPQ. Therefore, all other deficiencies aside, if this court were to get to the current point of the analysis, it must dismiss the fraud cause of action for the plaintiff's failure to state a claim.

## **Conclusion**

For the foregoing reasons, the complaint against NewYork-Presbyterian Hospital/Queens must be dismissed pursuant to Rules 12(b)(2), (b)(6) and (c).

Respectfully submitted, this 25th day of April, 2022.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _Parks K. Stone_
    Parks K. Stone, Esq.
    Attorneys for Defendant
    New York-Presbyterian
    Hospital/Queens
    3348 Peachtree Rd. NE Suite 1400
    Atlanta, GA 30326
    470.419.6656 (Direct)
    470.419.6650 (Main)
    470.419.6651 (Fax)
    parks.stone@wilsonelser.com

20

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the within and foregoing **Defendant New York-Presbyterian Hospital/ Queens' Brief in Support of its Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record and a copy of same was served upon pro-se plaintiff via U.S. mail and e-mail:

<table>
<tr>
<td>

Michael R. Boorman
Watson Spence LLP
999 Peachtree Street, N.E.
Suite 1130
Atlanta, GA 30309
mboorman@watsonspence.com
*Attorney for NYU Langone Medical Center*

</td>
<td>

Brantley Cole Rowlen
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street, NE
Suite 4700
Atlanta, GA 30308
rowlen@lbbslaw.com
*Attorney for Lenox Hill Hospital*

</td>
</tr>
<tr>
<td>

Maura O'Neill
712 H Street, NE
Apt. 1707
Washington, DC 20002
moneill@rahillco.com
*PRO SE*
(Served by U.S Mail & E-mail)

</td>
<td>

Steven Parker
Lewis Brisbois Bisgaard & Smith
24 Drayton St.
Ste 300
Savannah, GA 31401
chase.parker@lewisbrisbois.com
*Attorney for Lenox Hill Hospital*

</td>
</tr>
</table>

DATED:  April 25, 2022

/s/ Park K. Stone
Parks K. Stone