

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**JUN 0 6 2022**

KEVIN ~~~~~~~~~~~~R, Clerk
By~~~~~~~~~~~~Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **MAURA O'NEILL,**<br><br>       Plaintiff,<br><br>   v.<br><br>**NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**<br><br>       Defendants. | **CIVIL ACTION FILE NO. 1:22-cv-00011-SEG** |

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR EXTENSION OF TIME TO FILE OPPOSING PAPERS AND AMENDED COMPLAINT

1. On May 3, 2022, I filed a motion to extend time.  (Docket No. 26).

2. NYU Langone Medical Center ("NYU") (Docket No. 33) and Grady Health System ("Grady") (Docket No. 34) filed opposing papers.

### A. NYU's First Failed Service Attempt

3. NYU's opposing papers, filed on May 17, 2022, were dishonest and

deceptive in numerous ways. First, in its papers, NYU claimed (Docket No. 33):

Plaintiff recently complained that she is not a registered ECF user, and thus, though obviously aware of NYU Langone's Motion to Dismiss (as it is mentioned in her motion for extension), she was not properly served. [Doc. 26, p. 4-5]. To avoid further service complaints, on May 6, 2022, NYU Langone served its Motion to Dismiss on Plaintiff via first class U.S. mail and e-mail. [Doc. 30].

4. In a footnote, NYU mentioned the case, *Smith v. Robin Warren Properties,*

*LLC*. *Smith v. Robin Warren Properties, LLC*, Civil Action File No. 1:18-cv-

03785-WMR-JCF, 2019 WL 4138005, *1 (N.D. Ga. Jan. 9, 2019). However,

NYU's citation of this case was clearly deceptive, and the case's inclusion in a

footnote was clearly meant to hide the dishonest nature of NYU's response.

5. First, in the *Smith* case, the *pro se* Plaintiff had a Pacer account and filed an

amended complaint two days after the deadline. Yet, the court granted the *pro se*

Plaintiff's motion to file a late complaint. Here, there is no question that my

Motion for an Extension of Time was timely filed before the deadline to file

opposing papers and an Amended Complaint. (Docket No. 26).

6. Second, the *Smith* case references the Federal Rules of Civil Procedure and

Local Rules. As NYU is clearly well aware, the Federal Rules of Civil Procedure

("FRCP") lay out the rules of service for a motion to dismiss and the Local Rules clearly layout who has access to the ECF system.

7. Nowhere in the Federal Rules of Civil Procedure or the Local Rules does it state that a *pro se* litigant is served by checking her Pacer account. (FCRP Rule 5). The rules are in fact very clear, and NYU broke those rules.

8. Yet, rather than acknowledge that it broke the Federal Rules of Civil Procedure and the Local Rules, NYU tried to pretend that it could unilaterally amend the Federal Rules of Civil Procedure and Local Rules by claiming that since I checked Pacer, I was served. If checking Pacer meant I was served, then clearly the Federal Rules of Civil Procedure and Local Rules would state that is the case.

9. Yet, nowhere in the Federal Rules of Civil Procedure or Local Rules does it state that checking Pacer is a valid means of service. (FCRP Rule 5). The fact NYU would seek to claim this is the case shows what stupid liars NYU personnel truly are.

10. In fact, the *Smith* case, cited in a footnote by NYU, *Id.* does not help NYU because the Smith case states:

> [Plaintiff] is reminded that litigants have a duty to actively monitor the docket . . ., and he must participate fully, complying with both the Local Rules and the Federal Rules of Civil Procedure. *Id.*

11.Thus, the *Smith* case makes clear that litigants have an obligation to follow both the Local Rules and Federal Rules of Civil Procedure. Here, the contention in the Motion for an Extension of Time (Docket No. 26) was that NYU failed to follow both the Local Rules and Federal Rules of Civil Procedure. Nothing in NYU's opposing papers show that NYU made any effort to follow the Local Rules or Federal Rules of Civil Procedure. (FCRP 5).

## B. *Effort to Prepare Filing*

12.Third, NYU claimed (Docket No. 33, Page 3, ¶2):

However, Plaintiff was able to draft and file a motion for extension in which Plaintiff references the local court rules, standing orders, appendices, and the Federal Rules of Civil Procedure.

