FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 2 5 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MAURA O'NEILL,<br><br>       Plaintiff,<br><br>v.<br><br>NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,<br><br>       Defendants. | CIVIL ACTION FILE NO.<br>1:22-cv-00011-SEG |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

August 17, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 4

LEGAL ARGUMENT ......................................................................... 5

  POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS
  HER HEALTHCARE INFORMATION. ........................................................ 5

  POINT II:  DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL
  INFORMATION FROM PLAINTIFF............................................................ 10

  POINT III:  DEFENDANTS LIED TO O'NEILL............................................ 14

  POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE
  CRIMINAL ACTS. ......................................................................... 16

  POINT V:  DEFENDANTS WERE AIDED AND ABBETTED IN
  COMMITTING FRAUD BY SEX TRAFFICKERS....................................... 19

  POINT VI:  DEFENDANTS' MEDICAL RECORDS ARE BASED ON
  TEXTBOOK WHISTLEBLOWER RETALIATION. ....................................... 21

CONCLUSION................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*135 Bowery LLC v. Beach Channel Shoppers Mart Co., LLC,*
159 A.D.3d 457, 71 N.Y.S.3d 76 (1st Dep't 2018) ........................................ 20

*Baldeo v. Majeed,*
150 A.D.3d 942, 55 N.Y.S.3d 340 (2d Dep't 2017) ........................................ 14

*Carroll v. Piedmont Medical Care Corporation,*
352 Ga. App. 348, 834 S.E.2d 868 (2019)........................................ 11

*Cathell v. Brown,*
8 Vet. App. 539 (1996) ........................................ 16

*Charter Peachford Behavioral Health System v. Kohout,*
233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998)........................................ 12

*Coleman v. Donahoe,*
667 F.3d 835 (7th Cir. 2012) ........................................ 23

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.,*
402 F.3d 1092, 1107 (11th Cir. 2005) ........................................ 15

*D'Amato v. Five Star Reporting, Inc.,*
80 F. Supp. 3d 395, 420 (E.D.N.Y. 2015) ........................................ 21

*Elbar, Inc. v. Claussen*
 (1989, Tex App Dallas) 774 SW2d 45........................................ 16

*Esmilla v. Cosmopolitan Club,*
936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013)........................................ 22

*Fidelity Nat. Title Ins. Co. v. N.Y. Land Title Agency LLC,*
121 A.D.3d 401, 994 N.Y.S.2d 76 (1st Dep't 2014) ........................................ 13

*Gaines Serv. Leasing Corp. v. Carmel Plastics Corp.*,
105 Misc.2d 694, 432 N.Y.S.2d 760 (Civ.Ct., Kings County, 1980) ............. 13

*Gansett One, LLC v. Husch Blackwell, LLP*,
168 A.D.3d 579, 93 N.Y.S.3d 276 (1st Dep't 2019) ...................................... 20

*Goldin v. TAG Virgin Islands*, Inc.,
149 A.D.3d 467, 53 N.Y.S.3d 258 (1st Dep't 2017) ...................................... 20

*Gordon v. Bialystoker Center and Bikur Cholim, Inc.*,
45 N.Y.2d 692, 412 N.Y.S.2d 593, 597, 385 N.E.2d 285 (1978) ................... 15

*Higueros v. N.Y. State Catholic Health Plan, Inc.*,
526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) ................................................... 21

*Homapour v. Harounian*,
182 A.D.3d 426, 122 N.Y.S.3d 282 (1st Dep't 2020) ................................... 20

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*,
269 Ga. 844, 507 S.E.2d 411 (1998) .............................................................. 11

*Jimenez v. Department of Professional Regulation, Board of Medicine*,
556 So 2d 1219, 15 FLW 480 (1990, Fla App D4) ....................................... 17

*Juman v. Louise Wise Services*,
254 A.D.2d 72, 678 N.Y.S.2d 611 (1st Dept.1998) ....................................... 13

*Kaufman v. Cohen*,
307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................... 20

*Langager v. Lake Havasu Community Hospital*,
799 F2d 1354, 135 (1986, CA9 Ariz) ............................................................ 17

