**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 2 9 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**MAURA O'NEILL,**

      Plaintiff,

   v.

**NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**

      Defendants.

**CIVIL ACTION FILE NO.**
**1:22-cv-00011-SEG**

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT**

---

August 26, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Maura O'Neill ("Plaintiff") submits this memorandum of law in opposition to the Motion to Set Aside the Clerk's Entry of Default (Docket No. 51) filed by Northside Hospital, Inc. ("Northside").

## PRELIMINARY STATEMENT

Relief from a default entry may be granted under Federal Rule of Civil Procedure ("Rule") 55(c) for "good cause."  Good cause requires Northside to provide an explanation for its default or provide reasons why vacation of the default entry serves the interests of justice.  Here, Northside failed to meet that burden.  Rather, as part of its Motion to Set Aside the Clerk's Entry of Default, Northside filed a Memorandum of Law in Support (the "Memo") (Docket No. 51-1) and an affidavit from Cheryl Pruitt (Docket No. 51-2).  In the Memo, Defendant falsely claimed Plaintiff's summons and complaint were not properly served, and Northside was never served because the process server hired by Plaintiff, Jason Garmon (GA CPS #356), served Cheryl Pruitt, a secretary at Northside.

Serving a secretary in the administration department of a hospital is not in and of itself improper service.  Rather, the courts have held, it is not necessary that the employee served be an officer or manager.  Instead, all that is necessary is that the employee served has the authority to accept service and ability to inform her corporate principal that process has been served.

1

Plaintiff will file a motion for a hearing and subpoenas to subpoena witnesses to prove that not only was Northside served on April 4, 2022 in compliance with applicable laws, but Northside has deliberately and willfully embarked on a pattern of behavior to deceive both Plaintiff and the Court. Along with that motion, Plaintiff will file an affidavit from Jason Garmon, the process server hired by Plaintiff to serve Northside.

On August 26, 2022, in a conversation with Plaintiff, Garmon stated that he distinctly remembered Pruitt informing him she was authorized to accept service on behalf of Northside, and Northside was properly served in compliance with applicable laws. Garmon is also willing to testify at a hearing that Pruitt stated she had authority to accept the summons, complaint, and civil cover sheet to initiate this action, and Northside was properly served.

On the other hand, Pruitt's affidavit contained questionable statements, including that she did not "recall," being served with a 60+ page complaint. Clearly, 60+ page complaints do not walk away on their own. Garmon arrived at Northside a little after 8:30 AM on April 4, 2022 and had all day to serve the initiating papers. Garmon is certified by the state of Georgia to serve process. It is not believable that Garmon would not know to ask if Pruitt could accept service, nor is it believable that a 60+ complaint simply walked away on its own. Rather,

2

Garmon informed Plaintiff on August 26, 2022 that he explicitly asked Pruitt if she was authorized to accept service, as he always does when he is serving businesses, and Pruitt stated she was authorized to accept process. Thus, while according to Pruitt's own affidavit she "cannot recall" receiving a copy of the Summons, Complaint and Civil Cover Sheet, Garmon distinctly remembers meeting Pruitt, and Pruitt informing him she was authorized to accept service on behalf of Northside.

On August 17, 2022, Plaintiff served a motion to compel each of the hospital Defendants to produce information The Health Insurance Portability and Accountability Act ("HIPAA") required Defendants to produce, but which each Defendant, including Northside, failed to produce (Docket No. 58). Not only is it not typical for hospitals to violate HIPAA laws and fail to provide the information O'Neill requested as described in the Motion to Compel, but hospitals typically provide the information O'Neill requested within only a few days because failing to do so warrants corrective action from the Department of Health and Human Services ("DHHS").

HIPAA statutes stated Northside had 30 days to respond to O'Neill's June 2022 requests for information, however, Northside violated HIPAA statutes weeks ago, in coordination and collusion with the other hospital Defendants in this action.

3

Northside knew that its failure to comply with HIPAA warranted action from DHHS, but Northside broke the law with impunity anyway because Northside knew there would be no consequences because the Wilder team would abuse power to protect Northside.

It is clear the reason Northside violated HIPAA is the same reason all the other Defendants violated HIPAA. Among other things, since all Defendants face adverse action from DHHS as a result of their actions, all Defendants have failed to follow the law because they knew they could get away with doing so. Clearly, actions such as these in which healthcare providers knowingly and willfully break the law are not the norm. However, more disturbingly, the clear reason Northside and the other defendants broke the law is because they ***KNEW*** there would be no consequences for them because each Defendant, including Northside, had been assured DHHS would not act against them because DB and the Wilder team would abuse power to protect them.

