# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MAURA O'NEILL,

       Plaintiff,

v.

BETH ISRAEL **MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, BETH ISRAEL HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**

       Defendants.

**CIVIL ACTION FILE NO. 1:22-cv-00011-SEG**



FILED IN CLERK'S OFFICE
.J.S.D.C. Gainesville

SEP 26 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT

---

September 7, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

On August 19, 2022, Mount Sinai Beth Israel ("Beth Israel") filed a Motion

to Set Aside the Clerk's Entry of Default (the "Motion") and Mount Sinai Beth

Israel's Brief in Support it is Motion to Set Aside Entry of Default (the "Brief")

(Docket No. 55-1) as well as an affidavit from Deborah Korzenik, Senior

Associate General Counsel for Mount Sinai Health System (Docket No. 55-2) (the

"Korzenik Affidavit").  Maura O'Neill ("Plaintiff") submits this memorandum of

law in opposition to the Motion (Docket No. 55) filed by Beth Israel.[1]

## **PRELIMINARY STATEMENT**

Relief from a default entry may be granted under Federal Rule of Civil

Procedure ("Rule") 55(c) for "good cause."   Good cause requires Beth Israel to

provide an explanation for its default or provide reasons why vacation of the

default entry serves the interests of justice.  Here, Beth Israel failed to meet that

burden.

On August 17, 2022, Plaintiff served a motion to compel each of the

Hospital Defendants in this action, including Beth Israel, to produce information

The Health Insurance Portability and Accountability Act ("HIPAA") required the

---

[1]Together, NYU Langone Hospitals ("NYU Langone"), Lenox Hill Hospital
("Lenox Hill"), New York-Presbyterian Hospital/Queens ("NYPQ"), Beth Israel,
Grady Memorial Hospital Corporation ("Grady"), and Northside Hospital, Inc.
("Northside") constitute the Hospital Defendants ("Hospital Defendants").

Hospital Defendants to produce, but which each Hospital Defendant, including

Beth Israel, failed to produce (Docket No. 58). Not only is it not typical for

hospitals to violate HIPAA laws and fail to provide the information O'Neill

requested as described in the Motion to Compel, but hospitals typically provide the

information O'Neill requested within only a few hours or days because failing to

do so warrants corrective action from the Department of Health and Human

Services ("HHS").

New York Public Health Law § 18(2) states Beth Israel had ten days to

respond to O'Neill's June 2022 requests for information, however, Beth Israel

violated New York statutes weeks ago, in coordination and collusion with the other

Hospital Defendants in this action and the DB/Wilder team. Beth Israel knew that

its failure to comply with HIPAA warranted action from HHS, but Beth Israel

broke the law with impunity anyway. The clear reason Beth Israel and the other

defendants broke the law is because they *KNEW* there would be no consequences

for them because each Hospital Defendant, including Beth Israel, had been assured

HHS would not act against them because DB and the Wilder team would abuse

power to protect them.[2]

---

[2]The DB/Wilder Team interfered at HHS after O'Neill filed a complaint in 2018.
The HHS representative told O'Neill to get legal counsel due to the DB/Wilder

2

In the Brief Beth Israel filed and Korzenik Affidavit, Beth Israel claimed

Beth Israel was unaware that Plaintiff's Summons and Complaint had not been

forwarded to an appropriate insurance carrier until July 21, 2022, after the entry of

notice of default (Docket No. 42). However, this explanation is not reasonable and

clearly dishonest since the Mount Sinai Health System ("MSHS") legal team had

been directing its HIPAA Compliance team to send dishonest and deceptive

responses to O'Neill's HIPAA requests for information for over almost six weeks

prior to entry of the notice of default (Docket No. 42). In the Brief, Beth Israel

also falsely claimed it did not willfully fail to appear, however, given MSHS's

legal department had been communicating with the Wilder team from June 2022

and colluding with the other Hospital Defendants this explanation clearly lacks

merit. It is simply not believable that during the course of the several weeks in

