## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MAURA O'NEILL,**<br><br>Plaintiff,<br><br>v.<br><br>**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**<br><br>Defendants. | **CIVIL ACTION FILE NO.: 1:22-cv-00011-SEG** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN

October 6, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

LEGAL ARGUMENT........................................................................................... 4

    POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS
HER HEALTHCARE INFORMATION. ............................................................. 4

    POINT II:  DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL
INFORMATION FROM PLAINTIFF............................................................... 13

    POINT III:  DEFENDANTS LIED TO O'NEILL............................................ 16

    POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE
CRIMINAL ACTS. .......................................................................................... 18

    POINT V:  DEFENDANT'S CONDUCT IS ILLEGAL. ................................. 19

    POINT VI:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE
RELIEF............................................................................................................. 24

CONCLUSION.................................................................................................... 25

i

Maura O'Neill ("Plaintiff") submits this memorandum of law in support of her Motion to Enjoin and Hearing Request.

## PRELIMINARY STATEMENT

On June 6, 2022 Plaintiff started sending letters to Grady Memorial Hospital Corporation ("Grady"), Northside Hospital, Inc. ("Northside") and other Hospital Defendants requesting basic information.[16]  Despite the fact that O'Neill's requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with state and federal laws and responded to O'Neill's request.  The time for the Georgia Hosptial Defendants to respond was thirty days.  Yet, not a single Hospital Defendant complied with applicable laws.

Georgia law requires healthcare providers provide a complete and current copy of a medical record, upon written request, to any person who has received health care services from the provider.  O.C.G.A. §§ 31-33-1, 31-33-2.  The legislative purpose behind Health Records Act was to ensure that patients have access to medical records in the custody and control of healthcare providers.

---

[16]On January 4, 2022, Plaintiff filed a complaint alleging several hospitals, where she went to have rape kits performed from 2017 to 2018, including NYU Langone Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"), Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital Queens, ("NYPQ"), Lenox Hill Hospital ("Lenox Hill"), Northside Hospital, Inc. ("Northside"), together ("Hospital Defendants").

Likewise, the Health Insurance Portability and Accountability Act ("HIPAA") gives an individual the right to access information about her healthcare, and requires healthcare organizations to disclose all records it used to make healthcare decisions.  What is obvious from reading Plaintiff's medical records from Grady and Northside is that the records are based on information that is not contained in the medical records, but was provided by third parties.  While Grady and Northside were required by law to disclose to O'Neill that they had conversations with third parties about her, the hospitals instead covered-up the fact that they received information from third parties, had conflicts of interest, and made decisions about O'Neill based on information illicitly obtained from others.

It is illegal, and by definition black letter fraud, for any healthcare provider to make diagnosis and treatment decisions and not disclose to the person the basis of said diagnosis and treatment decision.  Thus, Plaintiff's medical records from Grady and Northside are fraudulent because the records fail to disclose that healthcare decisions were based on false and slanderous information provided without Plaintiff's knowledge or consent.

Because of a physician's superior medical knowledge and his relationship with a patient, the doctrine of constructive fraud applies when a healthcare provider makes inaccurate statements to his patient concerning treatment or

2

diagnosis.  Also inherent in the physician-patient relationship is an affirmative duty for the physician to disclose all material facts to the patient.  A physician's or other healthcare provider's failure to disclose material information concerning a patient's condition or treatment constitutes fraudulent concealment.  In addition, when a physician has knowledge of a material fact concerning the patient's physical condition, the fiduciary relationship renders the physician's silence fraudulent.

At this point, the only support for baseless opinions contained in O'Neill's medical records are the providers own personal judgments.  Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so.  Yet, as counsel to Grady and Northside are surely well aware, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible as evidence.  Rather, *Daubert* and *Kumho Tire Co.*, as well as Rule 702, require that expert opinion be connected to existing data by something more than dubious inferences that amount to an expert's assertion that 'it is so because I say it is so."  Thus, O'Neill's medical records are fraudulent on their face because they do not contain the information provided by third parties without O'Neill's knowledge or consent that provide the actual basis for the subjective opinions that are not supported by facts or data contained in O'Neill's medical records.

