**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 18 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**MAURA O'NEILL,**

　　　　　Plaintiff,

　　v.

**NYU LANGONE HOSPITALS,
NEW YORK- PRESBYTERIAN
HOSPITAL QUEENS, LENOX
HILL HOSPITAL, GRADY
MEMORIAL HOSPITAL
CORPORATION, MOUNT SINAI
BETH ISRAEL, NORTHSIDE
HOSPITAL, INC., COLLEGE
PARK POLICE DEPARTMENT,**

　　　　　Defendants.

**CIVIL ACTION FILE NO.:**
1:22-cv-00011-SEG

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
FROM NORTHSIDE HOSPITAL, INC.**

---

October 18, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Maura O'Neill ("Plaintiff") respectfully submits this memorandum of law in opposition to motion to dismiss (the "Motion") filed by Defendant Northside Hospital, Inc. ("Northside") (Docket No. 50-1).

## PRELIMINARY STATEMENT

On August 9, 2022, Northside filed a Memorandum of Law in Support of Defendant Northside Hospital Inc.'s Motion to Dismiss (the "Dismiss Memo") (Docket No. 50-1), and an affidavit from Cheryl Pruitt (Docket No. 51-2). In the Dismiss Memo, Defendant falsely claimed Plaintiff's summons and complaint were not properly served, and Northside was never served because the process server hired by Plaintiff, Jason Garmon (GA CPS #356), served Cheryl Pruitt, a secretary at Northside. Serving a secretary in the administration department of a hospital is not in and of itself improper service. Rather, the courts have held, it is not necessary that the employee served be an officer or manager. Instead, all that is necessary is that the employee served has the authority to accept service and ability to inform her corporate principal that process has been served.

Plaintiff filed a motion for a hearing and subpoena to prove that not only was Northside served on April 4, 2022 in compliance with applicable laws, but Northside has deliberately and willfully embarked on a pattern of behavior to deceive both Plaintiff and the Court. (Docket No. 79). Along with that motion,

1

Plaintiff filed an affidavit from Jason Garmon, the process server hired by Plaintiff to serve Northside. (Docket No. 79-1).

On August 26, 2022, in a conversation with Plaintiff, Garmon stated that he distinctly remembered Pruitt informing him she was authorized to accept service on behalf of Northside, and Northside was properly served in compliance with applicable laws. Garmon will testify at the hearing that Pruitt stated she had authority to accept the summons, complaint, and civil cover sheet, and Northside was properly served.

On the other hand, Pruitt's affidavit contained questionable statements, including that she did not "recall," being served with a 60+ page complaint. Clearly, 60+ page complaints do not walk away on their own. Garmon arrived at Northside a little after 8:30 AM on April 4, 2022 and had all day to serve the initiating papers. Garmon is certified by the state of Georgia to serve process. It is not believable that Garmon would not know to ask if Pruitt could accept service, nor is it believable that a 60+ complaint simply walked away on its own. Rather, Garmon informed Plaintiff on August 26, 2022 that he explicitly asked Pruitt if she was authorized to accept service, as he always does when he is serving businesses, and Pruitt stated she was authorized to accept process. Thus, while according to Pruitt's own affidavit she "cannot recall" receiving a copy of the Summons,

Complaint and Civil Cover Sheet, Garmon distinctly remembers meeting Pruitt, and Pruitt informing him she was authorized to accept service on behalf of Northside.

On August 17, 2022, Plaintiff served a motion to compel each of the Hospital Defendants to produce information The Health Insurance Portability and Accountability Act ("HIPAA") required the Hospital Defendants to produce, but which each Defendant, including Northside, failed to produce (Docket No. 58). Not only is it not typical for hospitals to violate HIPAA laws and fail to provide the information O'Neill requested as described in the Motion to Compel (Docket No. 58), but hospitals typically provide the information O'Neill requested within only a few days because failing to do so warrants corrective action from the Department of Health and Human Services ("HHS").  Georgia statutes and HIPAA stated Northside had 30 days to respond to O'Neill's June 2022 requests for information, however, Northside violated HIPAA statutes weeks ago, in coordination and collusion with the other hospital Defendants in this action as described in the subsequent Motion to Enjoin Plaintiff filed (Docket No. 87-1).

In the Dismiss Memo, Northside also claimed O'Neill's claims should be dismissed because according to Northside, "Plaintiff failed to plead facts and allegations sufficient to show that Plaintiff is entitled to relief under both Fed. R.

