# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 18 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**MAURA O'NEILL,**

       Plaintiff,

  v.

**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**

      Defendants.

**CIVIL ACTION FILE NO.:**
1:22-cv-00011-SEG

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FROM GRADY MEMORIAL HOSPITAL CORPORATION

---

October 18, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Maura O'Neill ("Plaintiff") respectfully submits this memorandum of law in opposition to motion to dismiss (the "Motion") filed by Defendant Grady Memorial Hospital Corporation ("Grady") (Docket No. 24-1).

## PRELIMINARY STATEMENT

Separate but equal. During a dark phase in American history, separate but equal was regarded, not simply as a valid legal doctrine, but as constitutional law, supported by the Supreme Court, to deprive one group of people of its constitutional rights. *Plessy v. Ferguson*, 163 U.S. 537, 538, 16 S. Ct. 1138, 1138, 41 L. Ed. 256 (1896). Separate is of course, not equal, and the systems of inhumane discrimination separate but equal authorized remains a stain on American history. Here, Grady and the Defendants in this action have employed another system, "Higher and Different." Under the illegal and unconstitutional Higher and Different farce, Plaintiff is held to Higher and Different standards that not only do not exist, but are in fact so farcical that they are untethered to reality, let alone any legal or ethical standard.

Worse, at the same time Plaintiff is held to farcical Higher and Different standards that simply do not exist for other people, Grady repeatedly violated Plaintiff's most basic human rights, broke numerous federal and state laws, destroyed evidence, and commit criminal acts; all in order to protect a man who

1

has racked up more signed legal agreements per year than Harvey Weinstein to silence the women he raped and abused.[1]

On April 25, 2022, Grady filed a Memorandum of Law in Support of Defendant Grady Memorial Hospital Corporation's Motion to Dismiss Plaintiff's Complaint (the "Dismiss Memo") (Docket No. 24-1).  In the Dismiss Memo, Grady repeatedly employed the Higher and Different standard, and held Plaintiff to Higher and Different standards that are impossible to attain given Grady's violations of state and federal laws.  More specifically, Grady claimed Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because according to Grady: (1) O'Neill's claims are inadequately pled under Fed. R. Civ. P. 8(a)(2) and the heightened pleading requirement under Fed. R. Civ. P. 9(b), (2) O'Neill failed to properly state the five elements in a cause of action for fraud and her fraud claim also failed to meet the heightened pleading standard of Fed. R. Civ.

---

[1]When *The New York Times* published its article on October 5, 2017 that played a large part in Harvey Weinstein's downfall, the *Times*, after months of investigation, had been able to track down eight settlement agreements Weinstein signed with his victims.  Kantor, Jodi; Twohey, Megan. "Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades." *The New York Times.* October 5, 2017. O'Neill was informed Wilder has at least six or seven signed agreements with women he raped or abused.  At the time the *Times* article about Weinstein was published, Weinstein was 65 years old.  Wilder is only 49.  Thus, Wilder has accumulated more signed documents per year than Weinstein.

P. 9(b), (3) Plaintiff's RICO claim failed to plead that Grady and the other defendants shared a common purpose to commit fraud or violate Plaintiff's rights, (4) Plaintiff's RICO claim failed to allege Grady engaged in a pattern of racketeering activity, and (5) Plaintiff's claims are time barred. Overall, Grady also claimed O'Neill's complaint contains only conclusory allegations and legal recitations devoid of factual support and which do not rise to the level of plausibility necessary to defeat a Rule 12(b)(6) motion to dismiss. Grady is wrong, many of its arguments are hypocritical, and hold O'Neill to Higher and Different standards that are untethered to statutes, case law or even reality.

