**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 18 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**MAURA O'NEILL,**

        Plaintiff,

    v.

**NYU LANGONE HOSPITALS,
NEW YORK- PRESBYTERIAN
HOSPITAL QUEENS, LENOX
HILL HOSPITAL, GRADY
MEMORIAL HOSPITAL
CORPORATION, MOUNT SINAI
BETH ISRAEL, NORTHSIDE
HOSPITAL, INC., COLLEGE
PARK POLICE DEPARTMENT,**

        Defendants.

**CIVIL ACTION FILE NO.:**
1:22-cv-00011-SEG

---

**MEMORANDUM OF LAW IN OPPOSITION TO NYU LANGONE
HOSPITALS' MOTION TO DISMISS**

---

October 18, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Maura O'Neill ("Plaintiff") submits this memorandum in opposition to the motion to dismiss and motion for prefiling screening filed by Defendant NYU Langone Hospitals ("NYU Langone") (the "Motion") (Docket No. 16).

## PRELIMINARY STATEMENT

Separate but equal.  During a dark phase in American history, separate but equal was regarded, not simply as a valid legal doctrine, but as constitutional law, supported by the Supreme Court, to deprive one group of people of its constitutional rights.  *Plessy v. Ferguson*, 163 U.S. 537, 538, 16 S. Ct. 1138, 1138, 41 L. Ed. 256 (1896).  Separate is of course, not equal, and the systems of inhumane discrimination separate but equal authorized remains a stain on American history.  Here, NYU Langone and the Defendants in this action have employed another system, "Higher and Different."  Under the illegal and unconstitutional Higher and Different farce, Plaintiff is held to Higher and Different standards that not only do not exist, but are in fact so farcical that they are untethered to reality, let alone any legal or ethical standard.

Worse, at the same time Plaintiff is held to farcical Higher and Different standards that simply do not exist for other people, NYU Langone repeatedly violated Plaintiff's most basic human rights, broke numerous federal and state laws, destroyed evidence, and commit criminal acts; all in order to protect a man

1

who has racked up more signed legal agreements per year than Harvey Weinstein to silence the women he raped and abused.[1]

On April 21, 2022, Defendant NYU Langone filed a Memorandum of Law in Support of NYU's Motion to Dismiss and Motion for Prefiling Screening Requirement (the "Memo") (Docket No. 16).[2]  In the Memo, NYU claimed Plaintiff's claims should be dismissed because this court lacks jurisdiction, (Docket No. 16-1, Page 2, ¶1).  In addition, NYU Langone claimed the RICO and fraud claim fails because Plaintiff failed to meet the heightened pleading requirement of Rule 9(b). (Docket No. 16-1, Page 3, ¶2).  NYU Langone also

---

[1]When *The New York Times* published its article on October 5, 2017 that played a large part in Harvey Weinstein's downfall, the *Times*, after months of investigation, had been able to track down eight settlement agreements Weinstein signed with his victims.  Kantor, Jodi; Twohey, Megan. "Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades." *The New York Times.*  October 5, 2017. O'Neill was informed Wilder has at least six or seven signed agreements with women he raped or abused.  At the time the *Times* article about Weinstein was published, Weinstein was 65 years old.  Wilder is only 49.  Thus, Wilder has accumulated more signed documents per year than Weinstein.
[2]On January 4, 2022, Plaintiff filed a complaint against several hospitals, where she went to have rape kits performed from 2017 to 2018, including NYU Langone Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"), Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital Queens, ("NYU"), Lenox Hill Hospital ("Lenox Hill"), Northside Hospital, Inc. ("Northside"), together ("Hospital Defendants").

claimed that O'Neill failed to properly state the five elements for a cause of action

for fraud.  (Docket No. 16-1, Page 11, ¶2-Page 12, ¶1).  NYU Langone is wrong.

As described below, the RICO claim invokes a federal question and thereby

invokes federal jurisdiction, and the state law fraud claim invokes diversity of

citizenship jurisdiction under federal law.  In addition, this court has jurisdiction

over NYU Langone because, for years, NYU Langone has regularly conducted

clinical research with numerous institutions in Georgia as shown in Exhibit A.

