IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Maura O'Neill, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-0011(SEG) |
| | ) | |
| v. | ) | |
| | ) | |
| NYU Langone Medical Center, | ) | |
| New York-Presbyterian Queens, | ) | |
| Lenox Hill Hospital, | ) | |
| Grady Health System, | ) | |
| Mount Sinai Beth Israel, | ) | |
| Northside Hospital Forsyth, | ) | |
| College Park Police Department | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT NEW YORK-PRESBYTERIAN HOSPITAL/QUEENS'
REPLY IN SUPPORT OF MOTION TO DISMISS**

This court lacks *personal* jurisdiction over New York-Presbyterian Hospital Queens (NYPQ) and none of the plaintiff's arguments in support of *subject matter* jurisdiction cure the fatal deficiencies of the complaint in this regard.

Further, in opposition to the motion to dismiss, the plaintiff has re-imagined her claims to now focusing on an alleged alteration of her medical records (as compared to her pled claims that the records were erroneously prepared in the first instance). These new theories must be disregarded and they do not in any event cure the deficiencies of the complaint.

1

Lastly and contrary to the plaintiff's representation, there is no law that compels this court to transfer the case to another jurisdiction and, in fact, given the inevitable waste of juridical resources that such transfer would cause, together with the plaintiff's long history of lawsuits, dismissal is the appropriate option.

## Argument on Reply

**Point I      There is no Personal Jurisdiction over NYPQ in Georgia**

Nothing in the plaintiff's opposition overcomes the reality that personal jurisdiction over NYPQ – a hospital in Queens in New York City – is lacking in Georgia. The pro se plaintiff appears to be confused over the questions of subject-matter and personal jurisdiction but the issue is not one of this court's ability to adjudicate the type of dispute the plaintiff seeks to bring but rather of this court's ability to do so against a defendant with no contacts with this forum state. In this regard, the only relevant point made by the plaintiff is the claim that NYPQ conducts research in Georgia.

The plaintiff offers a chart, listing the various research projects alleged to have been undertaken by the defendants, as proof that contacts with this forum state exist. First, we observe that the plaintiff does not disclose the source data for the chart that she herself apparently created, none of which is thus authenticated or admissible. More importantly, we note that as it concerns NYPQ, the chart has no entries. There

2

are several claimed research projects listed for New York-Presbyterian Hospital (which is a hospital in Manhattan, not the defendant Queens hospital).

As is explained in the affidavit of Vanessa Murphy that accompanies NYPQ's motion to dismiss, NYPQ is a separately-incorporated, stand-alone entity. The plaintiff has offered no evidence whatsoever and has made no claim in the complaint even tending to show so much as the possibility that one is "merely a division or department of the [other]." *Crawford v. Harvard Publ'g Co.*, No. 17-10439-E, 2018 U.S.App. LEXIS 30885, at *7 (11th Cir. Oct. 31, 2018) (holding that "[w]here a parent corporation and its subsidiary are separate and distinct corporate entities, one's minimum contacts with a forum state may not be attributed to the other for personal-jurisdiction purposes"), citing *Drumm Corp. v. Wright*, 326 Ga.App. 41 (Ga. Ct. App. 2014). Absent such a link, the activities of a separately-incorporated company, even if a corporate affiliate, are insufficient to establish personal jurisdiction in the forum state. *Id.*

The plaintiff argues that the *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, 926 F.Supp 1106, 1110 (N.D.Ga., Hull, F., U.S.D.J., April 15, 1996), cited in the main motion papers is off the mark because the determinative factor there was the parties' written contract. This not accurate. In reality, the court determined that personal jurisdiction was lacking in the case without reliance on the parties' contract.

We also observe that to the extent that O'Neill is now mounting a case against NYPQ under Georgia state RICO laws (OGCA 16-14-4, et seq.), the absence of NYPQ's contact with Georgia are fatal to such a claim. *Cobb County v. Jones Group P.L.C.*, 218 Ga.App. 149, 151 (1995) (holding that in a case under Georgia's state RICO laws, where the defendant lacked minimum contacts with the state, the claim would be dismissed for lack of personal jurisdiction.)

In the end, therefore, it is evident that nothing cures the fatal jurisdictional defect that results from NYPQ having no contacts whatsoever with Georgia. This reality cannot be cured or altered through an amendment of the complaint. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (holding that while a plaintiff may amend a complaint's jurisdictional allegations, where jurisdictional facts are absent, leave to amend is not warranted).

Due to the shortcomings of the plaintiff's RICO theory (as explained below), this court also cannot assert personal jurisdiction over NYPQ under the RICO statute. See, *Courboin v. Scott*, 596 Fed. Appx. 729 (11th Cir. 2014) (unpublished) (holding that in the absence of a colorable federal RICO claim … [the plaintiff] may not rely on RICO's nationwide service-of-process provision.")

