**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 31 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.:** |
| Plaintiff, | 1:22-cv-00011-SEG |
| v. | |
| **NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,** | |
| Defendants. | **EMERGENCY MOTION** |

**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND
HEARING REQUEST**

**COMES NOW** Plaintiff Maura O'Neill ("Plaintiff"), and, moves the Court

for a permanent injunction against NYU Langone Hospitals ("NYU Langone"),

Beth Israel Medical Center ("Beth Israel"), and New York-Presbyterian Hospital

Queens, ("NYPQ"), together ("New York Hospital Defendants") under O.C.G.A.

§ 9-5-1. Together with Grady Memorial Hospital Corporation ("Grady") and

Northside Hospital, Inc. ("Northside") the New York Hospital Defendants are the

Hospital Defendants ("Hospital Defendants") in this action.

Plaintiff is entitled to a permanent injunction to prevent Hospital

Defendant's ongoing illegal acts, including, but not limited to the illegal

withholding of records and information from O'Neill in violation of state and

federal statutes. In addition, a permanent injunction is necessary to ensure

Hospital Defendants do not destroy any records. This motion is supported by

Plaintiff's Brief in Support of Permanent Injunction and prior filings in this

action.

## A. *Hospital Defendants' Unconstitutional Standard*

Separate but equal. During a dark phase in American history, separate but

equal was regarded, not simply as a valid legal doctrine, but as constitutional law,

supported by the Supreme Court, to deprive one group of people of its

constitutional rights. *Plessy v. Ferguson*, 163 U.S. 537, 538, 16 S. Ct. 1138,

1138, 41 L. Ed. 256 (1896). Separate is of course, not equal, and the systems of

inhumane discrimination separate but equal authorized remains a stain on

American history. Here, the defendants in this action have employed another

system, "Higher and Different." Under the illegal and unconstitutional Higher

and Different farce, Plaintiff is held to Higher and Different standards that not

only do not exist, but are in fact so farcical that they are untethered to reality, let

alone any legal or ethical standard. As described in detail below, at the same time

Plaintiff is held to farcical Higher and Different standards that simply do not exist

2

for other people, the Hospital Defendants have repeatedly violated Plaintiff's most basic human rights, broken numerous federal and state laws, destroyed evidence, and commit numerous criminal acts; all in order to protect a man who has racked up more signed legal agreements per year than Harvey Weinstein to silence the women he raped and abused.[1]

## B. Legal Alteration of Medical Records

Altering a medical record to attempt to hide acts of fraud, medical malpractice, or criminal behavior is a felony, and the falsification of medical records can cause healthcare providers to be indicted on criminal charges and face onerous civil penalties.[2]  According to the American Health Information Management Association ("AHIMA"), providers should make a new note and include the current date and time if they wish to change medical records.[3]  The note should be labeled, "Late Entry," "Correction," or "Addendum." *Id.*  Importantly, it

---

[1]When *The New York Times* published its article on October 5, 2017 that played a large part in Harvey Weinstein's downfall, the *Times*, after months of investigation, had been able to track down eight settlement agreements Weinstein signed with his victims. Kantor, Jodi; Twohey, Megan. "Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades." *The New York Times.* October 5, 2017. O'Neill was informed Wilder has at least six or seven signed agreements with women he raped or abused. At the time the *Times* article about Weinstein was published, Weinstein was 65 years old. Wilder is only 49. Thus, Wilder has accumulated more signed documents per year than Weinstein.

[2]Schott, Sharon. "How Poor Documentation Does Damage in the Court Room." Journal of AHIMA 74, no. 4 (April 2003): 20-24.

[3]Schott, Sharon. "How Poor Documentation Does Damage in the Court Room." Journal of AHIMA 74, no. 4 (April 2003): 20-24

is paramount that the provider *explain the relationship of the new note to a previous one, including the reason for the error, and the source of the new information. Id. (Emphasis added).* ***Records should always reflect who did what.[4] (Emphasis added).*** Finally, a provider making a change to a medical record should draw a line through the incorrect entry, although the text should be legible.[5]

If an omission in a medical record is noticed after a short amount of time, a late entry can be made only if the person documenting has "total recall" of the omitted information.[6] Thus, filling in missing information after the fact may lead to a misrepresentation of events if done improperly, and filling in omissions may also be illegal, and lead to criminal charges.

HIPAA requires all hospitals, including Hospital Defendants[7] to have standard audit controls, and to "[i]mplement hardware, software, and/or procedural

---

[4]Schott, Sharon. "How Poor Documentation Does Damage in the Court Room." Journal of AHIMA 74, no. 4 (April 2003): 20-24.

[5]Dougherty, Michelle. "Maintaining a Legally Sound Health Record." Journal of AHIMA 73, no. 8 (April 2003): 64A-G.

[6]Dougherty, Michelle. "Maintaining a Legally Sound Health Record." Journal of AHIMA 73, no. 8 (April 2003): 64A-G.

[7]On January 4, 2022, Plaintiff filed a complaint against several hospitals, where she went to have rape kits performed from 2017 to 2018, including NYU Langone Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"), Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital Queens, ("NYPQ"), Lenox Hill Hospital ("Lenox Hill"), Northside Hospital, Inc. ("Northside"), together ("Hospital Defendants").[7]

4

mechanisms that record and examine activity in information systems that contain

or use electronic protected health information." 45 C.F.R. § 164.312(b).

## C. Criminal Acts

The alteration and / or falsification of medical records is a crime in most

states, and is usually dealt with harshly. *Elbar, Inc. v. Claussen* (1989, Tex App

Dallas) 774 SW2d 45. Alteration of a patient's record by a doctor for the purpose

of defeating an actual or potential claim "is reprehensible and evidences a moral

deficiency and disregard for the rights of others that [courts] regard as odious and

repugnant." *Paris v. Michael Kreitz, Jr.,* 75 NC App 365, 331 SE2d 234 P.A.,

(1985). In most cases the act of requesting copies of a client's hospital records by

an attorney investigating a claim triggers a health care provider's apparent need to

alter medical records to affect the outcome of the investigation. *Langager v. Lake*

*Havasu Community Hospital,* 799 F2d 1354, 135 (1986, CA9 Ariz).

## D. Request for Information

On June 6, 2022 Plaintiff started sending letters to hospitals, including

Hospital Defendants, requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

5

Despite the fact that the two requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with HIPAA and state laws and responded to O'Neill's request. Georgia law gave Grady and Northside thirty days to respond, yet neither did. Thus, Northside and Grady failed to comply with HIPAA and state law requirements. [*See* O.C.G.A. §§ 31-33-1, 31-33-2, O.C.G.A. § 24-12-1]. New York's Public Health Law § 18(2) gave NYU Langone, Beth Israel and NYPQ only ten days to respond.

Given the Hospital Defendants lack of responsiveness, in June 2022, O'Neill went to New York, and spoke to Beth Israel. Beth Israel stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in O'Neill's medical record, and referred O'Neill to its parent company, Mount Sinai Health System ("MSHS"). However, MSHS refused to respond to O'Neill's requests for information or state whether MSHS has records about O'Neill Beth Israel does not possess even though New York's Public Health Law § 18(2) required the New York Hospital Defendants to respond within ten days, and MSHS failed to comply with the law. Likewise, when O'Neill spoke to the medical records department at NYU Langone, she was informed that the Patient Relations team, an arm of NYU's legal team, has additional records about Plaintiff.

6

Thus, what became obvious is that the Hospital Defendants are maintaining

two separate and distinct sets of records. One O'Neill has access to (e.g., the

records at Beth Israel) and another O'Neill has been deprived access to (e.g., the

records at MSHS) despite the fact that an organizaiton maintaining two sets of

books is clearly a red flag showing consciousness of guilt of fraud. Given the fact

the Hospital Defendants have two sets of records, it is clear that the Hosptial

Defendants purposefully sought to defraud and harm O'Neill despite their

fiduciary duties to O'Neill.

### *E. Motion to Compel and Response*

As a result of the Hospital Defendant's failures to adhere to state and federal

laws, on August 18, 2022, Plaintiff served a motion to compel each of the Hospital

Defendants to produce information state laws and HIPAA required Hospital

Defendants to produce, but which each Defendant failed to produce (Docket No.

58). Not only is it not typical for hospitals to violate HIPAA and state laws and

fail to provide the information O'Neill requested as described in the Motion to

Compel, but hospitals typically provide the information O'Neill requested within

only a few days because failing to do so warrants corrective action from the

Department of Health and Human Services ("HHS").

In addition, HIPAA requires all Hospital Defendants to have a compliance

officer to comply with state and federal healthcare laws and regulations. 45 C.F.R.

