IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAURA O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, GRADY MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NORTHSIDE HOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,<br><br>Defendants. | CIVIL ACTION FILE NO.:<br>1:22-cv-00011-SEG<br><br><br><br><br><br><br><br><br><br><br>**AFFIDAVIT** |

## PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR INJUNCTION

I, Maura O'Neill, being duly sworn, deposes and states as follows:

1. On January 4, 2022, I filed a complaint against several hospitals, where I went to have rape kits performed from 2017 to 2018, including NYU Langone Hospitals ("NYU Langone"), Grady Memorial Hospital Corporation ("Grady"), Beth Israel Medical Center ("Beth Israel"), New York-Presbyterian Hospital Queens, ("NYU"), and Northside Hospital, Inc. ("Northside"), together ("Hospital Defendants").

1

## A. HIPAA Request / Two Sets of Records

2. On June 6, 2022, I started sending letters to hospitals requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.
- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

3. Despite the fact that the two requests for information are incredibly basic, not a single one of the Hospital Defendants fully complied with HIPAA and state laws and responded to my request.

4. Given the Hospital Defendants lack of responsiveness, in June 2022, I went to New York, and spoke to Beth Israel. Beth Israel stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in my medical record, and referred me to its parent company, Mount Sinai Health System ("MSHS").

5. However, MSHS refused to respond to my requests for information or state whether MSHS has records about me Beth Israel does not possess even though New York's Public Health Law § 18(2) required the New York Hosptial Defendants to respond within ten days, and MSHS failed to comply with the law.

6. Likewise, when I spoke to the medical records department at NYU

Langone, I was informed that the Patient Relations team, an arm of NYU's legal team, has additional records about me.

7. Thus, what became obvious is that the Hospital Defendants are maintaining two separate and distinct sets of records. One I have access to (e.g., the records at Beth Israel) and another I have been deprived access to (e.g., the records at MSHS) despite the fact that an organizaiton maintaining two sets of books is clearly a red flag showing consciousness of guilt of fraud.

8. As a result of my conversations with Beth Israel and NYU Langone, on June 26, 2022, I sent an email to NYPQ asking:

> It has come to my attention that other hospitals are seeking to hide the information I requested in my letters to your organization dated June 6, 2022 and June 10, 2022 because the information I seek is contained in a different department or separate legal entity. Thus, while I went to the medical records department of a hospital to request the information, the information I seek is actually housed in an affiliated entity or department. Thus, I need to know if New York-Presbyterian Queens Hospital has a parent company or affiliated entity that could potentially have any information about me. In particular, please let me know the relationship between New York-Presbyterian Queens Hospital and New York-Presbyterian Hospital.

9. NYPQ never responded to this email and never denied that it has two sets of records.

10. If NYPQ was not committing fraud, and did not have two sets of records, NYPQ would have denied that another legal entity had a different set of records.

11. Given the fact the NYPQ has two sets of records, it is clear NYPQ

purposefully sought to defraud and harm me despite its fiduciary duties to me.

**B. Summary of Responses**

12. A summary of the responses I received to my June 2022 letters follows.

13. NYU Langone stated it has no Power of Attorney, and claimed it spoke to others about me. Yet, NYU Langone has provided no authorization, and further claimed it had not unlawfully disclosed my medical information. My medical record also does not contain references to any third parties, even though NYU Langone spoke to third parties.

14. Beth Israel stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in my medical record. However, its parent company, Mount Sinai Health System ("MSHS") refuses to respond to my requests for information or state whether MSHS has records about me Beth Israel does not possess.

15. Like Beth Israel, NYPQ stated it does not have a Power of Attorney or authorization on file. It also stated the only information it has on record is in my medical record. However, NYPQ refused to tell me if a parent company or another entity has additional records about me that NYPQ does not possess.

16. In February of 2019, I sent letters to DB. DB was willing to deny that DB had possession of my medical records, but DB was not willing to deny that (1) a related entity or law firm hired by DB had copies of those records, or (2) DB

4

discussed my medical records with a third party. Thus, there is reason to believe Hospital Defendants would hide information with a related entity or law firm.

