**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**MAURA O'NEILL,**

Plaintiff,

v.

**NYU LANGONE HOSPITALS,
NEW YORK- PRESBYTERIAN
HOSPITAL QUEENS, LENOX
HILL HOSPITAL, GRADY
MEMORIAL HOSPITAL
CORPORATION, MOUNT SINAI
BETH ISRAEL, NORTHSIDE
HOSPITAL, INC., COLLEGE
PARK POLICE DEPARTMENT,**

Defendants.

**CIVIL ACTION FILE NO.:**
1:22-cv-00011-SEG

---

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO ENJOIN

---

November 8, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

Maura O'Neill ("Plaintiff") submits this memorandum of law in further support of her Motion to Enjoin and Hearing Request.

## PRELIMINARY STATEMENT

On October 6, 2022, O'Neill served Northside and Grady with a motion to Enjoin. (Docket Nos. 86 and 87). On October 25, 2022, Northside and Grady, filed opposing papers (Docket Nos. 97 and 96). Plaintiff's opening brief detailed Grady's and Northside's fraudulent concealment, and violations of state and federal laws. (Docket Nos. 86 and 87).[1]

In their opposing papers, Northside and Grady lied and misrepresented facts. For example, Grady claimed that it sent O'Neill a copy of her medical record. (Docket No. 96, Page 5, ¶1). However, Grady failed to note that the copy of the medical record Grady sent to O'Neill was incomplete, and the medical record Grady sent failed to comply with HIPAA or state statutes because the medical record Grady sent did not contain information about O'Neill's health that served as the basis for statements written about O'Neill in the medical record Grady sent to O'Neill. In addition, Grady clearly spoke to third parties about O'Neill, yet Grady

---

[1]Plaintiff was forced to file twice because her first attempt to file was thwarted. O'Neill sent six different motions to be filed on October 6, 2022. Only five of the six were filed. The Motion to Enjoin was not filed.

failed to produce a copy of a Power of Attorney or an authorization, even though

Grady is required by HIPAA and state law to send a copy of any authorization or

Power of Attorney to O'Neill.

In its opposing papers, Northside stated, "Northside Hospital adamantly

denies altering or falsifying Plaintiff's records, engaging in fraud, committing

criminal acts, or engaging in any improper conduct whatsoever." (Docket No. 97,

Page 2, Footnote1). Northside also claimed that Plaintiff was "erroneous" for

believing that Northside was withholding information (Docket No. 97, Page 2, ¶2),

however, Northside failed to state why Plaintiff was incorrect. In fact, despite

O'Neill's written requests, in violation of HIPAA and state law, Northside has

refused to state if it has any authorization to talk to a third party about O'Neill.

According to Northside personnel, Northside took phone calls about O'Neill while

O'Neill was a patient even though Northside was not authorized to do so and

violated HIPAA and state privacy laws. Northside has also refused to disclose if all

information used to make decisions about O'Neill's healthcare are in her medical

record in violation of HIPAA and state laws. Thus, Plaintiff's claims are clearly

not erroneous.

Rather, it is obvious that Plaintiff's medical records from both Grady and

Northside are *ipse dixit* and based on slanderous and false information provided to

2

Northside and Grady by third parties without O'Neill's knowledge or consent and in violation of HIPAA and Georgia privacy laws.  Given the fact that both Northside and Grady clearly violated multiple federal and state laws, Northside's fraudulent claim that Plaintiff's claims were of a "fantastical nature" is particularly sick and disgusting.  (Docket No. 97, Page 2, Footnote1).  Letters for sanctions will be forthcoming given Northside's and Grady's overt fraudulent concealment, failure to comply with federal and state laws, *ipse dixit* medical records, and blatant alterations of medical records.

## LEGAL ARGUMENT

### POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS HER HEALTHCARE INFORMATION.

The Health Insurance Portability and Accountability Act ("HIPAA") gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose all records it used to make healthcare decisions.  45 CFR § 164.501.  On June 6, 2022, Plaintiff started sending letters to hospitals, including Grady and Northside, requesting two basic pieces of information:

- Confirmation the hospital does not have, and has never had, any authorization on file that would allow any person or entity to speak to any person at the hospital about O'Neill or receive any information about her medical records or have access to information about her medical care.

3

- Confirmation the hospital does not have any additional records, data, or information that the hospital used to make decisions about O'Neill's healthcare that are not included in her medical record.