13.NYU's claim in the sentence above is deceptive and dishonest. The motion to extend time I filed on May 3, 2022 was essentially a cut and paste of another motion to extend time I filed in the Northern District of Georgia on March 11, 2021 (CIVIL#: 1:20-cv-04632-SEG, Docket No. 14). Thus, the "local court rules, standing orders, appendices, and the Federal Rules of Civil Procedure" (Docket No. 33, Page 3) NYU referenced in its opposing papers were the exact same "local court rules, standing orders, appendices, and the Federal Rules of Civil Procedure" referenced in a prior filing. (CIVIL#: 1:20-cv-04632-SEG, Docket No. 14). Thus, no research was needed on my part.

4

### C. Second Failed Service Attempt

14. Fourth, NYU claimed that it duly served its motion to dismiss on its second attempt on May 6, 2022 (Docket No. 30), three days after I filed my motion for an extension of time (Docket No. 26).

15. Yet, here too, on its second attempt on May 6, 2022, according to its own certificate of service, NYU failed to comply with court rules. (Docket No. 30). Thus, NYU's motion to dismiss is still not validly served according to the Federal Rules of Civil Procedure and Local Rules.

16. Specifically, applicable service rules for this proceeding are defined in the Federal Rules of Civil Procedure as well as the local rules of the court for the Northern District of Georgia. Specifically, Appendix H: Administrative Procedures For Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civile Cases (Appendix H) contains specific rules that are pertinent to this action. Part II(B)3 of Appendix H states:

> A party who is not a registered participant of ECF is entitled to a paper copy of any electronically filed pleading, document, or order. The filing party must therefore provide the non-registered party with the pleading, document, or order according to the Federal Rules of Civil Procedure. When mailing paper copies of documents that have been electronically filed, the filing party must include the "Notice of Electronic Filing" to provide the recipient with proof of the filing.

5

17. Thus, as described in the rules contained in Appendix H Part II(B)3, NYU

was required to serve a paper copy of an Amended Certificate of Service stating its

Motion to Dismiss was served via mail on Plaintiff at the address on file with the

court.  In addition, NYU was required to serve Plaintiff with a "Notice of

Electronic Filing" to provide me with proof of the filing.  Yet, NYU failed to serve

me with the required "Notice of Electronic Filing."  Thus, NYU failed to properly

serve its motion to dismiss on its second attempt because NYU yet again failed to

follow court rules.

### D. NYU's "Who Care if You Die, As Long as There is More for Me" Reputation

18. Fifth, NYU claimed (Docket No. 33, Page 3, ¶1):

Plaintiff's allegations against NYU Langone, while completely baseless, are
also an offense to its good reputation. NYU Langone takes this seriously. NYU
Langone would like this Court to consider its Motion to Dismiss as soon as
possible to either dismiss Plaintiff's claims or commence discovery so that
NYU Langone may uncover the claimed factual basis for Plaintiff's claims.

19. NYU's contention that "discovery" is necessary subtly shows NYU's true

concern.

20. While NYU claimed it is seeking to protect its "good reputation," the fact is

NYU provided cover to the New York City Police Department ("NYPD") to

destroy a rape kit that clearly showed I was drugged with benzodiazepines and

6

sexually assaulted. Thus, my claims against NYU are clearly not "baseless" as NYU dishonestly argued. (Docket No. 33, Page 3, ¶1).

21. While the fact NYU commit several crimes by aiding and abetting in the destruction of evidence to facilitate crimes is damning in and of itself and violates federal obstruction of justice statues among others, what NYU was actually alluding to in its "discovery" allegation was that at the time NYU lied to help the NYPD destroy evidence of the fact I was drugged and raped by Wilder, my sister's husband, Tagar Olson, sat on NYU's Board of Overseers. [See 18 U.S.C. § 1512; *United States v. Frankhauser*, 80 F.3d 641, 651-52 (1st Cir. 1996)].

22. My sister, Colleen Olson (*nee* O'Neill), is not an impartial bystander to Wilder's crimes and sexual abuse, or the rape kit NYU destroyed. Rather, since 2007 both Colleen and Tagar Olson, NYU's former member of its Board of Overseers, have been active participants in lying and committing criminal acts to cover up for Wilder and my former employer, Deutsche Bank Securities Inc. ("Deutsche Bank," "DB," or the "Bank").