*M&T Bank Corp. v. McGraw Hill Companies, Inc.*,
126 A.D.3d 1414, 5 N.Y.S.3d 783 (4th Dep't 2015) ..................................... 14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........................................................................................ 22

iii

*Merck & Co., Inc. v. Reynolds,* 559 U.S. 633, 644-48,
130 S.Ct. 1784, 176 L.Ed.2d 582 (2010) ......................................................... 25

*Nimely v. City of New York,*
414 F.3d 381, 396-397 (2d Cir. 2005) ............................................................. 15

*Paris v. Michael Kreitz, Jr.,*
 75 NC App 365, 331 SE2d 234 P.A., (1985) .................................................. 16

*Pharr v. Cortese,*
147 Misc 2d 1078, 559 NYS2d 780 (1990) ..................................................... 18

*Pramer S.C.A. v. Abaplus Intern. Corp.,*
76 A.D.3d 89, 907 N.Y.S.2d 154 (1st Dep't 2010) ........................................ 13

*Quattlebaum v. Cowart,*
182 Ga. App. 473, 356 S.E.2d 91 (1987) ......................................................... 11

*Rhodes v. Illinois Dep't of Transp.,*
359 F.3d 498, 504 (7th Cir. 2004) .................................................................... 24

*Starr Indemnity & Liability Company v. Global Warranty Group, LLC,*
165 A.D.3d 1308, 87 N.Y.S.3d 635 (2d Dep't 2018) ..................................... 20

*Thor v. Boska,*
38 Cal App 3d 558, 113 Cal Rptr 296 (1974, 2nd Dist) ................................. 18

*United States v. Frazier,*
387 F.3d 1244, 1261 (11th Cir. 2004) ............................................................. 15

*Velazquez v. Decaudin,*
49 A.D.3d 712, 854 N.Y.S.2d 163 (2d Dep't 2008) ....................................... 20

*Viterbo v. Dow Chemical Co.,*
826 F.2d 420, 424 (5th Cir. 1987) ................................................................... 15

*Workers' Compensation Bd. v. Wang,*
147 A.D.3d 104, 46 N.Y.S.3d 230 (3d Dep't 2017) ....................................... 20

iv

*Yablon v. Stern,*
161 A.D.3d 594, 77 N.Y.S.3d 43 (1st Dep't 2018) ........................................ 15

**_Federal Rules_**
Rule 702 ................................................................................................. 3, 15

**_Federal Statutes_**
42 U.S.C. § 1395dd ...................................................................................... 4
42 USCA § 1395dd ....................................................................................... 4
45 CFR § 160.103 ......................................................................................... 7
45 CFR § 164.414 ....................................................................................... 10
45 CFR § 164.501 ............................................................................. 7, 10, 12
45 CFR § 164.503 ......................................................................................... 8
45 CFR § 164.524 ...................................................................................... 9, 5
45 CFR 164.501 ...................................................................................... 9, 5, 6
45 CFR Part 160 and Part 164, Subparts A and E ............................................ 9

**_New York Statutes_**
PHL § 18(2) ............................................................................................. 9, 10
New York Labor Law § 215(1)(a) ................................................................. 21

Maura O'Neill ("Plaintiff") submits this memorandum of law in support of her Motion to Compel.

## PRELIMINARY STATEMENT

On January 4, 2022, Plaintiff filed a complaint alleging several hospitals, where she went to have rape kits performed from 2017 to 2018, including NYU Langone Medical Center ("NYU Langone"), Grady Health System ("Grady"), Mount Sinai Beth Israel Hospital ("Beth Israel"), New York-Presbyterian Queens, ("NYP-Queens"), Lenox Hill Hospital ("Lenox Hill"), Northside Hospital Forsyth ("Northside"), together ("Defendants"), commit fraud and violated RICO statutes. (Docket No. 1).  On June 6, 2022 Plaintiff started sending letters to Defendants requesting basic information.  Despite the fact that O'Neill's requests for information are incredibly basic, not a single one of the Defendants fully complied with HIPAA laws and responded to O'Neill's request.  Glaringly, New York's Public Health Law § 18(2) required the New York Defendants to respond within ten days.  Likewise the time for the Georgia Defendants to respond was thirty days. Yet, not a single hospital Defendant complied with applicable laws.