Given Northside's willful breach of HIPAA statutes, it is clear Northside has been colluding with the other hospitals to deprive O'Neill of her rights since at least June of 2022. It is simply not believable that during the course of the past several weeks in which Northside has been colluding to violate HIPAA to harm O'Neill, that Northside would not have been told that O'Neill filed an affidavit

4

with the court claiming Northside was served with initiating papers for this action (Docket No. 15), and O'Neill filed a motion for the clerk to enter a default judgment against Northside (Docket No 38).  Since Northside clearly knew about this action for the last several months, but did not appear until August, it is clear that Northside's failure to appear was willful.  It is also clear Northside believed, and still believes, it is entitled to lie to O'Neill and the Court.

Given Defendant's default in failing to answer Plaintiff's complaint was willful, this court can and should refuse to set aside entry of default because Northside has not meet its burden of showing good cause given there is evidence demonstrating Defendant had actual knowledge of Plaintiff's Complaint (Docket No. 1), yet, Northside clearly chose not to appear.

Courts have recognized that opening a default may prejudice a litigant in a number of ways.  One such way is that by setting aside the default the court could open the door for greater opportunity for fraud and collusion.  Here, given Northside's clear collusion and prior fraudulent activities, there is no question setting aside the default judgement will create substantial prejudice for Plaintiff and additional burdens that impair Plaintiff's ability to seek justice.

## STATEMENT OF FACTS

The facts relevant to this motion can be found in the affidavit of the process server Plaintiff hired to serve Northside, Jason Garmon (GA CPS #356) (the "Garmon Affidavit"). Plaintiff will file a motion for a hearing and subpoenas in the coming days. Garmon's Affidavit's will be filed as part of that motion.

## LEGAL ARGUMENT

### POINT I:  DEFENDANT WAS PRPOERLY SERVED.

Defendant falsely claimed in its Memo that Plaintiff's summons and complaint were not properly served because the process server served a secretary at Northside. However, serving a secretary in administration does not constitute improper service. Rather, the courts have held, "[i]t is not necessary that the employee in question be an officer or that he be authorized to enter into contracts on behalf of the corporation." *Ogles v. Globe Oil Co.,* 171 Ga. App. 785, 786 (320 SE2d 848) (1984); *Browning v. Europa Hair,* 244 Ga. 222, 224 (259 SE2d 473) (1979). Instead, courts have determined that in order for an employee to be authorized to accept service on behalf of a corporation, it is necessary that the employee's position be "such as to afford reasonable assurance that he will inform his corporate principal that such process has been served." *Scott v. Atlanta Dairies*

6

*Co-Op,* 239 Ga. 721, 724 (238 SE2d 340) (1977).

In cases where it was shown that the secretary to whom the process was delivered was knowledgeable about the procedures to be followed in such situations, courts have ruled service was proper.  *Southwest Community Hosp. & c. v. Thompson,* 165 Ga. App. 442 (4) (301 SE2d 501) (1983).  Such was the case here.  Given Pruitt is a secretary in the administration department at Northside, it was reasonable for the process server to assume that a secretary in administration would be knowledgeable about the procedures followed in legal service and would have followed Northside's guidelines.  Given Pruitt informed Garmon she was authorized to accept service on behalf of Northside, Garmon arrived at Northside a little after 8:30 A.M., and had all day to serve the initiating papers, it is not reasonable to believe that a state licensed process server hired by Plaintiff would simply drop a 60+ page complaint on a secretary's desk without the secretary noticing.  Thus, the excuse offered by Northside for failing to appear is simply not credible.

### POINT II:  EVIDENCE STRONGLY SUGGESTS DEFENDANT HAD KNOWLEDGE OF COMPLAINT.

Given Defendant's default in failing to answer Plaintiff's complaint was willful, this court can and should refuse to set aside entry of default because

Northside has not meet its burden of showing good cause given there is evidence demonstrating Defendant had actual knowledge of Plaintiff's Complaint (Docket No. 1), yet, Northside clearly chose not to appear until after the court entered a default judgment against Northside (Docket No. 42). *Hunt v. Kling Motor Co.*, D.Kan.1993, 841 F.Supp. 1098.