June and July, before the entry of default, in which MSHS has been colluding to

violate HIPAA to harm O'Neill that MSHS would not have been told that O'Neill

filed an affidavit with the court claiming Beth Israel was served with initiating

papers for this action (Docket No. 13), and O'Neill filed a motion for the clerk to

---

team's interference. In addition, Robert Khuzami, the former General Counsel of
DB interfered to harm O'Neill at the Equal Employment Opportunity Commission
("EEOC") in Atlanta in 2018. Khuzami also harmed O'Neill with Khuzami's
former employer, the Department of Justice.

enter a default judgment against Beth Israel (Docket No 38). Since MSHS clearly knew about this action for the last several months, but did not appear until August, it is clear that Beth Israel's failure to appear was willful.

Given Beth Israel's default in failing to answer Plaintiff's Complaint was willful, this court can and should refuse to set aside entry of default because Beth Israel has not meet its burden of showing good cause given there is evidence demonstrating MSHS had knowledge of Plaintiff's Complaint in June and July of 2022 before the entry of default, yet, Beth Israel clearly chose not to appear.

Courts have recognized that opening a default may prejudice a litigant in a number of ways. One such way is that by setting aside the default the court could open the door for greater opportunity for fraud and collusion. Here, given Beth Israel's clear collusion and prior fraudulent activities, there is no question setting aside the default judgement will create substantial prejudice for Plaintiff and additional burdens that impair Plaintiff's ability to seek justice.

## LEGAL ARGUMENT

## POINT I: DEFENDANT'S NEGLIGENCE CLAIMS ARE QUETIONABLE.

Rule 55(c) motions may be denied when the party in default has been grossly negligent. *Brand Scaffold Builders, Inc. v. Puerto Rico Elec. Power Authority*, 364 F. Supp. 2d 50 (D.P.R. 2005). In the alternative, a motion to set

4

aside a default may be denied as a result of a willful, intentional act. *Kauffman v. Cal Spas*, 37 F. Supp. 2d 402 (E.D. Pa. 1999). Here, there is no question Beth Israel willfully defaulted. Even if the default was negligent as claimed by Beth Israel in its Brief and the Korzenik Affidavit, case law shows the default judgment should still stand given others that have defaulted under similar circumstances as those described by Beth Israel in the Brief and were not granted relief by the court.

For example, in *Robinson v. Bantam Books, Incorporated*, the summons and complaint were served on Bantam and on Rand on December 3 and 4 of 1970. *Robinson v. Bantam Books, Incorporated*, 49 F.R.D. 139 (S.D. N.Y. 1970). The papers were forwarded to Rand's home office, and then proceeded to five additional offices—to the insurance brokers, to the insurance company, to two other offices of the insurer, and finally to counsel, where they arrived on January 16. *Id.* As a result of the delay caused by the papers proceeding in this fashion, defendants failed to respond within the 20-day period. *Id.* When the defendants moved to vacate the default entry, defendants did not present sufficient explanation for the various mistakes and delays. Thus, the court denied the motion to vacate the entry of default stating:

> Counsel is asking this court, in effect, to establish the proposition that the inter-office confusion resulting from multi-office corporate enterprises, plus the added confusion resulting from inter-corporate agreements, should

5

automatically excuse failure to meet the time requirements of the Federal Rules of Civil Procedure. The court holds that there is little or no merit to defendants' attempt to make the rules read: defendants shall have 20 days from the time the summons and complaint filters back to the lawyer in charge of litigation for the district in which the case is filed. * * * **The fact that, before the 20 day deadline expired, no person in any of the offices through which this summons and complaint passed was willing to take responsibility for the timely filing of the answer is not to be condoned.** *Id. (Emphasis Added).*

Such is the case here.  In the Korzenik Affidavit, Korzenik claims Beth Israel's security officer was properly served on April 4, 2022, and Beth Israel's security team properly forwarded the initiating papers according to protocol to Mount Sinai Beth Israel Office of Risk Management ("MSBI Risk"), and the following day, April 5, 2021 MSBI Risk forwarded the summons and complaint to the legal administrator who then forwarded the initiating documents to Korzenik on April 11, 2022. (Korzenik Affidavit, ¶7-9).