3

In addition, providers at Grady and Northside failed to perform even the most basic of tasks.  It is clear that rather than provide objective medical care to O'Neill, Grady and Northside acted as agents for the Wilder team and took a series of steps to harm O'Neill.  Continuing to withhold information from O'Neill is simply extending the destructive and abusive pattern of criminal acts and fraud to which O'Neill has been subjected.

## LEGAL ARGUMENT

### POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS HER HEALTHCARE INFORMATION.

HIPAA gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose all records it used to make healthcare decisions.  45 CFR § 164.501.  On June 6, 2022 Plaintiff started sending letters to hospitals, including Grady and Northside, requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

Despite the fact that the two requests for information are incredibly basic,

not a single one of the Hospital Defendants fully complied with HIPAA and state

laws and responded to O'Neill's request.[17,18,19,20,21,22]  Georgia law gave Grady and

Northside thirty days to respond, yet neither did.  Thus, Northside and Grady failed

---

[17]Northside stated it does not have a Power of Attorney, but has failed to state if it
has any other authorization to talk to a third party about O'Neill.  Northside has
also not disclosed if all information used to make decisions about O'Neill are in
her medical record.

[18]Grady sent a medical record, but failed to include a Power of Attorney,
authorization, or any additional information outside the medical record.

[19]Lenox Hill has not provided any response.

[20]NYU Langone stated it has no Power of Attorney, and claimed it spoke to others
about O'Neill.  Yet, NYU Langone has provided no authorization, and further
claimed it had not unlawfully disclosed O'Neill's medical information.  O'Neill's
medical record also does not contain references to any third parties, even though
NYU Langone spoke to third parties.

[21]Beth Israel stated it does not have a Power of Attorney or authorization on file.  It
also stated the only information it has on record is in O'Neill's medical record.
However, its parent company, Mount Sinai Health System ("MSHS") refuses to
respond to O'Neill's requests for information or state whether MSHS has records
about O'Neill Beth Israel does not possess.

[22]Like Beth Israel, NYPQ stated it does not have a Power of Attorney or
authorization on file.  It also stated the only information it has on record is in
O'Neill's medical record.  However, NYPQ refused to tell O'Neill if a parent
company or another entity has additional records about O'Neill that NYPQ does
not possess.  In February of 2019, Plaintiff sent letters to DB.  DB was willing
to deny that DB had possession of Plaintiff's medical records, but DB was not
willing to deny that (1) a related entity or law firm hired by DB had copies of
those records, or (2) DB discussed O'Neill's medical records with a third party.
Thus, there is reason to believe Hospital Defendants would hide information
with a related entity or law firm.

to comply with HIPAA and state law requirements.  [*See* O.C.G.A. §§ 31-33-1, 31-33-2, O.C.G.A. § 24-12-1].

## A. O'Neill's Rights

While O'Neill has an absolute right under HIPAA to view information used to make decisions about her, the Hospital Defendants have made a concerted effort to cover-up the fact that the Wilder team made phone calls about O'Neill, and Plaintiff's healthcare was dictated by the Wilder team.  For example, in a letter sent on July 5, 2022, NYU Langone stated,

> Please know that the designated record set is limited to records that are used in whole or in part by or for NYU Langone to make decisions about individuals. This information does not include the names of all individuals that have provided information about you and/or their conversations.

Thus, NYU Langone buried the details of conversations it had with other individuals, and claimed this information was not part of the designated record set.

A "designated record set" is defined in 45 CFR 164.501 as a group of records maintained by or for a covered entity that comprises the:

- Medical records and billing records about individuals maintained by or for a covered health care provider;
- Enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or
- Other records that are used, in whole or in part, by or for the covered entity to make decisions about individuals.

6

According to the Department of Health and Human Services ("HHS"), this last category includes records that are used to make decisions about any individuals, whether or not the records have been used to make a decision about the particular individual requesting access.[23]

HHS also defines the term "record" as any item, collection, or grouping of information that includes PHI and is maintained, collected, used, or disseminated by or for a covered entity.[24] PHI is protected health information and is defined as individually identifiable health information...that is: (1) transmitted by electronic media; (2) maintained in electronic media; or (3) transmitted or maintained in any other form or medium. 45 CFR § 160.103.