3

Civ. P. 8(a)(2) and 9(b), and …failed to attach an expert affidavit to the Complaint as required by Georgia law. (Docket No. 50-1, Page 2, ¶1)."  Northside further claimed, Plaintiff was required to "allege (1) the precise misrepresentations made, (2) the time, place, and person responsible for the statement, (3) the content and manner in which the statements misled her, and (4) what the defendant gained from the fraud." (Docket No. 50-1, Page 11, ¶1).  However, Northside is incorrect on all points as a matter of law.

In determining whether a plaintiff has satisfied Rule 9(b), courts consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control.  Here, O'Neill's pleading reflect the fact Northside is currently violating both state and federal law and failing to follow statutory regulations and provide basic information to Plaintiff as described in Plaintiff's Motion to Enjoin (Docket No. 87-1).  Thus, there are deficiencies in O'Neill's pleadings, but those deficiencies are because certain information is in Northside's exclusive control as described in the Motion to Enjoin (Docket No. 87-1).  O'Neill pled facts and will pled additional facts in her Amended Complaint to the extent she is able based on the information she has.  However, Northside's violations of state and federal laws have hampered O'Neill's ability to state her fraud and RICO claims with particularity.  Thus, Northside's claim O'Neill did not

state her fraud and RICO claims with particularity pursuant to Rule 9(b) is not just hypocritical, but utterly ridiculous in light of the fact Northside is violating federal and state statutes by failing to provide O'Neill with information about her health Plaintiff is entitled to see under state and federal laws.

Northside's decision to hide information from O'Neill manifests constructive fraud given it is clear when reading O'Neill's medical record from Northside that the medical record is based on information that is not contained in O'Neill's medical record.  Thus, Northside was incorrect as a matter of law when it stated O'Neill failed to properly state a claim for fraud by stating what misrepresentations Northside made.  The patient-physician relationship is a relationship of trust and confidence.  Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that a defendant make some actual misrepresentation.  Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation.  Thus, while Northside claimed O'Neill had to prove actual fraud as defined by O.C.G.A. § 23-2-51, O'Neill's only duty is to plead constructive fraud under O.C.G.A. § 23-2-51.

## **LEGAL ARGUMENT**

## **POINT I: DEFENDANT FAILED TO CONFORM WITH THE STANDARD OF REVIEW.**

### **A. Standard of Review**

A proposition that is at the heart of the application of the Rule 12(b)(6) motion is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader. *Mamani v. Berzain*, 825 F.3d 1304, 1306 (11th Cir. 2016). The burden is on the moving party to prove that no legally cognizable claim for relief exists. *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). Here, Defendant failed to meet its burden as described in more detail below and the Motion to Enjoin (Docket No. 87-1).

### **B. Plausibility Standard**

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not its merits. *Nelson v. Temple Univ.*, 920 F.Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of the plaintiff's claims, a court first identifies allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Because those allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]" in order to determine whether the complaint states a plausible claim for relief. *Wainberg v. Dietz & Watson, Inc.,* 2017 WL 5885840 (E.D. Pa. Nov. 28, 2017).

Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Here, there is no question that there are material issues of fact that remain to be resolved given Northside is fraudulently concealing information as described in the Motion to Enjoin (Docket No. 87-1). Given Northside is withholding information from O'Neill, and Northside's medical records are *ipse dixit*, and inadmissible in a court of law as described in the Motion to Enjoin (Docket No. 87-1, Page 12, ¶1), Plaintiff should

7

be afforded the opportunity to amended her pleadings, and incorporate the information Northside is illegally withholding from Plaintiff.

## POINT II: DEFENDANT WAS PRPOERLY SERVED.

Defendant falsely claimed in its Dismiss Memo that Plaintiff's summons and complaint were not properly served because the process server hired by Plaintiff served a secretary at Northside.  However, serving a secretary in administration does not constitute improper service.  Rather, the courts have held, "[i]t is not necessary that the employee in question be an officer or that he be authorized to enter into contracts on behalf of the corporation." *Ogles v. Globe Oil Co.,* 171 Ga. App. 785, 786 (320 SE2d 848) (1984); *Browning v. Europa Hair,* 244 Ga. 222, 224 (259 SE2d 473) (1979).   Instead, courts have determined that in order for an employee to be authorized to accept service on behalf of a corporation, it is necessary that the employee's position be "such as to afford reasonable assurance that he will inform his corporate principal that such process has been served." *Scott v. Atlanta Dairies Co-Op,* 239 Ga. 721, 724 (238 SE2d 340) (1977).