In determining whether a plaintiff has satisfied Rule 9(b), courts consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control. Here, O'Neill's pleading reflects the fact Grady is currently violating both state and federal law and failing to follow statutory regulations and provide basic information to Plaintiff as described in Plaintiff's Motion to Enjoin (Docket No. 87-1). Thus, there are deficiencies in O'Neill's pleadings, but those deficiencies are because certain information is in Grady's exclusive control as described in the Motion to Enjoin (Docket No. 87-1). O'Neill pled facts and will pled additional facts in her Amended Complaint to the extent she is able based on the information she has. However, Grady's violations

3

of state and federal laws have hampered O'Neill's ability to state her fraud and

RICO claims with particularity.  Thus, Grady's claim O'Neill did not state her

fraud and RICO claims with particularity pursuant to Rule 9(b) is not just

hypocritical, but utterly ridiculous in light of the fact Grady is violating federal and

state statutes by failing to provide O'Neill with information about her health

Plaintiff is entitled to see under state and federal laws.  There is no authority for

Grady to create a Higher and Different standards for O'Neill, but that is precisely

what Grady did even though Grady's medical record is *ipse dixit,* and it is

impossible for anyone to state facts that are not within her possession.

 In the Complaint, to satisfy legal requirements, O'Neill put Grady on notice

of her claims and the factual ground upon which her complaint is based to the

extent possible.  However, given Grady's ongoing fraudulent concealment of

material facts, there is simply information O'Neill is not able to plead due to

Grady's malfeasance and criminal conduct.

 Grady's medical record and treatment decisions make clear Grady relied on

conversations with third parties to make decisions about Plaintiff, thus the names

of all the individuals Grady spoke to about O'Neill, and the details of Grady's

conversations about O'Neill must be included in O'Neill's designated record sets

under 45 CFR § 164.501.  Since Grady is refusing to disclose that information, it is

clear Grady abused O'Neill, and refused to put a urine sample in O'Neill's rape kit to aid and abet Wilder even though a person commits the offense of tampering with evidence by ensuring evidence is destroyed which is precisely what Grady did by ensuring O'Neill's urine would not be tested to prove O'Neill was drugged. O.C.G.A. § 16-10-94(a).  Grady's actions in ensuring O'Neill's urine sample was destroyed and would not be tested is punishable by imprisonment. O.C.G.A. § 16-10-94(c).[2]

Grady's decision to hide information from O'Neill manifests constructive fraud given it is clear when reading O'Neill's medical record from Grady that the medical record is based on information that is not contained in O'Neill's medical record.  Thus, Grady was incorrect as a matter of law when it stated O'Neill failed to properly state a claim for fraud by stating the five elements of common law fraud.  The patient-physician relationship is a relationship of trust and confidence. Because of this confidential relationship, an exception arises to the requirement in

---

[2]In the Dismiss Memo, Grady appeared to pretend not to understand the importance or relevance of a urine sample.  Bodily fluids (e.g., blood and urine) contain evidence of illegal drugs and alcohol.  Evidence of drugs and alcohol can be detected long in urine samples than in blood samples.  Taking urine samples to prove someone was drugged is a routine part of drug facilitated sexual assault collection kits.  Thus, it is difficult to understand Grady's seeming lack of understanding of even the most basic requirements of legally procuring evidence of sexual assault.

typical fraud cases that a defendant make some actual misrepresentation.  Within

the confidential relationship, silence when the doctor should speak or failure to

disclose what should be disclosed constitute fraud as much as an actual

misrepresentation.  Thus, while Grady claimed O'Neill had to prove actual fraud as

defined by O.C.G.A. § 23-2-51, O'Neill's only duty is to plead constructive fraud

under O.C.G.A. § 23-2-51.

Grady's claim O'Neill's RICO cause of action should fail because Grady did

not commit two predicate acts is also without merit, given, as Grady is well aware,

Grady has commit several predicate acts.  Thus, Grady's claim Grady has not

exhibited a pattern of racketeering activity as required by the RICO statute is

without merit.