The alteration and / or falsification of medical records is a crime in most

states, and is usually dealt with harshly.  Alteration of medical records can be a

felony if done intentionally and willfully, as was the case with NYU Langone's

alteration of O'Neill's medical record.  In most cases the act of requesting copies

of a client's hospital records by an attorney investigating a claim triggers a health

care provider's apparent need to alter medical records to affect the outcome of the

investigation.  Such is the case here.  O'Neill's records was clearly altered by NYU

Langone in January 2018 after O'Neill requested a copy of her record.

The portion of O'Neill's medical record that Plaintiff does possess shows

NYU Langone's medical record relied on conversations NYU Langone had with

third parties after she left NYU Langone.  Specifically, NYU Langone's medical

record is based on false information provided to NYU Langone without O'Neill's

knowledge or consent without giving O'Neill a right to respond.  The names of all

the individuals NYU Langone spoke to about O'Neill and the details of NYU

Langone's conversations about O'Neill must be included in O'Neill's designated

record sets under 45 CFR § 164.501.  Yet, NYU Langone is refusing to disclose

that information in violation of state and federal law, thus, NYU Langone has and

continues to fraudulently conceal information from O'Neill.  Thus, NYU

Langone's claim O'Neill did not state a fraud claim with particularity pursuant to

Rule 9(b) is not just hypocritical, but utterly ridiculous in light of the fact NYU

Langone is violating federal and state statutes and failing to provide O'Neill with

information about her health she is entitled to see under state and federal laws.

NYU Langone's decision to hide information from O'Neill manifests

constructive fraud given it is clear when reading O'Neill's medical record from

NYU Langone that the medical record is based on information that is not contained

in O'Neill's medical record.  Thus, NYU Langone was incorrect as a matter of law

when it stated O'Neill failed to properly state a claim for fraud by stating five

elements of common law fraud.  In fact, at this point, the only support for baseless

opinions contained in O'Neill's medical records are the providers' own personal

judgments.  Thus, O'Neill's medical record from NYU Langone presents a shining

example of *ipse dixit*--i.e., the expert claims that it is so merely because he says

that it is so.  Yet, as counsel to NYU Langone is surely well aware, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible as evidence.  Rather, *Daubert* and *Kumho Tire Co.*, as well as Rule 702, require that expert opinion be connected to existing data by something more than dubious inferences that amount to an expert's assertion that 'it is so because I say it is so."  Thus, the portion of Plaintiff's medical record from NYU Langone that O'Neill possesses is fraudulent on its face, and inadmissible in a court of law, because the record does not contain the information provided by third parties without O'Neill's knowledge or consent that provide the actual basis for the subjective opinions that are not supported by facts or data contained in O'Neill's NYU Langone medical record.

## LEGAL ARGUMENT

## POINT I: DEFENDANT FAILED TO FILE AND SERVE AN AFFIDAVIT.

Applicable rules for this proceeding are defined in the Federal Rules of Civil Procedure as well as the local rules of the court for the Northern District of Georgia.  Specifically, Local Rule ("LR") 7.1(A)(1) explicitly states when filing a motion, "If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law." LR 7.1(A)(1).  Thus, as described in the rules, NYU Langone was required to file and serve an affidavit containing

"allegations of fact relied upon." *Moore v. City of Atlanta*, 2008 WL 11336797
(N.D. Ga. Mar. 11, 2008).

Even though Defendant NYU Langone failed to file an affidavit in
compliance with local rules, Defendant NYU Langone's Memo relies on several
statements presented as "facts" in the Memo as explained below:

1. Defendant NYU Langone stated it was not subject to subsection (1) of
Georgia's long arm statute, O.C.G.A. § 9-10-91(1), even though O.C.G.A. § 9-10-
91(1) states, "[a] court of this state may exercise personal jurisdiction over any
nonresident… if the [nonresident]…transacts any business within this state"
(Docket No. 16-1, Page 5, ¶3).  Here, as described in Exhibit A, given NYU
Langone conduct numerous clinical research studies within the state of Georgia
and has for years, and routinely partners and transacts businesses with institutions
within Georgia, there is no question NYU Langone, and the principle investigators
employed by NYU Langone and shown in Exhibit A, routinely transact business in
the state of Georgia.  Thus, this court has personal jurisdiction over NYU Langone
given Defendant NYU Langone "transacts…business within" the state of Georgia.