**Point II    The Plaintiff's Claims are Insufficient to Support any Cause of Action**

In addition to the fatal defect of lack of jurisdiction, the complaint's substantive deficiencies also mandate dismissal.[1]

---    *The Statute of Limitations has Run*

As reflected in the complaint, it is the plaintiff's theory of the case that well before she presented to NYPQ, she was already aware of her alleged assailant's continual interference with her interactions with others, including medical staff. (Complaint at ¶ 95). It was for this reason, as the plaintiff herself has advises this court, that when she presented to NYPQ on January 1, she taped her encounter with hospital staff. (Complaint ¶ 95). Given that the plaintiff *already knew*, according to her own theory, about Wilder's alleged involvement, it cannot be said that there was any delay in discovering the relevant acts such as would extend the accrual date for any cause of action beyond the date of her treatment with NYPQ, which was January 1, 2018. *Anthony v. Am. Gen. Fin. Servs.*, 626 F.3d 1318, 1321 (11th Cir. 2010) (holding that any tolling of the statute of limitations for fraud due to the defendant's ignorance of the alleged wrong ends when the defendant becomes aware of the relevant facts), citing *Anthony v. Am. Gen. Fin. Servs.*, 287 Ga 448, 46 (2010).

---

[1] The plaintiff challenges NYPQ's entitlement to relief under Rule 12(c), with this application being made pre-answer. The plaintiff raises no procedural challenge to the motion as made also under Rule 12(b). Thus, at a minimum NYPQ is entitled to the relief sought under the latter section.

Further, in her operative complaint, the plaintiff had claimed that due to real-time intervention by her alleged assailant, Wilder, the hospital records did not accurately reflect her presentation and that she had subsequently (and unsuccessfully) sought to change the records by asking the hospital to alter it. (Complaint ¶¶ 92-97, 152-158). In opposition to the motion to dismiss, the plaintiff presses a new theory; that the records were actually proper at first but were then altered when she requested to see them. The alteration having taken place, in the plaintiff's new theory, during the last few days of the statute of limitations' reach. But the motion to dismiss before this court concerns the existing pleadings.

This court has already denied the plaintiff's request to extend her time to amend as of right (Doc. # 67) and a motion to strike the plaintiff's purported amended complaint that had been filed after that denial is pending. (Doc. 100). It is respectfully requested that this court evaluate the merits of the motion against the existing pleadings. *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (holding that the District Court did not err in considering the facts pled in the existing pleading when deciding the motion to dismiss and that the plaintiff's informal request to amend the complaint, made within the opposition to the motion to dismiss, was properly denied).

In this regard, we note that there is no applicability here for the "equitable tolling" cases (which hold that a defendant is barred from asserting the statute of

limitations defense where it actively mislead the plaintiff to think that no cause of action had accrued, or, that the statute of limitations is tolled for the same reason). (*Cf.* opp. at pg. 15, 21). This, again, is because the plaintiff was not misled, according to her own theory of the case. See, *e.g.*, *Anthony*, 626 F.3d at 1321 (holding that tolling ends when the plaintiff is no longer misled by the information withheld by the alleged tortfeasor).

Further, contrary to the plaintiff's claims, she is not entitled to an extension of the statute of limitations on a RICO claims through the time of her alleged discovery of a pattern of collusion. *Bivens Gardens Off. Bldg., Inc. v. Barnett Bank*, 906 F.2d 1546 (11th Cir 1990), on which the plaintiff relies for a contrary proposition is bad law. See *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (overruling *Bivens* and other cases and holding that its rule of "injury and pattern discovery" is "unsound.")

As the Supreme Court explained in *Rotella*, "[b]y tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Rotella*, 528 U.S. at 558. Thus, there is no "discovery rule" in RICO cases in the manner that the plaintiff describes. (Opp. at pg. 12-13).

Instead, the plaintiff's cause of action accrued when her cause of action was complete which, with respect to NYPQ, was during her ER visit on January 1.

--- *Necessary Elements of the Causes of Action have not and cannot be Alleged*

The plaintiff's opposition does not overcome other pleading defects either. The plaintiff's alleged existing knowledge (or, more technically, "belief") of the alleged conspiracy at the time that she presented to NYPQ is the very reason that reliance cannot be shown, as a matter of law. This element has particular requirements at law and is not analogous to the general and layperson's terms on which one describes the trust one does or can place in one's medical providers. For purposes of the required element "reliance" in the context of a cause of action for fraud, what must be pled (and ultimately shown) is that there was some representation which the plaintiff believed and that it was with that belief that the plaintiff proceeded to take certain actions (that ultimately proved detrimental). See, *e.g.*, *Paulk v. Thomasville Ford Lincoln Mercury, Inc.*, 317 Ga.App. 780, 782 (2012). Where the facts alleged negate the possibility that such reliance occurred, the cause of action for fraud is not sustainable. *Id.* (holding that where the plaintiff knew at the time that she completed the transaction at issue that there was reason to believe that the information given to her was inaccurate or incomplete, she could state no cause of action for fraud). Here, the plaintiff cannot make the requisite showing because it is her very claim that she knew (or, believed), when she presented