§ 164.530. Thus, each Hospital Defendant knew their failure to comply with

HIPAA and state laws warranted action from regulatory agencies, but each

Hospital Defendant broke laws with impunity anyway. Clearly, actions such as

these in which healthcare providers knowingly and willfully break the law are not

the norm.

In 2013, HIPAA regulations were amended by the HITECH Act which

requires health care providers to provide medical records to a patient who writes a

letter to the health care provider requesting the records. In applying section 45

CFR § 164.524, the HITECH Act provides that patient requests for electronic

records should not be accompanied by a standard HIPAA authorization. 45 CFR §

164.524. The patient's request under the HITECH Act may be as simple as the

following:

I am a patient of [Health care provider's name]. My birth date is [patient's birth
date]. I request copies of any and all of my medical records including, but not
limited to, radiological films, billing records, and outside records. Please provide
the records in electronic form on CD in the Adobe Acrobat.pdf format, and send
them to:

SIGNED:
[Patient's name]

§ 8:3. Electronic medical records under HITECH Act, Ga. Law Of Torts
Preparation For Trial § 8:3 (2022 ed.)

Georgia requires healthcare providers provide each patient with a complete

and current copy of her medical record, upon written request, to any person who

8

has received health care services from the provider. Ga. Code Ann. §§ 31-33-1,

31-33-2. The legislative purpose behind Health Records Act was to ensure that

patients have access to medical records in the custody and control of healthcare

providers. *Cotton v. Med-Cor Health Information Solutions, Inc.*, 1996, 221

Ga.App. 609, 472 S.E.2d 92.

## F. New York Law

Under New York law, "upon the written request of any subject, a health care

provider shall provide an opportunity, within ten days, for such subject to inspect

any patient information concerning or relating to the examination or treatment of

such subject in the possession of such health care provider." New York Public

Health Law § 18(2). "Patient information" or "information" under New York

Public Health Law means:

*any information concerning or relating to the examination, health assessment* including, but not limited to, a health assessment for insurance and employment purposes or treatment of an identifiable subject *maintained or possessed by a health care facility or health care practitioner who has provided or is providing services for assessment of a health condition* including, but not limited to, a health assessment for insurance and employment purposes or has treated or is treating such subject. New York Public Health Law § 18. (Emphasis added.)

Thus, under New York law, O'Neill had a right to examine "any

information concerning or relating to the examination, health assessment." Again,

under New York law, if the New York Hospital Defendants wanted to deny access

to Plaintiff to information, then New York Public Health Law § 18 (3),

9

"Limitations on access," specified a process for denying access. Specifically,

under New York Public Health Law § 18 (3)(e), "In the event of a denial of access,

the qualified person shall be informed by the provider of such denial." However,

Hospital Defendants have failed to follow either federal or state statutes.

The New York Hospital Defendants also clearly violated state laws

governing hospitals as well. Under New York law 10 NY ADC 405.10 hospitals

are required to:

Have a department that has administrative responsibility for medical records. *An accurate, clear, and comprehensive medical record shall be maintained for every person evaluated or treated* as an inpatient, ambulatory patient, emergency patient or outpatient of the hospital. 10 NY ADC 405.10. *(Emphasis Added.)*

Clearly the medical records provided to Plaintiff by NYU Langone, Beth Israel,

and NYPQ are not accurate, clear or comprehensive. Like HIPAA, New York law

also states, "*The hospital shall allow patients and other qualified persons to*

*obtain access to their medical records*." 10 NY ADC 405.10. *(Emphasis Added.).*

New York law also states:

The medical record shall contain information to justify admission and continued hospitalization, support the diagnosis, and describe the patient's progress and response to medications and services. 10 NY ADC 405.10. *(Emphasis Added.)*

Plaintiff's medical records from the New York Hospital Defendants do not

contain results of all consultative evaluations or findings by clinical and other

staff involved in O'Neill's mistreatment. Thus, the medical records from all New

10

York Hospital Defendants are fraudulent on their faces, and show clear intent to defraud O'Neill to aid Wilder, despite the fact all hospital defendants had a fiduciary duty to protect Plaintiff.

In the Motion to Extend Time, (Docket No. 60), O'Neill informed the Court that filing an Amended Complaint will be a waste of time for both Plaintiff and Defendants at this juncture given Hospital Defendants have failed to comply with HIPAA and state laws and failed to send O'Neill the information she requested in letters dated June of 2022 as described at length in Plaintiff's Motion to Compel. (Docket No. 58-1, Pages 9-19). Thus, in the Motion to Extend Time (Docket No. 60), O'Neill also asked the Court to delay the deadline for O'Neill to file an Amended Complaint until after she received the information she requested from Hospital Defendants in June of 2022.

Despite the fact O'Neill made clear in the Motion to Compel (Docket No. 58) that Hospital Defendants were violating both state and federal statutes, the Court completely ignored the facts presented by Plaintiff in the Motion to Compel (Docket No. 58) and Motion for an Extension to Time (Docket No. 60) in an order dated September 9, 2022 (the "Order"), even though this Court did not present a single case or valid reason for ignoring Plaintiff's arguments in either the Motion to Compel (Docket No. 58) or Motion for an Extension of Time (Docket No. 60). Rather, the Order is devoid of case law supporting the Court's rulings because

11

there is no case law to support flagrantly violating federal statutes, state laws, public policy, and public safety. Rather, case law clearly shows that a motion to amend should not be denied unless the amendment would be futile. *Broughton v. U.S. Bank*, No. 14-10263, (Eleventh Circuit, 2014). Thus, the court clearly abused its discretion in denying O'Neill the right to amend her complaint, particularly in Plaintiff's case given the reason O'Neill was not able to amend is because she was injured in a criminal assault and her mail was stolen as described in her Motion for Extension of Time (Docket No. 60).

## *G. Ex Parte Communication*

LR 83.1(D)(1) states, "In Civil Cases. An attorney's appearance as attorney of record for a plaintiff may be evidenced by signature on the complaint and for a defendant by signature on the answer… or…pre-answer motion… An attorney whose appearance has not been noticed will not be permitted to represent a party at trial or in any other Court proceeding until the attorney has filed a Notice of Appearance." No attorney has filed a Notice of Appearance to represent O'Neill in this case.

Canon 3(A)(4) of the Code of Conduct for United States Judges provides a:

judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to

12

respond, if requested.

Here, there is no authorization under law to consider *ex-parte* communication except LR 7.5 which is not applicable in this action or in any of the other actions O'Neill filed, and no attorney is representing O'Neill.

A judge who obtains extrinsic information for purposes unrelated to a case cannot consider the information in deciding an issue in the case. *U.S. v. Siegelman*, 799 F. Supp. 2d 1246 (M.D. Ala. 2011). Likewise, a judge's actions in meeting *ex parte* with panel of experts, appointed by the judge to investigate state mental health institutions, so the judge could receive a preview of the panel's conclusions and discern that the experts' methodology was sound, was grounds for disqualification of the judge; allowing an off-the-record briefing on issues and prohibiting opposing counsel from discovering what was said in meetings resulted in an unauthorized private investigation by the judge. *Edgar v. K.L.*, 93 F.3d 256, 45 Fed. R. Evid. Serv. 31 (7th Cir. 1996). The better practice is for a district court judge not to receive *ex parte* communications from law enforcement officers or investigators. *U.S. v. Siegelman*, 799 F. Supp. 2d 1246 (M.D. Ala. 2011).

## H. Motion to Enjoin

On October 6, 2022, O'Neill served Northside and Grady with a motion to Enjoin. (Docket Nos. 86 and 87). On October 25, 2022, Northside and Grady, filed opposing papers (Docket Nos. 96 and 97). First, LR 7.1(B) states that the

13

parties had 14 days from the date of service to respond to the motion. Given the parties responded more than 14 days after the motion was served in violation of LR 7.1(B) and failed to serve motions requesting extensions of time, the court should ignore the opposing papers filed by Northside and Grady (Docket Nos. 96 and 97) because they were not timely served, and both defendants violated court rules. LR 7.1(B).

In their opposing papers to O'Neill's Motion to Enjoin, Northside and Grady contend O'Neill was not entitled to injunctive relief because O'Neill did not state that there was not another adequate remedy of law. (Docket No. 96, Page 3, ¶2, and Docket No. 97, Page 3, ¶2). Clearly, Northside and Grady, two hospitals, did not even bother to check case law. If Northside or Grady had checked case law, they would have determined that according to Georgia's Supreme Court, the appropriate remedy of law for a person seeking access to medical records under O.C.G.A. § 33-31-2 and HIPAA, who has been denied access by a healthcare provider, is injunctive relief. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Thus, Northside and Grady are incorrect as a matter of law. Likewise, under New York law, because the New York Hospital Defendants failed to follow New York Public Law and provide O'Neill with a denial letter, O'Neill's only remedy at law

is injunctive relief because the New York Hospital Defendants violated New York statutes.