17. Northside stated it does not have a Power of Attorney, but has failed to state if it has any other authorization to talk to a third party about me. Northside has also not disclosed if all information used to make decisions about me are in my medical record.

18. Grady sent a medical record, but failed to include a Power of Attorney, authorization, or any additional information outside the medical record.

## C. Inadmissible, *Ipse Dixit* Medical Record

19. Medical records are protected by HIPAA's right of privacy and cannot be disclosed without the consent of the patient unless their production is otherwise required by law.

20. Despite HIPAA and state privacy laws, Hospital Defendants spoke to Wilder's agents about me without first obtaining my consent, and Hospital Defendants disclosed confidential information to Wilder's agents despite the fact no Hospital Defendant has produced a Power of Attorney or authorization. Thus, Hospital Defendants chose to flagrantly violate my rights under the law.

21. The only support for the baseless opinions in my medical record from Hospital Defendants are the providers own personal judgment.

22. As a result, my medical records from Hospital Defendants present a shining

example of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so. Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

23. "Reliability cannot be established by the mere *ipse dixit* of an expert." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough.'" *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

24. Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996).

25. It is clear when reading my medical records from Hospital Defendants that my medical records are based on information that is not contained in my medical records.

26. Instead, Hospital Defendants' medical records are filled with nothing more

than *ipse dixit* opinions based on false information provided to Hospital Defendants about me without my knowledge or consent and despite the fact that a physician's recorded recollection of a patient's medical history, which contain medical opinions of third parties, are inadmissible as a medical record in litigation. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d 424.

27. Likewise, nothing in *Daubert* or statutes governing admission of expert testimony requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.*, 2012, 317 Ga.App. 795, 733 S.E.2d 7.

28. Thus, not only did Hospital Defendants violate my privacy rights, but Hospital Defendants also produced *ipse dixit* records that are inadmissible in court because the statements in the records are not supported by facts contained in the records. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343 S.E.2d.

### D. Violations

29. I was aware of the fact Wilder's attorney, Watson, called or had others call Hospital Defendants in order to harm me, however, I was unprepared for Hospital Defendants to flagrantly violate federal and state statutes and commit criminal acts by destroying evidence in order to aid and abet Wilder.

30. I believed Hospital Defendants would not overtly commit crimes to harm me and alter my medical records, and thereby incur criminal liabilities, because I believed Hospital Defendants would put their own reputations and interests above the interests of the Wilder team.

31. I believed it possible for Watson to bribe individual doctors, but I did not believe institutions, with reputations to protect, would aid and abet a sex trafficking operation.

32. In addition, I expected Hospital Defendants would document their phone conversations with the Wilder team because HIPAA and state privacy rules require them to do so. 42 CFR § 482.13(B)(1).

33. However, given no Hospital Defendant has been able to produce a Power of Attorney or any proof that any Hospital Defendant had any right to speak to any third party about me, I have been shocked by Hospital Defendants' overt violations of federal statutes, particularly in light of the fact all Hospital Defendants are required to have compliance officers under HIPAA. 45 C.F.R. § 164.530.

34. Given it is illegal and in blatant violation of HIPAA and state laws to maintain PHI, patient information, and medical records on a patient and fail to disclose that information to the patient, I did not believe that Hospital Defendants would be corrupt or stupid enough to maintain two separate sets of records: one

set I had access to, and another I did not.

35. However, after I went to Beth Israel and NYU Langone in June of 2022, it became clear that the Hospital Defendants were attempting to maintain two separate and distinct record sets.

36. In most cases, it appears that the hospital which provided services has one set of *ipse dixit* records, while its parent company, maintains an entirely different set of records.

37. Likewise, the medical records department at NYU Langone informed me that the "Patient Relations" division had an entirely different set of records about me even though when asked, the medical records person I spoke to informed me that in his decade of working at NYU Langone he had never seen patient PHI moved to the Patient Relations department.