Despite the fact that the two requests for information are incredibly basic,

Northside and Grady failed to comply with HIPAA and state laws.

## A. O'Neill's Rights

While O'Neill has an absolute right under HIPAA to view information used

to make decisions about her, Grady and Northside have made a concerted effort to

cover-up the fact that the Wilder team made phone calls about O'Neill, and

Plaintiff's healthcare was dictated by the Wilder team.

Under HIPAA, a "designated record set" is defined in 45 CFR 164.501 as a

group of records maintained by or for a covered entity that comprises the:

- Medical records and billing records about individuals maintained by or for a covered health care provider;
- Enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or
- Other records that are used, in whole or in part, by or for the covered entity to make decisions about individuals.

According to the Department of Health and Human Services ("HHS"), this last

category includes records that are used to make decisions about any individuals,

whether or not the records have been used to make a decision about the particular individual requesting access.[2]

HHS also defines the term "record" as any item, collection, or grouping of information that includes PHI and is maintained, collected, used, or disseminated by or for a covered entity.[3]  PHI is protected health information and is defined as individually identifiable health information…that is: (1) transmitted by electronic media; (2) maintained in electronic media; or (3) transmitted or maintained in any other form or medium. 45 CFR § 160.103.

Individually identifiable health information is "information that is a subset of health information, including demographic information collected from an individual, and:

(1)   Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2)   Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual."  45 CFR § 160.103.

---

[2]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html
[3]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

As shown through the previous definitions, under HIPAA, O'Neill has an absolute right to any information about any decision made about her by Grady and Northside including the names of any individuals that provided information to Grady and Northside about O'Neill and the conversations Grady and Northside had with third parties about O'Neill.

## B. Georgia Law

Likewise, Georgia requires healthcare providers provide each patient with a complete and current copy of her medical record, upon written request, to any person who has received health care services from the provider.  Ga. Code Ann. §§ 31-33-1, 31-33-2.  The legislative purpose behind Health Records Act was to ensure that patients have access to medical records in the custody and control of healthcare providers.  *Cotton v. Med-Cor Health Information Solutions, Inc.*, 1996, 221 Ga.App. 609, 472 S.E.2d 92.  Under Georgia law, a "record" means:

> a patient's health record, including, but not limited to, evaluations, diagnoses, prognoses, laboratory reports, X-rays, prescriptions, ***and other technical information used in assessing the patient's condition, or the pertinent portion of the record relating to a specific condition or a summary of the record.*** O.C.G.A. § 31-33-1.  (Emphasis added).

Thus, under Georgia law, O'Neill has a right to view "information" used in "assessing" her "condition" or the pertinent portion of the record relating to a specific condition.  O.C.G.A. §§ 31-33-1, 31-33-2.  To the extent there is any

6

difference between state and federal law, federal law preempts state law if the federal law offers more protection to the patient. [4]

Despite the plain language of the federal and state statutes, both Grady and Northside have failed to provide O'Neill with any facts to support the baseless opinions contained in O'Neill's medical records from Grady and Northside, despite O'Neill's June letters.[5]  Rather, it is clear when reading O'Neill's medical records from Grady and Northside that her medical records are based on information that is not contained in her medical records.  In fact, there is no factual basis or support for numerous statements written in Gray's and Northside's medical records, and it is clear Defendants' support for several statements in Plaintiff's medical records is due to conversations Grady and Northside had with various third parties about

---

[4] https://www.hhs.gov/hipaa/for-professionals/faq/403/how-do-i-know-if-a-state-law-is-more-stringent-than-hipaa/index.html

[5] It appears that in their opposing papers (Docket Nos. 96 and 97) that Northside and Grady may be attempting to misconstrue Georgia's medical record statutes (O.C.G.A. §§ 31-33-1, 31-33-2), although it is hard to tell.  But, even if Northside and Grady chose to misconstrue Georgia's medical record statutes, both Grady and Northside are still bound by HIPAA, because HIPAA preempts state laws, *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009), as both Grady and Northside are required to know.  45 C.F.R. § 164.530.  There is no doubt Northside or Grady failed to abide by HIPAA requirements.  HIPAA is explicitly cited in O.C.G.A. § 31-33-2.

O'Neill without her knowledge or consent. O.C.G.A. § 31-33-2 states O'Neill has a right to this information.