23. Colleen and Tagar Olson's motives are simple. Both Colleen and Tagar Olson are seeking to cover-up for the sick, depraved, and repulsive sexual abuse in my family that, among other things, led to the deaths of two of my family members.

24.By her own admission, Colleen Olson, "lies every day as a way of life."

25.To my knowledge, Colleen Olson has repeatedly and consistently lied about the disgusting and sick sexual abuse within my family as well as other damning and unpleasant facts about herself and our family.

26.To make sure no one finds out what a liar and sick person Colleen Olson is, Colleen Olson blackmailed and bribed other family members to ensure that they cover-up for Wilder's sexual abuse and the fact I was raped repeatedly in an attempt to ensure that the circumstances surrounding the sexual abuse in my family of origin never becomes public knowledge.

27.Since Colleen Olson has consistently chosen to lie as a way of life to cover-up for facts that she would prefer others not know, it came as no surprise to me that Colleen Olson would seek to lie and cover-up for Wilder and Deutsche Bank in order to ensure that her own lies would not become public knowledge.

28.I personally know of several people Colleen Olson lied to about our family, and I know she told these lies before I worked at Deutsche Bank or even knew who Wilder was.

29.While Colleen Olson's behavior would be shocking to a person who had ethics and morals, it is clear that a liar like Colleen Olson has never had ethics or

morals.  Instead, she is out for herself, and has no concern about who she hurts or how badly people are abused as long as there is more for her.

30.Colleen Olson's lies and depravity are also in not surprising, since she has modelled her depraved behavior on the sick, ruthless, and utterly disgusting behavior of her own mother, Joan O'Neill.

31.Joan O'Neill lied about the rapes of two of her own sisters and the details surrounding their deaths in order to ensure there was more for Joan O'Neill.  Joan O'Neill does not care who is raped, abused or killed, as long as there is more for her.  Colleen Olson is the same way.  Both Joan O'Neill and Colleen Olson will lie through their teeth to make sure there is more for them even if they know, or reasonably could have foreseen, that others will be seriously injured or even killed as a result of their actions.

32.By lying about the fact I was raped and abused by Wilder, Colleen Olson is simply modelling the same sick and depraved behavior she learned from her utterly sick and depraved mother.

33.I cannot recall a time in my life when I have had any respect for either Joan O'Neill or Colleen Olson.  At age 18, I left for college, moved to another state, and, for the most part, had little to do with Joan O'Neill and Colleen Olson.

34. The reason I had contact with Colleen Olson and Joan O'Neill after I left for college is because we have mutual family members, and cutting off Joan O'Neill and Colleen Olson creates problems for members of my family that I do respect and are honest and good people.

35. In 2004, prior to even meeting Wilder, for the most part, I cut off contact with Colleen Olson, after she moved to New York. While I did see her on a handful of occasions, I said as little as possible to her because I find it a waste to time to try to speak to a liar like Colleen Olson.

36. In 2007, I cut off contact with Joan O'Neill. As bad as Colleen Olson is, Joan O'Neill is called the "Wonder Bitch," and is far sicker than Colleen Olson in many ways. Joan O'Neill earned the name Wonder Bitch.

37. What is surprising is that Joan O'Neill and Colleen Olson do not know that other people see through their toxic behavior and lies. For example, my neighbors in high school did not know the specific facts surrounding my mother's dysfunctional behavior, but they were well aware that she was abusive and toxic. On numerous occasions neighbors expressed their concern that I had to live in a house with the Wonder Bitch.

38. Likewise, Colleen Olson has always been a liar who is out for herself, and other people who know her have been able to see through her toxic behavior.

39. Thus, I have wondered why the Wonder Bitch and Colleen Olson have gone to such great lengths to lie so often to family members, neighbors, and friends when there are facts to show they are lying. Smarter neighbors and family members have been able to see through them.

40. One of the Wonder Bitch's problems is that she does not understand the difference between using her inside voice and her outside voice. While most people filter their thoughts and feelings, and use discretion in sharing information, the Wonder Bitch lacks an ability to exercise discretion and does not understand what is and is not appropriate to tell other people.