The Health Insurance Portability and Accountability Act ("HIPAA") gives an individual the right to access information about her healthcare, and requires healthcare organizations to disclose all records it used to make healthcare

1

decisions. What is obvious from reading Plaintiff's medical records from Defendants is that the records are based on information that is not contained in the medical records, but was provided by third parties. While Defendants were required by law to disclose to O'Neill that they had conversations with third parties about her, the hospitals instead covered-up the fact that they received information from third parties, had conflicts of interest, and made decisions about O'Neill based on information illicitly obtained from others.

It is illegal, and by definition black letter fraud, for any healthcare provider to make diagnosis and treatment decisions and not disclose to the person the basis of said diagnosis and treatment decision. Thus, Plaintiff's medical records from Defendants are fraudulent because the records fail to disclose that healthcare decisions were based on false and slanderous information provided without Plaintiff's knowledge or consent.

Because of a physician's superior medical knowledge and his relationship with a patient, the doctrine of constructive fraud applies when a healthcare provider makes inaccurate statements to his patient concerning treatment or diagnosis. Also inherent in the physician-patient relationship is an affirmative duty for the physician to disclose all material facts to the patient. A physician's or other healthcare provider's failure to disclose material information concerning a patient's

2

condition or treatment constitutes fraudulent concealment.  In addition, when a physician has knowledge of a material fact concerning the patient's physical condition, the fiduciary relationship renders the physician's silence fraudulent.

At this point, the only support for baseless opinions contained in O'Neill's medical records are the providers own personal judgments.  Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so.  Yet, as counsel to Defendants is surely well aware, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible as evidence.  Rather, *Daubert* and *Kumho Tire Co.*, as well as Rule 702, require that expert opinion be connected to existing data by something more than dubious inferences that amount to an expert's assertion that 'it is so because I say it is so."  Thus, O'Neill's medical records are fraudulent on their face because they do not contain the information provided by third parties without O'Neill's knowledge or consent that provide the actual basis for the subjective opinions that are not supported by facts or data contained in O'Neill's medical records.

In addition, providers at the Defendants' organizations failed to perform even the most basic of tasks.  It is clear that rather than provide objective medical care to O'Neill, Defendants acted as agents for the Wilder team and took a series

of steps to harm O'Neill.  Continuing to withhold information from O'Neill is simply extending the destructive and abusive pattern to which O'Neill has been subjected.

*Falsus in uno, falsus in omnibus* is a Latin phrase meaning "false in one thing, false in everything."  It is the legal principle that holds a witness who lied about any material fact must be disbelieved as to all facts.  The presumption that the witness will declare the truth ceases as soon as it manifestly appears that he is capable of lying because faith in a witness cannot be partial or fractional, particularly if the witness made willful and corrupt misrepresentations.  Such is the case here.  Given the fiduciary obligations of healthcare professionals, Defendants actions are particularly sick, and Defendants repeated failure to provide basic information to O'Neill is simply another reflection of a pattern of behavior in which Defendants have broken laws and rules to abuse O'Neill.

## STATEMENT OF FACTS

The Statement of Facts is contained in the accompanying Affidavit of Maura O'Neill dated August 17, 2022.  For east of review, the same information will not be repeated herein.

4

**LEGAL ARGUMENT**

**POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS HER HEALTHCARE INFORMATION.**

HIPAA gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose all records it used to make healthcare decisions.  45 CFR § 164.501.  On June 6, 2022 Plaintiff started sending letters to hospitals requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

Despite the fact that the two requests for information are incredibly basic, not a single one of the Defendants fully complied with HIPAA laws and responded to O'Neill's request.

While O'Neill has an absolute right under HIPAA to view information used to make decisions about her, the hospital Defendants have made a concerted effort to cover-up the fact that the Wilder team made phone calls about O'Neill, and

Plaintiff's healthcare was dictated by the Wilder team.  For example, in a letter

sent on July 5, 2022, NYU Langone stated,

> Please know that the designated record set is limited to records that are used
> in whole or in part by or for NYU Langone to make decisions about
> individuals. This information does not include the names of all individuals
> that have provided information about you and/or their conversations.

Thus, NYU Langone buried the details of conversations it had with other

individuals, and claimed this information was not part of the designated record set.

A "designated record set" is defined in 45 CFR 164.501 as a group of

records maintained by or for a covered entity that comprises the:

- Medical records and billing records about individuals maintained by or for
  a covered health care provider;
- Enrollment, payment, claims adjudication, and case or medical
  management record systems maintained by or for a health plan; or
- Other records that are used, in whole or in part, by or for the covered
  entity to make decisions about individuals.