Courts have recognized that opening a default may prejudice a litigant in a number of ways. One such way is that by setting aside the default the court could open the door for greater opportunity for fraud and collusion. *Davis,* 713 F.2d at 916 (*quoting* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2699 at 536–37 (1983)). Here, given Northside's clear collusion and prior fraudulent activities, there is no question setting aside the default judgement will create substantial prejudice for Plaintiff and additional burdens that impair Plaintiff's ability to seek justice.

## POINT III:  DEFENDANT FRAUDULENTLY CONCEALED MATERIAL INFORMATION FROM PLAINTIFF.

Not only must there exist a good reason to set aside the default on the ground of "mistake, inadvertence, surprise, or excusable neglect," but the moving party must show that he has a meritorious defense to the action. § 2697 The Requirement of Showing a Meritorious Defense, 10A Fed. Prac. & Proc. Civ. §

2697 (4th ed.)· The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default. *Id.*

Here, in order to establish that Northside had a meritorious defense, Northside claimed O'Neill's allegations and causes of action stated in her Complaint (Docket No. 1) lacked merit. However, the reasons Northside stated O'Neill's claims lacked merit were ridiculous. First, when addressing O'Neill's fraud claim, Northside stated, Plaintiff failed to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). (Memo, Page 11 , ¶1). Defendant further claimed, Plaintiff was required to "allege (1) the precise misrepresentations made, (2) the time, place, and person responsible for the statement, (3) the content and manner in which the statements misled her, and (4) what the defendant gained from the fraud. *Price v. Lakeview Loan Servicing, LLC,* 2022 U.S. App. LEXIS 8007 (11th Cir. Mar. 28, 2022). (Memo, Page 11 , ¶1).

As a matter of fact and law, Defendant is wrong. The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician. Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that

9

defendant make some actual misrepresentation.  Within the confidential

relationship, silence when the doctor should speak or failure to disclose what

should be disclosed constitute fraud as much as an actual misrepresentation.

*Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868

(2019).  Thus, within the doctor-patient relationship, plaintiff need not prove actual

fraud because the relationship itself creates a duty that requires the doctor to

inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v.

Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998).  In a concealment context, "there

must be evidence that there was an intent to conceal by silence."  *Carroll v.

Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

The Court of Appeals found evidence of intent to conceal in the case of

*Quattlebaum v. Cowart. Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91

(1987).  In that case, the defendant did not advise his patient that defendant had

failed to connect the left hepatic duct to the small intestine. *Id.* In furtherance of the

fraud, the physician, prepared misleading and incorrect medical records on this

point.  The court found a reasonable inference of a knowing concealment and

cover-up, not just a mere misstatement.  *Id.*

Given Northside's medical record and treatment decisions make clear

Northside relied on conversations with third parties to make decisions about

Plaintiff, the names of all the individuals Northside spoke to about O'Neill, and the details of Northside's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501.  A patient is entitled to trust her physician and rely on what he tells the patient.  *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998).  Yet, here, Nothside lied repeatedly as shown below.

## POINT IV:  DEFENDANT LIED TO O'NEILL.

The only support for Northside's baseless opinions in O'Neill's medical records are the providers own personal judgments.  Thus, O'Neill's medical records from Northside present a shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so.  Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."  *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).  "Reliability cannot be established by the mere *ipse dixit* of an expert."  *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005).  "'Presenting a summary of a proffered expert's testimony

11

in the form of conclusory statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based there is only unsubstantiated option to support the decision. *Cathell v. Brown*, 8 Vet. App. 539 (1996).

It is clear when reading O'Neill's medical records from Northside that her medical records are based on information that is not contained in her medical records. In fact, there is no factual basis or support for numerous statements written in Northside's medical records, and it is clear Defendant's support for several statements in Plaintiff's medical records is due to conversations Northside had with various third parties about O'Neill without her knowledge or consent.

## POINT V:  DEFENDANT'S MEDICAL RECORDS CLEARLY EVIDENCE CRIMINAL ACTS.

The alteration and / or falsification of medical records is a crime in most states, and is usually dealt with harshly. *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45. Alteration of medical records is usually treated as a misdemeanor, but can be a felony if done intentionally and willfully. *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45.

Alteration of a patient's record by a doctor for the purpose of defeating an actual or potential claim "is reprehensible and evidences a moral deficiency and disregard for the rights of others that [courts] regard as odious and repugnant." *Paris v. Michael Kreitz, Jr.,* 75 NC App 365, 331 SE2d 234 P.A., (1985).  In most cases the act of requesting copies of a client's hospital records by an attorney investigating a claim triggers a health care provider's apparent need to alter medical records to affect the outcome of the investigation.  *Langager v. Lake Havasu Community Hospital,* 799 F2d 1354, 135 (1986, CA9 Ariz).