In the Korzenik Affidavit, Korzenik states that "typically" MSBI Risk is responsible for sending summons and complaints to insurance carriers, and Korzenik "assumed" MSBI Risk forwarded Plaintiff's complaint. (Korzenik Affidavit, ¶12). This explanation fails.  By Korzenik's own admission MSBI Risk does not *always* contact insurance carriers, and, thus, it was improper for Korzenik to "assume" that MSBI Risk had done so since MSBI Risk does not always contact insurance carriers.

In addition, and tellingly, nowhere in the Korzenik Affidavit does Korzenik provide a reason why MSBI Risk did not send Plaintiff's initiating papers to an insurance carrier (Korzenik Affidavit) even though Korzenik claims she "investigated" what went wrong with Beth Israel's failure to timely respond. (Korzenik Affidavit, ¶3). Korzenik does state that on April 11, 2022, she received an email stating MSBI Risk wanted to discuss the summons and complaint with legal (Korzenik Affidavit, ¶10), and Korzenik called and left a voice mail in response to the request for a conversation about Plaintiff's initiating papers. (Korzenik Affidavit, ¶11). Yet, Korzenik fails to specify why MSBI Risk wanted to speak to legal, or what concerns MSBI Risk had, although, clearly there were concerns or there would have been no need for a phone call and email. (Korzenik Affidavit).

Korzenik states that the MSBI Risk officer who she left a voice mail message for, who is unnamed in the Korzenik Affidavit, took vacation around that time in the form of paid time off ("PTO"). Yet, again, however, Korzenik's explanation is not compelling given Korzenik claimed to investigate, but failed to provide dates of the MSBI Risk employee's PTO, or facts to demonstrate the PTO materially impacted MSBI Risk's or Beth Israel's failure to respond to Plaintiff's initiating papers. Clearly, there must be regulations in place when MSBI Risk

7

employees go on vacation, particularly when MSBI Risk employees are

responsible for time sensitive matters. In addition, it is simply not believable that

in a division of a company that is responsible for the timely handling of responses

to lawsuits within deadlines, that there is not someone to cover when an employee

takes PTO. It is also hard to believe that an employee would not have an outgoing

message or email stating he or she was on vacation if the vacation was for more

than a few days. Thus, the fact Korzenik failed to state for how many days the

MSBI Risk employee was on vacation or why the matter addressed in the April 11,

2022 email and voicemail was not addressed when the employee returned from

vacation presents huge holes in Beth Israel's story.

Also notable, is the fact Beth Israel failed to submit an affidavit from the

MSBI Risk employee stating the specific dates he or she took paid time off or the

reason why the employee did not contact Korenzik after returning to the office.

There is also no explanation why the MSBI Risk employee did not forward the

summons and complaint to an insurance carrier if that is what was "typically"

done. (Korenzik Affidavit). Thus, the huge holes in Korenzik's Affidavit leave

more questions than answers, and fail to sufficiently account for Beth Israel's

failure to respond.

Given the Beth Israel legal team was also directing the Mount Sinai HIPAA

8

Compliance department to provide dishonest responses to O'Neill's HIPAA requests for information in June and early July of 2022, the claim by Korenzik that the first time she was aware of the default was on July 21, 2022 is simply not believable. (Korenzik Affidavit, ¶11).