Individually identifiable health information is "information that is a subset of health information, including demographic information collected from an individual, and:

(1)  Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2)  Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a

---

[23]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html
[24]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

7

reasonable basis to believe the information can be used to identify the individual." 45 CFR § 160.103.

As shown through the previous definitions, under HIPAA, O'Neill has an absolute right to any information about any decision made about her by Hospital Defendants including the names of any individuals that provided information to Defendants about O'Neill and the conversations Defendants had with third parties about O'Neill.

## B. Denial of Access

HIPAA contains grounds and conditions for denial of access to protected health information, 45 CFR 164.524(a)(2)-(4). An individual is not required to provide a reason for requesting access to her information, and the individual's rationale for requesting access, if voluntarily offered or known by the healthcare provider, is not a permitted reason to deny access.[25] Thus, the reason offered by Grady and Northside for denying access to O'Neill, namely "discovery," (Docket Nos. 63 and 64) is not a legally permissible reason under HIPAA or state laws.

In addition, under HIPAA, if a healthcare provider denies access, in whole or in part, to protected health information requested by the individual based on one or more permitted grounds, the healthcare provider ***MUST*** provide a denial in writing

---

[25]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

to the individual no later than 30 calendar days after the request (or no more than 60 calendar days if the covered entity notified the individual of an extension) according to 45 CFR 164.524(b)(2).[26]  In addition, under federal regulations, the denial must be in plain language and describe the basis for denial; if applicable, the individual's right to have the decision reviewed and how to request such a review; and how the individual may submit a complaint to the healthcare provider or the HHS Office for Civil Rights. 45 CFR 164.524(d).  In addition, under HIPAA, all healthcare providers must, to the extent possible, provide the individual with access to any other protected health information requested, after excluding the PHI to which the entity has a ground to deny access.  45 CFR §164.524(d)(1).

Likewise, under Georgia law, a healthcare provider must provide medical records to a patient within 30 days of the receipt of a records request.  O.C.G.A. §§ 31-33-1, 31-33-2, O.C.G.A. § 24-12-1.  A physician must either grant access to medical records or give a justified written denial of access within 30 days of receipt of the request for release.  45 CFR §164.524(b)(2).

Thus, even if Grady or Northside wanted to refuse to send PHI to O'Neill, Grady and Northside were required by HIPAA to inform O'Neill in writing that

---

[26]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

9

they were denying access to some PHI.  For example, if Grady wanted to deny

O'Neill access to information because it compiled information in reasonable

anticipation of, or for use in, a legal proceeding, then Grady was required to send

O'Neill a letter stating that was the case.[27]  However, even if that was Grady's

intention, Plaintiff still retained the right to access the underlying PHI from the

designated record set(s) used to generate the information about O'Neill for use in a

legal proceeding.[28]

The laws are clear.  All the Hospital Defendants had to do was read an HHS

website to know that each Hospital Defendant was violating federal statutes.

However, Grady and the other Hospital Defendants are clearly violating black

letter federal and state statutes.

## C . Privacy Laws

Medical records are protected by Georgia's constitutional right of privacy

and cannot be disclosed without the consent of the patient unless their production

is otherwise required by Georgia law.  *King v. State,* 272 Ga. 788, 790(1), 535

S.E.2d 492 (2000).  In the absence of a waiver, a patient must be afforded notice

---

[27]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html
[28]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

10

and an opportunity to object prior to the disclosure of her medical records. *Id.* For example, in the case *Juric v. Bergstraesser,* the patient's allegations that his physician disclosed to patient's wife the patient's personal information learned during course of treatment, and that such disclosure was provided to his wife and her counsel, and was used by his wife as a basis to take adverse actions against the patient in his "marital dispute," resulting in the patient being forced to undergo a psychiatric examination and being denied visitation for months with his young daughter, stated a claim against the physician for breach of the implied covenant of trust and confidence inherent in the patient-physician relationship. *Juric v. Bergstraesser*, 44 A.D.3d 1186, 844 N.Y.S.2d 465 (3d Dep't 2007).