In cases where it was shown that the secretary to whom the process was delivered was knowledgeable about the procedures to be followed in such situations, courts have ruled service was proper. *Southwest Community Hosp. & c.v. Thompson,* 165 Ga. App. 442 (4) (301 SE2d 501) (1983).  Such was the case

8

here.  Given Pruitt is a secretary in the administration department at Northside, it was reasonable for the process server to assume that a secretary in administration would be knowledgeable about the procedures followed in legal service and would have followed Northside's guidelines.  Given Pruitt informed Garmon she was authorized to accept service on behalf of Northside, Garmon arrived at Northside a little after 8:30 A.M., and had all day to serve the initiating papers, it is not reasonable to believe that a state licensed process server hired by Plaintiff would simply drop a 60+ page complaint on a secretary's desk without the secretary noticing.  Thus, the excuse offered by Northside for failing to appear is simply  not credible.

### POINT III:  PLAINTIFF'S CLAIMS ARE NOT TIME BARRED.

Northside also claimed in its Dismiss Memo that given O'Neill did not properly serve Northside, her claims were time barred.  (Docket No. 50-1, Page 5, ¶2).  As described above, Northside was properly served.  However, even if Northside was not properly served, O'Neill's claims against Northside are not time barred.  Rather, O'Neill can also assert RICO claims against Northside under Georgia's state RICO cause of action.  OCGA § 16-14-8 provides a five-year statute of limitation for a civil action brought for RICO violations.  That statute provides that a civil action "shall be commenced up until five years after the

conduct in violation of a provision of this chapter terminates."  Given the conduct

has still not terminated and Northside is continuing to fraudulently conceal

information from O'Neill as described in the Motion to Enjoin (Docket No. 87-1,

Page 24, ¶1-Page 25), under the Georgia RICO statute, Plaintiff's claims are

timely.

## POINT IV:  DEFENDANTS LIED TO O'NEILL.

### A.  Ipse Dixit

The only support for the baseless opinions in O'Neill's medical records

from Northside are the providers own personal judgment.  Thus, O'Neill's medical

records from rape exams present shining examples of *ipse dixit*--i.e., the expert

claims that it is so merely because he says that it is so.  Yet, without more than

credentials and a subjective opinion, an expert's testimony that 'it is so' is not

admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

"Reliability cannot be established by the mere *ipse dixit* of an expert." *United*

*States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).  "[W]hen an expert

opinion is based on data, a methodology, or studies that are simply inadequate to

support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of

that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381,

396-397 (2d Cir. 2005).  "'Presenting a summary of a proffered expert's testimony

10

in the form of conclusory statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996). It is clear when reading O'Neill's medical records from Northside that her medical records are based on information that is not contained in her medical records. Instead, Northside's medical records are filled with nothing more than *ipse dixit* opinions based on false information provided to Northside about Plaintiff without O'Neill's knowledge or consent and despite the fact that a physician's recorded recollection of a patient's medical history, which contain medical opinions of third parties are inadmissible as a medical record in litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424. Likewise, nothing in *Daubert* or statutes governing admission of expert testimony requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012, 317 Ga.App. 795, 733 S.E.2d 7. Thus, not only did Northside violate O'Neill's privacy rights, but Northside also produced *ipse dixit* records that are inadmissible in court because the statements in the records are not supported by

11

facts contained in the records. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178

Ga.App. 409, 343 S.E.2d 424.

## B. Statute Violations

A contract provision is unenforceable if it fails to comply with existing,

governing statutory requirements by attempting to provide fewer rights than legally

mandated by such statute, as "one cannot do indirectly that which the law does not

allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–

30, 430 S.E.2d 98, 102 (1993). O'Neill has never been in a relationship with

Wilder, never had a conversation with him outside Deutsche Bank's office, and

would never agree to be alone outside of Deutsche Bank with a psychopath like

Wilder. Any claim O'Neill has voluntarily even had a "personal" conversation

with a sick freak like Wilder is lie.

The ridiculous "Power of Attorney," Wilder's sick and depraved attorney

claims to possess is also illegal. Northside, Wilder, Deutsche Bank, and each of

the Hospital Defendants are prohibited by statute from depriving O'Neill of the

information she requested in her June 2022 letters as described in the Motion to

Compel. (Docket No. 58, Page 9, ¶1-Page 17). Yet, Northside is fraudulently

concealing information from Plaintiff as described in O'Neill's Memorandum of

Support of her Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7). Northside's

ridiculous claim O'Neill's valid requests under HIPAA and Georgia law constitute "discovery" is a farce.  Northside has no legal right to violate statutes, but is doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Northside is not allowed to hide information about O'Neill's health from her because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute.  *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).