## LEGAL ARGUMENT

## POINT I: DEFENDANT FAILED TO CONFORM WITH THE STANDARD OF REVIEW.

### A. Standard of Review

A proposition that is at the heart of the application of the Rule 12(b)(6)

motion is that for purposes of the motion to dismiss, (1) the complaint is construed

in the light most favorable to the plaintiff, (2) its allegations are taken as true, and

(3) all reasonable inferences that can be drawn from the pleading are drawn in

favor of the pleader.  *Mamani v. Berzain*, 825 F.3d 1304, 1306 (11th Cir. 2016).

The burden is on the moving party to prove that no legally cognizable claim for relief exists.  *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012).  Here, Defendant failed to meet its burden.  Instead, in the Dismiss Memo, Grady lied.  Among other things, Grady falsely claimed Plaintiff stated the hospital failed to take a urine sample.  (Docket No. 24-1, Page 2, Footnote 1).  Instead, Grady refused to add O'Neill's urine sample to her rape kit for testing.  Rather than include the sample for testing in the evidence collection kit, Grady wheeled Plaintiff, who naueous and sick, on a gurney into the hall, and left her there with her urine sample under the gurney.  When O'Neill complained, she was told by a physician at Grady that Grady did not add urine samples to rape kits.  This was clearly one of many, many lies told by Grady.  By refusing to add the urine sample to the rape kit, Grady ensured the sample would not be tested for the drugs Wilder used to drug Plaintiff.  Thus, Wilder could claim that O'Neill had "consensual" sexual relations with Wilder even though Wilder broke into her hotel room and drugged her.  Thus, Grady destroyed evidence to ensure Wilder could claim there was "no evidence" he drugged and raped her.

In addition, Grady also lied when it claimed, "Plaintiff alleges she was drugged and raped in New York by a former co-worker at Deutsche Bank, apparently as early as 2005."  O'Neill never alleged Wilder raped in 2005.  Grady

7

is not entitled to make up its own facts and lie, yet that is precisely what Grady did.

(Docket No. 24-1, Page 2, ¶1).  Grady also ridiculously claimed that Plaintiff failed

to describe the rape, an absurd and utterly ridiculous claim given the who purpose

of rape drugs is to erase the victim's memory.  No one given certain rape drugs has

any memories of being raped.  Thus, yet again, Grady held O'Neill to inhuman

standards no human could possibly reach.

**B. Plausibility Standard**

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of

the complaint, not its merits.  *Nelson v. Temple Univ.*, 920 F.Supp. 633, 634 n.2

(E.D. Pa. 1996).  To survive a 12(b)(6) motion to dismiss, a plaintiff must allege

"sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009).  "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  In assessing the plausibility of the

plaintiff's claims, a court first identifies allegations that constitute nothing more

than "legal conclusions" or "naked assertions."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Because those

allegations are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679, 129

S.Ct. 1937.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]" in order to determine whether the complaint states a plausible claim for relief.  *Wainberg v. Dietz & Watson, Inc.,* 2017 WL 5885840 (E.D. Pa. Nov. 28, 2017).  Grady egregiously claimed that Plaintiff's arguments are not plausible (Docket No. 24-1, Page 4, ¶2) while failing to understand that it is Defendant's Higher and Different fake and hypocritical arguments that are not only not plausible, but untethered to HIPAA, and other state and federal laws.

Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).  Here, there is no question that there are material issues of fact that remain to be resolved, given Grady is fraudulently concealing information as described in the Motion to Enjoin (Docket No. 87-1).

## POINT II:  DEFENDANTS LIED TO O'NEILL.

### A.  Ipse Dixit

The only support for the baseless opinions in O'Neill's medical record from Grady are the providers own personal judgment.  Thus, O'Neill's medical records

9

from Grady present shining examples of *ipse dixit*--i.e., the expert claims that it is

so merely because he says that it is so.  Yet, without more than credentials and a

subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*

*v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).  "Reliability cannot be

established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d

1244, 1261 (11th Cir. 2004).  "[W]hen an expert opinion is based on data, a

methodology, or studies that are simply inadequate to support the conclusions

reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005).