2. NYU Langone also asked this court to subject Plaintiff to a screening
requirement by claiming, "To this Defendant's knowledge, Plaintiff has offered no
competent proof that a conspiracy exists." (Docket No. 16-1, Page 13, 1).  Yet, as

described in the Motion to Compel (Docket No. 58) and Motion to Enjoin (Docket

No. 87-1) all Hospital Defendants have turned O'Neill medical records into works

of creative fiction that are *ipse dixit* and inadmissible in a court of law.  A

competent healthcare provider would never do something as stupid as write down

"paranoid" without providing any factual support to support the claim.  Nor would

a medical provider simply write down something as stupid as "pressured speech,"

and then decline to test someone's urine since there are numerous drugs that cause

pressured speech.  O'Neill's medical records are a sham, designed to destroy

evidence and protect Wilder, a sex trafficker and serial sexual predator.  Yet, all

the stupid fools at NYU Langone and the other Hospital Defendants did was credit

Wilder, a psychopath, for his numerous criminal acts, including, but not limited to

setting up fake accounts in O'Neill's name, using those accounts to impersonate

O'Neill, drugging her and raping her, and inviting his rapist associates to do the

same.  NYU Langone's decision to destroy a rape kit and produce an inadmissible

ipse dixit medical record shows NYU Langone is clearly part of a conspiracy to

cover-up for Deutsche Bank and Wilder.

### POINT II: DEFENDANT FAILED TO CONFORM WITH THE STANDARD OF REVIEW.

**A. Standard of Review**

7

A proposition that is at the heart of the application of the Rule 12(b)(6) motion is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader. *Mamani v. Berzain*, 825 F.3d 1304, 1306 (11th Cir. 2016). The burden is on the moving party to prove that no legally cognizable claim for relief exists. *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). Here, Defendant failed to meet its burden as described in more detail below.

## B. Plausibility Standard

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not its merits. *Nelson v. Temple Univ.*, 920 F.Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of the plaintiff's claims, a court first identifies allegations that constitute nothing more

than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Because those allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]" in order to determine whether the complaint states a plausible claim for relief. *Wainberg v. Dietz & Watson, Inc.*, 2017 WL 5885840 (E.D. Pa. Nov. 28, 2017). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Here, there is no question that there are material issues of fact that remain to be resolved as described below. However, what is also clear is that NYU Langone's medical records are not plausible on their face, and the *ipse dixit* statements in O'Neill's medical record constitute constructive fraud.

### POINT III: THIS COURT HAS PERSONAL JURISDICTION.

Like many states, Georgia has a long arm statute permitting local courts to exercise jurisdiction. O.C.G.A. § 9-10-91. The effect of Georgia's long arm statute is to allow local federal courts to exercise personal jurisdiction on any basis consistent with state law and allowable under due process clause of the U.S.

Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.* (11th Cir. 2010) 593 F3d 1249, 1257-1258.

In particular, subsection (1) of Georgia's long arm statute, O.C.G.A. § 9-10-91(1) states, "[a] court of this state may exercise personal jurisdiction over any nonresident... if the [nonresident] transacts any business within this state." Thus, a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury caused by an act or omission outside Georgia if the tortfeasor "transacts any business within this state." O.C.G.A. § 9-10-91(1).

Georgia trial courts have broad authority to exercise personal jurisdiction over any nonresident who transacts any business within Georgia to the maximum extent allowed by procedural due process. Physical presence of the non-resident in Georgia is not required, and a single event may be sufficient for the exercise of long-arm jurisdiction if its effects are substantial enough even if the nonresident has never been physically present in the state. *Wright v. Safari Club Intern.*, 307 Ga. App. 136, 706 S.E.2d 84 (2010). When determining whether a nonresident satisfies the "transacts any business within this state" prong of Georgia's long-arm statute, the nonresident's email, telephone calls, and other intangible acts, though occurring while the nonresident is physically outside of Georgia, must be

10

considered. *Jordan Outdoor Enterprises, Ltd. v. That 70's Store*, LLC, 819 F. Supp. 2d 1338 (M.D. Ga. 2011).