8

to NYPQ that Wilder was monitoring her and conspiring with her medical providers. Under these circumstances she cannot claim to have reasonably relied on any representation by NYPQ. *Id.*

The plaintiffs' RICO claims are similarly deficient. Nothing in the plaintiff's opposition overcomes the fact that the only relevant "fact" relating to NYPQ about which she alleges to have knowledge is that her medical records are (allegedly) inaccurate. Apparently driven by the plaintiff's extensive underlying beliefs, the plaintiff's complaint in this regard does not sound in medical malpractice; she is not claiming that the allegedly erroneous medical records reflect improper care. Instead, she claims that the allegedly erroneous medical notations are *evidence* of the hospital's collusion with her assailant.

These theories do not amount to sufficiently specific or plausible claims to sustain causes of action for sound in RICO violations. *Joseph v. Bernstein*, 612 F.App'x 551, 555-556 (11th Cir. 2015) (unpublished) (holding that where "[the plaintiff's] claims of fraud, which, as relevant to this appeal, include the RICO claims, did not comply with the heightened pleading standard of Rule 9(b)" they would be dismissed), citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (noting that civil claims "are essentially a certain breed of fraud claims" and thus must comply with Rule 9[b].")

**Point III   This Court has No Jurisdiction Over NYPQ for the State Law Claims**

For all the reasons laid out in NYPQ's main application, this court should not and must not attempt to exercise jurisdiction over the state law claims against NYPQ. The plaintiff's reliance on *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80-81 (1985) for a contrary proposition is misplaced and misleading. To start, the plaintiff has truncated the quote from *Ingersoll-Rand*. The plaintiff quotes (opp. at pg. 11) that "where a court finds that it lacks jurisdiction, it must transfer such action to the proper court" but the plaintiff omits the words that immediately follow the quoted ones. The quote ends in "if such transfer is in the interest of justice." *Id.* at 80-81. Here, the interest of justice demands that the case *not* be transferred.

Transferring cases that lack merit is not in the interest of justice. *Potter v. United States*, 108 Fed. Cl. 544, (Jan. 22, 2013) (holding that after a determination that the court lacked jurisdiction, transfer of a pro se plaintiff's case that lacked merit was not in the interest of justice).

For all the reasons laid out in the main application, this case and its underlying theories lack merit. As do the remainder of this serial litigants' suits.[2]

---

[2] The plaintiff's lawsuits to date, comprise, at a minimum of the following cases: *O'Neill v. Christopher M. Wilder*, New York State, Queens County, Index No. 712235/2018; , *O'Neill v. Deutsche Bank Securities, Inc.*, New York State, New York County, Index No. 101482/2017; *O'Neill v. Rick Steiner Fell & Benowitz LLP, Publishers Clearing House, Plethora Mobile, LLC*, New York State, New York County, Index No. 101599/2017; *O'Neill v. AdMedia Partners, Inc.*, AAA Case 01-17-002-5466, *O'Neill v. AdMedia Partners, Inc.*, New York State, Queens County, Index No. 704954/2018; *O'Neill v. Deutsche Bank Securities, Inc., Index No.* New Yok State, New York County 100334/2018; *Maura O'Neill v. Christopher M. Wilder*, New York State, Queens

10

## **Conclusion**

For the foregoing reasons, the complaint against New York-Presbyterian Hospital/Queens must be dismissed pursuant to Rules 12(b)(2), (b)(6), and (c).

Respectfully submitted this 1<u>st</u> day of November, 2022.

          **WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

3348 Peachtree Road, N.E.
Suite 1400                                                      */s/ Parks K. Stone*
Atlanta, GA 30326                                       Parks K. Stone
Main: (470) 419-6650                                Georgia Bar No. 547930
Fax: (470) 419-6651                                   *Attorneys for New York-Presbyterian*
parks.stone@wilsonelser.com            *Hospital/Queens*

---

County, Index No. 712235/2018; *O'Neill v. Christopher M. Wilder, J.L. Russo, P.C. and Michael D. Horn Esq.*, New York State, Queens County, Index No. 708483/2018.

## **CERTIFICATE OF SERVICE**

I hereby certify that I served this filing on all defendants by counsel through the PACER electronic CM/ECF filing system and by USPS first class mail and email to Plaintiff *pro se* to the following:

> Maura O'Neill
> Plaintiff, pro se
> 601 King Street
> Alexandria, VA 22314
> moneill@rahillco.com

Dated: November 1, 2022.

> */s/ Parks K. Stone*
> Parks K. Stone
> GA Bar No. 547930