Northside and Grady also falsely claimed that O'Neill had to prove each cause of action in her Complaint would succeed on the merits. (Docket No. 96, Page 5, ¶3, and Docket No. 97, Page 5, ¶2). However, this claim is false as well. An injunction is a cause of action. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Given each of the Hospital Defendants are clearly breaking state and federal laws, it is clear that O'Neill's claim for injunctive relief will succeed on the merits because O'Neill only needs to prove that her request for an injunction under O.C.G.A. § 9-5-1 will succeed on the merits. *Showtime/The Movie Channel, Inc. v. Covered Bridge Condominium Ass'n, Inc.*, 881 F.2d 983 (1989); *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 2022 U.S. Dist. LEXIS 64223 *; 2022 WL 1027633 (2022), *Bowen v. Consolidated Elec. Distributors, Inc. Employee Welfare Ben. Plan*, 461 F.Supp.2d 1179 (2006).

Northside and Grady also claimed that lacking protected health information would not cause irreparable harm and warrant a permanent injunction. (Docket No. 96, Page 6, ¶2, and Docket No. 97, Page 5, ¶1). The Georgia Supreme Court also disagreed on this point and stated the opposite. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Specifically, the Georgia Supreme Court ruled that withholding medical information needed for a lawsuit clearly constituted

15

irreparable harm, and in cases such as Plaintiff's case, injunctive relief was
necessary. *Id.* Clearly, neither Hospital Defendant even bothered to attempt to
follow the law, or made an attempt to abide by their legal duty and check case law.
*Id.* Instead, Northside and Grady have demonstrated that they are more than happy
to break laws and rule.

It is also obvious that the balance of equities falls completely in Plaintiff's
favor and that public policy favors O'Neill given Plaintiff is simply asking that the
Hospital Defendants comply with state and federal statutes. Hospital Defendants
are breaking several state and federal laws, and depriving O'Neill of her human
rights as a result. Thus, the claims that the balance of equities is not in O'Neill's
favor and public policy does not favor O'Neill are entirely absurd.

## *I. Hearing Request*

Plaintiff's medical records from rape exams present shining examples of
*ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so.
Yet, as counsel to Hospital Defendants is surely well aware, without more than
credentials and a subjective opinion, an expert's testimony that 'it is so' is not
admissible as evidence. Rather, *Daubert* and *Kumho Tire Co.*, as well as Rule 702,
require that expert opinion be connected to existing data by something more than
dubious inferences that amount to an expert's assertion that 'it is so because I say it
is so." Thus, O'Neill's medical records are fraudulent on their faces because they

16

do not contain the information provided by third parties, without O'Neill's
knowledge or consent, that provide the actual basis for the subjective opinions that
are not supported by facts or data in O'Neill's records.

Instead, Hospital Defendants' medical records are filled with nothing more
than *ipse dixit* opinions based on false information provided to Hospital
Defendants about O'Neill without her knowledge or consent and despite the fact
that a physician's recorded recollection of a patient's medical history, which
contain medical opinions of third parties, are inadmissible as a medical record in
litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343
S.E.2d 424.

Likewise, nothing in *Daubert* or statutes governing admission of expert
testimony requires a court to admit opinion evidence which is connected to
existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012,
317 Ga.App. 795, 733 S.E.2d 7.  Thus, not only did Hospital Defendants violate
O'Neill's privacy rights, but Hospital Defendants also produced *ipse dixit* records
that are inadmissible in court because the statements in the records are not
supported by facts contained in the records. *Stoneridge Properties, Inc. v. Kuper*,
1986, 178 Ga.App. 409, 343 S.E.2d.

Both Northside and Grady told ridiculous lies in their opposing papers to
O'Neill's motion to Enjoin (Docket No. 96, Page 5, ¶2, and Docket No. 97, Page 2,

17

Footnote 1), and letters regarding sanctions will be forthcoming. To ensure NYU Langone, Beth Israel, and NYPQ do not similarly lie in their opposing papers to this motion to enjoin, the New York Hospital Defendants should file under seal their explanations showing the factual support to the claims about O'Neill's mental health made in their respective medical records. Since there is no factual support in the New York Hospital Defendant's medical records for the false claims made about O'Neill's mental health in the medical records of the New York Hospital Defendants, it will be clear to the Court that the medical records are *ipse dixit*, based on hearsay, and inadmissible in a court of law. Thus, it is obvious that all Hospital Defendants are violating O'Neill's fundamental human rights and fraudulently concealing information from O'Neill.

Fraudulent concealment exists when there has been "successful concealment of the cause of action and fraudulent means to [achieve] that concealment." *Nardone v. Reynolds*, 333 So.2d 25, 37 (Fla. 1976). Although fraudulent concealment generally applies to toll a statute of limitation, it is a doctrine of equity whose philosophy is that "'courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts.' It is a doctrine to prevent the court from participating in the fraud of the defendant." *Vargas By & Through Vargas v. Glades Gen. Hosp.*, 566 So.2d 282, 285 (Fla. Dist. Ct. App. 1990); Richard Marcus, *Fraudulent Concealment in Federal Court:*

18

*Toward a More Disparate Standard?*, 71 Geo. L.J. 829, 856 (1983) ("The

fraudulent concealment tolling doctrine originated at equity."). These principles

apply equally here. *Pension Ben. Guar. Corp. v. 20 SE 3rd St LLC*, 2019 U.S. Dist.

LEXIS 30424, *20-21, 2019 WL 2254820. Here, this court may not participate in

Hospital Defendants fraud by adjudicating Hospital Defendants motions to

dismiss, and allowing Hospital Defendants to profit from their fraudulent

concealment of material facts that O'Neill needed to amend her complaint.

## *J. Request to Consolidate Hearing*

Given the Hospital Defendants have clearly violated state and federal

statutes, an injunction is necessary. It is also clear that the nature of O'Neill's

request entails a permanent injunction. O'Neill is essentially asking Hospital

Defendants to turn over records that are in their possession. Once the court has

ruled that the Hospital Defendants must follow HIPAA and state laws and allow

O'Neill access to her records, then O'Neill will have access to her records. Once

Plaintiff has the records, there is no further action. Thus, by definition, the nature

of O'Neill's request is for a permanent injunction. Under Georgia law, this court

may turn a hearing for a preliminary injunction into a hearing for a permanent

injunction given the nature of the request.

Specifically, under certain circumstances, the Civil Practice Act permits a

trial court, either "[b]efore or after the commencement of" the interlocutory

19

hearing, to "order the trial of the action on the merits to be advanced and

consolidated with the [interlocutory] hearing." OCGA § 9–11–65 (a) (2).

However, the court's authority to so consolidate is " 'tempered by the due process

principle that fair notice and an opportunity to be heard must be given the litigants

before the disposition of on the merits.' " *McHugh Fuller Law Group, PLLC v.*

*PruittHealth-Toccoa, LLC*, 297 Ga. 94, 96, 772 S.E.2d 660 (2015).

## *K. Information Request*

Given Hospital Defendants have broken numerous laws and statutes, failed

to comply with even the most basic of statutory requirements, Plaintiff files this

motion for a permanent injunction to prevent Hospital Defendants from

withholding information O'Neill has a right to under the law, and destroying its

records. O'Neill requests Hospital Defendants:

a. Provide the following information:
   1. [Defendant] does not have any additional records, data, or information that Defendant used to make decisions about Maura O'Neill's healthcare that are not included in Maura O'Neill's medical records from her visit(s) to [Defendant] in 2017/2018.

   2. No related entity, LLC, SPV, parent company, individual, partnership, corporation, or any other entity, or law firm hired by [Defendant] or business associates, as defined by 45 CFR 160.103, has any additional records, data, or information that Defendant used to make decisions about Maura O'Neill's healthcare that are not included in Maura O'Neill's medical records from her visit(s) to [Defendant] in 2017/2018.[8]

---

[8]In February of 2019, Plaintiff sent letters to DB. DB was willing to deny DB had possession of Plaintiff's medical records, but DB was not willing to deny that (1) a related entity or law firm hired by DB had copies of those records or (2) DB

3. [Defendant] [has / does not have], and [has had since (date) / has never had], a medical release form, Power of Attorney, or other authorization on file that would allow any person or entity to speak to any person at [Defendant] about Maura O'Neill or receive any information about Maura O'Neill's medical records or have access to information about Maura O'Neill's medical care.