38. It does not take an attorney or anyone with legal training to know that maintaining two sets of records is a hallmark of fraud. In fact, even simple Google searches make clear that a company maintaining two separate sets of records is clearly acting with fraudulent intent. Thus, it appears that each Hospital Defendant had a clear *intent* to deceive me and a clear *consciousness of guilt*.

39. If the information contained in their other files was, in fact, obtained legally, and was medically valid, then the Hospital Defendants would include that information in my medical records.

40. However, it is clear that all Hospital Defendants are well aware of the fact that the information contained in their other files is based on criminal acts, lies, and fraud. Thus, each Hospital Defendant has sought to hide information from me in a manner that any person on the street would immediately recognize as intended to deceive and harm despite the fact each Hospital Defendant had a fiduciary duty to me.

41. Despite that duty, what is abundantly obvious is that each Hospital Defendant has broken state and federal laws and ignored their duties in order to aid and abet the Wilder team. No one in their right mind believes that the employees at Hospital Defendants that conspired with the Wilder team to create two sets of medical records, destroy evidence, and violate state and federal statutes did so without expecting something of value in return.

42. In the Larry Nasser case, the former FBI agent that closed cases against Nasser to aid and abet the USA Gymnastics in covering up the sexual abuse of minors was promised a high paying security job at the U.S. Olympic Committee upon his retirement from the FBI.[1]

43. It is not only clearly unethical and immoral, but also illegal, to seek to profit from a scheme to defraud. By maintaining two separate records about me each of

---

[1] Tim Evans, Tony Cook, Marisa Kwiatkowski, Sarah Bowman, "Indianapolis FBI leader eyed head USA Gymnastics job after sitting on Nassar allegations." *Indianapolis Star*, July 16, 2021.

the Hospital Defendants are seeking to profit from a criminal scheme and enterprise.

44. The responses from NYU Langone, Beth Israel, Grady and Northside that my valid requests under state laws and HIPAA amounted to "discovery," knowing full well state and federal law said otherwise, 45 C.F.R. § 164.530, was clearly a blatant attempt to further use deception and fraud to continue to profit from their illegal schemes.

45. The Supreme Court stated, "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."

46. Thus, since Hospital Defendants have violated state and federal law, they cannot assert a right deny access to me to the information sought in my letters due to false claims of "discovery" in a court.

47. In addition, what is clear from the *ipse dixit* medical records is that because there is no factual support to the records, and because the medical records are not legally admissible as evidence, the only way the Hospital Defendants can continue to maintain two sets of records and continue to mislead and harm me by violating state and federal statutes is because the Wilder/DB teams are continuing to stalk and abuse me. Because without stalking and abuse, the Hospital Defendants would release the information contained in my June 2022 letters.

48. Thus, for the last several years, as I have gone to other healthcare providers, I have been greeted by the same type of illegal activities and criminal acts given the only way for the Wilder/DB teams to maintain the farce of Hospital Defendants' medical records is by continuing to stalk and abuse me.

49. Thus, by agreeing to prepare fraudulent medical records, committing criminal acts, destroying evidence, and violating state and federal laws, Hospital Defendants have effectively made themselves accessories to the DB/Wilder teams' other crimes and abuses. Denying someone access to healthcare is clearly a human rights violation, however, the Wilder/DB team has done just that.

50. The facts and circumstances surrounding Brittney Spears conservatorship raised public outrage over the pop star's mistreatment and abuse by her conservator, her father, and other members of the Spears family.[2] The treatment of Spears was widely regarded as abusive, and a deprivation of Brittney Spears fundamental human rights.[3]

51. However, I have been treated far worse than Brittney Spears. While Brittney Spears agreed to a conservator, had an attorney representing her interests, and had a court overseeing decisions made about her healthcare, I have had the

---

[2] Ronan Farrow and Jia Tolentino, "Britney Spears Conservatorship Nightmare," *The New Yorker*, July 3, 2021.
[3] Margaret Bushko, "Toxic: A Feminist Legal Theory Approach to Guardianship Law Reform," 81 Md. L. Rev. Online 141, 160 (2022).