Yet, Grady and Northside failed to comply with these legal requirements since O'Neill sent her letters to Grady and Northside in June of 2022, it is now November, and neither Northside or Grady have complied with federal or state laws. The rules highlighted above are very clear. Yet, both Grady and Northside violated these incredibly basic and very easy to understand laws in order to harm O'Neill and aid Wilder.

## C. Denial of Access

HIPAA contains grounds and conditions for denial of access to protected health information, 45 CFR 164.524(a)(2)-(4). An individual is not required to provide a reason for requesting access to her information, and the individual's rationale for requesting access, if voluntarily offered or known by the healthcare provider, is not a permitted reason to deny access.[6] Thus, the reason offered by Grady and Northside for denying access to O'Neill, namely "discovery," (Docket Nos. 63 and 64) is not a legally permissible reason under HIPAA or state laws.

In addition, under HIPAA, if a healthcare provider denies access, in whole or

---

[6]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

8

in part, to protected health information requested by the individual based on one or

more permitted grounds, the healthcare provider ***MUST*** provide a denial in writing

to the individual no later than 30 calendar days after the request according to 45

CFR 164.524(b)(2).[7]  In addition, under federal regulations, the denial must be in

plain language and describe the basis for denial; if applicable, the individual's right

to have the decision reviewed and how to request such a review; and how the

individual may submit a complaint to the healthcare provider or the HHS Office

for Civil Rights. 45 CFR 164.524(d).  In addition, under HIPAA, all healthcare

providers must, to the extent possible, provide the individual with access to any

other protected health information requested, after excluding the PHI to which the

entity has a ground to deny access.  45 CFR §164.524(d)(1).

Thus, even if Grady and Northside wanted to refuse to send PHI to O'Neill,

Grady and Northside were required by HIPAA to inform O'Neill in writing that

they were denying access to some PHI, yet, to date, both Grady and Northside have

refused to send O'Neill letters informing her of their rationale for refusing to send

her copies of her full and complete medical records.  Nor have Northside or Grady

explained why they refused to send O'Neill copies of any authorizations they have

---

[7]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

about her on file even though they are required to do so.

By law, if, for example, Grady wanted to deny O'Neill access to information about her because Grady compiled information in reasonable anticipation of, or for use in, a legal proceeding, then Grady was required to send O'Neill a letter stating that was the case.[8]  However, even if that was Grady's intention, Plaintiff still retained the right to access the underlying PHI from the designated record set(s) used to generate the information about O'Neill for use in a legal proceeding.[9]

In addition, HIPAA requires Grady and Northside to have a compliance officer to comply with state and federal healthcare laws and regulations.  45 C.F.R. § 164.530.  Thus, Grady and Northside knew their failure to comply with HIPAA and state laws warranted action from regulatory agencies, but Grady and Northside broke laws with impunity anyway.  Clearly, actions such as these in which healthcare providers knowingly and willfully break the law are not the norm.

**D. Privacy Laws**

Medical records are protected by HIPAA's right of privacy and cannot be disclosed without the consent of the patient unless their production is otherwise

---

[8]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html
[9]https://www.hhs.gov/hipaa/for-professionals/faq/2046/under-what-circumstances-may-a-covered-entity/index.html

required by law. *45 CFR Parts 160 and 164*.  In the absence of a waiver, a patient

must be afforded notice and an opportunity to object prior to the disclosure of her

medical records. *45 CFR Parts 160 and 164*.  Here, Grady and Northside spoke to

Wilder's agents about Plaintiff without first obtaining O'Neill's consent, and

Grady and Northside disclosed confidential information to Wilder's agents despite

the fact Northside stated it does not have a Power of Attorney.  Grady has refused

to respond to this question.  Thus, Grady and Northside chose to flagrantly violate

O'Neill's rights under the law and are fraudulently concealing the fact that they

spoke to third parties about O'Neill. *45 CFR Part 160 and Part 164, Subparts A

and E.*

Worse still, the information used to harm O'Neill in Grady's and

Northside's medical records were based on fake accounts Wilder set up in

O'Neill's name to impersonate O'Neill.  At no time in her entire life has O'Neill

ever been in a "relationship" with Wilder, or even had a personal conversation with

him for that matter.  In fact, other than the times Wilder had O'Neill drugged from

2017 onwards, O'Neill has only ever spoken to Wilder for a grand total of three

hours during the two and a half years O'Neill worked at DB from 2004 to 2007.