41. Thus, since 2007, the Wonder Bitch has been telling family members, friends, and neighbors about the lies fed to her by Tagar and Colleen Olson. For example, the neighbors were told that I "liked" Wilder, and had a "consensual sexual relationship" with him even though I have always thought Wilder was a psycho and avoided him like the plague. I never "liked" him, nor would I even speak to him outside of DB's office. All claims of a consensual sexual relationship are complete lies.

42. In addition, a few months before I went to NYU to have a rape kit, a former neighbor was bribed to never testify about Colleen Olson's abusive treatment of me.

11

43. While it may be possible to bribe or blackmail many former neighbors and family members, not all family members, neighbors, and friends can be bribed and blackmailed.

44. At the time I was at NYU to get a rape kit, I did not know Tagar Olson was on NYU's Board of Overseers. Had I known, I would never have gone to NYU. However, at the time I needed to go to an ER, and NYU was the closest.

45. At the time I went to NYU in 2018, Tagar Olson and Colleen Olson were actively helping Wilder and Deutsche Bank cover up for Wilder's and DB's crimes. Neighbors and other family members are well aware of this fact.

46. Thus, NYU really should be concerned about "discovery" since there is a clear pattern of behavior in which one member of its Board of Overseers, Tagar Olson, lied and commit criminal activities to ensure his own sister in law was repeatedly raped and abused to ensure no one would ever find out what a toxic, abusive and depraved lying psycho he married, and what a sick, lying freak he is.

47. Clearly, the fact Tagar Olson spread baseless lies about me, provided to him by Deutsche Bank, to my family and neighbors in an effort to harm me also shows what an unethical, sick freak Tagar Olson is.

48. At no point in time has Tagar or Colleen Olson checked a single lie provided by Deutsche Bank. Instead, Tagar and Colleen Olson have mindlessly mimicked

complete lies in an attempt to harm me and ensure people do not learn how sick and depraved they are.

49. Clearly, Tagar or Colleen Olson could have asked another family member to ask me about what happened at Deutsche Bank, and what happened with Wilder. Instead, Tagar and Colleen Olson lied and spread false information.

50. On October 19, 2021, Wilder's attorney lied to the court and claimed, Wilder and I "may have passed each other in the hallways at Deutsche Bank back in 2004 to 2007 but that's that's it." It was Wilder's attorney's contention that I really did not know Wilder and did not really know what he looked like. Clearly, the Wilder team's lies in October 2021 conflict with Wilder's and DB's earlier lies that Tagar and Colleen Olson spread rampantly to my family and neighbors.

51. But, given what liars Tagar and Colleen Olson are, I am sure they will now mindlessly mimic whatever new lie they are told to tell, and somehow fail to notice when other people see through them.

52. Given the Wonder Bitch has failed to exercise any discretion and has been spreading Tagar and Colleen Olson's lies, one really does wonder how NYU can make any credible claims about preserving its "good reputation," when it is clear NYU already handed its reputation over to the Wonder Bitch years ago.

53. NYU is clearly a place that rewards liars and lying. NYU is also a place where lying to ensure a rape kit is destroyed is considered par for the course, and the fact that someone would even question obstruction of justice means that person has "baseless" allegations. NYU personnel clearly do not follow the laws or rules, and bribery to keep people quiet is considered smart. NYU is also clearly a place where its personnel and senior leaders do not care who dies is raped or abused, as long as there is more for them.

54. Any person will be able to understand in less than five minutes why NYU lied to destroy a rape kit and why the utterly ridiculous medical record NYU prepared is a transparent fraud on its face. The reasons are not in the filings. Given the Wilder team has a never ending pattern of lying, changing stories, coming up with new stories, changing documentation, and bribing others to lie, it has not been in my interests to explain the specifics as to why it is very easy to prove that my medical record from NYU is a fraud on its face.

55. The court should also note that the Wilder team, DB, and the NYPD have been caught lying in numerous occasions in their filings. Thus, it is easy at this point to prove Wilder and the NYPD clearly perjured themselves. Clearly, if there was nothing to lie about, there would be no need for perjury or obstruction of justice.