According to the Department of Health and Human Services ("HHS"), this last

category includes records that are used to make decisions about any individuals,

whether or not the records have been used to make a decision about the particular

individual requesting access.[12]

---

[12]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

HHS also defines the term "record" as any item, collection, or grouping of information that includes PHI and is maintained, collected, used, or disseminated by or for a covered entity.[13]  PHI is protected health information and is defined as individually identifiable health information…that is: (1) transmitted by electronic media; (2) maintained in electronic media; or (3) transmitted or maintained in any other form or medium. 45 CFR § 160.103.

Individually identifiable health information is "information that is a subset of health information, including demographic information collected from an individual, and:

(1)  Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2)  Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 CFR § 160.103.

As shown through the previous definitions, under HIPAA, O'Neill has an absolute right to any information about any decision made about her including the names of any individuals that provided information to Defendants about O'Neill and the conversations Defendants had with third parties about O'Neill.

---

[13]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

7

It appears NYU Langone is attempting to claim that the additional records it possesses, but failed to share with O'Neill were, according to NYU Langone, "not ..utilized to provide [Plaintiff] with treatment."  However, this is clearly a lie.  Any conversations NYU Langone had with any third party about O'Neill when she was in NYU Langone's ER for a rape exam were about the fact O'Neill stated she was drugged and raped.  Thus, the discussions NYU Langone had with third parties were about the "condition" of O'Neill, and "identified" O'Neill specifically. Thus, there is no question that the names of individuals NYU Langone spoke with and any information it received from those conversations is by definition information O'Neill is entitled to see.  45 CFR § 164.503.

Clearly, NYU Langone's decision to hide information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from NYU Langone that the medical record is based on information that is not contained in O'Neill's medical record.  In fact, there is no factual support for numerous statements written in O'Neill's medical record, and it is clear that NYU Langone's basis for several statements in O'Neill's medical record is due to conversations NYU Langone had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to

false information given to NYU Langone about O'Neill behind her back. Thus,

NYU Langone's actions violate several other statutes as described below.

### *HIPAA Privacy Laws*

Speaking to anyone without O'Neill's knowledge or consent violates

HIPAA's privacy laws. *45 CFR Part 160 and Part 164, Subparts A and E.* NYU

Langone stated it did not have a Power of Attorney on file. While O'Neill sent a

letter to NYU Langone on June 10, 2022, specifically asking NYU Langone to

confirm it does not have, and has never had, any authorization on file that would

allow any person or entity to speak to any person at NYU Langone about O'Neill

or receive any information about her medical records or have access to information

about her medical care, NYU Langone has refused to respond in full to this request

even though its deadline for providing a response expired on June 20, 2022 under

New York's Public Health Law § 18(2).

NYU Langone has not provided O'Neill with a copy of any authorization it

has on file to speak to anyone about her. 45 CFR Subpart E concerns the Privacy

of Individually Identifiable Health Information and states, "In the event of a use or

disclosure in violation of subpart E, the covered entity or business associate, as

applicable, shall have the burden of demonstrating that all notifications were made

9

as required by this subpart or that the use or disclosure did not constitute a breach, as defined at § 164.402." 45 CFR § 164.414.

Given NYU Langone did not receive any authorization to speak to any third party about O'Neill, NYU Langone violated HIPAA statutes since it will not be able to prove that it had authorization to speak to anyone about O'Neill.

Given NYU Langone's medical record and treatment decisions make clear NYU Langone relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals NYU Langone spoke to about O'Neill, and the details of NYU Langone's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501 and must be open for inspection under Public Health Law § 18(2). Since NYU Langone is refusing to disclose its conflicts of interests, it is clear NYU Langone abused O'Neill and destroyed a rape kit to aid and abet Wilder.

## POINT II: DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL INFORMATION FROM PLAINTIFF.

### A. Georgia Law

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician. Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that defendant make some actual misrepresentation. Within the

10

confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

The Court of Appeals found evidence of intent to conceal in the case of *Quattlebaum v. Cowart*. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987). In that case, the defendant did not advise his patient that defendant had failed to connect the left hepatic duct to the small intestine. In furtherance of the fraud, the physician, prepared misleading and incorrect medical records on this point. The court found a reasonable inference of a knowing concealment and cover-up, not just a mere misstatement. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987).