Altering or modifying the medical record of any person by a health care professional, with fraudulent intent, constitutes unprofessional conduct and subjects the individual to disciplinary action and civil penalties.  *Jimenez v. Department of Professional Regulation, Board of Medicine,* 556 So 2d 1219, 15 FLW 480 (1990, Fla App D4).  In the case of *Jimenez v. Department of Professional Regulation, Board of Medicine*, a physician, after being sued by a deceased patient's survivor, made additions to his patient's medical records that purported to show that he had advised the patient to undergo a stress test and angiogram but that the patient refused to do so.  *Id.*  After finding the physician had falsely and fraudulently altered the patient's medical records in order to coverup the fact that he had failed to advise the patient to undergo the stress test

and angiogram, a hearing officer of the state board of medicine ordered that the doctor be put on probation for one year and assessed a $5,000 fine. *Id.*

A strong inference of *consciousness of guilt* arises where a health care provider is unable to produce the patient's original clinical record concerning the patient's treatment. *Thor v. Boska*, 38 Cal App 3d 558, 113 Cal Rptr 296 (1974, 2nd Dist). Similarly, if the jury is satisfied that the health care provider intentionally altered a patient's records, it can infer that the purpose in falsifying the documents was fraudulent, and the jury can further infer that accurate medical records would have been unfavorable to the provider's interests. *Pharr v. Cortese,* 147 Misc 2d 1078, 559 NYS2d 780 (1990). If the alteration of the plaintiff's medical records is deemed sufficiently fraudulent, oppressive or malicious, that fact may lead to an award of punitive damages against the health care provider. *Gage, Alteration, Falsification, and Fabrication of Records in Malpractice Actions, 1981 Med Trial Tech Q, 486.*

O'Neill's medical records were clearly forged after she left Northside's premises. It is clear when reading O'Neill's medical record from Northside that it was altered, and it was not written by medically trained professionals. Rather, there are statements in O'Neill's record that were clearly written to cover-up for Northside's fraud.

14

## POINT V: PLAINTIFFS SHOULD BE GIVEN EVEFY OPPORTUNITY TO CURE PLEADING DEFECTS.

Plaintiff intends to alter her complaint, and alter her RICO claim.  However, in order to modify her Complaint, O'Neill needs the hospital Defendants, including Northside, to produce the information O'Neill requested in her Motion to Compel. (Docket No. 58).

In determining whether to grant a Rule 15(a) motion to amend, the Supreme Court stated the standard, "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. at 182, 83 S. Ct. at 230. A plaintiff typically will not be precluded from amending a complaint in order to state a claim or from adding a claim to an otherwise proper complaint. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **DENY**

the motion and grant such other further relief the Court deems equitable.


Dated:  Alexandria, VA                        Respectfully submitted,
August 26, 2022


BY: _____
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.** |
| | **1:22-cv-00011-SEG** |
| Plaintiff, | |
| v. | |
| **NYU LANGONE MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,** | |
| Defendants. | |

**LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned certifies that the within and foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

Dated:  Alexandria, VA
August 26, 2022

Respectfully submitted,

BY: _____

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MAURA O'NEILL,

      Plaintiff,

  v.

NYU LANGONE MEDICAL
CENTER, NEW YORK-
PRESBYTERIAN QUEENS,
LENOX HILL HOSPITAL, GRADY
HEALTH SYSTEM, MOUNT
SINAI BETH ISRAEL,
NORTHSIDE HOSPITAL
FORSYTH, COLLEGE PARK
POLICE DEPARTMENT,

      Defendants.

CIVIL ACTION FILE NO.
1:22-cv-00011-SEG

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing and mailing a copy of the foregoing to each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK, LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway
Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated:  Alexandria, VA                    Respectfully submitted,
August 26, 2022

                                          BY: _____
                                          Maura O'Neill, Plaintiff
                                          601 King Street, Suite 200-#465
                                          Alexandria, VA 22314
                                          moneill@rahillco.com

O'Neill
601 King Street, Suite 200-#468
Alexandria, VA 22314



CLEARED DATE

AUG 2 9 2022

U.S. Marshals Service
Atlanta, GA 30303

Clerk of Court
U.S. District Court
75 Ted Turner Drive, NW
Atlanta, GA 30303