Clearly, the fact pattern described in the Korenzik Affidavit in many ways mirrors the fact pattern of the case of *Robinson v. Bantam Books, Incorporated* which is noted above. *Robinson v. Bantam Books, Incorporated*, 49 F.R.D. 139 (S.D. N.Y. 1970). In the *Robinson* case, the court stated "inter-office confusion resulting from multi-office corporate enterprises, plus…added confusion…should [not] automatically excuse failure to meet the time requirements." Here, Beth Israel is doing the same by asking the court to excuse its failure to comply with the Rules due to inter-office confusion and other factors Korenzik fails to explain even though Korenzik claims she conducted an investigation (Korenzik Affidavit, ¶3). In the *Robinson* case, the court held "The fact that, before the 20 day deadline expired, no person in any of the offices through which this summons and complaint passed was willing to take responsibility for the timely filing of the answer is not to be condoned." *Id.* The exact same could be said of Beth Israel. While Korenzik's Affidavit has numerous holes and raises more questions than it answers, what is abundantly clear is that no one took responsibility for responding

9

within 20 days even though the initiating papers were properly served.

The Korenzi Affidavit also stated, "Mount Sinai Beth Israel did not intentionally fail to respond to Plaintiff's complaint or otherwise disregard its responsibilities... And immediately after learning about the entry of default [on July 21, 2022],...Mount Sinai Beth Israel began investigating what led to this result." (Korenzik Affidavit, ¶15). However, this is clearly not true because in June and early July 2022, Beth Israel violated HIPAA and New York statutes, attempted to mislead Plaintiff using deceptive legalese, and clearly knew the Complaint (Docket No. 1) had been served (Docket No. 13) as described below.

## POINT II:  EVIDENCE STRONGLY SUGGESTS DEFENDANT HAD KNOWLEDGE OF COMPLAINT.

HIPAA gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose all records it used to make healthcare decisions. 45 CFR § 164.501. Thus, on June 6, 2022, Plaintiff started sending letters to hospitals requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.

10

- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

Despite the fact that the two requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with HIPAA and state laws and responded to O'Neill's request. Given the Hospital Defendants lack of responsiveness, in June of 2022, O'Neill went to New York, and spoke to Beth Israel's medical records department. Beth Israel stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in O'Neill's medical record, and referred O'Neill to Heather Chamides, Director, HIPAA Compliance Assurance and Compliance Services at MSHS. However, Chamides refused to directly respond to O'Neill's requests for information or state whether MSHS has records about O'Neill Beth Israel does not possess. Disturbingly, Chamides did so using the same deceptive legalese used by other Hospital Defendants as described below. It is simply not believable that Chamides and other Hospital Defendants, including NYU Langone and NYPQ would all adopt the exact same dishonest strategy of sending HIPAA Accounting of Disclosures as described below.

*Deceptive Legalese*

HIPAA requires healthcare providers to account for all disclosures of

Protected Health Information ("PHI") that were made for purposes other

than treatment, payment, or healthcare operations. HIPAA Accounting is the

accounting, or the action or process of keeping records, of these disclosures. 45

CFR § 164.528. The letters O'Neill sent to Beth Israel in June of 2022 clearly did

not request an Accounting of Disclosures because, 45 CFR § 164.528, accounting

of disclosures of protected health information, explicitly allows covered entities to

exclude the fact that the covered entity disclosed protected health information to

certain third parties under certain circumstances. Despite the fact that Accounting

of Disclosures clearly allows Defendants to hide the very information O'Neill

requested, Chamides of MSHS and other Hospital Defendants all sent Accounting

of Disclosures in June of 2022, even though MSHS's responses, which contained

deceptive legalese, was explicitly and knowingly not responsive to O'Neill's

request.

After it became obvious Chamides and MSHS were attempting to use

deceptive legalese to fail to provide the information O'Neill requested, O'Neill

sent an email to Chamides in June of 2022 requesting that MSHS not provide an

accounting of disclosures pursuant to 45 CFR § 164.528, and instead requested

12

plain language responses to the requests in her letters. Despite the simple nature of O'Neill's requests, Chamides and MSHS had no intention of providing the information O'Neill sought even though HIPAA states she has a right to that information. While O'Neill has an absolute right under HIPAA to view information used to make decisions about her, MSHS, in coordination with the DB/Wilder team and other Hospital Defendants have made a concerted effort to cover-up the fact that the Wilder team made phone calls about O'Neill, and Plaintiff's healthcare was dictated by the DB/Wilder team.