Here, Grady and Northside spoke to Wilder's agents about Plaintiff without first obtaining O'Neill's consent, and Grady and Northside disclosed confidential information to Wilder's agents despite the fact Northside stated in an email dated June 9, 2022 that Northside does not have a Power of Attorney or any authorization on file to allow Northside to speak to any third party about Plaintiff. Grady has failed to respond to O'Neill's requests. Thus, despite the fact Georgia's laws on medical information should be viewed in light of the fact that Georgia law views the right of privacy "as a fundamental constitutional right, having a value so essential to individual liberty in our society that its infringement merits careful

11

scrutiny by the courts," Grady and Northside chose to flagrantly violate O'Neill's

rights under the law.  Likewise, speaking to anyone without O'Neill's knowledge

or consent violates HIPAA's privacy laws.  *45 CFR Part 160 and Part 164,*

*Subparts A and E.*

Worse still, the information used to harm O'Neill in Grady's and

Northside's medical records was based on fake accounts Wilder set up in O'Neill's

name to impersonate O'Neill.  At no time in her entire life has O'Neill ever been

in a "relationship" with Wilder, or even had a personal conversation with him

for that matter.   In fact, other than the times Wilder had O'Neill drugged from

2017 onwards, O'Neill has only ever spoken to Wilder for a grand total of three

hours during the two and a half years O'Neill worked at DB from 2004 to

2007.  Any claim of a "relationship" between Plaintiff and Wilder, a psychopath,

stalker, and rapist, is completely false.  Instead, in order to create a

"relationship" that never existed, Wilder set-up fake accounts in O'Neill's

name in WhatsApp, Viber, Line, and Google Voice, and Wilder and his rapist

associates used those fake accounts to impersonate O'Neill.  Forensic reviews

of O'Neill's phones, computers, and electronic devices showed there was no

communication between O'Neill and Wilder or any of the other rapists who

claimed to have "consensual" sexual relations with O'Neill from 2017 to

12

2022.  Instead, Wilder and his rapist associates have stalked and spied on O'Neill and sent fake messages pretending to be O'Neill.  By incorporating the stupid and false claims of Wilder and his rapists associates into their medical records, Grady and Northside violated O.C.G.A. § 16-11-67, O.C.G.A. § 16-11-62(1), and O.C.G.A. § 24-9-901.  It is really rather stupid that Grady and Northside expect people to believe that the Hospital Defendants illegally altered O'Neill's medical records after O'Neill left the hospitals' premises in violation of criminal statutes, but Grady and Northside think using fake messaging accounts that are not shown on Plaintiff's phone is reasonable.  If there really was a "relationship" between Wilder and O'Neill or Wilder's rapist associates, why have Grady and Northside failed to account for their sources of information in O'Neill's medical records, and thereby violated criminal statutes.  Based on the facts, it is clear Grady and Northside know they commit criminal acts and falsified records to harm O'Neill, the same way Wilder set-up fake accounts to impersonate O'Neill.

## POINT II:  DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL INFORMATION FROM PLAINTIFF.

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician.  Because of this confidential relationship, an exception arises to the requirement in typical

13

fraud cases that defendant make some actual misrepresentation. Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

The Court of Appeals found evidence of intent to conceal in the case of *Quattlebaum v. Cowart*. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987). In that case, the defendant did not advise his patient that defendant had failed to connect the left hepatic duct to the small intestine. In furtherance of the fraud, the physician, prepared misleading and incorrect medical records on this point. The court found a reasonable inference of a knowing concealment and cover-up, not just a mere misstatement. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987).

14

Given Grady's medical record and treatment decisions make clear Grady

relied on conversations with third parties to make decisions about Plaintiff, the

names of all the individuals Grady spoke to about O'Neill, and the details of

Grady's conversations about O'Neill must be included in O'Neill's designated

record sets. 45 CFR § 164.501. Since Grady initially refused to disclose its

conflicts of interests, it is clear Grady abused O'Neill, and refused to put a urine

sample in O'Neill's rape kit to aid Wilder, to ensure there was "no evidence"

O'Neill was drugged even though a person commits the offense of tampering with

evidence when, with the intent to prevent the apprehension…of any person or to

obstruct the prosecution or defense of any person, such person knowingly

destroys…physical evidence or …prepares… false evidence. O.C.G.A. § 16-10-

94(a). Grady's actions are punishable by imprisonment. O.C.G.A. § 16-10-94(c).