The ridiculous "Power of Attorney" Wilder claims to have would also be unenforceable in the state of New York because it "violates a statute imposing a penalty."  *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926 N.Y.S.2d 140 (2d Dep't 2011) (violation of GBL § 771);  *Akers v. Mutual Life Ins. Co. of New York*, 59 Misc. 273, 112 N.Y.S. 254 (Sup 1908).  Thus, Northside has no legal means of withholding information from O'Neill.

## POINT V:  PLAINTIFF COMPLIED WITH PLEADING STANDARDS TO THE EXTENT POSSIBLE.

In the Dismiss Memo, Northside also claimed "Plaintiff's Complaint fails to satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b)." (Docket No. 50-1, Page 5, ¶1).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances

13

constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In "determining whether a

plaintiff has satisfied Rule 9(b), courts may consider whether any pleading

deficiencies resulted from the plaintiff's inability to obtain information in the

defendant's exclusive control." *George v. Urban Settlement Servs.*, 833 F.3d

1242, 1255 (10th Cir. 2016).  This reflects the principle that "Rule 9(b) does not

require omniscience; rather the Rule requires that the circumstances of the fraud

be pled with enough specificity to put defendants on notice as to the nature of the

claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012).

In the case of *Polukoff v. St. Mark's Hosp.*, the district court dismissed

Polukoff's allegations against a defendant under Rule 9(b) because "vital

information regarding who knew what and when they knew it [was] missing."

*Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018).  However, the

appeals court reversed and ruled that the court excuses deficiencies that result

from the plaintiff's inability to obtain information within the defendant's exclusive

control. *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir.

2016).  The appeals court noted that the type of information defendant claimed

plaintiff failed to plead under Rule 9(b) was precisely the type of evidence that is

"in the defendant's exclusive control." *Polukoff*, 895 F.3d at 745.  Thus, the

appeals court noted that defendants were surely on notice of plaintiff's claims and

14

"the factual ground upon which [they] are based." *Id.* Thus, Polukoff's amended complaint satisfied Rule 9(b). As described at length in the Motion to Enjoin (Docket No. 87-1, Page 24, ¶1-Page 25), such is the case here.

In addition, here, Northside failed to specify that O'Neill failed to identify necessary information that was squarely within her knowledge, such as the dates, locations, and identities of relevant actors who called Northside, and bribed Northside to produce *ipse dixit* medical records. *Li v. Colorado Reg'l Ctr. I, LLC*, No. 21-1232, 2022 WL 4127202, (10th Cir. Sept. 12, 2022). Northside, of course, did not specify that O'Neill failed to specify information that was squarely within her knowledge because Northside knew O'Neill had no idea of the dates, times, and specific person that called Northside to harm O'Neill, which is why Northside has made an effort to fraudulently conceal information from O'Neill as described in the Motion to Enjoin (Docket No. 87-1, Page 11, ¶2-Page 14, ¶1).

Given Northside's ongoing fraudulent concealment, Northside's claim O'Neill failed to fulfill the heightened pleading standards of Rule 9(b) is not only hypocritical, but laughable. Northside's medical record is *ipse dixit*, inadmissible in a court of law, and it is unclear precisely how Northside is fraudulently concealing information. In addition, Plaintiff has no way of determining who called Northside, and what specific information Northside received from the

unknown and unnamed third parties.  While Georgia statutes require Northside to

specify late entries and specify who precisely it received information from

(Docket No. 87-1, Page 13, ¶1), Northside made no effort to do so because

Northside was intent on collecting money to aid Wilder and harm O'Neill.

Northside never specified what basis Northside used for the stupid claims

contained in O'Neill's medical record.  Thus, Northside's claim O'Neill failed to

meet the heightened pleading standard of Rule 9(b) is not only laughable, but

completely hypocritical.

 As described above and in the Motion to Enjoin (Docket No. 87-1, Page 17,

¶1), on the one hand, Northside commit fraud by sending an *ipse dixit* medical

record that contains absolutely no support for the false claims made about

Plaintiff in the medical record.  Yet, on the other hand, Northside claims in its

filings that O'Neill failed to meet heightened pleading standards under Rule 9(b).