"'Presenting a summary of a proffered expert's testimony in the form of conclusory

statements devoid of factual or analytical support is simply not enough.' " *Cook ex*

*rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

Obviously, the same principles hold in cases involving medical decisions,

and decisions are not valid if they are based only on unsubstantiated opinions.

*Cathell v. Brown*, 8 Vet. App. 539 (1996).  It is clear when reading O'Neill's

medical records from Grady that her medical record is based on information that is

not contained in her medical records.  Instead, Grady's medical record is filled

with nothing more than *ipse dixit* opinions based on false information provided to

Grady about Plaintiff without O'Neill's knowledge or consent and despite the fact

10

that a physician's recorded recollection of a patient's medical history, which contain medical opinions of third parties are inadmissible as a medical record in litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424.  Likewise, nothing in *Daubert* or statutes governing admission of expert testimony requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012, 317 Ga.App. 795, 733 S.E.2d 7.  Thus, not only did Grady violate O'Neill's privacy rights, but Grady also produced *ipse dixit* records that are inadmissible in court because the statements in the records are not supported by facts contained in the records. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424.

**B. Statute Violations**

A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).  O'Neill has never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like

Wilder.  Any claim O'Neill has voluntarily even had a "personal" conversation with a sick freak like Wilder is lie.

The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal.  Grady, Wilder, Deutsche Bank, and each of the Hospital Defendants are prohibited by statute from depriving O'Neill of the information she requested in her June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page 9, ¶1-Page 17).  Yet, Grady is fraudulently concealing information from Plaintiff as described in O'Neill's Memorandum of Support of her Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).  Grady's ridiculous claim O'Neill's valid requests under HIPAA and Georgia law constitute "discovery" is a farce.  Grady has no legal right to violate statutes, but is doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Grady is not allowed to hide information about O'Neill's health from her because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute.  *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).

The ridiculous "Power of Attorney" Wilder claims to have would also be unenforceable in the state of New York because it "violates a statute imposing a penalty."  *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926

12

N.Y.S.2d 140 (2d Dep't 2011) (violation of GBL § 771);  *Akers v. Mutual Life Ins. Co. of New York*, 59 Misc. 273, 112 N.Y.S. 254 (Sup 1908).  Thus, Grady has no legal means of withholding information from O'Neill.

## POINT III:  PLAINTIFF COMPLIED WITH PLEADING STANDARDS TO THE EXTENT POSSIBLE.

In the Dismiss Memo, Grady also claimed "Plaintiff's Complaint fails to satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b)." (Docket No. 24-1, Page 5, ¶1).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In "determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016).  This reflects the principle that "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012).

In the case of *Polukoff v. St. Mark's Hosp.*, the district court dismissed

Polukoff's allegations against a defendant under Rule 9(b) because "vital information regarding who knew what and when they knew it [was] missing." *Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018). However, the appeals court reversed and ruled that the court excused deficiencies that result from the plaintiff's inability to obtain information within the defendant's exclusive control. *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016). The appeals court noted that the type of information defendant claimed plaintiff failed to plead under Rule 9(b) was precisely the type of evidence that is "in the defendant's exclusive control." *Polukoff*, 895 F.3d at 745. Thus, the appeals court noted that defendants were surely on notice of plaintiff's claims and "the factual ground upon which [they] are based." *Id.* Thus, Polukoff's amended complaint satisfied Rule 9(b). As described at length in the Motion to Enjoin (Docket No. 87-1, Page 14, ¶2-Page 16, ¶1), such is the case here.

In addition, here, Grady failed to specify that O'Neill failed to identify necessary information that was squarely within her knowledge, such as the dates, locations, and identities of relevant actors who called Grady. *Li v. Colorado Reg'l Ctr. I, LLC*, No. 21-1232, 2022 WL 4127202, (10th Cir. Sept. 12, 2022). Grady, of course, did not specify that O'Neill failed to specify information that was squarely within her knowledge because Grady knew O'Neill had no idea of the dates, times,

and specific person(s) that called Grady to harm O'Neill, which is why Grady has made an effort to fraudulently conceal information from O'Neill as described in the Motion to Enjoin (Docket No. 87-1, Page 24, ¶1-Page 25).