Here, as described in Exhibit A, given NYU Langone regularly conducts clinical research in the state of Georgia and has done so for numerous years, there is no question this court has jurisdiction.  As part of the role of NYU Langone's principal investigators as described in Exhibit A, NYU Langone's principal investigators send emails to researchers and others within the state of Georgia on a regular basis and conduct telephone calls with employees in the state of Georgia on a regular basis to discuss matters such as clinical research, patient care, and healthcare.  Thus, this court clearly has jurisdiction under O.C.G.A. § 9-10-91(1).

In the Memo, Defendant NYU Langone stated it was not subject to subsection (1) of Georgia's long arm statute, O.C.G.A. § 9-10-91(1)." (Docket No. 16-1, Page 5, ¶2).  However, as described above, Defendant NYU Langone did not submit an affidavit.  Case law dictates that the district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). Given Defendant NYU Langone did not file any affidavits and Plaintiff established a prima facie case using Exhibit A, Plaintiff presented enough evidence to withstand a motion to dismiss. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th

Cir.1988).  In addition, in should be noted that in the Memo, Defendant NYU

Langone did not offer a sound argument as to how the filing of this action violated

Defendant NYU Langone's due process rights under the U.S. Constitution, for

indeed, nothing in Plaintiff's filings violate NYU Langone's due process rights.

**POINT IV:  DEFENDANT'S CLAIM O'NEILL FAILED TO CONFORM
WITH HEIGHTENED PLEADING STANDARD IS HYPOCRICIAL IN
LIGHT OF DEFENDANT'S FAILURES TO COMPLY WITH STATE AND
FEDERAL LAWS.**

NYU Langone also claimed Plaintiff was required to meet the heightened

pleading requirement of Rule 9(b).  (Docket No. 16-1, Page 8, ¶2).  However,

given NYU's ongoing fraudulent concealment, and apparent maintenance of two

separate sets of records, (Docket No. 58, Page 12, 2-Page 13), NYU Langone's

claims are not only hypocritical, but laughable.  Given NYU Langone's medical

record is *ipse dixit*, and inadmissible in a court of law, and it is unclear precisely

how NYU Langone is fraudulently concealing information, where precisely NYU

Langone got its information from, or what basis NYU Langone used for the stupid

claims contained in O'Neill's record, NYU Langone's claim that O'Neill failed to

meet the heightened pleading standard of Rule 9(b) is not only laughable, but

completely hypocritical.

More specifically, on the one hand, NYU Langone commit mail fraud by

sending an *ipse dixit* medical record that contains absolutely no support for the false claims made about Plaintiff in the medical record.  Yet, on the other hand, NYU Langone claims in its filings that O'Neill failed to meet heightened pleading standards under Rule 9(b).  (Docket No. 26-1, Page 8, ¶2).  The fact NYU Langone believes it is acceptable to hold O'Neill to Higher and Different standards that no human would be able to attain is not only hypocritical, but sick given NYU Langone's fiduciary duty and duties under both HIPAA and state laws to disclose to O'Neill all the information NYPD maintains about Plaintiff.

### POINT V:  PLAINTIFF'S ONLY REQUIREMENT WAS TO PLEAD CONSTRUCTIVE NOT ACTUAL FRAUD.

NYU Langone claimed, "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made." *Ambrosia Coal & Const. Co.*, at 1316–17.  (Docket No. 16-1, Page 11, ¶1). However, NYU Langone is incorrect as a matter of law, and NYU Langone confused actual and constructive fraud even though both are defined by statute. O.C.G.A. § 23-2-51.  Specifically, NYU Langone claimed O'Neill had to prove actual fraud when in fact her only duty is to show constructive fraud.

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician.  Because

13

of this confidential relationship, an exception arises to the requirement in typical fraud cases that defendant make some actual misrepresentation. Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

Given NYU Langone's medical record makes clear NYU Langone relied on conversations with third parties about Plaintiff, the names of all the individuals NYU Langone spoke to about O'Neill, and the details of NYU Langone's conversations about O'Neill must be included in O'Neill's designated record sets under 45 CFR § 164.501.

A patient is also entitled to trust her physician and rely on what he tells the patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App.

14

452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, NYU Langone's decisions to hide information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from NYU Langone that the medical record is based on information that is not contained in O'Neill's medical records. In fact, there is no factual support for numerous statements written in O'Neill's medical records, and it is clear that NYU Langone's basis for several statements in O'Neill's medical records is due to conversations NYU Langone had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to NYU Langone.