4. [Defendant] [did/did not] have [an authorization] to speak with law enforcement about O'Neill.

b.  Produce a list of names of all individuals each Hospital Defendant spoke to about O'Neill's health. (e.g., Grady spoke to Beth Israel and the College Park Police).

c.  Provide detailed statement of all information procured from any third party about O'Neill's health (e.g., NYPD, College Park Police, other provider).

d.  Stop using deceptive legalese in an attempt to thwart and deceive Plaintiff (e.g., Accounting of Disclosures).

    Plaintiff also asks the Court to waive the time requirements of the motion rule and grant an immediate hearing. An expedited procedure is necessary because filing an Amended Complaint and adjudicating Hospital Defendants' motions to dismiss will be a waste of time at this juncture given Hospital Defendants have failed to comply with HIPAA and state statutes and send O'Neill the information she

---

discussed O'Neill's medical records with a third party. Thus, there is reason to believe Hospital Defendants would hide information with a related entity or law firm.

requested as described at length in this motion.

**WHEREFORE,** Plaintiff Maura O'Neill respectfully requests that this

Court **GRANT** the instant Motion.

Dated:  Atlanta, GA
October 31, 2022

Respectfully submitted,

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MAURA O'NEILL,**

Plaintiff,

v.

**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**

Defendants.

**CIVIL ACTION FILE NO.:
1:22-cv-00011-SEG**

## ORDER

Upon the motion of Plaintiff, Maura O'Neill, and for good cause shown, it is

hereby:

**ORDERED** that a hearing will be set on _____ at _____. The

hearing will be held at _____.

**ORDERED** that _____ will appear at the hearing to be held

on _____.

**ORDERED** that given the nature of the injunctive relief sought, the hearing

will be for a permanent injunction to prevent any defendants in this action from

violating any federal or state statute.

Date: _____

_____

United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| **MAURA O'NEILL,**<br><br>Plaintiff,<br><br>v.<br><br>**NYU LANGONE HOSPITALS,**<br>**NEW YORK- PRESBYTERIAN**<br>**HOSPITAL QUEENS, LENOX**<br>**HILL HOSPITAL, GRADY**<br>**MEMORIAL HOSPITAL**<br>**CORPORATION, MOUNT SINAI**<br>**BETH ISRAEL, NORTHSIDE**<br>**HOSPITAL, INC., COLLEGE**<br>**PARK POLICE DEPARTMENT,**<br><br>Defendants. | **CIVIL ACTION FILE NO.:**<br>**1:22-cv-00011-SEG** |

## ORDER

Upon the motion of Plaintiff, Maura O'Neill, and for good cause shown, it is

hereby:

**ORDERED** that NYU Langone Hospitals, New York-Presbyterian Hospital

Queens, and Mount Sinai Beth Israel will comply with state and federal laws and

provide O'Neill with:

- Any and all information [Defendant] used to make decisions about
  O'Neill's healthcare that is not included in the medical record. If
  [Defendant] does not have any additional records, data, or information

25

that [Defendant] used to make decisions about Maura O'Neill that are not included in Maura O'Neill's medical records from her visit(s) to [Defendant] in 2017/2018, then [Defendant] will provide a simple plain language statement stating it does not have any additional records, data or information that [Defendant] used to make decisions about O'Neill.

- A statement of whether it [has / does not have], and [has had since (date) / has never had], a medical release form, Power of Attorney, or other authorization on file that would allow any person or entity to speak to any person at [Defendant] about Maura O'Neill or receive any information about Maura O'Neill's medical records or have access to information about Maura O'Neill's medical care.
- A list of names of all individuals and entities [Defendant] spoke to about O'Neill's health.
- A detailed statement of all information procured from any third party about O'Neill's health.
- Documentation showing whether [Defendant] [did/did not] have [an authorization] to speak with law enforcement about O'Neill.

**ORDERED** that NYU Langone Hospitals, New York-Presbyterian Hospital

Queens, and Mount Sinai Beth Israel will provide O'Neill with plain language

responses to requests for information that directly and completely respond to

requests for information or plain language letters stating the rationale for

withholding protected health information.

Date: _____

_____

United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.:** |
| | **1:22-cv-00011-SEG** |
| Plaintiff, | |
| v. | |
| **NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN

October 31, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................................................... 1

LEGAL ARGUMENT......................................................................................... 4

   POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS
HER HEALTHCARE INFORMATION. ......................................................... 4

   POINT II:  DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL
INFORMATION FROM PLAINTIFF............................................................. 12

   POINT III:  DEFENDANTS LIED TO O'NEILL........................................... 14

   POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE
CRIMINAL ACTS. ...................................................................................... 15

   POINT V:  DEFENDANT'S CONDUCT IS ILLEGAL. ................................ 16

   POINT VI:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE
RELIEF........................................................................................................ 23

CONCLUSION.................................................................................................. 24

i

Maura O'Neill ("Plaintiff") submits this memorandum of law in support of her Motion for Permanent Injunction and Hearing Request.

## **PRELIMINARY STATEMENT**

On June 6, 2022 Plaintiff started sending letters to NYU Langone Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"), Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital Queens, ("NYPQ"), and Northside Hospital, Inc. ("Northside"), together ("Hospital Defendants") requesting basic information. Despite the fact that O'Neill's requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with state and federal laws and responded to O'Neill's request.

The Health Insurance Portability and Accountability Act ("HIPAA") gives an individual the right to access information about her healthcare, and requires healthcare organizations to disclose all records it used to make healthcare decisions. What is obvious from reading Plaintiff's medical records from Hospital Defendants is that the records are based on information that is not contained in the medical records, but was provided by third parties. While Hospital Defendants were required by law to disclose to O'Neill that they had conversations with third parties about her, the hospitals instead covered-up the fact that they received

1

information from third parties, had conflicts of interest, and made decisions about O'Neill based on information illicitly obtained from others.

Likewise, under New York law, "upon the written request of any subject, a health care provider shall provide an opportunity, within ten days, for such subject to inspect any patient information concerning or relating to the examination or treatment of such subject in the possession of such health care provider." New York Public Health Law § 18(2). Thus, under New York law, O'Neill had a right to examine "any information concerning or relating to the examination, health assessment."

It is illegal, and by definition black letter fraud, for any healthcare provider to make diagnosis and treatment decisions and not disclose to the person the basis of said diagnosis and treatment decision. Thus, Plaintiff's medical records from Hospital Defendants are fraudulent because the records fail to disclose that healthcare decisions were based on false and slanderous information provided without Plaintiff's knowledge or consent.

Because of a physician's superior medical knowledge and his relationship with a patient, the doctrine of constructive fraud applies when a healthcare provider makes inaccurate statements to his patient concerning treatment or diagnosis. Also inherent in the physician-patient relationship is an affirmative duty

2

for the physician to disclose all material facts to the patient. A physician's or other healthcare provider's failure to disclose material information concerning a patient's condition or treatment constitutes fraudulent concealment. In addition, when a physician has knowledge of a material fact concerning the patient's physical condition, the fiduciary relationship renders the physician's silence fraudulent.

At this point, the only support for baseless opinions contained in O'Neill's medical records are the providers own personal judgments. Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so. Yet, as counsel to Hospital Defendants are surely well aware, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible as evidence. Rather, *Daubert* and *Kumho Tire Co.*, as well as Rule 702, require that expert opinion be connected to existing data by something more than dubious inferences that amount to an expert's assertion that 'it is so because I say it is so." Thus, O'Neill's medical records are fraudulent on their face because they do not contain the information provided by third parties without O'Neill's knowledge or consent that provide the actual basis for the subjective opinions that are not supported by facts or data contained in O'Neill's medical records.

3

In addition, providers at Hospital Defendants failed to perform even the most basic of tasks. It is clear that rather than provide objective medical care to O'Neill, Hospital Defendants acted as agents for the Wilder team and took a series of steps to harm O'Neill. Continuing to withhold information from O'Neill is simply extending the destructive and abusive pattern of criminal acts and fraud to which O'Neill has been subjected.

## LEGAL ARGUMENT

## POINT I: DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS HER HEALTHCARE INFORMATION.

HIPAA gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose all records it used to make healthcare decisions. 45 CFR § 164.501. On June 6, 2022 Plaintiff started sending letters to hospitals, including Hospital Defendants, requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

4

Despite the fact that the two requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with HIPAA and state laws and responded to O'Neill's request.

## A. O'Neill's Rights

While O'Neill has an absolute right under HIPAA to view information used to make decisions about her, the Hospital Defendants have made a concerted effort to cover-up the fact that the Wilder team made phone calls about O'Neill, and Plaintiff's healthcare was dictated by the Wilder team. For example, in a letter sent on July 5, 2022, NYU Langone stated,

> Please know that the designated record set is limited to records that are used in whole or in part by or for NYU Langone to make decisions about individuals. This information does not include the names of all individuals that have provided information about you and/or their conversations.