Wilder/DB team control my healthcare from 2016-2022 from the shadows and by withhold healthcare and medical information from me, and encouraging healthcare providers to criminally alter their medical records, destroy evidence, and produce *ipse dixit* records.

52. Even prisoners are treated better than me. For example, allegations of habeas petitioner, who was confined for treatment at state hospital pursuant to the Kansas Sexually Violent Predator Act, that the Kansas Department of Social and Rehabilitation Services (SRS) improperly denied his request for copies of his treatment records, and that the records were not protected from disclosure because the information in the records was not compiled in anticipation of litigation, stated an actionable claim. *Merryfield v. Kansas Social and Rehabilitation Services*, 2010, 236 P.3d 528, 44 Kan.App.2d 324.

53. Thus, the prisoner was able to see his records even though the Hospital Defendants are denying me access to my records and the information I requested in my June 2022 letters.

**E. Illegal Contract**

54. A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly." *Langford v. Royal Indem. Co.*, 208 Ga. App.

13

128, 129–30, 430 S.E.2d 98, 102 (1993).

55. I have never been in a relationship with Wilder, never had a conversation with him outside Deutsche Bank's office, and would never agree to be alone outside of Deutsche Bank with a psychopath like Wilder. Any claim I have voluntarily even had a "personal" conversation with a sick freak like Wilder is lie. The ridiculous "Power of Attorney," Wilder's sick and depraved attorney claims to possess is also illegal.

56. Wilder, Deutsche Bank, and each of the Hospital Defendants are prohibited by statute from depriving me of the information I requested in my June 2022 letters as described in the Motion to Compel. (Docket No. 58, Page 9, ¶1-Page 17). Yet, Hospital Defendants are fraudulently concealing information from me as described in my Memorandum in Support of my Motion to Compel (Docket No. 73, Page 5, ¶1-Page 7).

57. Hospital Defendants have no legal right to violate statutes, but are doing so anyway (Docket No. 58, Page 9, ¶1-Page 17), even though even if Wilder did have a Power of Attorney, Hospital Defendants are not allowed to hide information about my health from me because doing so is prohibited by statute, and a Georgia court may not enforce a contract that conflicts with a statute. *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129–30, 430 S.E.2d 98, 102 (1993).

58. The ridiculous "Power of Attorney" Wilder claims to have would also be unenforceable in the state of New York because it "violates a statute imposing a penalty." *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926 N.Y.S.2d 140 (2d Dep't 2011) (violation of GBL § 771); *Akers v. Mutual Life Ins. Co. of New York*, 59 Misc. 273, 112 N.Y.S. 254 (Sup 1908). Thus, Hospital Defendants have no legal means of withholding information from me.

### F. Statistically Impossible

59. While simple logic and reason make clear that I can simply not be a random victim, the math proves that it is simply not statistically possible that almost all the medical professionals I meets with are incapable of even the most basic of tasks (e.g., getting a urine sample and performing simple tests).

60. In fact, a statistical analysis proves that I am a victim of fraud. The statistical analysis proves that the fake claims the Wilder team has made about me, including, but not limited to the fake claims (1) I had a stroke, (2) had a migraine, (3) am delusional, and (4) paranoid, (5) I am an opioid addict, and (6) that I have PTSD, and (7) have anxiety, and (8) high blood pressure are statistically impossible given the statistical odds of this occurring or more than 1 in 8 billion and there are less than 8 billion people on planet Earth.

61. Thus, I am not a random victim, and the events I experienced, described herein, are clearly an extension of an ongoing pattern of racketeering activity.

Dated: Atlanta, GA
October 26, 2022

Respectfully submitted,

BY: *Maura O'Neill*
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Sworn to before me this
26th day of October, 2022

_____
Notary Public

[Notary Seal: X HUBBARD, NOTARY PUBLIC, Exp. March 25, 2025, COBB COUNTY, GEORGIA]