Any claim of a "relationship" between Plaintiff and Wilder, a psychopath, stalker,

and rapist, is completely false.

Instead, in order to create a "relationship" that never existed, Wilder set-up fake accounts in O'Neill's name in WhatsApp, Viber, Line, and Google Voice, and Wilder and his rapist associates used those fake accounts to impersonate O'Neill. Forensic reviews of O'Neill's phones, computers, and electronic devices showed there was no communication between O'Neill and Wilder or any of the other rapists who claimed to have "consensual" sexual relations with O'Neill from 2017 to 2022. Instead, Wilder and his rapist associates have stalked and spied on O'Neill and sent fake messages pretending to be O'Neill.

By incorporating the stupid and false claims of Wilder and his rapists associates into their medical records, Grady and Northside violated O.C.G.A. § 16-11-67, O.C.G.A. § 16-11-62(1), and O.C.G.A. § 24-9-901. It is really rather stupid that Grady and Northside expect people to believe that Grady and Northside illegally altered O'Neill's medical records after O'Neill left the hospitals' premises in violation of criminal statutes, but Grady and Northside think using fake messaging accounts that are not shown on Plaintiff's phone is reasonable. If there really was a "relationship" between Wilder and O'Neill or Wilder's rapist associates, why have Grady and Northside failed to account for their sources of information in O'Neill's medical records, and thereby violated criminal statutes? Based on the facts, it is clear Grady and Northside know they commit criminal acts

12

and falsified records to harm O'Neill, the same way Wilder set-up fake accounts to impersonate O'Neill in order to further his criminal scheme.

## POINT II:  DEFEDANTS DEFAULTED.

LR 7.1(B) states that Northside and Grady had 14 days from the date of service to respond to O'Neill's Motion to Enjoin.  Given the parties responded on October 25, 2022, more than 14 days after the motion was served, on October 6, 2022, in violation of LR 7.1(B) and failed to serve motions requesting extensions of time, the court should ignore the opposing papers filed by Northside and Grady (Docket Nos. 96 and 97) because they were not timely served, and both defendants violated court rules.  LR 7.1(B).   In fact, case law shows that failure to timely serve warrants this court granting O'Neill's motion without considering the untimely papers filed by Northside and Grady.  *Kessler v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 531 F.2d 248, 254 (5th Cir. 1976).

## POINT III:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law.  *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141, 14 L. Ed. 2d 8 (1965).  To aid courts in determining whether a law is substantive or

procedural, "the Supreme Court developed a two-part test in *Hanna*." *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001). "Under the *Hanna* test, when the federal law sought to be applied is a Federal Rule of Civil Procedure, the district court must first decide whether the statute is sufficiently broad to control the issue before the court." *Id.* "If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law." *Id.*

However, if the Federal Rule does not embrace the point in dispute, the court must determine whether to apply the state law in light of the twin aims of Erie. *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764 (1st Cir. 1994); *Camper v. State Farm Fire and Casualty Company*, 2021 WL 1922976 (W.D. Wash. 2021). In cases of Rule 65 and injunctions, federal district courts have embraced state law causes of action. *Rajapakse v. Wells Fargo Home Mortg.*, 2015 WL 4133179, (W.D. Tenn. 2015), ("state law determined whether the state law cause of action can support an injunction.").

In addition, district courts must apply *Erie* and its progeny to determine "whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping." *Burke*, 252 F.3d at 1265; *see also Shady Grove Orthopedic Assocs.,*

14

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437, 176 L. Ed. 2d 311 (2010).

Other district courts in Georgia have applied O.C.G.A. § 9-5-1 without invoking Rule 65, particularly in cases such as this that involved health and welfare. *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.,* 103 F. Supp. 2d 1322 (N.D. Ga. 2000) (Injunctive relief was available under Georgia law against nursing home owner upon proof of conduct that continued to pose a serious threat to the health and welfare of nursing home residents. O.C.G.A. § 9–5–1); *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 2022 U.S. Dist. LEXIS 64223; 2022 WL 1027633 (2022). Likewise, the Eleventh Circuit has made similar rulings regarding injunctive relief. *Pompey v. Broward County,* 95 F.3d 1543, 1554 (11th Cir.1996) (injunctive relief available when no adequate remedy exists and threatened injury is irreparable); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (injury is deemed to be "irreparable" if it cannot be undone through monetary remedies).