14

### *E. In Camera Inspection*

56. As I told the court in my prior filing for the Motion for an Extension of Time (Docket No. 26, ¶7), on an *in camera* basis, I am willing to provide police reports, photos, and medical records that prove that I have been seriously injured and filing opposing papers and an amended complaint is simply not feasible under the circumstances.

57. I did receive an email from an attorney for another defendant, Lenox Hill Hospital, requesting copies of my medical records. The request for my medical records was entirely inappropriate from frauds like the defendants in this action.

58. Under these circumstances, I will not provide medical records to these defendants, and the fact they would even ask is entirely inappropriate under the circumstances of this case.

59. Clearly, the attorney for Lenox Hill Hospital must have known his request was out of line, but he clearly believed he could abuse the system anyway.

**WHEREFORE,** Plaintiff respectfully requests this Court grant this

motion.

Dated:  Washington, DC               Respectfully submitted,
May 31, 2022


BY: *Maura O'Neill*
Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

**AMENDED**

**WHEREFORE,** Plaintiff respectfully requests this Court grant this

motion.

Dated:  Washington, DC
June 1, 2022

Respectfully submitted,

BY: _____

Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 0 6 2022

KEVIN P. WEIMER, Clerk
By: _____ Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.** **1:22-cv-00011-SEG** |
| Plaintiff, | |
| v. | |
| **NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,** | |
| Defendants. | |

### LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **REPLY IN FURTHER SUPPORT OF THE MOTION TO EXTEND TIME** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

Dated:  Washington, DC
May 31, 2022

Respectfully submitted,


BY: _Maura O'Neill_____
Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

**AMENDED**

Dated:  Washington, DC
June 1, 2022

Respectfully submitted,

BY: _____

Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 0 6 2022

KEVIN P. WEIMER, Clerk
By_____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MAURA O'NEILL,**

      Plaintiff,

  v.

**NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**

      Defendants.

**CIVIL ACTION FILE NO.
1:22-cv-00011-SEG**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing and mailing a copy of the foregoing to each Defendant at the following addresses:

19

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail:  rowlen@lbbslaw.com
E-Mail:  chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Street, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
Ebonei B. Simpkins, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com
E-Mail: e.simpson@tkstlaw.com

in accordance with Rule 5(b)(2)(E).

Dated:  Washington, DC
May 31, 2022

Respectfully submitted,


BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

Dated:  Washington, DC
May 31, 2022

Respectfully submitted,


BY: Maura O'Neill

Maura O'Neill, Plaintiff
712 H Street NE, #1707
Washington, DC 20002
moneill@rahillco.com

**AMENDED**

FRCP 5(b)(2)(E) requires a stipulation for electronic service.  NYU has never asked for, much less, attained a stipulation for electronic service.  Thus, under the FRCP, NYU's emails do not constitute electronic service.  Thus, the only valid means of service pursued by NYU is regular mail.

According to its certificate of service, NYU mailed its opposing papers via mail on May 17, 2022.

Under FRCP 6(d), I had three additional days after NYU's stated date of service of its opposing papers to file a reply.  According to NYU's certificate of service, NYU served its opposing papers on May 17, 2022.  Thus, I had until June 2, 2022 to serve a reply.  Given my reply was served on June 1, 2022, my reply was timely served.

Dated:  Washington, DC
June 1, 2022

Respectfully submitted,


BY: _Maura O'Neill_____
    Maura O'Neill, Plaintiff
    712 H Street NE, #1707
    Washington, DC 20002
    moneill@rahillco.com



# UNITED STATES POSTAL SERVICE ®  |  PRIORITY® MAIL



UNITED STATES POSTAL SERVICE.    Retail

**P**  US POSTAGE PAID   **$8.95**

Origin: 20002
06/02/22
1049460113-19

**PRIORITY MAIL 2-DAY®**

0 Lb 5.60 Oz   **1004**

EXPECTED DELIVERY DAY: 06/06/22   C039

SHIP TO: 75 TED TURNER DR SW
ATLANTA GA 30303-3315

USPS TRACKING® #

9505 5104 7071 2153 4004 23

OD: 12 1/2 x 9 1/2



**PRIORITY ★ MAIL ★**   UNITED STATES POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
712 H Street NE
Atlanta, Georgia
Washington DC

TO:
Clerk of Court
Filing
2217 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303.
3307

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.