11

Given Grady's medical record and treatment decisions make clear Grady relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals Grady spoke to about O'Neill, and the details of Grady's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501. Since Grady is refusing to disclose its conflicts of interests, it is clear Grady abused O'Neill, and refused to put a urine sample in O'Neill's rape kit to aid and abet Wilder.

A patient is entitled to trust her physician and rely on what he tells the patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, Grady's decision to hide information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from Grady that the medical record is based on information that is not contained in O'Neill's medical record. In fact, there is no factual support for numerous statements written in O'Neill's medical record, and it is clear that Grady's basis for several statements in O'Neill's medical record is due to conversations Grady had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to Grady about O'Neill behind her back.

12

**B. New York Law**

Under New York law one may not take advantage of another's ignorance.

*Brass v. American Film Technologies*, Inc., 987 F.2d 142, 151 (2d Cir.1993);

*Gaines Serv. Leasing Corp. v. Carmel Plastics Corp.*, 105 Misc.2d 694, 432

N.Y.S.2d 760 (Civ.Ct., Kings County, 1980).  Active concealment implies

purposeful misrepresentation, *i.e.*, the defendant's affirmative and knowing attempt

to hide something.  A duty to speak arises when one party possesses superior

knowledge not readily available to another and the party knows that the other is

acting on the basis of mistaken knowledge.  *Fidelity Nat. Title Ins. Co. v. N.Y.*

*Land Title Agency LLC*, 121 A.D.3d 401, 994 N.Y.S.2d 76 (1st Dep't 2014).  A

duty may also arise when the plaintiff is totally dependent on the defendant for the

relevant facts, and the defendant has made a misleading partial disclosure.  *Juman*

*v. Louise Wise Services*, 254 A.D.2d 72, 678 N.Y.S.2d 611 (1st Dept.1998).

Here, the four New York Defendants have sought to take advantage of what

they perceived to be O'Neill's ignorance.  In addition, they have misrepresented

facts to harm Plaintiff.  For example, NYU Langone aided and abetted the NYPD

in the destruction of a rape kit, and spoke to the NYPD without authorization.

Beth Israel spoke to the NYPD without authorization, aided the NYPD in

13

destroying a rape kit that showed acetone, a component of chloroform, and failed to disclose the source of information from the Wilder team in its medical records. A Lenox Hill physician informed Plaintiff she was "delusional" for believing she could "take on" Wilder and DB, and lied repeatedly in Plaintiff's medical record, while, at the same time, other staff at Lenox Hill abused and bullied O'Neill. Apparently, Lenox Hill believes that if someone does not want someone to drug her to facilitate gang rape in her own home, that constitutes "taking" someone on.

A fraud claim based on an expression of opinion is actionable if the speaker was subjectively aware that there was no reasonable basis for the opinion. *M&T Bank Corp. v. McGraw Hill Companies, Inc.*, 126 A.D.3d 1414, 5 N.Y.S.3d 783 (4th Dep't 2015). Despite that fact, NYP-Queens explicitly stated its provider had "opinions," yet offered no support for those opinions. In addition, NYP-Queens refused to correct knowingly fraudulent records, failed to comply with basic HIPAA laws, and lied about its contact with the Wilder team. Thus, it is clear the NYP-Queens medical record is fraudulent, and the subjective opinions stated in the medical record constitute fraud.

## POINT III:  DEFENDANTS LIED TO O'NEILL.

Fraudulent representations may be expressed by conduct and/or words. *Baldeo v. Majeed*, 150 A.D.3d 942, 55 N.Y.S.3d 340 (2d Dep't 2017); *Yablon v.*

14

*Stern*, 161 A.D.3d 594, 77 N.Y.S.3d 43 (1st Dep't 2018).  A misrepresentation,

particularly in fiduciary or confidential relationships, need not be express, but may

be implied from circumstances.  *Gordon v. Bialystoker Center and Bikur Cholim,*

*Inc.*, 45 N.Y.2d 692, 412 N.Y.S.2d 593, 597, 385 N.E.2d 285 (1978).