***Response to Motion to Compel***

On August 31, 2022, NYU Langone filed opposing papers to O'Neill's motion to compel and lied in an incredibly stupid manner. (Docket No. 61). Specifically, despite the fact, HIPAA states in plain black letter law that O'Neill has an absolute right to receive the information she requested, NYU Langone claimed that the information O'Neill sought constituted "discovery" (Docket No. 61, Page 4, ¶1). According to NYU Langone, since discovery had not commenced, O'Neill did not have a right to receive information HIPAA stated she had a right to receive. (Docket No. 61, Page 4, ¶1). NYU Langone's "arguments," if you can call them that, are absurd. This court and NYU Langone do not have any right or ability to overturn black letter federal statutes. Since HIPAA is a federal statute,

13

the Hospital Defendants and this court are required to comply with HIPAA.

Whether or not discovery is or is not occurring in this action has no bearing on

HIPAA laws.  The fact NYU Langone would seek to lie and conflate discovery and

HIPAA is so downright stupid it is clear NYU Langone is simply lying yet again.

The motion to compel was clearly a motion to enjoin the Hospital Defendants

from violating federal statutes and committing crimes.  Yet, O'Neill will file a new

motion to enjoin the Hospital Defendants from violating HIPAA and committing

criminal acts.  Given there is a plethora of authority supporting motions to enjoin

defendants from violating federal laws, and the Hospital Defendants are willfully

violating HIPAA laws, the court should enjoin Hospital Defendants from violating

federal laws and criminal acts.

### *HIPAA Access Requirements*

HIPAA contains grounds and conditions for denial of access to protected

health information, 45 CFR 164.524(a)(2)-(4).  An individual is not required to

provide a reason for requesting access to her information, and the individual's

rationale for requesting access, if voluntarily offered or known by the healthcare

provider, is not a permitted reason to deny access.[3]  Thus, the reason offered by

---

[3]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

14

NYU Langone for denying access to O'Neill, namely "discovery," is not a legally permissible reason under HIPAA.

In addition, under HIPAA, if a healthcare provider denies access, in whole or in part, to PHI requested by the individual based on one or more permitted grounds, the healthcare ***MUST*** provide a denial in writing to the individual no later than 30 calendar days after the request (or no more than 60 calendar days if the covered entity notified the individual of an extension) according to 45 CFR 164.524(b)(2).[4]  In addition, under federal regulations, the denial must be in plain language and describe the basis for denial; if applicable, the individual's right to have the decision reviewed and how to request such a review; and how the individual may submit a complaint to the healthcare provider or the HHS Office for Civil Rights. 45 CFR 164.524(d).[5]  In addition, under HIPAA, all healthcare providers must, to the extent possible, provide the individual with access to any other PHI requested, after excluding the PHI to which the entity has a ground to deny access.  45 CFR 164.524(d)(1).[6]

---

[4]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html
[5]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html
[6]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

The laws are clear. All the Hospital Defendants had to do was read an HHS website to know that each Hospital Defendant was violating federal statutes. However, MSHS and the other Defendants are clearly violating black letter statutes. MSHS was required to send O'Neill a plain language letter explaining why it was declining to provide access to O'Neill to her health information if that is what MSHS intended to do. Hiding behind NYU Langone and fake "discovery" claims is not one of MSHS's options under HIPAA.

Given Chamides stopped responding to O'Neill's requests in early July of 2022, or over six weeks before Beth Israel filed its motion to set aside the default judgement (Docket No. 55) on August 19, 2022 because presumably it intended to hide behind NYU Langone's "discovery" claim, Beth Israel's claim it acted promptly to respond O'Neill's Complaint is simply not believable since MSHS was clearly colluding with the DB/Wilder team and other Hospital Defendants in late June and early July, and Beth Israel did not appear in this action until August of 2022.