A patient is entitled to trust her physician and rely on what he tells the

patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App.

452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, Grady's and Northside's

decisions to hide information from O'Neill manifests fraud given it is clear when

reading O'Neill's medical record from Grady and Northside that the medical

record is based on information that is not contained in O'Neill's medical records.

In fact, there is no factual support for numerous statements written in O'Neill's

medical records, and it is clear that Grady's and Northside's basis for several statements in O'Neill's medical records is due to conversations Grady and Northside had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to Grady and Northside about O'Neill behind her back.

### POINT III:  DEFENDANTS LIED TO O'NEILL.

The only support for the baseless opinions in O'Neill's medical records are the providers own personal judgment.  Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so.  Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).  "Reliability cannot be established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony in the form of conclusory

16

statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996). It is clear when reading O'Neill's medical records from Grady and Northside that her medical records are based on information that is not contained in her medical records. Instead, Grady's and Northside's medical records are filled with nothing more than *ipse dixit* opinions based on false information provided to Grady and Northside about Plaintiff without O'Neill's knowledge or consent and despite the fact that a physician's recorded recollection of a patient's medical history, which contain medical opinions of third parties are inadmissible as a medical record in litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424. Likewise, nothing in *Daubert* or statutes governing admission of expert testimony requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012, 317 Ga.App. 795, 733 S.E.2d 7. Thus, not only did Northside and Grady violate O'Neill's privacy rights, but Northside and Grady also produced *ipse dixit* records that are inadmissible in court because

17

the statements in the records are not supported by facts contained in the records.

*Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424.

## POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE CRIMINAL ACTS.

The alteration and / or falsification of medical records is a crime in most states, and is usually dealt with harshly.  *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45.  Alteration of medical records is usually treated as a misdemeanor, but can be a felony if done intentionally and willfully.  *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45.

Alteration of a patient's record by a doctor for the purpose of defeating an actual or potential claim "is reprehensible and evidences a moral deficiency and disregard for the rights of others that [courts] regard as odious and repugnant." *Paris v. Michael Kreitz, Jr.,* 75 NC App 365, 331 SE2d 234 P.A., (1985).  In most cases the act of requesting copies of a client's hospital records by an attorney investigating a claim triggers a health care provider's apparent need to alter medical records to affect the outcome of the investigation.  *Langager v. Lake Havasu Community Hospital,* 799 F2d 1354, 135 (1986, CA9 Ariz).

A strong inference of *consciousness of guilt* arises where a health care provider is unable to produce the patient's original clinical record concerning the

18

patient's treatment.  *Thor v. Boska*, 38 Cal App 3d 558, 113 Cal Rptr 296 (1974, 2nd Dist).  Similarly, if the jury is satisfied that the health care provider intentionally altered a patient's records, it can infer that the purpose in falsifying the documents was fraudulent, and the jury can further infer that accurate medical records would have been unfavorable to the provider's interests.  *Pharr v. Cortese,* 147 Misc 2d 1078, 559 NYS2d 780 (1990).

## POINT V:  DEFENDANT'S CONDUCT IS ILLEGAL.

O'Neill learned in June of 2020 that Wilder claimed to have a power of attorney to control her healthcare.  In addition, in August of 2020, Watson, claimed that said power of attorney had "been through the courts."  When O'Neill pointed out that O'Neill had never signed any agreement with Wilder, and all Watson's claims were entirely false, O'Neill was informed in August that O'Neill "lost" her copy of the agreement.  Setting aside the fact that Wilder and Watson are stalking O'Neill and telling ridiculous lies about O'Neill, if the Power of Attorney Watson claims O'Neill signed was indeed legitimate, which of course it is not, then Wilder or Watson would simply send a copy to O'Neill in the mail and call her on her phone rather than stalk O'Neill, lie, and claim O'Neill "lost" her copy.