The fact Northside believes it is acceptable to hold O'Neill to Higher and

Different standards that no human would be able to attain is not only hypocritical,

but sick given Northside's fiduciary duty and statutory requirements under both

HIPAA and state laws to disclose to O'Neill all the information Northside

maintains about Plaintiff's health as described in the Motion to Enjoin (Docket

No. 87-1, Page 11, ¶2-Page 14, ¶1).

## POINT VI:  PLAINTIFF HAS VALID FRAUD CLAIM.

Northside also claimed O'Neill's fraud claimed failed because "Plaintiffs who allege fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  According to Northside, this requires the plaintiff to "allege (1) the precise misrepresentations made, (2) the time, place, and person responsible for the statement, (3) the content and manner in which the statements misled her, and (4) what the defendant gained from the fraud." (Docket No. 50-1, Page 11, ¶1).  However, Northside is incorrect as a matter of law.

Among other things, Northside confused actual and constructive fraud even though both are defined by statute.  O.C.G.A. § 23-2-51.  Specifically, Northside claimed O'Neill had to prove actual fraud as defined by O.C.G.A. § 23-2-51, when in fact her only duty is to show constructive fraud.  O.C.G.A. § 23-2-51. The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician.  Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that defendant make some actual misrepresentation.  Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d

868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Here, given Northside is failing to produce information as described in the Motion to Enjoin (Docket No. 87-1, Page 24, ¶1-Page 25), there is no question it was and is Northside's specific intent to lie to O'Neill and fraudulently conceal information.

The Court of Appeals found evidence of intent to conceal in the case of *Quattlebaum v. Cowart*. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987). In that case, the defendant did not advise his patient that defendant had failed to connect the left hepatic duct to the small intestine. In furtherance of the fraud, the physician, prepared misleading and incorrect medical records on this point. The court found a reasonable inference of a knowing concealment and cover-up, not just a mere misstatement. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987).

18

Given Northside's medical record and treatment decisions make clear Northside relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals Northside spoke to about O'Neill, and the details of Northside's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501.

A patient is entitled to trust her physician and rely on what he tells the patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, Northside's decisions to hide information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from Northside that the medical record is based on information that is not contained in O'Neill's medical records. In fact, there is no factual support for numerous statements written in O'Neill's medical records, and it is clear that Northside's basis for several statements in O'Neill's medical records is due to conversations Northside had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to Northside about O'Neill behind her back.

A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not

allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).  O'Neill has never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder.  Any claim Plaintiff voluntarily even had a "personal" conversation with a sick freak like Wilder is lie.  The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal.

Northside, Wilder, Deutsche Bank, and each of the Hospital Defendants are prohibited by statute from depriving O'Neill of the information she requested in her June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page 9, ¶1-Page 17).  Yet, Northside is fraudulently concealing information from O'Neill as described in my Memorandum of Support of my Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).  Northside has no legal right to violate statutes, but is doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Northside is not allowed to hide information about Plaintiff's health from her because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute. *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102

(1993).  Thus, Northside has no legal means of withholding information from O'Neill.

## POINT VII: PLAINTIFF HAS VALID RICO CLAIM.

In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *American Dental Ass'n. v. Cigna Corp.*, 605 F. 3d at 1290-1291.  Northside commit the following predicate acts:

- In violation of 18 U.S.C. § 1512 (c)(1), on or about January 24, 2018, ran a fake test on O'Neill's urine sample to persuade her not to have a rape kit taken to ensure O'Neill would not have evidence that Wilder drugged, assaulted and sex trafficked O'Neill.

- In violation of 18 U.S.C. § 1512 (b)(3), on or about January 24, 2018, Northside hindered, delayed, and prevented O'Neill's communication to a law enforcement officer about information relating to the commission or possible commission of the Federal offense of sex trafficking by faking the test of her urine sample.

- In violation of Section 102 of the Controlled Substances Act, on or about January 24, 2018, Northside concealed Wilder's use of controlled substances

that Wilder illicitly used to drug O'Neill.

- In violation of 18 U.S.C. § 1341, Northside sent an *ipse dixit* copy of O'Neill's medical record via mail to O'Neill in May of 2021.  Sending the fraudulent medical record via mail constituted one predicate act and instance of mail fraud under the RICO statute.

Thus, Northside clearly exhibited a "pattern" as required by the RICO statute.  The Eleventh Circuit has ruled that those merely "associated with" an enterprise – who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity, are liable under the RICO statute.  Thus, Northside is liable for its predicate acts.  *Bank of America National Trust and Savings Ass'n. v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir. 1986).