Given Grady's ongoing fraudulent concealment, Grady's claim O'Neill failed to fulfill the heightened pleading standards of Rule 9(b) is not only hypocritical, but laughable.  Grady's medical record is *ipse dixit*, inadmissible in a court of law, and it is unclear precisely how Grady is fraudulently concealing information.  (Docket No. 87-1, Page 24, ¶1-Page 25).  In addition, Plaintiff has no way of determining who called Grady, and what specific information Grady received from the unknown and unnamed third parties.  While Georgia statutes require Grady to specify late entries and specify who precisely it received information from (Docket No. 87-1, Page 15, ¶1), Grady made no effort to do so because Grady was intent on aiding Wilder and harming O'Neill.  Thus, Grady never specified what basis Grady used for the stupid claims contained in O'Neill's medical record.  Given these facts, Grady's Higher and Different claim O'Neill failed to meet the heightened pleading standard of Rule 9(b) is not only laughable, but completely hypocritical.

As described above and in the Motion to Enjoin (Docket No. 87-1), on the one hand, Grady commit fraud by sending an *ipse dixit* medical record that

15

contains absolutely no support for the false claims made about Plaintiff in the medical record.  Yet, on the other hand, Grady claims in its filings that O'Neill failed to meet heightened pleading standards under Rule 9(b).  The fact Grady believes it is acceptable to hold O'Neill to Higher and Different standards that no human would be able to attain is not only hypocritical, but sick given Grady's fiduciary duty and statutory requirements under both HIPAA and state laws to disclose to O'Neill all the information Grady maintains about Plaintiff's health as described in the Motion to Enjoin (Docket No. 87-1, Page 24, ¶1-Page 25).

### POINT IV:  PLAINTIFF HAS A MERITOROUS RICO CLAIM.

The RICO conspiracy section provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. 18 U.S.C. § 1962(d).

The simple and straightforward language of the statute encompasses co-conspirator liability.  In discussing the conspiracy standard for RICO claims in the case *Salinas v. United States*, 522 U.S. 52 (1997), the Supreme Court stated:

> If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators...so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators. *Id.*

Many co-conspirators, like Grady, have faced significant liability under the standard the Supreme Court outlined in *Salinas*. *Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc., et al.*, 1998 U.S. Dist. LEXIS 3578 (S.D.N.Y. 1998).

Grady's claim it did not commit two predicate acts is also without merit, given, as Grady is well aware, Grady has commit several predicate acts. (Docket No. 24-1, Page 10, ¶1). In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *American Dental Ass'n. v. Cigna Corp.*, 605 F. 3d at 1290-1291. Grady commit the following predicate acts:

- In violation of 18 U.S.C. § 1512 (c)(1), on or about February 6, 2018, Grady refused to include a urine sample in O'Neill's rape kit to ensure that O'Neill would not have evidence that Wilder drugged, assaulted and sex trafficked O'Neill.

- In violation of 18 U.S.C. § 1512 (b)(3), on or about February 6, 2018, Grady hindered, delayed, and prevented O'Neill's communication to a law enforcement officer about information relating to the commission or possible commission of the Federal offense of sex trafficking.

- In violation of Section 102 of the Controlled Substances Act, on or about February 6, 2018, Grady concealed Wilder's use of controlled substances that Wilder illicitly used to drug O'Neill.

- In violation of 18 U.S.C. § 1513 (b)(2), on or about February 6, 2018, Grady knowingly caused damages to O'Neill's tangible property, with intent to retaliate against O'Neill for trying to provide information relating to the commission of the Federal offense of sex trafficking.

- In violation of 18 U.S.C. § 1341, Grady sent an *ipse dixit* copy of O'Neill's medical record via mail to O'Neill in May of 2021.  Sending the fraudulent medical record via mail constituted one predicate act and instance of mail fraud under the RICO statute.