## POINT VI:  PLAINTIFF HAS RICO CLAIM.

NYU Langone also stated,  "Count Three of Plaintiff's Complaint alleges a civil RICO claim...Plaintiff completely fails to meet any of the four heightened pleading requirements... Plaintiff fails to identify (1) precise statements, documents, or misrepresentations made. " (Docket No. 16-1, Page 11, ¶2-Page 12-¶1). However, as described above, NYU Langone is incorrect as a matter of law since O'Neill need only show constructive, not actual fraud. O.C.G.A. § 23-2-51.

In order to prove a pattern of racketeering, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of

continued criminal activity." *American Dental Ass'n. v. Cigna Corp.*, 605 F. 3d at 1290-1291.  NYU Langone commit the following predicate acts:

- In violation of 18 U.S.C. § 1512 (c)(1), on or about January 4, 2018, NYU Langone destroyed O'Neill's rape kit to ensure that O'Neill would not have evidence that Wilder drugged, assaulted and sex trafficked O'Neill.

- In violation of 18 U.S.C. § 1512 (b)(3), on or about January 4, 2018, NYU Langone hindered O'Neill's communication to law enforcement about information relating to the commission of the Federal offense of sex trafficking by lying to the NYPD about O'Neill's mental health based on false information provided to NYU Langone by the Wilder team in violation of HIPAA and state statutes.

- In violation of Section 102 of the Controlled Substances Act, on or about January 4, 2018, NYU Langone concealed Wilder's use of controlled substances, including a benzodiazepine, that Wilder illicitly used to drug O'Neill.

- In violation of 18 U.S.C. § 1513 (b)(2), on or about January 4, 2018, NYU Langone knowingly caused damages to O'Neill's tangible property, with intent to retaliate against O'Neill, because she tried to provide information relating to the commission of the Federal offense of sex trafficking.

- In violation of 18 U.S.C. § 1343, NYU Langone sent a copy of the *ipse dixit* medical record to O'Neill in the winter of 2018 via email.  Sending the fraudulent medical record via email constituted one predicate act and instance of wire fraud under the RICO statute.

- In violation of 18 U.S.C. § 1341, NYU Langone sent an *ipse dixit* copy of O'Neill's medical record via mail to O'Neill in May of 2021.  Sending the fraudulent medical record via mail constituted one predicate act and instance of mail fraud under the RICO statute.

Thus, NYU Langone clearly exhibited a "pattern" as required by RICO. The Eleventh Circuit has ruled that those merely "associated with" an enterprise – who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity, are liable under the RICO statute.  *Bank of America National Trust and Savings Ass'n. v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir. 1986).

### POINT VII:  DEFENDANT'S MOTION FOR A SCREENING REQUIREMENT IS FRIVIOLOUS AND SHOULD BE SANCTIONED.

NYU Langone also asked this court to, "limit" O'Neill's "ability to file *pro se* lawsuits." (Docket No. 16-1, Page 12, ¶1).  To support its frivolous motion to limit O'Neill's access to the courts, NYU Langone cited the case *Smith v. Adamson.  Smith v. Adamson*, 226 Ga. App. 698, 700 (11th Cir. 1997).  However,

in the *Smith* case, the *pro se* litigant filed several frivolous actions, and twice failed to attend her scheduled deposition. *Id.* Thus, in the *Smith* case, the litigant made a series of mistakes. That is not the case here. Rather, in this case, it is not O'Neill that has broken court rules, but NYU Langone that has repeatedly broken court rules and abused the judicial process. Here, the only evidence that exists is that NYU Langone violated criminal statutes by destroying evidence of Wilder's and his rapists associates crimes, and prepared *ipse dixit* medical records. A summary of some of NYU Langone's violations of court rules follows:

- First, a contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993). O'Neill has never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder. Any claim O'Neill has voluntarily even had a "personal" conversation with a sick freak like Wilder is lie. The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal. NYU Langone, Wilder, Deutsche Bank, and each of the Hospital Defendants are