Thus, NYU Langone buried the details of conversations it had with other individuals, and claimed this information was not part of the designated record set.

A "designated record set" is defined in 45 CFR 164.501 as a group of records maintained by or for a covered entity that comprises the:

- Medical records and billing records about individuals maintained by or for a covered health care provider;
- Enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or
- Other records that are used, in whole or in part, by or for the covered entity to make decisions about individuals.

5

According to the Department of Health and Human Services ("HHS"), this last

category includes records that are used to make decisions about any individuals,

whether or not the records have been used to make a decision about the particular

individual requesting access.[9]

HHS also defines the term "record" as any item, collection, or grouping of

information that includes PHI and is maintained, collected, used, or disseminated

by or for a covered entity.[10]  PHI is protected health information and is defined as

individually identifiable health information...that is: (1) transmitted by electronic

media; (2) maintained in electronic media; or (3) transmitted or maintained in any

other form or medium. 45 CFR § 160.103.

Individually identifiable health information is "information that is a subset

of health information, including demographic information collected from an

individual, and:

(1)    Is created or received by a health care provider, health plan, employer,
or health care clearinghouse; and

(2)    Relates to the past, present, or future physical or mental health or condition
of an individual; the provision of health care to an individual; or the past,
present, or future payment for the provision of health care to an individual;
and (i) That identifies the individual; or (ii) With respect to which there is a

---

[9]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html
[10]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

> reasonable basis to believe the information can be used to identify the
> individual." 45 CFR § 160.103.

As shown through the previous definitions, under HIPAA, O'Neill has an

absolute right to any information about any decision made about her by Hospital

Defendants including the names of any individuals that provided information to

Defendants about O'Neill and the conversations Defendants had with third parties

about O'Neill.

## B. Denial of Access

HIPAA contains grounds and conditions for denial of access to protected

health information, 45 CFR 164.524(a)(2)-(4). An individual is not required to

provide a reason for requesting access to her information, and the individual's

rationale for requesting access, if voluntarily offered or known by the healthcare

provider, is not a permitted reason to deny access.[11] Thus, the reason offered by

Hospital Defendants for denying access to O'Neill, namely "discovery," (Docket

Nos. [61], [62,] 63 and 64) is not a legally permissible reason under HIPAA or state

laws.

In addition, under HIPAA, if a healthcare provider denies access, in whole or

in part, to protected health information requested by the individual based on one or

---

[11]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

7

more permitted grounds, the healthcare provider *MUST* provide a denial in writing to the individual no later than 30 calendar days after the request (or no more than 60 calendar days if the covered entity notified the individual of an extension) according to 45 CFR 164.524(b)(2).[12] In addition, under federal regulations, the denial must be in plain language and describe the basis for denial; if applicable, the individual's right to have the decision reviewed and how to request such a review; and how the individual may submit a complaint to the healthcare provider or the HHS Office for Civil Rights. 45 CFR 164.524(d). In addition, under HIPAA, all healthcare providers must, to the extent possible, provide the individual with access to any other protected health information requested, after excluding the PHI to which the entity has a ground to deny access. 45 CFR §164.524(d)(1).

Thus, even if Hospital Defendants wanted to refuse to send PHI to O'Neill, Hospital Defendants were required by HIPAA to inform O'Neill in writing that they were denying access to some PHI. For example, if NYU Langone wanted to deny O'Neill access to information because it compiled information in reasonable anticipation of, or for use in, a legal proceeding, then NYU Langone was required

---

[12]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

8

to send O'Neill a letter stating that was the case.[13] However, even if that was NYU Langone's intention, Plaintiff still retained the right to access the underlying PHI from the designated record set(s) used to generate the information about O'Neill for use in a legal proceeding.[14]

The laws are clear. All the Hospital Defendants had to do was read an HHS website to know that each Hospital Defendant was violating federal statutes. However, the Hospital Defendants are clearly violating black letter federal and state statutes.

## C. Privacy Laws

Medical records are protected by HIPAA's right of privacy and cannot be disclosed without the consent of the patient unless their production is otherwise required by law. *45 CFR Parts 160 and 164.* In the absence of a waiver, a patient must be afforded notice and an opportunity to object prior to the disclosure of her medical records. *45 CFR Parts 160 and 164.* For example, in the case *Juric v. Bergstraesser,* the patient's allegations that his physician disclosed to patient's wife the patient's personal information learned during course of treatment, and that

---

[13]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html
[14]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

9

such disclosure was provided to his wife and her counsel, and was used by his wife as a basis to take adverse actions against the patient in his "marital dispute," resulting in the patient being forced to undergo a psychiatric examination and being denied visitation for months with his young daughter, stated a claim against the physician for breach of the implied covenant of trust and confidence inherent in the patient-physician relationship. *Juric v. Bergstraesser*, 44 A.D.3d 1186, 844 N.Y.S.2d 465 (3d Dep't 2007).

Here, Hospital Defendants spoke to Wilder's agents about Plaintiff without first obtaining O'Neill's consent, and Hospital Defendants disclosed confidential information to Wilder's agents despite the fact Beth Israel, NYPQ and NYU Langone stated they do not have a Power of Attorney. Thus, Hospital Defendants chose to flagrantly violate O'Neill's rights under the law. *45 CFR Part 160 and Part 164, Subparts A and E.*

Worse still, the information used to harm O'Neill in Hospital Defendants' medical records were based on fake accounts Wilder set up in O'Neill's name to impersonate O'Neill. At no time in her entire life has O'Neill ever been in a "relationship" with Wilder, or even had a personal conversation with him for that matter. In fact, other than the times Wilder had O'Neill drugged from 2017 onwards, O'Neill has only ever spoken to Wilder for a grand total of three hours

10

during the two and a half years O'Neill worked at DB from 2004 to 2007. Any claim of a "relationship" between Plaintiff and Wilder, a psychopath, stalker, and rapist, is completely false. Instead, in order to create a "relationship" that never existed, Wilder set-up fake accounts in O'Neill's name in WhatsApp, Viber, Line, and Google Voice, and Wilder and his rapist associates used those fake accounts to impersonate O'Neill. Forensic reviews of O'Neill's phones, computers, and electronic devices showed there was no communication between O'Neill and Wilder or any of the other rapists who claimed to have "consensual" sexual relations with O'Neill from 2017 to 2022. Instead, Wilder and his rapist associates have stalked and spied on O'Neill and sent fake messages pretending to be O'Neill.

By incorporating the stupid and false claims of Wilder and his rapists associates into their medical records, Hospital Defendants violated O.C.G.A. § 16-11-67, O.C.G.A. § 16-11-62(1), and O.C.G.A. § 24-9-901. It is really rather stupid that Hospital Defendants expect people to believe that the Hospital Defendants illegally altered O'Neill's medical records after O'Neill left the hospitals' premises in violation of criminal statutes, but Hospital Defendants think using fake messaging accounts that are not shown on Plaintiff's phone is reasonable. If there really was a "relationship" between Wilder and O'Neill or Wilder's rapist

11

associates, why have Hospital Defendants failed to account for their sources of information in O'Neill's medical records, and thereby violated criminal statutes? Based on the facts, it is clear Hospital Defendants know they commit criminal acts and falsified records to harm O'Neill, the same way Wilder set-up fake accounts to impersonate O'Neill in order to further his criminal scheme.

## POINT II: DEFENDANTS FRAUDULENTLY CONCEALED MATERIAL INFORMATION FROM PLAINTIFF.

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician. Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that defendant make some actual misrepresentation. Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal

12

by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

Given Hospital Defendant's medical record and treatment decisions make clear Hospital relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals Hospital Defendants spoke to about O'Neill, and the details of Hospital Defendants' conversations about O'Neill must be included in O'Neill's designated record sets. 45 CFR § 164.501.

A patient is entitled to trust her physician and rely on what he tells the patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, Hospital Defendants' decisions to hide information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from Hospital Defendants' that the medical records are based on information that is not contained in O'Neill's medical records. In fact, there is no factual support for numerous statements written in O'Neill's medical records, and it is clear that Hospital Defendants' bases for several statements in O'Neill's medical records is due to conversations Hospital Defendants had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to Hospital Defendants about O'Neill behind her back.