In addition, in *Showtime*, the Eleventh Circuit affirmed entry of a permanent injunction against a condominium association illegally receiving satellite signals without discussing any preliminary injunction factors because the condo association violated a statute. *Showtime/The Movie Channel, Inc. v. Covered*

*Bridge Condominium Ass'n, Inc.*, 881 F.2d 983 (1989) (holding that "[t]o assess the propriety of the permanent injunction, however, we need only address" whether the defendants' conduct violated the statute.)

Thus, here, based on the plain text of the state law and the federal rule, it is apparent that the Rule 65 is not broad enough to cover the issues covered in O.C.G.A. § 9-5-1, and that Rule 65 and O.C.G.A. § 9-5-1 do not directly conflict. It is also clear that failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping. *Burke*, 252 F.3d at 1265; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437, 176 L. Ed. 2d 311 (2010). Thus, this court should apply O.C.G.A. § 9-5-1.

### POINT IV:  STATE LAW STATES PLAINTIFF IS ENTITLED TO AN INJUNCTION TO RESTRAIN NORTHSIDE'S AND GRADY's INEQUITABLE CONDUCT.

Georgia law authorizes a court to enjoin any act of a corporation that is illegal. O.C.G.A. § 9-5-1.  Balancing the equities is not required.  In addition, Georgia appellate courts have repeatedly affirmed injunctions that prevent persons from violating laws—including statutes like those here, (HIPAA, Ga. Code Ann. §§ 31-33-1, 31-33-2) —where an injunction is prescribed, without addressing the

16

other injunction factors. *10950 Retail, LLC v. City of Johns Creek*, 682 S.E.2d 637
(Ga. Ct. App. 2009).

Grady and Northside are violating federal (HIPPA) and state statutes,
(O.C.G.A. §§ 31-33-1, 31-33-2), and there is nothing in either HIPAA or state
statutes that exempts either Grady or Northside from the federal or state
regulations they are violating.  Thus, an injunction is merited. *Showtime/The
Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 881 F.2d 983 (11th
Cir. 1989) (holding that association violated statute, and its conduct did not fall
within any exception to the prohibition).  Georgia statutes, including O.C.G.A. §
9-5-1, authorize injunctions to stop the violations of statutes, and no analysis of
equitable factors is needed to grant an injunction, since that is the prescribed
remedy to right Northside's and Grady's wrongs is an injunction.  *Alvista
Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009).

Grady and Northside had fiduciary duties to Plaintiff, but rather than uphold
the law, Grady and Northside broke the law to aid and abet a man with more
signed agreements with women he raped and abused than Harvey Weinstein.
Under HIPAA, Grady and Northside are required to have compliance officers.
Yet, rather than comply with state and federal statutes, Grady and Northside
instead flouted state and federal laws, and fraudulently concealed information from

17

O'Neill.

### POINT V:  RULE 65 CONSIDERATIONS.

In their opposing papers, Grady and Northside implicitly contend this court should invoke FRCP 65 and ignore O.C.G.A § 9-5-1.  Northside and Grady are incorrect as a matter of law.  However, even if the court were to invoke Rule 65, O'Neill should still be granted an injunction because the points Northside and Grady raised in their opposing papers are meritless as described below.

**A.  Rule 65.**

First, in their opposing papers, Northside and Grady contend O'Neill was not entitled to injunctive relief because O'Neill did not state that there was not another adequate remedy of law.  (Docket No. 96, Page 3, ¶2, and Docket No. 97, Page 3, ¶2).  Clearly, Northside and Grady, two hospitals, did not even bother to check case law.  If Northside or Grady had checked case law, they would have determined that according to Georgia's Supreme Court, the appropriate remedy of law for a person seeking access to medical records under O.C.G.A. § 33-31-2 and HIPAA, who has been denied access by a healthcare provider, is injunctive relief.

*Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Thus, Northside and Grady are incorrect as a matter of law.

Next, Northside and Grady also falsely claimed that O'Neill had to prove each cause of action in her Complaint would succeed on the merits. (Docket No. 96, Page 5, ¶3, and Docket No. 97, Page 5, ¶2). However, this claim is false as well. An injunction is a cause of action. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Given Grady and Northside are clearly breaking state and federal laws, it is clear that O'Neill's claim for injunctive relief will succeed on the merits because O'Neill only needs to prove that her request for an injunction under O.C.G.A. § 9-5-1 will succeed on the merits. *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000); *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 2022 U.S. Dist. LEXIS 64223; 2022 WL 1027633 (2022).