      The only support for the baseless opinions in O'Neill's medical records are

the providers own personal judgment.  Thus, O'Neill's medical records from rape

exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so

merely because he says that it is so.  Yet, without more than credentials and a

subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*

*v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).  "Reliability cannot be

established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d

1244, 1261 (11th Cir. 2004).  "[W]hen an expert opinion is based on data, a

methodology, or studies that are simply inadequate to support the conclusions

reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005).

"'Presenting a summary of a proffered expert's testimony in the form of conclusory

statements devoid of factual or analytical support is simply not enough.' " *Cook ex*

*rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir.

2005). Obviously, the same principles hold in cases involving medical decisions,

and decisions are not valid if they are based there is only unsubstantiated option to support the decision. *Cathell v. Brown*, 8 Vet. App. 539 (1996).

It is clear when reading O'Neill's medical records from Defendants that her medical records are based on information that is not contained in her medical records. In fact, there is no factual basis or support for numerous statements written in Defendants' medical records, and it is clear Defendants' support for several statements in Plaintiff's medical records is due to conversations Defendants had with various third parties about O'Neill without her knowledge or consent.

## POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE CRIMINAL ACTS.

The alteration and / or falsification of medical records is a crime in most states, and is usually dealt with harshly. *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45. Alteration of medical records is usually treated as a misdemeanor, but can be a felony if done intentionally and willfully. *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45.

Alteration of a patient's record by a doctor for the purpose of defeating an actual or potential claim "is reprehensible and evidences a moral deficiency and disregard for the rights of others that [courts] regard as odious and repugnant." *Paris v. Michael Kreitz, Jr.*, 75 NC App 365, 331 SE2d 234 P.A., (1985). In most

16

cases the act of requesting copies of a client's hospital records by an attorney investigating a claim triggers a health care provider's apparent need to alter medical records to affect the outcome of the investigation. *Langager v. Lake Havasu Community Hospital*, 799 F2d 1354, 135 (1986, CA9 Ariz).

Altering or modifying the medical record of any person by a health care professional, with fraudulent intent, constitutes unprofessional conduct and subjects the individual to disciplinary action and civil penalties. *Jimenez v. Department of Professional Regulation, Board of Medicine*, 556 So 2d 1219, 15 FLW 480 (1990, Fla App D4). In the case of *Jimenez v. Department of Professional Regulation, Board of Medicine*, a physician, after being sued by a deceased patient's survivor, made additions to his patient's medical records that purported to show that he had advised the patient to undergo a stress test and angiogram but that the patient refused to do so. *Id.* After finding the physician had falsely and fraudulently altered the patient's medical records in order to coverup the fact that he had failed to advise the patient to undergo the stress test and angiogram, a hearing officer of the state board of medicine ordered that the doctor be put on probation for one year and assessed a $5,000 fine. *Id.*

A strong inference of *consciousness of guilt* arises where a health care provider is unable to produce the patient's original clinical record concerning the

17

patient's treatment. *Thor v. Boska,* 38 Cal App 3d 558, 113 Cal Rptr 296 (1974, 2nd Dist).   Similarly, if the jury is satisfied that the health care provider intentionally altered a patient's records, it can infer that the purpose in falsifying the documents was fraudulent, and the jury can further infer that accurate medical records would have been unfavorable to the provider's interests. *Pharr v. Cortese,* 147 Misc 2d 1078, 559 NYS2d 780 (1990).   If the alteration of the plaintiff's medical records is deemed sufficiently fraudulent, oppressive or malicious, that fact may lead to an award of punitive damages against the health care provider. *Gage, Alteration, Falsification, and Fabrication of Records in Malpractice Actions, 1981 Med Trial Tech Q, 486.*

O'Neill's medical records were clearly forged after she left Defendants' premises.   For example, a medical entry from a physician assistant at NYP-Queens stated that a "gentleman" had "known access" to O'Neill's apartment.   Yet, O'Neill recorded her conversation with said physician assistant, and O'Neill never said Wilder or any other man had "known access to her place of living."

In August of 2021, O'Neill learned from the corrupt counsel for the City of New York that O'Neill was not sexually harassed by Wilder because he broke into the apartment she lived in while she worked at DB and took a photo of himself.

18

Given Wilder's attempt to claim he had "known access" to O'Neill's apartments when she worked at DB and after he began his rape rampage in 2017, the addition of "known access" to O'Neill's apartment in her medical record at NYP-Queens was clearly not an innocent mistake.