Given Beth Israel's default in failing to answer Plaintiff's complaint was willful, this court can and should refuse to set aside entry of default because Beth Israel has not meet its burden of showing good cause given there is evidence demonstrating MSHS had actual knowledge of Plaintiff's Complaint (Docket No.

16

1) in June and July as evidenced by the deceptive email from Chamides, yet, Beth

Israel clearly chose not to appear until after the court entered a default judgment

against Beth Israel (Docket No. 42). *Hunt v. Kling Motor Co.*, D.Kan.1993, 841

F.Supp. 1098.

Courts have recognized that opening a default may prejudice a litigant in a

number of ways. One such way is that by setting aside the default the court could

open the door for greater opportunity for fraud and collusion. *Davis,* 713 F.2d at

916 (*quoting* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:*

*Civil* § 2699 at 536–37 (1983)). Here, given MSHS's clear collusion and prior

fraudulent activities with the DB/Wilder team and other Hospital Defendants, there

is no question setting aside the default judgement will create substantial prejudice

for Plaintiff and additional burdens that impair Plaintiff's ability to seek justice.

### POINT III:  COURT DOES NOT LACK JURISICTION.

Beth Israel claimed in its Brief that this court lacks jurisdiction. (Brief, Page

4, ¶2-Page 7). However, that is clearly not true. This Court has diversity of

citizenship jurisdiction over Plaintiff's claims pursuant to 28 USC § 1332, and

subject-matter jurisdiction over Plaintiff's federal claim, arising under the laws

of the United States, pursuant to 28 USC § 1331. The Court has supplemental

jurisdiction over Plaintiff's state-law claims, pursuant to 28 USC § 1367,

because they are related to the federal claims and form part of the same case

and controversy.  In addition, this Court has subject matter jurisdiction over this

action pursuant to 18 USC §1964.

Given O'Neill timely filed her requests for the Hospital Defendants in June

2022, and the Hospital Defendants have each failed to comply with HIPAA and

state statutes, O'Neill is unable and will remain unable to completely revise her

First Amended Complaint ("FAC") given the Hospital Defendants are breaking

HIPAA laws and other state and federal statutes.  However, in the Complaint

(Docket No. 1) and FAC, O'Neill stated fraud and RICO claims that needs to be

enhanced with data the Hospital Defendants have failed to provide in violation of

HIPAA.  O'Neill anticipates there will be other federal claims after the Hospital

Defendants have complied with HIPAA.

## POINT IV:  DEFENDANT FRAUDULENTLY CONCEALED MATERIAL INFORMATION FROM PLAINTIFF.

Not only must there exist a good reason to set aside the default on the

ground of "mistake, inadvertence, surprise, or excusable neglect," but the moving

party must show that he has a meritorious defense to the action. § 2697 The

Requirement of Showing a Meritorious Defense, 10A Fed. Prac. & Proc. Civ. §

2697 (4th ed.).  The underlying concern is to determine whether there is some

18

possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default. *Id.*

Here, in order to establish that Beth Israel had a meritorious defense, Beth Israel claimed O'Neill's allegations and causes of action stated in her Complaint (Docket No. 1) lacked merit. (Brief, Page 1, ¶1). However, the reasons Beth Israel stated O'Neill's claims lacked merit were ridiculous. First, Beth Israel stated that O'Neill's claims were untimely, however, this is incorrect as a matter of law. (Brief, Page 10, ¶2). Under New York law, an action based upon fraud must be commenced within six years of the date the cause of action accrued. CPLR § 213(8). *See also Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009); *Carbon Capital Mgmt., LLC v. Am. Express Co.*, 88 A.D.3d 933, 939 (2d Dept. 2011). Thus, Plaintiff's Complaint (Docket No. 1) was timely filed.