Moreover, even though Watson claims to be an attorney, she ignores the law.  Specifically, HIPAA requires healthcare organizations to keep copies of any

19

medical release forms to release medical information on file for six years.  CFR §164.316(b)(2)(i).  Thus, if Wilder really did have a Power of Attorney, and Watson really did have a legal right to make phone calls to healthcare organizations when O'Neill was having rape exams performed, then those medical release forms would be kept on file with each healthcare organization.  Yet, no hospital has stated it has any authorization or Power of Attorney on file, or that any person has any right to make healthcare decisions about O'Neill.

In addition, even if someone says he has a Power of Attorney, when a health care provider reasonably believes that an individual, has been or may be subjected to domestic violence, abuse or neglect by the personal representative, or that treating a person as an individual's personal representative could endanger the individual, the covered entity may choose not to treat that person as the individual's personal representative, if in the exercise of professional judgment, doing so would not be in the best interests of the individual.[29]  Among other things, providers face legal liabilities for depriving others of healthcare.  In addition, the person who claims to have a Power of Attorney and is depriving O'Neill of healthcare, faces liability for depriving O'Neill of healthcare.

---

[29]https://www.hhs.gov/hipaa/for-professionals/faq/220/can-i-access-medical-record-with-power-of-attorney/index.html

20

In addition, as a general principle, courts will not enforce illegal contracts. Restatement, Contracts § 598 (1932). See generally 5 Williston, Contracts §§ 1628, 1630 (Rev. ed. 1937). A contract is illegal if the circumstances of its formation or any of its provisions is prohibited by statute or contrary to public policy. Restatement, Contracts § 512 (1932). Thus, if the method of securing the contract, the promised performance or the method of performance contemplated, or the consideration are illegal, then the whole contract is illegal. *Bothwell v. Buckbee, Mears Co.*, 275 U.S. 274 (1927); *Cook v. Wolverine Stockyards Co.*, 344 Mich. 207, 73 N.W.2d 902 (1955).

Even if the promised performance is not illegal in itself, the contract is illegal if binding oneself to such performance is prohibited by statute or contrary to public policy. *Jordan v. Nationstar Mortgage, LLC*, 185 Wash. 2d 876, 374 P.3d 1195 (2016). In addition, mandatory rules of law prohibit the contracting of certain terms as violating public policy. *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, 346 P.3d 1136 (N.M. 2015). Here, there is no Power or Attorney that would allow Grady and Northside to violate HIPAA and state statutes.

Since HIPAA and state statutes state O'Neill has a right to the information she requested in her June 2022 letters, Grady and Northside must send her the information she requested or letters denying her requests since there is no legally

21

enforceable contract, Power of Attorney, or authorization Wilder or Watson could possess that would deprive O'Neill of her rights under HIPAA and state laws. Powers of Attorney, authorizations, or medical release forms that contain provisions specially prohibited by law are void and nonenforceable. *Rape v. Poarch Band of Creek Indians*, 2017 WL 4325017 (Ala. 2017). One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198 (11th Cir. 2019).

The Uniform Power of Attorney Act, which was enacted in Georgia and 25 other states shows that nothing in the Act allows the attorney to be empowered to refuse medically beneficial treatment, and an attorney seeking to deprive someone of treatment has led to litigation. § 11:2. Durable Power of Attorney or Proxy, Patient Care Decision-Making. Thus, even if Wilder and Watson had a Power of Attorney, under Georgia law, Grady and Northside were not legally allowed to refuse O'Neill medically beneficial treatment, including testing of her urine samples and medical records that contained the information O'Neill provided to triage nurses, ER nurses, and healthcare providers. Likewise, New York law required the agent act in Plaintiff's best interests. *Stein v. County of Nassau*, 642 F. Supp. 2d 135 (E.D. N.Y. 2009). Thus, the Hospital Defendants and Wilder team

had no legal right to alter O'Neill's medical records after she left the Hospital

Defendants' premises to change O'Neill's medical records to contain stupid stories

from Wilder and his rapist associates.  Given Wilder's and his rapist associates'

stories are based on fake accounts set-up in O'Neill's name without her knowledge

or consent and used to illegally impersonate Plaintiff, and videotapes of O'Neill

when she was drugged, it was clearly criminal for Grady and Northside to change

O'Neill's statements to the nurses, doctors and other healthcare providers to the

stupid mental health lies told by Wilder team in O'Neill's medical records.