### POINT VIII: PLAINTIFF PLED INTENT, NOT NEGLIGENCE.  NO AFFIDAVIT WAS REQUIRED.

The medical records Northside produced are *ipse dixit* and inadmissible in a court of law.  In fact, Northside's medical records are so farcical that they do not read as if they were written by medical professionals.  Instead, the medical records read as if they were written by lawyers making a ham-fisted attempt to cover-up for Wilder and Northside's complicit malfeasance.

The rules governing the inadmissibility of *ipse dixit* medical records were

22

written by lawyers.  No affidavits were required for lawyers to describe what an *ipse dixit*, inadmissible medical record entails.  Northside's medical records contain no factual support for the stupid claims made in the medical record.  Thus, as a matter of law, O'Neill is not required to file an affidavit because an expert is not needed to state that there is no factual support for the stupid claims written in O'Neill's *ipse dixit* medical record.

Further, O'Neill did not plead negligence.  She pled intent.  It is simply not believable Northside employs medical providers that are as stupid as O'Neill's medical records make them appear.  There is a process for diagnosing medical conditions, and Northside failed to even pretend to follow that process because it looks like the medical records were written by attorneys, not clinicians.  Given Northside's medical records rely on information from third parties, and fail to note what third parties provided information to Northside, there is no question that Northside intended to produce *ipse dixit* medical records.  Thus, no affidavit is necessary.

## POINT IX: PLAINTIFFS SHOULD BE GIVEN EVEFY OPPORTUNITY TO CURE PLEADING DEFECTS.

Plaintiff intends to alter her complaint.  However, in order to modify her Complaint, O'Neill needs the Hospital Defendants, including Northside, to

23

produce the information O'Neill requested in her Motion to Enjoin. (Docket No. 87-1, Page 24, ¶1-Page 25).  O'Neill informed the court in her Motion for Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2), the fact Northside has failed to comply with HIPAA and state laws has created additional complications for O'Neill.  Northside is blatantly lying by claiming the information O'Neill sought in letters she sent in June 2022 constituted "discovery," (Docket Nos. 63).

As noted in the Motion for Extension of Time (Docket No. 60) filed in August of 2022, filing an Amended Complaint and responding to Northside's motions to dismiss has been a waste of time for both Plaintiff and Northside at this juncture given Northside has failed to comply with HIPAA and state statutes, and Northside failed to send O'Neill the information she requested as described at length in Plaintiff's Motion to Compel (Docket No. 58).  Thus, O'Neill also asked the Court to delay the deadline for O'Neill to file an Amended Complaint until after she received the information she requested from Hospital Defendants as described in Plaintiff's in her Motion for Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2).

Despite the fact O'Neill made clear in the Motion to Compel (Docket No. 58, Page 7, ¶1- Page 17, ¶1), that Hospital Defendants were violating both state and federal statutes, the Court completely ignored the facts presented by

24

Plaintiff in the Motion to Compel (Docket No. 58) and Motion for an Extension

to Time (Docket No. 60).  Given this court ignored her request, O'Neill will file

a motion pursuant to Rule 15(a)(2) and Rule 15(d).

In determining whether to grant a Rule 15(a) motion to amend, the Supreme

Court stated the standard, "If the underlying facts or circumstances relied upon by

a plaintiff may be a proper subject of relief, he ought to be afforded an

opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. at 182, 83

S. Ct. at 230.  A plaintiff typically will not be precluded from amending a

complaint in order to state a claim or from adding a claim to an otherwise proper

complaint. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d

496 (4th Cir. 1987).  Plaintiffs are allowed "multiple opportunities to state a

claim." *Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95 (2d Cir.

2020).  This approach "ensures that a particular claim will be decided on the

merits rather than on technicalities." *Dole v, Arco Chem. Co.*, 921 F.2d 484,487

(3d Cir.1990).  Thus, O'Neill should be allowed to amend her complaint,

particularly in light of the fact Northside is fraudulently concealing information

from O'Neill that she has a right to see under HIPAA and state laws as described

in the Motion to Enjoin.  (Docket No. 87-1).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **DENY**

the motion and grant such other further relief the Court deems equitable.

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM**

**OF LAW IN OPPOSITION TO MOTION TO DISMISS** were prepared using

Times New Roman 14 point font in accordance with Local Rule 5.1 of the United

States District Court for the Northern District of Georgia.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and

correct copy of the foregoing by emailing and mailing a copy of the foregoing to

each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail:  rowlen@lbbslaw.com
E-Mail:  chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK,
LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway, Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated:  Atlanta, GA                              Respectfully submitted,
October 18, 2022


BY: _____
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com