- In violation of 18 U.S.C. § 1343, Grady sent another copy of the medical record to O'Neill on July 6, 2022.  Sending the fraudulent medical record via mail constituted one predicate act and instance of mail fraud under the RICO statute.

Thus, Grady clearly exhibited a "pattern" as required by the RICO statute.  The Eleventh Circuit has ruled that those merely "associated with" an enterprise – who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity, are liable under the RICO statute.  Thus, Grady is liable for

its predicate acts.  *Bank of America National Trust and Savings Ass'n. v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir. 1986).

### POINT V:  PLAINTIFF HAS VALID FRAUD CLAIM.

Grady also claimed O'Neill's fraud claimed failed because Plaintiff did not state five elements required in the case *Bowden v. Medical Center, Inc.*, 309 Ga. 188, fn. 10 (2020).  (Docket No. 24-1, Page 6, ¶1).  Grady further stated, "Plaintiff's fraud claim against Grady—like her RICO claim—appears to center on one interaction that occurred on February 6, 2018, when Plaintiff visited Grady to have a rape kit performed. (Complaint, ¶ 112.)  The claims against Grady are based on an alleged refusal by Grady to take a urine sample."  (Docket No. 24-1, Page 5, ¶2).  Grady further claimed, "Plaintiff has not come close to pleading" the five "elements with particularity as required by Federal Rule of Civil Procedure 9(b)." (Docket No. 24-1, Page 6, ¶1).  However, Grady is incorrect as a matter of law, and confused actual and constructive fraud.  O.C.G.A. § 23-2-51.  Specifically, Grady claimed O'Neill had to prove actual fraud as defined by O.C.G.A. § 23-2-51, when in fact her only duty is to show constructive fraud. O.C.G.A. § 23-2-51.

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician.  Because of this confidential relationship, an exception arises to the requirement in typical

fraud cases that defendant make some actual misrepresentation. Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

The Court of Appeals found evidence of intent to conceal in the case of *Quattlebaum v. Cowart. Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987). In that case, the defendant did not advise his patient that defendant had failed to connect the left hepatic duct to the small intestine. In furtherance of the fraud, the physician, prepared misleading and incorrect medical records on this point. The court found a reasonable inference of a knowing concealment and cover-up, not just a mere misstatement. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987).

In addition, the existence of a confidential relationship between the parties imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. O.C.G.A. § 9–3–96. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998).

Given Grady's medical record and treatment decisions make clear Grady relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals Grady spoke to about O'Neill, and the details of Grady's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501.  Yet, Grady has refused to disclose this information to O'Neill as described in the Motion to Enjoin (Docket No. 87-1, (Docket No. 87-1, Page 24, ¶1-Page 25).  Since Grady initially refused to disclose its conflicts of interests (Docket No. 36), it is clear Grady abused O'Neill, and refused to put a urine sample in O'Neill's rape kit to aid and abet Wilder, to ensure there was "no evidence" O'Neill was drugged.

A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–

21

30, 430 S.E.2d 98, 102 (1993).  O'Neill has never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder.  Any claim Plaintiff voluntarily even had a "personal" conversation with a sick freak like Wilder is lie.  The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal.

Grady, Wilder, Deutsche Bank, and each of the Hospital Defendants are prohibited by statute from depriving O'Neill of the information she requested in her June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page 9, ¶1-Page 17).  Yet, Grady is fraudulently concealing information from O'Neill as described in my Memorandum of Support of my Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).  Grady has no legal right to violate statutes, but is doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Grady is not allowed to hide information about Plaintiff's health from her because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute.  *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).  Thus, Grady has no legal means of withholding information from O'Neill.