18

prohibited by statute from depriving O'Neill of the information she requested in

her June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page

9, ¶1-Page 17).  Yet, NYU Langone is fraudulently concealing information from

Plaintiff as described in O'Neill's Memorandum of Support of her Motion to

Compel (Docket No. 73, Page 5, ¶1-Page 7).  NYU Langone's ridiculous claim

O'Neill's valid requests under HIPAA and NY law constitute "discovery" is a

farce.  NYU Langone has no legal right to violate statutes, but is doing so

anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did

have a Power of Attorney, NYU Langone is not allowed to hide information

about O'Neill's health from her because doing so is prohibited by statute, and a

Georgia court may not enforce a contract that conflicts with a statute.  *Langford*

*v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).  The

ridiculous "Power of Attorney" Wilder claims to have would also be

unenforceable in the state of New York because it "violates a statute imposing a

penalty."  *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926

N.Y.S.2d 140 (2d Dep't 2011) (violation of GBL § 771);  *Akers v. Mutual Life*

*Ins. Co. of New York*, 59 Misc. 273, 112 N.Y.S. 254 (Sup 1908).  Thus, NYU

Langone has no legal means of withholding information from O'Neill.

- Second, it is clear NYU Langone altered O'Neill's medical record to harm O'Neill even though a person commits the offense of tampering with evidence when, "Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by any act of concealment, alteration or destruction." N.Y. Penal Law § 215.40. Tampering with evidence is a class E felony, punishable by one to four years in prison. *People v. Lucas,* 25 A.D.3d 822, 806 N.Y.S.2d 798 (3 Dept. 2006). By destroying O'Neill's rape kit, NYU Langone tampered with evidence to ensure Wilder could rape O'Neill with impunity, and claim there was "no evidence" of his crimes.

- Third, as described in the Opposing Papers, (Docket No. 41, Page 6, ¶1-Page 7), NYU Langone asked this court to commit misconduct by asking this court to stay the requirement that NYU Langone and Grady state their respective Conflicts of Interests. Given the number of times NYU Langone and Grady have lied, there is no reason to believe that the Certificates of Interested Persons NYU Langone and Grady ultimately filed were accurate. In fact, given NYU Langone and Grady have a pattern of behavior of committing criminal acts, violating state and federal statutes, and lying, the only reasonable conclusion is that both institutions lied when they claimed not to have conflicts of interest.

20

- Fourth, NYU Langone violated court rules by failing to file an affidavit when filing its motion to dismiss, given NYU Langone relied upon allegations of fact it its Dismiss Memo. LR 7.1(A)(1).

- Fifth, NYU Langone made false statements in the Brief and claimed that this court lacks jurisdiction, when in fact as shown in Exhibit A, NYU Langone routinely works with institutions based in Georgia.

- Sixth, as described in the Motion for Entry of Default (Docket No. 38, ¶5-13), NYU broke court rules, including, but not limited to, Local Rule 5.1(3), and failed to serve O'Neill in compliance with court rules.

- Seventh, according to Beth Israel (Docket No. 83, Page 3, ¶10), NYU Langone agreed that Beth Israel, NYU Langone, and each of the other Hospital Defendants should be able to break court rules governing the service of motions with impunity.  Specifically, LR 7.1(B) states "Any party opposing a motion shall **serve** the party's response…not later than fourteen (14) days after **service** of the motion."  Despite the clear language of the Local Rules, Beth Israel and NYU Langone have decided that they should have more than the 14 days provided by statute, and be able to break court rules with impunity.

- Eighth, NYU Langone cited a case in New York "adjudicated" by Judge Greco. (Docket No. 16-1, Page 3, ¶1).  Yet, Judge Greco did not even read O'Neill's

21

complaint.  Instead, Greco relied exclusively on illegal *ex-parte* communication when writing the order dismissing the action.  Wilder's stated litigation strategy was perjury and bribing judges, and it is clear from the order written by Greco, that Greco was bribed.  Among other things, Greco lied and made up his own "facts" in an ipse dixit fashion, the same way the Hospital Defendants did. Among other things, Greco lied and claimed O'Neill "broke court rules" and filed unnecessary filings.  Yet, Greco is so stupid, corrupt and incompetent that he is unable to name a single instance when O'Neill broke a rule or filed an unnecessary filing.  Yet, as described above, O'Neill can easily cite when NYU Langone and the other Hospital Defendants have broken court rules.