13

## POINT III: DEFENDANTS LIED TO O'NEILL.

The only support for the baseless opinions in O'Neill's medical records are the providers own personal judgment. Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so. Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987). "Reliability cannot be established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996). It is clear when reading O'Neill's medical records from Hospital Defendants that her medical records are based on

14

information that is not contained in her medical records. Instead, Hospital

Defendants' medical records are filled with nothing more than *ipse dixit* opinions

based on false information provided to Hospital Defendants about Plaintiff without

O'Neill's knowledge or consent and despite the fact that a physician's recorded

recollection of a patient's medical history, which contain medical opinions of third

parties are inadmissible as a medical record in litigation. *Stoneridge Properties,*

*Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424. Likewise, nothing in

*Daubert* or statutes governing admission of expert testimony requires a court to

admit opinion evidence which is connected to existing data only by the *ipse dixit* of

the expert. *Hayward v. Kroger Co.*, 2012, 317 Ga.App. 795, 733 S.E.2d 7. Thus,

not only did Hospital Defendants violate O'Neill's privacy rights, but Hospital

Defendants also produced *ipse dixit* records that are inadmissible in court because

the statements in the records are not supported by facts contained in the records.

*Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424.

## POINT IV:  DEFENDANTS' MEDICAL RECORDS CLEARLY EVIDENCE CRIMINAL ACTS.

The alteration and / or falsification of medical records is a crime in most

states, and is usually dealt with harshly. *Elbar, Inc. v. Claussen* (1989, Tex App

Dallas) 774 SW2d 45. Alteration of medical records is usually treated as a

15

misdemeanor, but can be a felony if done intentionally and willfully. *Elbar, Inc. v. Claussen* (1989, Tex App Dallas) 774 SW2d 45.

Alteration of a patient's record by a doctor for the purpose of defeating an actual or potential claim "is reprehensible and evidences a moral deficiency and disregard for the rights of others that [courts] regard as odious and repugnant." *Paris v. Michael Kreitz, Jr.,* 75 NC App 365, 331 SE2d 234 P.A., (1985). In most cases the act of requesting copies of a client's hospital records by an attorney investigating a claim triggers a health care provider's apparent need to alter medical records to affect the outcome of the investigation. *Langager v. Lake Havasu Community Hospital,* 799 F2d 1354, 135 (1986, CA9 Ariz).

A strong inference of *consciousness of guilt* arises where a health care provider is unable to produce the patient's original clinical record concerning the patient's treatment. *Thor v. Boska*, 38 Cal App 3d 558, 113 Cal Rptr 296 (1974, 2nd Dist). Similarly, if the jury is satisfied that the health care provider intentionally altered a patient's records, it can infer that the purpose in falsifying the documents was fraudulent, and the jury can further infer that accurate medical records would have been unfavorable to the provider's interests. *Pharr v. Cortese,* 147 Misc 2d 1078, 559 NYS2d 780 (1990).

## POINT V: DEFENDANT'S CONDUCT IS ILLEGAL.

16

O'Neill learned in June of 2020 that Wilder claimed to have a power of attorney to control her healthcare. In addition, in August of 2020, Watson, claimed that said power of attorney had "been through the courts." When O'Neill pointed out that O'Neill had never signed any agreement with Wilder, and all Watson's claims were entirely false, O'Neill was informed that O'Neill "lost" her copy of the agreement. Setting aside the fact that Wilder and Watson are stalking O'Neill and telling ridiculous lies about O'Neill, if the Power of Attorney Watson claims O'Neill signed was indeed legitimate, which of course it is not, then Wilder or Watson would simply send a copy to O'Neill in the mail and call her on her phone rather than stalk O'Neill, lie, and claim O'Neill "lost" her copy.

Moreover, even though Watson claims to be an attorney, she ignores the law. Specifically, HIPAA requires healthcare organizations to keep copies of any medical release forms to release medical information on file for six years. CFR §164.316(b)(2)(i). Thus, if Wilder really did have a Power of Attorney, and Watson really did have a legal right to make phone calls to healthcare organizations when O'Neill was having rape exams performed, then those medical release forms would be kept on file with each healthcare organization. Yet, no

17

Hospital Defendant has stated it has any authorization or Power of Attorney on file, or that any person has any right to make healthcare decisions about O'Neill.

In addition, even if someone says he has a Power of Attorney, when a health care provider reasonably believes that an individual, has been or may be subjected to domestic violence, abuse or neglect by the personal representative, or that treating a person as an individual's personal representative could endanger the individual, the covered entity may choose not to treat that person as the individual's personal representative, if in the exercise of professional judgment, doing so would not be in the best interests of the individual.[15] Among other things, providers face legal liabilities for depriving others of healthcare. In addition, the person who claims to have a Power of Attorney and is depriving O'Neill of healthcare, faces liability for depriving O'Neill of healthcare.

In addition, as a general principle, courts will not enforce illegal contracts. Restatement, Contracts § 598 (1932). See generally 5 Williston, Contracts §§ 1628, 1630 (Rev. ed. 1937). A contract is illegal if the circumstances of its formation or any of its provisions is prohibited by statute or contrary to public policy. Restatement, Contracts § 512 (1932). Thus, if the method of securing the

---

[15]https://www.hhs.gov/hipaa/for-professionals/faq/220/can-i-access-medical-record-with-power-of-attorney/index.html

18

contract, the promised performance or the method of performance contemplated, or the consideration are illegal, then the whole contract is illegal. *Bothwell v. Buckbee, Mears Co.*, 275 U.S. 274 (1927); *Cook v. Wolverine Stockyards Co.*, 344 Mich. 207, 73 N.W.2d 902 (1955).

Even if the promised performance is not illegal in itself, the contract is illegal if binding oneself to such performance is prohibited by statute or contrary to public policy. *Jordan v. Nationstar Mortgage, LLC*, 185 Wash. 2d 876, 374 P.3d 1195 (2016). In addition, mandatory rules of law prohibit the contracting of certain terms as violating public policy. *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, 346 P.3d 1136 (N.M. 2015). Here, there is no Power or Attorney that would allow Hospital Defendants to violate HIPAA and state statutes.

A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).

Plaintiff has never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder. Any claim she

19

voluntarily even had a "personal" conversation with a sick freak like Wilder is lie.
The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to
possess is also illegal. Wilder, Deutsche Bank, and each of the Hospital
Defendants are prohibited by statute from depriving O'Neill of the information she
requested in her June 2022 letters as described in the Motion to Compel. (Docket
No. 58, Page 9, ¶1-Page 17). Yet, Hospital Defendants are fraudulently concealing
information from Plaintiff as described in the Memorandum in Support of the
Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).

Hospital Defendants have no legal right to violate statutes, but are doing so
anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have
a Power of Attorney, Hospital Defendants are not allowed to hide information
about O'Neill's health from her because doing so is prohibited by statute, and a
Georgia court may not enforce a contract that conflicts with a statute. *Langford v.
Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993). The
ridiculous "Power of Attorney" Wilder claims to have would also be unenforceable
in the state of New York because it "violates a statute imposing a penalty." *Evans-
Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926 N.Y.S.2d 140 (2d Dep't
2011) (violation of GBL § 771); *Akers v. Mutual Life Ins. Co. of New York*, 59

20

Misc. 273, 112 N.Y.S. 254 (Sup 1908). Thus, Hospital Defendants have no legal means of withholding information from O'Neill.

Since HIPAA and state statutes state O'Neill has a right to the information she requested in her June 2022 letters, Hospital Defendants must send her the information she requested or letters denying her requests since there is no legally enforceable contract, Power of Attorney, or authorization Wilder or Watson could possess that would deprive O'Neill of her rights under HIPAA and state laws. Powers of Attorney, authorizations, or medical release forms that contain provisions specially prohibited by law are void and nonenforceable. *Rape v. Poarch Band of Creek Indians*, 2017 WL 4325017 (Ala. 2017). One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198 (11th Cir. 2019).

In addition, New York law required that if O'Neill really did have a healthcare agent, than the agent was required to act in Plaintiff's best interests. *Stein v. County of Nassau*, 642 F. Supp. 2d 135 (E.D. N.Y. 2009). Thus, the Hospital Defendants and Wilder team had no legal right to alter O'Neill's medical records after she left the Hospital Defendants' premises to change O'Neill's medical records to contain stupid stories from Wilder and his rapist

21

associates. Given Wilder's and his rapist associates' stories are based on fake accounts set-up in O'Neill's name without her knowledge or consent and used to illegally impersonate Plaintiff, and videotapes of O'Neill when she was drugged, it was clearly criminal for Hospital Defendants to change O'Neill's statements to the nurses, doctors and other healthcare providers to the stupid mental health lies told by Wilder team in O'Neill's medical records.

## B. Business Associates

The HIPAA Privacy, Security, and Breach Notification Rules apply to both healthcare providers and their business associates. A "business associate" is generally a person or entity who "creates, receives, maintains, or transmits" protected health information (PHI) in the course of performing services on behalf of the covered entity (e.g., management; billing personal; health record vendors; lawyers; accountants; and malpractice insurers). 45 CFR 160.103. Business associates must comply with HIPAA, and HHS is required to impose HIPAA penalties if a business associate acts in violation of statutes. 45 CFR § 160.401 and 164.404. Thus, even if Hospital Defendants' have two sets of records like Beth Israel / MSHS and NYU Langone, then Hospital Defendants' business associates are subject to HIPAA's rules. Thus, legally, Hospital Defendants' cannot use a lawyer, a parent company, or related entity to hide information from O'Neill.