Northside and Grady also claimed that lacking protected health information would not cause irreparable harm and warrant a permanent injunction. (Docket No. 96, Page 6, ¶2, and Docket No. 97, Page 5, ¶1). The Georgia Supreme Court also disagreed on this point and stated the opposite. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Specifically, the Georgia Supreme Court ruled that withholding medical information needed for a lawsuit clearly constituted irreparable harm, and in cases such as Plaintiff's case, injunctive relief was

19

necessary. *Id.* Clearly, neither Hospital Defendant even bothered to attempt to follow the law, or made an attempt to abide by their legal duty and check case law. *Id.* Instead, Northside and Grady have demonstrated that they are more than happy to break laws and rule.

It is also obvious that the balance of equities falls completely in Plaintiff's favor and that public policy favors O'Neill given Plaintiff is simply asking that Grady and Northside comply with state and federal statutes. Grady and Northside are breaking several state and federal laws, and depriving O'Neill of her human rights as a result. Thus, the claims that the balance of equities is not in O'Neill's favor and public policy does not favor O'Neill are absurd.

It is clear that the public interest is served by requiring compliance with valid laws designed to protect the community's interests. In this situation, alternative remedies are worthless. Only an injunction will coerce Grady's and Northside's compliance with the law, because only it can "afford the full relief to which the facts and circumstances entitle the [movant]" and be "practical and ... efficient to the ends of justice and its prompt administration." *Regency Club v. Stuckey*, 324 S.E.2d 166, 170 (Ga. 1984); *Clear-Vu Cable v. Town of Trion*, 262 S.E.2d 73 (Ga. 1979) ("It is not enough that there is a remedy at law. It must be ...

as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.").

It would be inequitable to allow Grady and Northside to continue flouting valid laws. Grady's and Northside's fraudulent concealment of the information Plaintiff requested in her June 2022 letters constitute acts contrary to good conscience that should be permanently enjoined. An injunction now—not later—is necessary to prevent the harms that the state and federal codes are designed to prevent. Denying an injunction would only embolden Grady and Northside in their unlawful conduct.

**B.   Federal Law.**

Under federal law, an injunction is appropriate to prevent future violations of law. *United States v. Richberg*, 398 F.2d 523, 531 (5th Cir. 1968) (holding that defendant violated the Civil Rights Act, and thus district court should have issued injunction). "Where an injunction is authorized by statute, it is proper to issue such an order to restrain violations of the law." *Sene X Eleemosynary Corp., Inc.*, 479 F. Supp. 970, 980 (S.D. Fla. 1979) (citing *Fed. Trade Comm'n v. Rhodes Pharmacal Co.*, 191 F.2d 744, 747 (7th Cir. 1951), *rev'd on other grounds*, 348 U.S. 940 (1955)). The Eleventh Circuit has repeatedly upheld the use of injunctions to protect rights and uphold statutes. *Nix v. Fulton Lodge No. 2 of Int'l Ass'n of*

21

*Machinists & Aerospace Workers*, 262 F. Supp. 1000, 1002 (N.D. Ga. 1967);

*Shuttlesworth v. Gaylord*, 202 F. Supp. 59, 64 (N.D. Ala. 1961).  Thus, this court

should grant O'Neill an injunction.

### POINT VI:  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

An injunction under O.C.G.A. § 9-5-1 may be granted where there is

substantial controversy between parties and one of them is committing an act…

that will cause irreparable injury… before a full hearing can be had on the merits

of the case.  *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga.

1969), appeal dismissed, 441 F.2d 1079 (5th Cir. 1971).  Such is the case here.  As

described above, Grady and Northside are failing to comply with state and federal

laws and O'Neill faces irreparable injury as a result.  O'Neill cannot accurately

amend her complaint without the information she requested in her June 2022

letters.  In similar cases, federal district courts have held that injunctions were

necessary when a defendant was withholding material information in violation of a

statute from a plaintiff.  *Poss v. N.L.R.B.*, No. 75-A-825, 1975 WL 11999, (D.D.C.