O'Neill was alarmed by the entry that a "gentleman" had "known access" to her apartment, and went back to NYP-Queens to speak to the physician assistant. He was a kind, Orthodox Jewish man who assured Plaintiff he did not write what was contained in her medical record. O'Neill believed him, and believes the Wilder team had her medical records altered after she left NYP-Queens to delete any information it did not like, and instead insert Wilder's story and pretend O'Neill validated Wilder's ridiculous claim he had "known access" to O'Neill's apartment. O'Neill sent a request to NYP-Queens with a recording asking for the reference that a "gentlemen" had "known access" to her apartment be deleted from her medical record. On this particular matter, NYP-Queens complied, although NYP-Queens failed to respond to Medicare requirements and document the changes it made to Plaintiff's medical record.

### POINT V:  DEFENDANTS WERE AIDED AND ABBETTED IN COMMITTING FRAUD BY SEX TRAFFICKERS.

Parties who aid and abet a breach of fiduciary duty are liable for the breach as well, even if they had no independent fiduciary obligation to the injured party, if the alleged aider and abettor knew or should have known that they were rendering substantial assistance to the fiduciary in the course of effecting the alleged breach. *Velazquez v. Decaudin*, 49 A.D.3d 712, 854 N.Y.S.2d 163 (2d Dep't 2008). A plaintiff may recover damages for aiding and abetting a breach of fiduciary duty if there is proof that a fiduciary duty was owed to the plaintiff, the duty was breached, that the defendant knowingly induced or participated in the breach, and that the plaintiff was damaged as a result of the breach. *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003).

A knowing participation in a breach occurs when the defendant provides substantial assistance to the primary violator. *Homapour v. Harounian*, 182 A.D.3d 426, 122 N.Y.S.3d 282 (1st Dep't 2020). To state a claim for aiding and abetting fraud, the plaintiff must allege the existence of the underlying fraud, that the defendant had actual knowledge of the fraud and provided substantial assistance in its commission. *Gansett One, LLC v. Husch Blackwell, LLP*, 168 A.D.3d 579, 93 N.Y.S.3d 276 (1st Dep't 2019). Substantial assistance supporting the breach occurs when a defendant affirmatively assists, helps to conceal or fails

20

to act when required to do so, thereby enabling the breach.  Here, there is no doubt

Wilder and his attorney aided and abetted fraud and commit criminal acts.

### POINT VI:  DEFENDANTS' MEDICAL RECORDS ARE BASED ON TEXTBOOK WHISTLEBLOWER RETALIATION.

Under New York Labor Law § 215(1)(a), "[n]o employer or his or her agent,

or the officer or agent of any corporation, partnership, or limited liability company,

or any other person, shall discharge, threaten, penalize, or in any other manner

discriminate or retaliate against any employee ... because such employee has made

a complaint to his or her employer ... or any other person, that the employer has

engaged in conduct that the employee, reasonably...believes violates any provision

of this chapter...."  To state a claim under New York Labor Law § 215(1)(a), "a

plaintiff must adequately plead that while employed by the defendant, he or she

made a complaint about the employer's violation of New York Labor Law and was

terminated or otherwise penalized, discriminated against, or subjected to an

adverse employment action as a result." *Higueros v. N.Y. State Catholic Health*

*Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007).  "An adverse employment

action must affect[ ] the terms, privileges, duration, or conditions of the plaintiff's

employment." *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 420

(E.D.N.Y. 2015).  "Once the plaintiff establishes *a prima facie* case of retaliation

21

under Section 215, the burden shifts to the defendant to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions." *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013).

Here, as described in the accompanying Affidavit dated August 17, 2022, the Wilder and DB teams' latest claim O'Neill is mentally ill arises from O'Neill's work experience at Merck & Co, Inc. ("Merck") and on the Vioxx team. However, it is clear Plaintiff was subjected to adverse employment actions because she refused to lie to further the Vioxx fraud, and her decision to resign and apply to business school following the removal of Blois and promotion of Goldman on Merck's Regulatory Affairs team constituted constructive discharge.

Employers invariably claim the reasons they took retaliatory actions were not retaliatory and offer pretext. Yet, in O'Neill's case, it is clear the reasons offered by Foti, Grey, Jennings, Mackenzie and Monitor management for the adverse employment actions against O'Neill constitute blatant pretext, and a fraudulent attempt to cover-up for Monitor's retaliatory conduct and desire to bill Merck $50 million in consulting fees in 2002.