Beth Israel also claimed O'Neill failed to allege sufficient facts. (Brief, Page 10, ¶2). However, that claim lacks merit because some of the facts O'Neill needs to complete her amended complaint are in the possession of MSHS, and MSHS is violating HIPAA by failing to provide O'Neill with the information she requested as described above. O'Neill intends to amend her complaint again once the Hospital Defendants have been enjoined from improperly violating federal statutes and committing criminal acts.

19

In addition, O'Neill's fraud cause of action clearly has merit. Under New York law one may not take advantage of another's ignorance. *Brass v. American Film Technologies*, Inc., 987 F.2d 142, 151 (2d Cir.1993); *Gaines Serv. Leasing Corp. v. Carmel Plastics Corp.*, 105 Misc.2d 694, 432 N.Y.S.2d 760 (Civ.Ct., Kings County, 1980). Active concealment implies purposeful misrepresentation, *i.e.*, the defendant's affirmative and knowing attempt to hide something. A duty to speak arises when one party possesses superior knowledge not readily available to another and the party knows that the other is acting on the basis of mistaken knowledge. *Fidelity Nat. Title Ins. Co. v. N.Y. Land Title Agency LLC*, 121 A.D.3d 401, 994 N.Y.S.2d 76 (1st Dep't 2014). A duty may also arise when the plaintiff is totally dependent on the defendant for the relevant facts, and the defendant has made a misleading partial disclosure. *Juman v. Louise Wise Services*, 254 A.D.2d 72, 678 N.Y.S.2d 611 (1st Dept.1998).

Here, Beth Israel sought to take advantage of what it perceived to be O'Neill's ignorance. In addition, Beth Israel misrepresented facts to harm Plaintiff. For example, Beth Israel spoke to the NYPD without authorization, aided the NYPD in destroying a rape kit that showed acetone, a component of chloroform, and failed to disclose the source of information from the DB/Wilder team in its medical records.

A fraud claim based on an expression of opinion is actionable if the speaker

was subjectively aware that there was no reasonable basis for the opinion.  *M&T*

*Bank Corp. v. McGraw Hill Companies, Inc.*, 126 A.D.3d 1414, 5 N.Y.S.3d 783

(4th Dep't 2015).  Despite that fact, Beth Israel refused to correct knowingly

fraudulent records, failed to comply with basic HIPAA laws, and lied about its

contact with the DB/Wilder team.  Thus, it is clear Beth Israel's medical records

are fraudulent, and the subjective opinions stated in the medical record constitute

fraud.

### POINT V:  DEFENDANTS LIED TO O'NEILL.

Fraudulent representations may be expressed by conduct and/or words.

*Baldeo v. Majeed*, 150 A.D.3d 942, 55 N.Y.S.3d 340 (2d Dep't 2017); *Yablon v.*

*Stern*, 161 A.D.3d 594, 77 N.Y.S.3d 43 (1st Dep't 2018).  A misrepresentation,

particularly in fiduciary or confidential relationships, need not be express, but may

be implied from circumstances.  *Gordon v. Bialystoker Center and Bikur Cholim,*

*Inc.*, 45 N.Y.2d 692, 412 N.Y.S.2d 593, 597, 385 N.E.2d 285 (1978).

The only support for Beth Israel's baseless opinions in O'Neill's medical

records are the providers own personal judgments based on slanderous and sick

information provided to Beth Israel by the DB/Wilder team.  Thus, O'Neill's

medical records from Beth Israel present a shining examples of *ipse dixit*--i.e., the

expert claims that it is so merely because he says that it is so. Yet, without more

than credentials and a subjective opinion, an expert's testimony that 'it is so' is not

admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

"Reliability cannot be established by the mere *ipse dixit* of an expert." *United*

*States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "[W]hen an expert

opinion is based on data, a methodology, or studies that are simply inadequate to

support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of

that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381,

396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony

in the form of conclusory statements devoid of factual or analytical support is

simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*,

402 F.3d 1092, 1107 (11th Cir. 2005). Obviously, the same principles hold in

cases involving medical decisions, and decisions are not valid if they are based on

only unsubstantiated opinion to support the decision. *Cathell v. Brown*, 8 Vet.