**B. Business Associates**

The HIPAA Privacy, Security, and Breach Notification Rules apply to both

healthcare providers and their business associates.  A "business associate" is

generally a person or entity who "creates, receives, maintains, or transmits"

protected health information (PHI) in the course of performing services on behalf

of the covered entity (*e.g.*, management; billing personal; health record vendors;

lawyers; accountants; and malpractice insurers).  45 CFR 160.103.  Business

associates must comply with HIPAA, and HHS is required to impose HIPAA

penalties if a business associate acts in violation of statutes. 45 CFR § 160.401 and

164.404.  Thus, even if Grady or Northside have two sets of records like Beth

Israel / MSHS, Grady's and Northside's business associates are subject to

HIPAA's rules.  Thus, legally, neither Grady or Northside can use a lawyer, a parent company, or related entity to hide information from O'Neill.

## POINT VI:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

An injunction under O.C.G.A. § 9-5-1 may be granted where there is controversy between parties and one of them is committing an act or threatening the commission of an act that will cause irreparable injury or destroy the status quo of the controversy before a full hearing can be had on the merits of the case. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969), appeal dismissed, 441 F.2d 1079 (5th Cir. 1971).  Such is the case here.  As described above, Grady and Northside are failing to comply with state and federal laws and O'Neill faces irreparable injury as a result.  O'Neill cannot accurately amend her complaint without the information she requested in her June 2022 letters.

An injunction serves to restrain any act contrary to equity and good conscience, and for which no adequate remedy at law is provided. *Waycross Military Ass'n v. Hiers*, 209 Ga. 812, 76 S.E.2d 486 (1953).  Here, since Grady and Northside are refusing to comply with state and federal laws, O'Neill has no option but to ask the court to enjoin Grady and Northside from continuing to withhold the information Plaintiff requested in her June 2022 letters.  Under the law, Grady and

Northside do have rights to withhold information, however, both Grady and Northside must send O'Neill plain language denial letters stating their reasons for denying access to information.  45 CFR 164.524(a)(2)-(4).

It is not the function of an injunction to decide a case on merits, and the possibility that the party obtaining an injunction may not win on the merits is not determinative of the propriety or validity of the court's granting the injunction. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969).  Rather, each case must be determined on its particular allegations, and must be decided on the nature, extent, and kind of equitable relief sought.  *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 277 S.E.2d 646 (1981).  Thus, the only determination this court needs to make is whether Grady and Northside are violating the state and federal statutes referenced above and in the foregoing motion.  Clearly, the answer is yes and an injunction is necessary.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **GRANT** the motion and grant such other further relief the Court deems equitable.

25

Dated:  Alexandria, VA
October 6, 2022

Respectfully submitted,


BY: _Maura O'Neill_____
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MAURA O'NEILL,**<br><br>           Plaintiff,<br>     v.<br><br>**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**<br><br>           Defendants. | **CIVIL ACTION FILE NO.:**<br>**1:22-cv-00011-SEG** |

**LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned certifies that the within and foregoing **MEMORANDUM OF LAW AND MOTION TO ENJOIN** were prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

27

Dated:  Alexandria, VA
October 6, 2022

Respectfully submitted,


BY: *Maura O'Neill*

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moncill@rahillco.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MAURA O'NEILL,**

       Plaintiff,

  v.

**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**

      Defendants.

**CIVIL ACTION FILE NO.: 1:22-cv-00011-SEG**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing and mailing a copy of the foregoing to each Defendant at the following addresses:

29

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail:  rowlen@lbbslaw.com
E-Mail:  chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

in accordance with Rule 5(b)(2)(E).

**SCRUDDER, BASS, QUILLIAN, HORLOCK,**
**LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway
Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated: Alexandria, VA          Respectfully submitted,
October 6, 2022

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com