## POINT VI:  DEFENDANT'S STATUTE OF LIMITATION DEFENSE IS NOT CREDIBLE.

Grady also claimed Plaintiff's claims against Grady should be dismissed as a matter of law because "a summons was not issued to have Grady served until April 1, 2022 [Doc. 4], *after* the applicable statutes of limitation had expired." (Docket No. 24-1, Page 10, 2-Page 11, ¶1).  According to Grady, "this fact establishes that Plaintiff did not exercise diligence in serving Grady.  Thus, her Complaint should be dismissed." (Docket No. 24-1, Page 11, ¶1).  The Court should note Grady failed to cite any case law when making this ridiculous claim because there is no case law to support Grady's ludicrous statements.  Instead, the black letter language of Rule 4(b) make clear Grady fabricated this ridiculous defense, in violation of applicable laws, the same way Grady fabricated O'Neill's medical records in violation of HIPAA and Georgia statutes.  Only cases in which a summons was issued outside to the 90 day period the Federal Rules give to serve the complaint and summon create issues for plaintiffs.  *Palm Beach County Environmental Coalition v. Florida*, S.D.Fla.2009, 651 F.Supp.2d 1328.  Thus, the Higher and Different standard Grady fabricated in violation of actual court rules regarding the issuance and service of summons is without merit.

## POINT VII: PLAINTIFFS SHOULD BE GIVEN EVEFY OPPORTUNITY TO CURE PLEADING DEFECTS.

23

Plaintiff intends to alter her complaint. However, in order to modify her Complaint, O'Neill needs the Hospital Defendants, including Grady, to produce the information O'Neill requested in her Motion to Enjoin. (Docket No. 87-1, Page 24, ¶1-Page 25). O'Neill informed the court in her Motion for Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2), the fact Grady has failed to comply with HIPAA and state laws has created additional complications for O'Neill. Grady is blatantly lying by claiming the information O'Neill sought in letters she sent in June 2022 constituted "discovery," (Docket Nos. 63).

As noted in the Motion for Extension of Time (Docket No. 60) filed in August of 2022, filing an Amended Complaint and responding to Grady's motions to dismiss has been a waste of time for both Plaintiff and Grady at this juncture given Grady has failed to comply with HIPAA and state statutes, and Grady failed to send O'Neill the information she requested as described at length in Plaintiff's Motion to Compel (Docket No. 58). Thus, O'Neill also asked the Court to delay the deadline for O'Neill to file an Amended Complaint until after she received the information she requested from Hospital Defendants as described in Plaintiff's in her Motion for Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2).

24

Despite the fact O'Neill made clear in the Motion to Compel (Docket No. 58, Page 7, ¶1- Page 17, ¶1), that Hospital Defendants were violating both state and federal statutes, the Court completely ignored the facts presented by Plaintiff in the Motion to Compel (Docket No. 58) and Motion for an Extension to Time (Docket No. 60).  Given this court ignored her request, O'Neill will file a motion pursuant to Rule 15(a)(2) and Rule 15(d).

In determining whether to grant a Rule 15(a) motion to amend, the Supreme Court stated the standard, "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. at 182, 83 S. Ct. at 230.  A plaintiff typically will not be precluded from amending a complaint in order to state a claim or from adding a claim to an otherwise proper complaint.  *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987).  Plaintiffs are allowed "multiple opportunities to state a claim."  *Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95 (2d Cir. 2020).  This approach "ensures that a particular claim will be decided on the merits rather than on technicalities."  *Dole v, Arco Chem. Co.*, 921 F.2d 484,487 (3d Cir.1990).  Thus, O'Neill should be allowed to amend her complaint, particularly in light of the fact Grady is fraudulently concealing information.

25

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **DENY**

the motion and grant such other further relief the Court deems equitable.

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM**

**OF LAW AND MOTION TO ENJOIN** were prepared using Times New Roman

14 point font in accordance with Local Rule 5.1 of the United States District Court

for the Northern District of Georgia.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and

correct copy of the foregoing by emailing and mailing a copy of the foregoing to

each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail:  rowlen@lbbslaw.com
E-Mail:  chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK,**
**LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway, Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated:  Atlanta, GA                        Respectfully submitted,
October 18, 2022


BY: _Maura O'Neill_____
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

28