- Ninth, LR 83.1(D)(1) states, "An attorney's appearance as attorney of record for a plaintiff may be evidenced by signature on the complaint … or…pre-answer motion… An attorney whose appearance has not been noticed will not be permitted to represent a party… in any other Court proceeding until the attorney has filed a Notice of Appearance."  No attorney has filed a Notice of Appearance to represent O'Neill in this case.  Canon 3(A)(4) of the Code of Conduct for United States Judges provides: "Except as set out below, a judge should not …consider ex parte communications."  Here, there is no authorization under law to consider ex-parte communication applicable in this action.  Yet, in its Brief,

NYU Langone relied on actions that relied on ex-parte communication even though ex-parte communication is illegal.

Clearly, as described above NYU Langone's request that O'Neill be subjected to a screening requirement is completely hypocritical, and NYU Langone is holding O'Neill to Higher and Different standards than NYU Langone holds itself or to which courts hold any other litigants. As stated in paragraph 12 of the Georgia Bill of Rights, a person has a right to represent himself or herself in court. *In re Lawsuits of Carter*, 235 Ga. App. 551, 552–53, 510 S.E.2d 91, 92–93 (1998). "This provision was 'primarily intended to guarantee the right of self-representation in the courts of this State." *Id.* Secondly, the very first provision of the Bill of Rights in " '[t]he constitution of this state guarantees to all persons due process of law and unfettered access to the courts of this state.' These fundamental constitutional rights require that every party to a lawsuit ... be afforded the opportunity to be heard and to present his claim or defense, i.e., to have his day in court." *Id.* Meaningful access to the courts must be scrupulously guarded, as it is a constitutional right universally respected where the rule of law governs. *Id.* The measure NYU Langone asked this court to take, is not statutorily authorized or warranted.

**POINT VIII: PLAINTIFFS SHOULD BE GIVEN EVEFY OPPORTUNITY
TO CURE PLEADING DEFECTS.**

Plaintiff intends to alter her complaint.  However, in order to modify her

Complaint, O'Neill needs the Hospital Defendants, including NYU Langone, to

produce the information O'Neill requested in her Motion to Enjoin. (Docket No.

87-1, Page 24, ¶1-Page 25).  O'Neill informed the court in her Motion for

Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2), the fact NYU Langone

has failed to comply with HIPAA and state laws has created additional

complications for O'Neill.  NYU Langone is blatantly lying by claiming the

information O'Neill sought in letters she sent in June 2022 constituted

"discovery" (Docket Nos. 61).

As noted in the Motion for Extension of Time (Docket No. 60) filed in

August of 2022, filing an Amended Complaint and responding to NYU

Langone's motions to dismiss has been a waste of time for both Plaintiff and

NYU Langone at this juncture given NYU Langone has failed to comply with

HIPAA and state statutes, and NYU Langone failed to send O'Neill the

information she requested as described at length in Plaintiff's Motion to Compel

(Docket No. 58).  Thus, O'Neill also asked the Court to delay the deadline for

O'Neill to file an Amended Complaint until after she received the information

she requested from Hospital Defendants as described in Plaintiff's in her Motion

for Extension of Time (Docket No. 60, Page 5, ¶2-Page 6, ¶2).

Despite the fact O'Neill made clear in the Motion to Compel (Docket No. 58, Page 7, ¶1- Page 17, ¶1), that Hospital Defendants were violating both state and federal statutes, the Court completely ignored the facts presented by Plaintiff in the Motion to Compel (Docket No. 58) and Motion for an Extension to Time (Docket No. 60).  Given this court ignored her request, O'Neill will file a motion pursuant to Rule 15(a)(2) and Rule 15(d).

In determining whether to grant a Rule 15(a) motion to amend, the Supreme Court stated the standard, "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. at 182, 83 S. Ct. at 230.  A plaintiff typically will not be precluded from amending a complaint in order to state a claim or from adding a claim to an otherwise proper complaint. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987).  Plaintiffs are allowed "multiple opportunities to state a claim." *Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95 (2d Cir. 2020).  This approach "ensures that a particular claim will be decided on the merits rather than on technicalities." *Dole v, Arco Chem. Co.*, 921 F.2d 484,487 (3d Cir.1990).  Thus, O'Neill should be allowed to amend her complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **DENY** the motion and grant such other further relief the Court deems equitable.