22

## POINT VI:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

An injunction under O.C.G.A. § 9-5-1 may be granted where there is

controversy between parties and one of them is committing an act or threatening

the commission of an act that will cause irreparable injury. *Eastman Kodak Co. v.

Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969), appeal dismissed, 441 F.2d

1079 (5th Cir. 1971).  Such is the case here.  As described above, Hospital

Defendants are failing to comply with state and federal laws and O'Neill faces

irreparable injury as a result.  O'Neill cannot accurately amend her complaint

without the information she requested in her June 2022 letters.

An injunction serves to restrain any act contrary to equity and good

conscience, and for which no adequate remedy at law is provided. *Waycross

Military Ass'n v. Hiers*, 209 Ga. 812, 76 S.E.2d 486 (1953).  Here, since Hospital

Defendants are refusing to comply with state and federal laws, O'Neill has no

option but to ask the court to enjoin Hospital Defendants from continuing to

withhold the information Plaintiff requested in her June 2022 letters. *Alvista

Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009).  Under the law, Hospital

Defendants do have rights to withhold information, however, Hospital Defendants

23

must send O'Neill plain language denial letters stating their reasons for denying access to information. 45 CFR 164.524(a)(2)-(4).

It is not the function of an injunction to decide a case on merits, and the possibility that the party obtaining an injunction may not win on the merits is not determinative of the propriety or validity of the court's granting the injunction. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969). Rather, each case must be determined on its particular allegations, and must be decided on the nature, extent, and kind of equitable relief sought. *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 277 S.E.2d 646 (1981). Thus, the only determination this court needs to make is whether Hospital Defendants are violating the state and federal statutes referenced above and in the foregoing motion. Clearly, the answer is yes and an injunction is necessary.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court **GRANT** the motion and grant such other further relief the Court deems equitable.

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned certifies that the within and foregoing **MEMORANDUM OF LAW AND MOTION TO ENJOIN** were prepared using Times New Roman

24

14 point font in accordance with Local Rule 5.1 of the United States District Court

for the Northern District of Georgia.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and

correct copy of the foregoing by emailing and mailing a copy of the foregoing to

each Defendant at the following addresses:

## LEWIS BRISBOIS BISGAARD & SMITH LLP
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

## WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

## WATSON SPENCE LLP
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

in accordance with Rule 5(b)(2)(E).

Dated: Atlanta, GA                    Respectfully submitted,
October 31, 2022

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

26

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.:** 1:22-cv-00011-SEG |
| Plaintiff, | |
| v. | |
| **NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,** | |
| | **AFFIDAVIT** |
| Defendants. | |

## PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR INJUNCTION

I, Maura O'Neill, being duly sworn, deposes and states as follows:

1. On January 4, 2022, I filed a complaint against several hospitals, where I

went to have rape kits performed from 2017 to 2018, including NYU Langone

Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"),

Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital

Queens, ("NYU"), and Northside Hospital, Inc. ("Northside"), together ("Hospital

Defendants").

1

## A. HIPAA Request / Two Sets of Records

2. On June 6, 2022, I started sending letters to hospitals requesting two basic

pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

3. Despite the fact that the two requests for information are incredibly basic,

not a single one of the Hospital Defendants fully complied with HIPAA and state

laws and responded to my request.

4. Given the Hospital Defendants lack of responsiveness, in June 2022, I went

to New York, and spoke to Beth Israel. Beth Israel stated it does not have a

Power of Attorney or authorization on file. It also stated the only information it

has on record is in my medical record, and referred me to its parent company,

Mount Sinai Health System ("MSHS").

5. However, MSHS refused to respond to my requests for information or state

whether MSHS has records about me Beth Israel does not possess even though

New York's Public Health Law § 18(2) required the New York Hosptial

Defendants to respond within ten days, and MSHS failed to comply with the law.

6. Likewise, when I spoke to the medical records department at NYU

2

Langone, I was informed that the Patient Relations team, an arm of NYU's legal team, has additional records about me.

7. Thus, what became obvious is that the Hospital Defendants are maintaining two separate and distinct sets of records. One I have access to (e.g., the records at Beth Israel) and another I have been deprived access to (e.g., the records at MSHS) despite the fact that an organizaiton maintaining two sets of books is clearly a red flag showing consciousness of guilt of fraud.

8. As a result of my conversations with Beth Israel and NYU Langone, on June 26, 2022, I sent an email to NYPQ asking:

It has come to my attention that other hospitals are seeking to hide the information I requested in my letters to your organization dated June 6, 2022 and June 10, 2022 because the information I seek is contained in a different department or separate legal entity. Thus, while I went to the medical records department of a hospital to request the information, the information I seek is actually housed in an affiliated entity or department. Thus, I need to know if New York-Presbyterian Queens Hospital has a parent company or affiliated entity that could potentially have any information about me. In particular, please let me know the relationship between New York-Presbyterian Queens Hospital and New York-Presbyterian Hospital.

9. NYPQ never responded to this email and never denied that it has two sets of records.

10. If NYPQ was not committing fraud, and did not have two sets of records, NYPQ would have denied that another legal entity had a different set of records.

11. Given the fact the NYPQ has two sets of records, it is clear NYPQ

3

purposefully sought to defraud and harm me despite its fiduciary duties to me.

**B. Summary of Responses**

12. A summary of the responses I received to my June 2022 letters follows.

13. NYU Langone stated it has no Power of Attorney, and claimed it spoke to others about me. Yet, NYU Langone has provided no authorization, and further claimed it had not unlawfully disclosed my medical information. My medical record also does not contain references to any third parties, even though NYU Langone spoke to third parties.

14. Beth Israel stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in my medical record. However, its parent company, Mount Sinai Health System ("MSHS") refuses to respond to my requests for information or state whether MSHS has records about me Beth Israel does not possess.

15. Like Beth Israel, NYPQ stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in my medical record. However, NYPQ refused to tell me if a parent company or another entity has additional records about me that NYPQ does not possess.

16. In February of 2019, I sent letters to DB. DB was willing to deny that DB had possession of my medical records, but DB was not willing to deny that (1) a related entity or law firm hired by DB had copies of those records, or (2) DB

4

discussed my medical records with a third party. Thus, there is reason to believe Hospital Defendants would hide information with a related entity or law firm.

17. Northside stated it does not have a Power of Attorney, but has failed to state if it has any other authorization to talk to a third party about me. Northside has also not disclosed if all information used to make decisions about me are in my medical record.

18. Grady sent a medical record, but failed to include a Power of Attorney, authorization, or any additional information outside the medical record.

## C. Inadmissible, *Ipse Dixit* Medical Record

19. Medical records are protected by HIPAA's right of privacy and cannot be disclosed without the consent of the patient unless their production is otherwise required by law.

20. Despite HIPAA and state privacy laws, Hospital Defendants spoke to Wilder's agents about me without first obtaining my consent, and Hospital Defendants disclosed confidential information to Wilder's agents despite the fact no Hospital Defendant has produced a Power of Attorney or authorization. Thus, Hospital Defendants chose to flagrantly violate my rights under the law.

21. The only support for the baseless opinions in my medical record from Hospital Defendants are the providers own personal judgment.

22. As a result, my medical records from Hospital Defendants present a shining

5

example of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so. Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

23."Reliability cannot be established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

24.Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996).

25.It is clear when reading my medical records from Hospital Defendants that my medical records are based on information that is not contained in my medical records.

26.Instead, Hospital Defendants' medical records are filled with nothing more

6

than *ipse dixit* opinions based on false information provided to Hospital

Defendants about me without my knowledge or consent and despite the fact that a

physician's recorded recollection of a patient's medical history, which contain

medical opinions of third parties, are inadmissible as a medical record in

litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343

S.E.2d 424.

27. Likewise, nothing in *Daubert* or statutes governing admission of expert

testimony requires a court to admit opinion evidence which is connected to

existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012,

317 Ga.App. 795, 733 S.E.2d 7.

28. Thus, not only did Hospital Defendants violate my privacy rights, but

Hospital Defendants also produced *ipse dixit* records that are inadmissible in court

because the statements in the records are not supported by facts contained in the

records. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343

S.E.2d.

## D. Violations

29. I was aware of the fact Wilder's attorney, Watson, called or had others call

Hospital Defendants in order to harm me, however, I was unprepared for Hospital

Defendants to flagrantly violate federal and state statutes and commit criminal

acts by destroying evidence in order to aid and abet Wilder.