Dec. 17, 1975), aff'd, 565 F.2d 654 (10th Cir. 1977); *McDonnell Douglas Corp. v.

N.L.R.B.*, No. CV 76-0409 R, 1976 WL 13434, (C.D. Cal. Mar. 17, 1976).

An injunction serves to restrain any act contrary to equity and good conscience, and for which no adequate remedy at law is provided. *Waycross Military Ass'n v. Hiers*, 209 Ga. 812, 76 S.E.2d 486 (1953). Here, since Grady and Northside are refusing to comply with state and federal laws, O'Neill has no option but to ask the court to enjoin Grady and Northside from continuing to withhold the information Plaintiff requested in her June 2022 letters. Under the law, Grady and Northside do have rights to withhold information, however, both Grady and Northside must send O'Neill plain language denial letters stating their reasons for denying access to information. 45 CFR 164.524(a)(2)-(4).

It is not the function of an injunction to decide a case on merits, and the possibility that the party obtaining an injunction may not win on the merits is not determinative of the propriety or validity of the trial court's granting the injunction. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969), appeal dismissed, 441 F.2d 1079 (5th Cir. 1971). Rather, each case must be determined on its particular allegations, and must be decided on the nature, extent, and kind of equitable relief sought. *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 277 S.E.2d 646 (1981). Here, as described above, there is no question that Grady and Northside are violating state and federal statutes. Thus, the only determination this

23

court needs to make is whether or not Grady and Northside are violating state and federal statutes.

## POINT VIII:  RULES TO TURN PRELIMINARY INJUNCTION INTO PERMANENT INJUNCTION.

Given Grady and Northside have clearly violated state and federal statutes, an injunction is necessary.  It is also clear that the nature of O'Neill's request entails a permanent injunction.  O'Neill is essentially asking Grady and Northside to turn over records that are in their possession.  Once the court has ruled that Grady and Northside must follow HIPAA and state laws and allow O'Neill access to her records, then O'Neill will have access to her records.  Once the court has determined Plaintiff has a right to access her records, there is no further action required.  Thus, by definition, the nature of O'Neill's request is for a permanent injunction.  Under Georgia law, this court may turn a hearing for a preliminary injunction into a hearing for a permanent injunction given the nature of the request.

Specifically, under certain circumstances, the Civil Practice Act permits a trial court, either "[b]efore or after the commencement of" the interlocutory hearing, to "order the trial of the action on the merits to be advanced and consolidated with the [interlocutory] hearing."  OCGA § 9–11–65 (a) (2). However, the court's authority to so consolidate is " 'tempered by the due process

principle that fair notice and an opportunity to be heard must be given the litigants

before the disposition of on the merits.' " *McHugh Fuller Law Group, PLLC v.*

*PruittHealth-Toccoa, LLC*, 297 Ga. 94, 96, 772 S.E.2d 660 (2015).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **GRANT**

the motion and grant such other further relief the Court deems equitable.

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM**

**OF LAW AND MOTION TO ENJOIN** were prepared using Times New Roman

14 point font in accordance with Local Rule 5.1 of the United States District Court

for the Northern District of Georgia.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and

correct copy of the foregoing by emailing and mailing a copy of the foregoing to

each Defendant at the following addresses:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

**WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK,
LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway
Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).

Dated: Alexandria, VA        Respectfully submitted,
November 8, 2022

BY: _Maura O'Neill_
Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MAURA O'NEILL,**

               Plaintiff,

    v.

**NYU LANGONE HOSPITALS,
NEW YORK- PRESBYTERIAN
HOSPITAL QUEENS, LENOX
HILL HOSPITAL, GRADY
MEMORIAL HOSPITAL
CORPORATION, MOUNT SINAI
BETH ISRAEL, NORTHSIDE
HOSPITAL, INC., COLLEGE
PARK POLICE DEPARTMENT,**

           Defendants.

**CIVIL ACTION FILE NO.:
1:22-cv-00011-SEG**

## **ORDER**

Upon the motion of Plaintiff, Maura O'Neill, and for good cause shown, it is hereby:

**ORDERED** that a hearing will be set on _____at _____.  The hearing will be held at _____.

**ORDERED** that _____ will appear at the hearing to be held on _____.

**ORDERED** that given the nature of the injunctive relief sought, the hearing will be for a permanent injunction to prevent any defendants in this action from violating any federal or state statute.

Date: _____

_____

United States District Judge