Courts have found a claim of retaliation can be proven either by offering direct or circumstantial evidence of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff can often get to a jury if there is

evidence (1) the reason offered by the employer is a lie and a cover up for retaliation, (2) others who committed the same infraction, but had not engaged in protected activity, did not suffer the same adverse action, or (3) the employer advanced inconsistent reasons to justify the adverse employment action. *Coleman v. Donahoe,* 667 F.3d 835 (7th Cir. 2012).

Here, as described in the accompanying affidavit, it is clear Monitor personnel lied, advanced inconsistent reasons to justify adverse employment actions, and did not subject others who had not engaged in a protected activity to the same treatment O'Neill endured. Unfortunately, it is also clear Blois, Winn, and O'Neill were subjected to adverse employment actions for showing integrity while Merck made conscious and repeated decisions to retaliate and purposefully and materially harm people that made negative comments about Vioxx as shown through numerous investigations, litigation, and the large number of high profile people Merck purposely sought to harm because they presented honest views about Vioxx as described in the Affidavit dated August 17, 2022.

O'Neill had an absolute right not to be lied to and about by employees at Monitor while Plaintiff was an employee at Monitor. Yet, as described in the accompanying Affidavit dated August 17, 2022, Monitor employees lied to and about O'Neill while she was employed there in order to aid and abet those

23

participating in the Vioxx fraud. In particular, the junior members of O'Neill's team while she worked in the R&D division at Merck, including those who sent her flowers for all she had done for them following a brutal three weeks of work after a lay-off as shown in Exhibit A, and wrote glowing performance reviews for O'Neill as shown in Exhibit B, were asked to change stories and lie about O'Neill to ensure Monitor was able to bill Merck $50 million in consulting fees in 2002.

Courts weigh several factors in deciding whether plaintiff has offered enough indirect evidence of pretext to allow the question of causal connection to go to the jury including:

1. Suspicious timing or temporal proximity to plaintiff's complaint of unlawful action;
2. Ambiguous statements by the employer's decision makers;
3. Differential treatment of similarly-situated employees; and
4. An employer offering a demonstrably false reason for an adverse employment action. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

Here, there is no question the timing of Foti's retaliatory performance review, and the fact Monitor asked others to lie about O'Neill after her constructive discharge clearly show suspicious timing, proving the adverse employment actions O'Neill encountered were due to the Vioxx fraud and Monitors desire to bill Merck $50 million in 2002. Thus, the Wilder and DB teams' fraudulent claim O'Neill suffers from mental illness is absurd. Obviously,

O'Neill encountered an extreme set of fraudulent circumstances that would be difficult for any person with integrity to navigate given the willful attempt of her fellow Monitor employees to enrich themselves at the expense of innocent people, many of whom suffered greatly and died as a result.   The documentary evidence clearly shows O'Neill was not mentally ill.  Rather, O'Neill acted with a high degree of integrity in an environment the Supreme Court of the United States subsequently determined merited claims of fraud.  To claim acting with integrity in the face of evil constitutes mental illness and disability, is truly sick and disgusting. *Merck & Co., Inc. v. Reynolds,* 559 U.S. 633, 644-48, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny the motion and grant such other further relief the Court deems equitable.

Dated:  Alexandria, VA
August 17, 2022

Respectfully submitted,

BY: Maura O'Neill

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **MAURA O'NEILL,**<br><br>        Plaintiff,<br>    v.<br><br>**NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**<br><br>        Defendants. | **CIVIL ACTION FILE NO.**<br>**1:22-cv-00011-SEG** |

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM OF LAW AND MOTION TO COMPEL** were prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

26

Dated:  Alexandria, VA
August 17, 2022

Respectfully submitted,


BY: Maura O'Neill

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MAURA O'NEILL,<br><br>      Plaintiff,<br>  v.<br><br>NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,<br><br>      Defendants. | CIVIL ACTION FILE NO.<br>1:22-cv-00011-SEG |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing and mailing a copy of the foregoing to each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail:  rowlen@lbbslaw.com
E-Mail:  chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com


in accordance with Rule 5(b)(2)(E).

Dated: Alexandria, VA
August 17, 2022

Respectfully submitted,

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com