App. 539 (1996).

It is clear when reading O'Neill's medical records from Beth Israel that her

medical records are based on information that is not contained in her medical

records. In fact, there is no factual basis or support for numerous statements

written in Beth Israel's medical records, and it is clear Defendant's support for

several statements in Plaintiff's medical records is due to conversations Beth Israel

and MSHS had with various third parties about O'Neill without her knowledge or

consent.

In this case, it also looks as if MSHS possesses information Beth Israel does

not possess. Hence, the differing responses O'Neill received from Beth Israel and

MSHS in June and July 2022. Specifically, in June 2022, when O'Neill visited the

hospital, Beth Israel gave O'Neill all the information she requested that Beth Israel

had within one hour. MSHS on the other hand, used deceptive legalese and

continually kept thwarting O'Neill's requests for information throughout June and

July of 2022 before MSHS simply stopped responding to O'Neill's emails, and

ignored her in violation of HIPAA. 45 CFR 164.524(a)(2)-(4).

## POINT V: PLAINTIFFS SHOULD BE GIVEN EVEFY OPPORTUNITY TO CURE PLEADING DEFECTS.

Plaintiff intends to alter her complaint. However, in order to modify her

FAC, O'Neill needs the Hospital Defendants, including Beth Israel, to produce the

information O'Neill requested that MSHS, in coordination with the other Hospital

Defendants and the DB/Wilder team, is failing to disclose in violation of HIPAA.

In determining whether to grant a Rule 15(a) motion to amend, the Supreme

Court stated the standard, "If the underlying facts or circumstances relied upon by

a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. at 182, 83 S. Ct. at 230. A plaintiff typically will not be precluded from amending a complaint in order to state a claim or from adding a claim to an otherwise proper complaint. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **DENY** the motion and grant such other further relief the Court deems equitable.

Dated: Alexandria, VA
September 7, 2022

Respectfully submitted,

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandra, VA 22314
moneill@rahillco.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAURA O'NEILL,<br><br>            Plaintiff,<br><br>    v.<br><br>BETH ISRAEL **MEDICAL CENTER, NEW YORK-PRESBYTERIAN QUEENS, LENOX HILL HOSPITAL, GRADY HEALTH SYSTEM, MOUNT SINAI BETH ISRAEL, BETH ISRAEL HOSPITAL FORSYTH, COLLEGE PARK POLICE DEPARTMENT,**<br><br>            Defendants. | CIVIL ACTION FILE NO.<br>**1:22-cv-00011-SEG** |

**LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned certifies that the within and foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

26

Dated:  Alexandria, VA
September 7, 2022

Respectfully submitted,

BY:

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandra, VA 22314
moneill@rahillco.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MAURA O'NEILL,

        Plaintiff,

   v.

BETH ISRAEL **MEDICAL**
**CENTER, NEW YORK-**
**PRESBYTERIAN QUEENS,**
**LENOX HILL HOSPITAL, GRADY**
**HEALTH SYSTEM, MOUNT**
**SINAI BETH ISRAEL, BETH**
**ISRAEL HOSPITAL FORSYTH,**
**COLLEGE PARK POLICE**
**DEPARTMENT,**

        Defendants.

**CIVIL ACTION FILE NO.**
**1:22-cv-00011-SEG**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct
copy of the foregoing by emailing and mailing a copy of the foregoing to each
Defendant at the following addresses:

28

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

29

**SCRUDDER, BASS, QUILLIAN, HORLOCK,**
**LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway
Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated: Alexandria, VA
September 7, 2022

Respectfully submitted,

BY: *Maura O'Neil*

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandra, VA 22314
moneill@rahillco.com