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM OF LAW AND MOTION TO ENJOIN** were prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing and mailing a copy of the foregoing to each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK,
LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway, Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated:  Atlanta, GA                    Respectfully submitted,
October 18, 2022


BY: _Maura O'Neill_____
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

# EXHIBIT A

**Jurisdiction in Georgia**
NYU Langone, New York Presbyterian, and Beth Israel

| | Start Date | End Date | NY Institution | NY Investigator | Georgia Institution | Study Name |
|---|---|---|---|---|---|---|
| **NYU Langone Hospitals** | | | | | | |
| 1 | | 10/8/10 | NYU Cancer Institute at New York University Medical Center | Howard S. Hochster, MD NYU Langone Health | Veterans Affairs Medical Center - Atlanta (Decatur) | Irinotecan Hydrochloride and Cetuximab With or Without Ramucirumab in Treating Patients With Advanced Colorectal Cancer With Progressive Disease After Treatment With Bevacizumab-Containing Chemotherapy |
| 2 | | 10/1/05 | NYU Hassenfeld Center | Sharon L Gardner, MD NYU Langone Health | Emory University | Temozolomide,Thiotepa and Carboplatin With Autologous Stem Cell Rescue Followed by 13-cis-retinoic Acid in Patients With Recurrent/Refractory Malignant Brain Tumors |
| 3 | | 8/29/16 | NYU Langone Health | Catherine Diefenbach, MD NYU Perlmutter Cancer Center | Emory University Hospital | Safety & Efficacy Study of Combination of Pembrolizumab and Lenalidomide, in Patients With Relapsed Non-Hodgkin and Hodgkin Lymphoma |
| **New York Presbyterian Hospitals** | | | | | | |
| 4 | | 11/2/12 | New York Presbyterian Hospital | | Georgia Endoscopy Center | A Study Of PF-00547659 In Patients With Moderate To Severe Ulcerative Colitis (TURANDOT) |
| 5 | | 2/1/11 | New York Presbyterian Hospital | | Atlanta Endoscopy Center | A Study To Assess The Efficacy And Safety Of PF-04236921 In Subjects With Crohn's Disease Who Failed Anti-TNF Therapy (ANDANTE) |
| 6 | | 8/2/12 | New York Presbyterian Hospital | | Emory University Hospital | A Study Of Inotuzumab Ozogamicin Versus Investigator's Choice Of Chemotherapy In Patients With Relapsed Or Refractory Acute Lymphoblastic Leukemia |
| 7 | | 4/30/07 | New York Presbyterian Hospital | | Emory Winship Cancer Institute | Dasatinib in Polycythemia Vera |
| 8 | | 10/1/02 | New York Presbyterian Hospital | | Morehouse School of Medicine | Warfarin Versus Aspirin in Reduced Cardiac Ejection Fraction (WARCEF) Trial (WARCEF) |
| 9 | | 10/3/07 | New York Presbyterian Hospital | | Emory Winship Cancer Institute | Dasatinib in Polycythemia Vera |
| 10 | | 7/12/22 | New York Presbyterian Hospital | | Emory University Winship Cancer Institute | A Study of RNK05047 in Subjects With Advanced Solid Tumors/Diffuse Large B-cell Lymphoma (CHAMP-1) |
| **Beth Israel / Mount Sinai** | | | | | | |
| 11 | | 6/12/14 | Beth Israel Hospital | | Winship Cancer Institute, Emory University | Chemoradiation or Brachytherapy for Rectal Cancer (CORRECT) |
| 12 | | 12/1/09 | Mount Sinai School of Medicine | | Emory University | Evaluation of GSK561679 in Women With Post-Traumatic Stress Disorder |
| 13 | | 8/1/08 | Mount Sinai Medical Center | | Emory University Winship Cancer Institute | Safety and Dose Determining Study of BT062 in Patients With Relapsed or Refractory Multiple Myeloma |
| 14 | | 6/10/22 | Mount Sinai Hospital | | Emory University School of Medicine | CQ for Non Europeans With Mild to Severe UC |

*Source: clinicaltrials.gov*