7

30.I believed Hospital Defendants would not overtly commit crimes to harm me and alter my medical records, and thereby incur criminal liabilities, because I believed Hospital Defendants would put their own reputations and interests above the interests of the Wilder team.

31.I believed it possible for Watson to bribe individual doctors, but I did not believe institutions, with reputations to protect, would aid and abet a sex trafficking operation.

32.In addition, I expected Hospital Defendants would document their phone conversations with the Wilder team because HIPAA and state privacy rules require them to do so. 42 CFR § 482.13(B)(1).

33.However, given no Hospital Defendant has been able to produce a Power of Attorney or any proof that any Hospital Defendant had any right to speak to any third party about me, I have been shocked by Hospital Defendants' overt violations of federal statutes, particularly in light of the fact all Hospital Defendants are required to have compliance officers under HIPAA. 45 C.F.R. § 164.530.

34.Given it is illegal and in blatant violation of HIPAA and state laws to maintain PHI, patient information, and medical records on a patient and fail to disclose that information to the patient, I did not believe that Hospital Defendants would be corrupt or stupid enough to maintain two separate sets of records: one

8

set I had access to, and another I did not.

35.However, after I went to Beth Israel and NYU Langone in June of 2022, it became clear that the Hospital Defendants were attempting to maintain two separate and distinct record sets.

36.In most cases, it appears that the hospital which provided services has one set of *ipse dixit* records, while its parent company, maintains an entirely different set of records.

37.Likewise, the medical records department at NYU Langone informed me that the "Patient Relations" division had an entirely different set of records about me even though when asked, the medical records person I spoke to informed me that in his decade of working at NYU Langone he had never seen patient PHI moved to the Patient Relations department.

38.It does not take an attorney or anyone with legal training to know that maintaining two sets of records is a hallmark of fraud. In fact, even simple Google searches make clear that a company maintaining two separate sets of records is clearly acting with fraudulent intent. Thus, it appears that each Hospital Defendant had a clear *intent* to deceive me and a clear *consciousness of guilt.*

39. If the information contained in their other files was, in fact, obtained legally, and was medically valid, then the Hospital Defendants would include that information in my medical records.

9

40. However, it is clear that all Hospital Defendants are well aware of the fact that the information contained in their other files is based on criminal acts, lies, and fraud. Thus, each Hospital Defendant has sought to hide information from me in a manner that any person on the street would immediately recognize as intended to deceive and harm despite the fact each Hospital Defendant had a fiduciary duty to me.

41. Despite that duty, what is abundantly obvious is that each Hospital Defendant has broken state and federal laws and ignored their duties in order to aid and abet the Wilder team. No one in their right mind believes that the employees at Hospital Defendants that conspired with the Wilder team to create two sets of medical records, destroy evidence, and violate state and federal statutes did so without expecting something of value in return.

42. In the Larry Nasser case, the former FBI agent that closed cases against Nasser to aid and abet the USA Gymnastics in covering up the sexual abuse of minors was promised a high paying security job at the U.S. Olympic Committee upon his retirement from the FBI.[1]

43. It is not only clearly unethical and immoral, but also illegal, to seek to profit from a scheme to defraud. By maintaining two separate records about me each of

---

[1]Tim Evans, Tony Cook, Marisa Kwiatkowski, Sarah Bowman, "Indianapolis FBI leader eyed head USA Gymnastics job after sitting on Nassar allegations." *Indianapolis Star*, July 16, 2021.

10

the Hospital Defendants are seeking to profit from a criminal scheme and enterprise.

44. The responses from NYU Langone, Beth Israel, Grady and Northside that my valid requests under state laws and HIPAA amounted to "discovery," knowing full well state and federal law said otherwise, 45 C.F.R. § 164.530, was clearly a blatant attempt to further use deception and fraud to continue to profit from their illegal schemes.

45. The Supreme Court stated, "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."

46. Thus, since Hospital Defendants have violated state and federal law, they cannot assert a right deny access to me to the information sought in my letters due to false claims of "discovery" in a court.

47. In addition, what is clear from the *ipse dixit* medical records is that because there is no factual support to the records, and because the medical records are not legally admissible as evidence, the only way the Hospital Defendants can continue to maintain two sets of records and continue to mislead and harm me by violating state and federal statutes is because the Wilder/DB teams are continuing to stalk and abuse me. Because without stalking and abuse, the Hospital Defendants would release the information contained in my June 2022 letters.

11

48. Thus, for the last several years, as I have gone to other healthcare providers, I have been greeted by the same type of illegal activities and criminal acts given the only way for the Wilder/DB teams to maintain the farce of Hospital Defendants' medical records is by continuing to stalk and abuse me.

49. Thus, by agreeing to prepare fraudulent medical records, committing criminal acts, destroying evidence, and violating state and federal laws, Hospital Defendants have effectively made themselves accessories to the DB/Wilder teams' other crimes and abuses. Denying someone access to healthcare is clearly a human rights violation, however, the Wilder/DB team has done just that.

50. The facts and circumstances surrounding Brittney Spears conservatorship raised public outrage over the pop star's mistreatment and abuse by her conservator, her father, and other members of the Spears family.[2] The treatment of Spears was widely regarded as abusive, and a deprivation of Brittney Spears fundamental human rights.[3]

51. However, I have been treated far worse than Brittney Spears. While Brittney Spears agreed to a conservator, had an attorney representing her interests, and had a court overseeing decisions made about her healthcare, I have had the

---

[2] Ronan Farrow and Jia Tolentino, "Britney Spears Conservatorship Nightmare," *The New Yorker*, July 3, 2021.

[3] Margaret Bushko, "Toxic: A Feminist Legal Theory Approach to Guardianship Law Reform," 81 Md. L. Rev. Online 141, 160 (2022).

12

Wilder/DB team control my healthcare from 2016-2022 from the shadows and by withhold healthcare and medical information from me, and encouraging healthcare providers to criminally alter their medical records, destroy evidence, and produce *ipse dixit* records.

52. Even prisoners are treated better than me. For example, allegations of habeas petitioner, who was confined for treatment at state hospital pursuant to the Kansas Sexually Violent Predator Act, that the Kansas Department of Social and Rehabilitation Services (SRS) improperly denied his request for copies of his treatment records, and that the records were not protected from disclosure because the information in the records was not compiled in anticipation of litigation, stated an actionable claim. *Merryfield v. Kansas Social and Rehabilitation Services*, 2010, 236 P.3d 528, 44 Kan.App.2d 324.

53. Thus, the prisoner was able to see his records even though the Hospital Defendants are denying me access to my records and the information I requested in my June 2022 letters.

## E. Illegal Contract

54. A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App.

13

128, 129–30, 430 S.E.2d 98, 102 (1993).

55.I have never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder. Any claim I have voluntarily even had a "personal" conversation with a sick freak like Wilder is lie. The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal.

56.Wilder, Deutsche Bank, and each of the Hospital Defendants are prohibited by statute from depriving me of the information I requested in my June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page 9, ¶1-Page 17). Yet, Hospital Defendants are fraudulently concealing information from me as described in my Memorandum in Support of my Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).

57.Hospital Defendants have no legal right to violate statutes, but are doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Hospital Defendants are not allowed to hide information about my health from me because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute. *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).

14

58. The ridiculous "Power of Attorney" Wilder claims to have would also be unenforceable in the state of New York because it "violates a statute imposing a penalty." *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926 N.Y.S.2d 140 (2d Dep't 2011) (violation of GBL § 771); *Akers v. Mutual Life Ins. Co. of New York*, 59 Misc. 273, 112 N.Y.S. 254 (Sup 1908). Thus, Hospital Defendants have no legal means of withholding information from me.

## F. Statistically Impossible

59. While simple logic and reason make clear that I can simply not be a random victim, the math proves that it is simply not statistically possible that almost all the medical professionals I meets with are incapable of even the most basic of tasks (e.g., getting a urine sample and performing simple tests).

60. In fact, a statistical analysis proves that I am a victim of fraud. The statistical analysis proves that the fake claims the Wilder team has made about me, including, but not limited to the fake claims (1) I had a stroke, (2) had a migraine, (3) am delusional, and (4) paranoid, (5) I am an opioid addict, and (6) that I have PTSD, and (7) have anxiety, and (8) high blood pressure are statistically impossible given the statistical odds of this occurring or more than 1 in 8 billion and there are less than 8 billion people on planet Earth.

61. Thus, I am not a random victim, and the events I experienced, described herein, are clearly an extension of an ongoing pattern of racketeering activity.

15

Dated:  Atlanta, GA
October 26, 2022

Respectfully submitted,


BY: Maura O'Neill

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com


Sworn to before me this
26th day of October, 2022


Notary Public