FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 0 2 2022

KEVIN P WEIMER, Clerk
By: *Paa Then* Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**MAURA O'NEILL,**

Plaintiff,

v.

**NYU LANGONE HOSPITALS, NEW YORK- PRESBYTERIAN HOSPITAL QUEENS, LENOX HILL HOSPITAL, BETH ISRAEL MEMORIAL HOSPITAL CORPORATION, MOUNT SINAI BETH ISRAEL, NYU LANGONEHOSPITAL, INC., COLLEGE PARK POLICE DEPARTMENT,**

Defendants.

**CIVIL ACTION FILE NO.:**
1:22-cv-00011-SEG

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO ENJOIN

November 28, 2022

Maura O'Neill
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

## **PRELIMINARY STATEMENT**

On October 31, 2022, O'Neill served NYU Langone, Beth Israel and NYPQ with a motion to Enjoin. (Docket No. 103).[1] On November 14, 2022, NYU Langone and Beth Israel filed opposing papers (Docket Nos. 105 and 106). In their opposing papers, NYU Langone and Beth Israel lied repeatedly. Letters for sanctions will be forthcoming. Among other things, NYU Langone and Beth Israel claimed O'Neill was seeking "discovery," (Docket No. 106, Page 2, ¶3), and NYU Langone outrageously argued that Plaintiff could not "circumvent" this court's discovery order. (Docket No. 105, Page 3, ¶2). However, NYU Langone's and Beth Israel's arguments are preposterous.

This court, and no court, has the ability to rewrite laws written by Congress. Congress wrote HIPAA. One of the express intentions of HIPAA and subsequent healthcare legislation enacted by Congress is to empower people to make informed decisions about their own healthcare. However, O'Neill, and no other person for that matter can possibly make sound decisions if O'Neill does not have basic information, which Hospital Defendants have illegally withheld from O'Neill. For

---

[1] Plaintiff filed suit against NYU Langone Hospitals ("NYU Langone"), Beth Israel Medical Center ("Beth Israel"), and New York-Presbyterian Hospital Queens, ("NYPQ"), Grady Memorial Hospital Corporation ("Grady") and Northside Hospital, Inc. ("Northside") (together the "Hospital Defendants").

1

example, among other things, 45 CFR § 164.526, gives O'Neill the legal right to amend her medical records. However, as described at length in other filings, Beth Israel and NYU Langone and other Hospital Defendants have fraudulently concealed information from O'Neill by creating two sets of records even though doing so is illegal. (Docket No. 103, Page, 5, ¶1-Page 10, ¶1). As described in prior filings, O'Neill has access to only one set of medical records maintained by Beth Israel and NYU Langone and other Hospital Defendants. (Docket No. 103, Page, 5, ¶1-Page 10, ¶1). Thus, the Hospital Defendants are clearly violating federal statutes by stripping O'Neill of her federally protected rights, including her right to amend her records. 45 CFR § 164.526. Thus, there is no question that the information O'Neill seeks from Hospital Defendants does not constitute "discovery." O'Neill has a legal right to make decisions about her own healthcare, and the legal right to amend her medical records, and NYU Langone and Beth Israel have no legitimate basis for seeking to deprive O'Neill of her rights to make decisions about her own healthcare by creating two separate sets of records and withholding information from O'Neill.

NYU Langone's and Beth Israel's decisions to thwart O'Neill's ability to make decisions about her own healthcare are blatantly illegal, and neither NYU Langone or Beth Israel has any legitimate legal basis for restricting O'Neill's right

2

to access information about her own healthcare. HIPAA explicitly states O'Neill has the right to access information about her own healthcare. Thus, NYU Langone's and Beth Israel's argument that O'Neill's requests constitute "discovery" is a lie.

O'Neill never signed a Power of Attorney ("POA"), and Wilder has never had any legal right to make any decisions about O'Neill's healthcare. Yet, NYU Langone, Beth Israel, and NYPQ appear to be acting as if Wilder has a valid POA. Under the law, if Wilder was claiming to have a POA and right to make decisions about O'Neill, Wilder was required to keep a record of all transactions entered into by him regarding Plaintiff, *GOL § 5-1505(2)(a)(3),* and he is also required to make this record and the power of attorney available at O'Neill's request. *GOL § 5-1505(2)(a)(3).* Given Wilder has failed to make such records available to O'Neill, he is subject to a special proceeding under statute. *GOL § 5-1510.*

It appears that NYU Langone, Beth Israel and NYPQ are attempting to thwart O'Neill's access to records about her own healthcare by stating Wilder, her POA, gave them the right to block O'Neill's access. However, the law states that Wilder not only had no right to impede O'Neill from accessing information about her own healthcare, but Wilder in fact had a duty to ensure that O'Neill has all records containing all information about any activity he undertook as O'Neill's

3

POA. *GOL § 5-1505(2)(a)(3).* Thus, the stated and implied reasons NYU

Langone, Beth Israel, and NYPQ have withheld information from O'Neill are

clearly ridiculous. O'Neill has an absolute right to have access to the other set of

records NYU Langone and Beth Israel possess. *GOL § 5-1505(2)(a)(3).*

Therefore, under HIPAA and New York law, NYU Langone and Beth Israel have

no legal basis to withhold information from O'Neill, and no legal basis to claim

O'Neill's request constitutes "discovery."

It is obvious that the reason NYU Langone and Beth Israel are refusing to

disclose the second sets of records they maintain is due to the fact that they are

covering up for their criminal acts of destroying evidence of Wilder's drug

facilitated sexual assaults. If this court does not order NYU Langone and Beth

Israel to comply with HIPAA and New York Public Health Law § 18(2)(a), then

O'Neill will be forced to rely on the special proceeding that will be filed in New

York pursuant to *GOL § 5-1510.* As a result, O'Neill will file a motion for this

court to stay this proceeding until the conclusion of the related special proceeding

in New York pursuant to *GOL § 5-1510,* if for some reason this court does not

grant this motion. Therefore, a motion to stay will be forthcoming. As previously

stated, it does not make sense for O'Neill to amend her complaint without

4

additional information she has a legal right to see under HIPAA, New York Public

Health Law § 18(2)(a), and GOL § 5-1505(2)(a)(3).

## **LEGAL ARGUMENT**

## **POINT I:  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO ACCESS
HER HEALTHCARE INFORMATION.**

As described in the opening brief, HIPAA gives an individual the right to

access information about her healthcare (Docket No. 103, Page 4, ¶2- Page 7, ¶1),

45 CFR § 164.524, and requires healthcare organizations to disclose all records it

used to make healthcare decisions.  45 CFR § 164.501.  Despite the fact that

O'Neill's requests for information from NYU Langone, Beth Israel, and NYPQ are

incredibly basic, NYU Langone, Beth Isreal, and NYPQ did not comply with

HIPAA and state laws.  As also described in the Opening Brief, (Docket No. 103,

Page 7, ¶2-Page 9, ¶2) HIPAA contains grounds and conditions for denial of access

to protected health information, 45 CFR § 164.524(a)(2)-(4).

In addition, HIPAA requires that a healthcare provider may not deny access

because a business associate of the hospital, rather than the provider itself,

maintains the protected health information ("PHI") requested by the individual

(e.g., the PHI is maintained by the hospital's lawyer or related entity or is

5

maintained by a records storage company offsite).[2] HIPAA defines a business associate as: a person or entity that performs certain functions or activities that involve the use or disclosure of protected health information on behalf of, or provides services to, a covered entity. 45 CFR § 160.103. In particular, HIPAA defines a business associate as a person who: "Provides…legal, actuarial, accounting, consulting, management, administrative, … or financial services to or for such [hospital],…where the provision of the service involves the disclosure of protected health information from such [hospital]." Thus, under HIPAA, any lawyer that provided any services to NYU Langone, Beth Israel, or NYPQ involving the disclosure of PHI about O'Neill must send O'Neill a copy of any record the attorney maintains about O'Neill. 45 CFR § 160.103. In addition, under HIPAA, any management entity or legal entity that provided any management services to NYU Langone, Beth Israel or NYPQ involving the disclosure of PHI about O'Neill must send O'Neill a copy of any record that business associate maintains about O'Neill. 45 CFR § 160.103. Thus, Beth Isreal's decision to hide a second set of records with its parent company, Mount Sinai Health System ("MSHS"), clearly violates HIPAA's business associate

---

[2]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

statute. Likewise, NYU Langone's decision to bury its second set of records with its Patient Relations team also violates HIPAA.

## POINT II: A POWER OF ATTORNEY MUST ACT IN THE INTERESTS OF THE PRINCIPAL AND AVOID CONFLICTS OF INTEREST.
Under a Power of Attorney ("POA"), an agent has a fiduciary duty to the

principal, and, in New York, an agent's fiduciary duties are enumerated by statute. *GOL § 5-1505*. Among other things, a POA has a duty is to act in a principal's best interests and avoid conflicts of interests. *GOL § 5-1505 (2)(1)*. The courts have determined an agent's fiduciary duty is "to act with the utmost good faith toward the principal in accordance with the principles of morality, fidelity, loyalty and fair dealing." *Mantella v. Mantella*, 268 A.D.2d 852 (3d Dept. 2000). The scope of that duty includes acting "with the care, competence, and diligence normally exercised by agents in similar circumstances." *Moglia v. Moglia*, 144 A.D.2d 347, 533 N.Y.S.2d 959 (2d Dept. 1988).

Section 5-1505 codifies POA requirements, an approach consistent with provisions of the Estates, Powers and Trusts Law and Surrogate's Court Procedure Act addressing the duties and obligations of other types of fiduciaries. Moreover, the courts do not allow the agent to be exonerated from these responsibilities. *In re Mueller*, 19 Misc.3d 536, 853 N.Y.S.2d 245 (NY Sur. Ct. Westchester Co. 2008)("fundamental to the fiduciary relationship is the duty to account.... The duty

7

is absolute, and may not be waived... To hold otherwise would leave beneficiaries defenseless. Absent enforceability of the duty to account, neither a principal nor her beneficiaries, would be able to protect their interests leaving an abusive attorney-in-fact in a position to act without fear of any adverse consequence.")

The agent's fiduciary relationship requires him to "act in the best interest of the principal, *In re Conklin*, 48 Misc.3d 29, 6 N.Y.S.3d 449 (Sup. Ct. Nassau Co. 2015) (citing *Matter of Ferrara*, 7 N.Y.3d 244, 254, 819 N.Y.S.2d 215, 852 N.E.2d 138 [2006]) and with "utmost good faith and undivided loyalty toward the principal, and ... in accordance with the highest principles of morality, fidelity, loyalty and fair dealing."

## POINT III: POWERS OF ATTORNEY HAVE STATUTORY FIDUCIARY DUTIES THAT CANNOT BE WAIVED.

Under New York law, the agent is in a highly fiduciary relationship to the principal and can always be asked to account for the agent's acts. *GOL § 5-1505(2)(a); Sokoloff v. Harriman Estates Development Corp.*, 96 N.Y.2d 409, 729 N.Y.S.2d 425, 754 N.E.2d 184 (2001). The fiduciary duties of a Power of Attorney include, but are not limited to, the obligations to:

1. Act...in the best interest of the principal and to avoid conflicts of interest; *GOL § 5-1505(2)(a)(1); and*
2. Keep a record of all receipts, disbursements, and transactions entered into by the agent on behalf of the principal and to make this record and the power of

8

> attorney available at the request of the principal…the failure to make such
> records available being the subject of a special proceeding under statute.
> *GOL § 5-1505(2)(a)(3)*, referring to a special proceeding under *GOL § 5-
> 1510.*

Where a breach of the fiduciary duty occurs, the agent is liable for damages caused

to the principal. *Cristallina S.A. v. Christie, Manson & Woods Intern., Inc.*, 117

A.D.2d 284, 502 N.Y.S.2d 165 (1st Dep't 1986). It is obvious in this case that

NYU Langone and Beth Isreal created two separate sets of records to ensure

Wilder would be able to cover-up for his actions, and O'Neill would not be able to

enforce her rights. It is also clear that Beth Isreal and NYU Langone clearly

violated NY law. However, it is also clear that under HIPAA and NY Public

Health Law § 18(2)(a), that O'Neill has an absolute right to the other set of records

NYU Langone, Beth Israel and NYPQ maintain. It is also clear that a special

proceeding can cause Wilder to release the records that NYU Langone, Beth Israel,

and NYPQ are illegally withholding from O'Neill in violation of *GOL § 5-

1505(2)(a)(3)*, and a special proceeding is merited in this matter. *GOL § 5-1510.*

## POINT IV: HOSPITAL DEFENDANTS HAD DUTY TO ACT RESPONSIBLY.

The burden is on the person dealing with the special agent to show that the

agent had the authority that the agent assumed to exercise. *Dudley v. Perkins*, 235

N.Y. 448, 139 N.E. 570 (1923); *Struzewski v. Farmers' Fire Ins. Co.*, 226 N.Y.

338, 123 N.E. 661 (1919). Here, the burden was on NYU Langone, Beth Isreal,

and NYPQ to prove that Wilder indeed had a valid POA. All Hospital Defendants completely failed in this regard which is illegal as shown in the case *In re Luby*. *In re Luby*, 180 Misc. 2d 621, 691 N.Y.S.2d 289 (Sup 1999). In the *Luby* case, the court ruled it was improper for a healthcare provider to use a POA for its own interests, rather than the interests of the principal. *Id.*

It is obvious the real reason the Hospital Defendants are refusing to provide the information O'Neill sought in her June 2022 letters is due to their criminal, illegal and complicit conduct. Among other things, Wilder and his nefarious attorney claimed that Judge Greco authorized a POA that allowed Wilder to control O'Neill's healthcare, even though New York statutes prohibit Judge Greco, or any other judge for that matter, to authorize such a POA given Wilder's obvious conflicts of interest. *GOL § 5-1505(2)(a)(1).*

In addition, the actions of Wilder and his attorneys make clear that Wilder's and DB's true purpose is a coverup, not to serve O'Neill's best interests as required by statute. *GOL § 5-1505(2)(a)(1).* In fact, Wilder's nefarious attorney then lied to another court and claimed Wilder hardly knew O'Neill, that he worked on a different floor from O'Neill at DB, another lie to coverup. Likewise, Wilder and his nefarious attorneys went out of their way to ensure that O'Neill did not know what Wilder looked like, despite the fact NYU Langone, Beth Israel, and NYPQ

10

allowed Wilder to control O'Neill's healthcare in violation of statutes. *GOL § 5-1505(2)(a)(1).* Thus, the Hospital Defendants are clearly covering up for Wilder, a man who perjured himself and told one set of lies to one court, and a diametrically opposed set of lies to a different court.

## POINT V: PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141, 14 L. Ed. 2d 8 (1965). To aid courts in determining whether a law is substantive or procedural, "the Supreme Court developed a two-part test in *Hanna*." *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001). "Under the *Hanna* test, when the federal law sought to be applied is a Federal Rule of Civil Procedure, the district court must first decide whether the statute is sufficiently broad to control the issue before the court." *Id.* "If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law." *Id.*

However, if the Federal Rule does not embrace the point in dispute, the court must determine whether to apply the state law in light of the twin aims of Erie. *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764 (1st Cir. 1994).

11

In cases of Rule 65 and injunctions, federal district courts have embraced state law causes of action. *Rajapakse v. Wells Fargo Home Mortg.*, 2015 WL 4133179, (W.D. Tenn. 2015), ("state law determined whether the state law cause of action can support an injunction"). In addition, district courts must apply Erie and its progeny to determine "whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping." *Shady Grove Orthopedic Assocs*. P.A. v. Allstate Ins. Co., 559 U.S. 393, 398, 130 S. Ct. 1431, L. Ed. 2d 311 (2010).

Other district courts in Georgia have applied O.C.G.A. § 9-5-1 without invoking Rule 65, particularly in cases such as this that involved health and welfare. *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000) (Injunctive relief was available under Georgia law against nursing home owner upon proof of conduct that continued to pose a serious threat to the health and welfare of nursing home residents. O.C.G.A. § 9–5–1; *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 2022 U.S. Dist. LEXIS 64223; 2022 WL 1027633 (2022). Likewise, the Eleventh Circuit has made similar rulings regarding injunctive relief. *Pompey v. Broward County*, 95 F.3d 1543, 1554 (11th Cir.1996) (injunctive relief available when no adequate remedy exists and threatened injury is irreparable); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*,

12

896 F.2d 1283, 1285 (11th Cir.1990) (injury is deemed to be "irreparable" if it cannot be undone through monetary remedies).

In addition, in *Showtime*, the Eleventh Circuit affirmed entry of a permanent injunction against a condominium association illegally receiving satellite signals without discussing any preliminary injunction factors because the condo association violated a statute. *Showtime/The Movie Channel, Inc. v. Covered Bridge Condominium Ass'n, Inc.*, 881 F.2d 983 (1989) (holding that "[t]o assess the propriety of the permanent injunction, however, we need only address" whether the defendants' conduct violated the statute.)

Thus, here, based on the plain text of the state law and the federal rule, it is apparent Rule 65 is not broad enough to cover the issues covered in O.C.G.A. § 9-5-1, and Rule 65 and O.C.G.A. § 9-5-1 do not directly conflict. It is also clear that failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of law or forum shopping. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 L. Ed. 2d 311 (2010). Thus, this court should apply O.C.G.A. § 9-5-1.

## POINT VI: PLAINTIFF IS ENTITLED TO AN INJUNCTION TO RESTRAIN INEQUITABLE CONDUCT.

Georgia law authorizes a court to enjoin any act of a corporation that is illegal. O.C.G.A. § 9-5-1. Balancing the equities is not required. Georgia

13

appellate courts have repeatedly affirmed injunctions that prevent persons from
violating laws—including statutes like those here—where an injunction is
prescribed, without addressing the other injunction factors. *10950 Retail, LLC v.
City of Johns Creek*, 682 S.E.2d 637 (Ga. Ct. App. 2009).

NYU Langone and Beth Israel are violating federal (HIPPA) and state
statutes, and there is nothing in either HIPAA or state statutes that exempts either
NYU Langone or Beth Israel from the federal or state regulations they are
violating. Thus, an injunction is merited. *Showtime/The Movie Channel, Inc. v.
Covered Bridge Condo. Ass'n, Inc.*, 881 F.2d 983 (11th Cir. 1989). Georgia
statutes, including O.C.G.A. § 9-5-1, authorize injunctions to stop the violations of
statutes, and no analysis of equitable factors is needed to grant an injunction, since
the prescribed remedy to right Beth Israel's and NYU Langone's wrongs is an
injunction. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009).

NYU Langone, Beth Israel, and NYPQ had fiduciary duties to Plaintiff, but
rather than uphold the law, NYPQ, Beth Israel and NYU Langone broke the law to
aid and abet a man with more signed agreements with women he raped and abused
than Harvey Weinstein. Under HIPAA, NYU Langone, Beth Israel, and NYPQ
are required to have compliance officers. 45 C.F.R. § 164.530. Yet, rather than
comply with state and federal statutes, Beth Israel, NYPQ, and NYU Langone

14

instead flouted state and federal laws, and set up two sets of records to hide information from O'Neill.

## POINT VII: RULE 65 CONSIDERATIONS.

In their opposing papers, NYU Langone and Beth Israel implicitly contend this court should invoke FRCP 65 and ignore O.C.G.A § 9-5-1. Beth Israel and NYU Langone are incorrect as a matter of law. However, even if the court were to invoke Rule 65, O'Neill should still be granted an injunction because the points Beth Israel and NYU Langone raised in their opposing papers are meritless.

### A. Rule 65.

First, in its opposing papers, NYU Langone contended O'Neill was not entitled to injunctive relief because O'Neill did not state that there was not another adequate remedy of law. (Docket No. 105, Page 5, ¶1). Clearly, NYU Langone did not even bother to check case law. If NYU Langone had checked case law, it would have determined that according to Georgia's Supreme Court, the appropriate remedy of law for a person seeking access to medical records under HIPAA, who has been denied access by a healthcare provider, is injunctive relief. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Thus, NYU Langone is incorrect.

Beth Israel and NYU Langone also claimed that lacking protected health information would not cause irreparable harm and warrant a permanent injunction.

15

(Docket No. 105, Page 5, ¶3 and Docket No. 106, Page 3, ¶2). The Georgia Supreme Court also disagreed on this point and stated the opposite. *Alvista Healthcare Ctr. v. Miller*, 286 Ga. 122 (2009). Specifically, the Georgia Supreme Court ruled that withholding medical information needed for a lawsuit clearly constituted irreparable harm, and in cases such as Plaintiff's case, injunctive relief was necessary. *Id.* Clearly, neither Hospital Defendant even bothered to attempt to follow the law, or made an attempt to abide by their legal duty and check case law. *Id.* Instead, Beth Israel and NYU Langone have demonstrated that they are more than happy to break laws and rule.

HIPAA and state healthcare laws serve a substantial government interest. Democratically elected representatives adopted the state's laws to serve the public health, safety, and welfare, and Plaintiff suffers irreparable harm every day federal and state laws are violated. *Manatee Cnty. v. 1187 Upper James of Fla., LLC*, 104 So. 3d 1118, 1121 (Fla. Dist. Ct. App. 2d 2012) ("[T]he 'irreparable harm' is the government's inability to enforce a duly enacted ordinance."). In addition, when a business violates regulations, the public suffers the irreparable harm of the judgment and will of the people's elected representatives being flouted, as well as the harms in the community that those laws aim to prevent. *Maxim Cabaret, Inc. v. City of Sandy Springs*, 304 Ga. 187, 192 (2018).

16

It is also obvious that the balance of equities falls completely in Plaintiff's favor and that public policy favors O'Neill given Plaintiff is simply asking that NYU Langone and Beth Israel comply with state and federal statutes. NYU Langone and Beth Israel are breaking several state and federal laws, and depriving O'Neill of her human rights as a result. NYU Langone claimed that it sent O'Neill her medical record (Docket No. 105, Page 3, ¶1), but the medical record NYU Langone sent is *ipse dixit* and inadmissible in court because the medical record NYU Langone sent is dependent on the other file NYU Langone hid with its Patient Relations division. (Docket No. 103, Page 59, ¶19-Page 61, ¶108).

NYU Langone's assertion that the medical record it sent was sufficient and O'Neill should know what other specific records or information NYU Langone is hiding from O'Neill is absurd. (Docket No. 105, Page 5, ¶3). How could Plaintiff possibly know exactly what NYU is hiding? What O'Neill does know is that the medical record NYU Langone sent to O'Neill is based on information from a third party. But, the name of the third party and information used by NYU Langone to make statements in O'Neill's medical record are not contained in O'Neill's medical record. For example, NYU Langone wrote down that O'Neill was "paranoid," but NYU Langone did not provide any factual support for calling O'Neill "paranoid." Instead, whatever factual support NYU Langone had is in its

17

other file with its Patient Relations division. Clearly, O'Neill cannot exert her right to amend her medical record under HIPAA under 45 CFR § 164.526 if she does not know what basis NYU Langone used as a basis for writing "paranoid" in O'Neill's medical record. This is only one example. NYU Langone's entire medical record is like this. Beth Israel's medical record is like this too, and is also *ipse dixit* and inadmissible in court. (Docket No. 103, Page 59, ¶19-Page 61, ¶108). The forthcoming motion for sanctions will describe in greater detail why it is clear that both NYU Langone and Beth Israel have two sets of records and the medical records O'Neill received are insufficient and violate numerous HIPAA statutes. 45 CFR § 164.526; 45 CFR § 164.524; 45 CFR § 164.501.

It is clear the public interest is served by requiring compliance with valid laws designed to protect the community's interests. In this situation, alternative remedies are worthless. Only an injunction will coerce NYU Langone's and Beth Israel's compliance with the law, because only it can "afford the full relief to which the facts and circumstances entitle the [movant]" and be "practical and … efficient to the ends of justice and its prompt administration." *Regency Club v. Stuckey*, 324 S.E.2d 166, 170 (Ga. 1984); *Clear-Vu Cable v. Town of Trion*, 262 S.E.2d 73 (Ga. 1979) ("It is not enough that there is a remedy at law. It must be . . .as practical and as efficient to the ends of justice and its prompt administration as

18

the remedy in equity.").

## B. Federal Law.

Under federal law, an injunction is appropriate to prevent future violations

of law. *United States v. Richberg*, 398 F.2d 523, 531 (5th Cir. 1968) (holding that

defendant violated the Civil Rights Act, and thus district court should have issued

injunction). "Where an injunction is authorized by statute, it is proper to issue such

an order to restrain violations of the law." *Sene X Eleemosynary Corp., Inc.*, 479 F.

Supp. 970, 980 (S.D. Fla. 1979) (citing *Fed. Trade Comm'n v. Rhodes Pharmacal

Co.*, 191 F.2d 744, 747 (7th Cir. 1951). The Eleventh Circuit has upheld the use of

injunctions to protect rights and uphold statutes. *Nix v. Fulton Lodge No. 2 of Int'l

Ass'n of Machinists & Aerospace Workers*, 262 F. Supp. 1000, 1002 (N.D. Ga.

1967); *Shuttlesworth v. Gaylord*, 202 F. Supp. 59, 64 (N.D. Ala. 1961).

## POINT VIII: PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

An injunction under O.C.G.A. § 9-5-1 may be granted where there is

substantial controversy between parties and one of them is committing an act...

that will cause irreparable injury... before a full hearing can be had on the merits

of the case. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga.

1969). Such is the case here. As described above, NYU Langone and Beth Israel

are failing to comply with state and federal laws and O'Neill faces irreparable

injury as a result. O'Neill cannot accurately amend her complaint without the information she requested in her June 2022 letters. In similar cases, federal district courts have held that injunctions were necessary when a defendant was withholding material information in violation of a statute from a plaintiff. *Poss v. N.L.R.B.*, 1975 WL 11999, (D.D.C. Dec. 17, 1975); *McDonnell Douglas Corp. v. N.L.R.B.*, No. CV 76-0409 R, 1976 WL 13434, (C.D. Cal. Mar. 17, 1976).

An injunction serves to restrain any act contrary to equity and good conscience, and for which no adequate remedy at law is provided. *Waycross Military Ass'n v. Hiers*, 209 Ga. 812, 76 S.E.2d 486 (1953). Here, since NYU Langone and Beth Israel are refusing to comply with state and federal laws, O'Neill has no option but to ask the court to enjoin NYU Langone and Beth Israel from continuing to withhold the information Plaintiff requested in June 2022.

It is not the function of an injunction to decide a case on merits, and the possibility that the party obtaining an injunction may not win on the merits is not determinative of the propriety or validity of the trial court's granting the injunction. *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304 (N.D. Ga. 1969). Rather, each case must be determined on its particular allegations, and must be decided on the nature, extent, and kind of equitable relief sought. *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 277 S.E.2d 646 (1981). Here, as described above, there is no

20

question that NYU Langone and Beth Israel are violating state and federal statutes.

Thus, the only determination this court needs to make is whether or not NYU

Langone and Beth Israel are violating state and federal statutes.

## POINT IX: THERE ARE RULES TO TURN PRELIMINARY INJUNCTION INTO PERMANENT INJUNCTION.

Given NYU Langone and Beth Israel have clearly violated state and federal

statutes, an injunction is necessary. It is also clear that the nature of O'Neill's

request entails a permanent injunction. O'Neill is essentially asking NYU

Langone and Beth Israel to turn over records that are in their possession. Once the

court has ruled that NYU Langone and Beth Israel must follow HIPAA and state

laws and allow O'Neill access to her records, then O'Neill will have access to her

records. Once the court has determined Plaintiff has a right to access her records,

there is no further action required. Thus, by definition, the nature of O'Neill's

request is for a permanent injunction. Under Georgia law, this court may turn a

hearing for a preliminary injunction into a hearing for a permanent injunction

given the nature of the request.

Specifically, under certain circumstances, the Civil Practice Act permits a

trial court, either "[b]efore or after the commencement of" the interlocutory

hearing, to "order the trial of the action on the merits to be advanced and

consolidated with the [interlocutory] hearing." OCGA § 9–11–65 (a) (2).

21

However, the court's authority to so consolidate is " 'tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of on the merits.' " *McHugh Fuller Law Group, PLLC v. PruittHealth-Toccoa, LLC*, 297 Ga. 94, 96, 772 S.E.2d 660 (2015).

## POINT X: JURISDICTION IS PROPER IN THIS COURT.

Both NYU Langone and Beth Israel raised jurisdictional arguments that are ridiculous. In its reply papers for its motion to dismiss, NYU Langone stated that data from a government agency, the NIH's National Library of Medicine, which tracks clinical trials on behalf of the U.S. Government, at the web address, (https://clinicaltrials.gov), constituted, hearsay. (Docket No. 98, Page 5, ¶2). NYU Langone's arguments are ridiculous. Federal Rule of Evidence ("FRE") 8(A) states that a record of a public office, here the NIH, which sets out the office's duties and is kept as part of the NIH's legal duty to report, is not hearsay. Given these circumstances, NYU Langone's objections that the NIH's clinical trials data constitutes hearsay is clearly a farce.

Likewise, FRE 803(6) states there is a hearsay exception for records of regularly conducted business activity. Monitoring clinical trial activity is part of the regularly conducted business activity of the U.S. Government and NIH. The NIH monitors clinical trials as part of its mandate to understand clinical science

22

and human testing.  The fact hospitals, in this case NYU Langone and Beth Israel, would attempt to deny the role of the U.S. Government in monitoring clinical testing of humans in the U.S. is stupid.  Thus, NYU Langone's argument that the information contained in the NIH's database about NYU Langone is somehow invalid and constitutes "hearsay" is absurd.

Instead, as shown by the NIH and as shown in Exhibit A, NYU Langone, Beth Israel, and NYPQ regularly conduct medical care in the state of Georgia according to the U.S. Government.  Thus, there is no question this court has jurisdiction over NYU Langone, Beth Israel and NYPQ.  Any claim to the contrary ignores the role of the NIH and U.S. Government in protecting U.S. patients and ensuring medical care and clinical testing adhere to U.S. Government standards.

## POINT XI: PLAINTIFF PROPERLY AMENDED HER COMPLAINT ONCE, AND SHOULD BE ALLOWED TO AMEND AGAIN.

NYU Langone claimed that Plaintiff has never sought leave of the Court to amend her complaint. (Docket No. 105, Page 6, ¶1).  Yet, NYU Langone ignores the fact Plaintiff already properly filed an Amended Complaint (Docket No. 69). Federal Rule of Civil Procedure ("FRCP" or "Rule") 15(a) states, "A party may amend its pleading once as a matter of course within…21 days after service of a motion under Rule 12(b)." *FRCP 15(a).*  Beth Israel served its Motion to Dismiss

23

under Rule 12(b) on August 19, 2022. (Docket No. 55-3, Page 1, ¶1). September 9, 2022 was 21 days after August 19, 2022. Plaintiff timely filed her First Amended Complaint ("FAC") on September 9, 2022 (Docket No. 69), 21 days after Beth Israel served its Motion to Dismiss under Rule 12(b).

Case law shows, "where a claim asserted by a plaintiff is against a number of defendants jointly liable for their combined conduct or acts, that to such a claim ' a responsive pleading' is not served until all of the defendants have answered the claim, not just some of them." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 6 Fed. Prac. Proc. Civ. 2d § 1481 (2d ed. 1990); *Pallant v. Sinatra*, 7 F.R.D. 293 (S.D. N.Y. 1945); *Hylton v. Anytime Towing*, CASE NO. 11CV1039 JLS (WMc) (S.D. Cal. Mar. 26, 2012); *Pemrick v. Stracher*, No. 92 CV 959 (CLP) (E.D.N.Y. Nov. 4, 2005).

Here, as stated in the Complaint (Docket No. 1), all defendants acted as a RICO enterprise. (Docket No. 1, ¶178-¶195). Thus, as a matter of right, Plaintiff had until the last motion to dismiss pursuant to Rule 12(b)(6) was served by Beth Israel to serve an amended complaint as a right given the Hospital Defendants were jointly liable for the RICO claim. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 6 Fed. Prac. Proc. Civ. 2d § 1481 (2d ed. 1990); *Pallant v. Sinatra*, 7 F.R.D. 293 (S.D. N.Y. 1945). Thus, given the Hospital Defendants' joint liability

24

under the RICO statute, Plaintiff's FAC was timely filed against all Hospital Defendants on September 9, 2022, and all Hospital Defendants, except Beth Israel, failed to timely respond to the FAC.

Despite these facts, on November 1, 2022, NYPQ filed a motion asking this court to strike O'Neill's timely filed FAC, even though O'Neill's FAC was properly filed as a right. (Docket No. 100). Given Plaintiff timely filed her FAC on September 9, 2022 (Docket No. 69), NYPQ's motion to strike should be dismissed by this court because the motion to strike is procedurally improper given Plaintiff's FAC was properly and timely filed as a right in accordance with Rule 15(a). The court should also note that by failing to respond to Plaintiff's FAC, all Hospital Defendants including NYPQ failed to respond to Counts Four, Five and Six in O'Neill's FAC. (Docket No. 69). Thus, none of the Hospital Defendants motions to dismiss should be granted by this court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court **GRANT** the motion and grant such other further relief the Court deems equitable.

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO ENJOIN** were prepared

25

using Times New Roman 14 point font in accordance with Local Rule 5.1 of the

United States District Court for the Northern District of Georgia.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I have this day caused to be served a true and

correct copy of the foregoing by emailing and mailing a copy of the foregoing to

each Defendant at the following addresses:

## **LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brantley Rowlen, Esq.
Chase Parker, Esq.
24 Drayton Street, Suite 300
Savannah, GA 31401
Telephone: 912.525.4960
E-Mail: rowlen@lbbslaw.com
E-Mail: chase.parker@lewisbrisbois.com

## **WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Parks Kalervo Stone, Esq.
3348 Peachtree Road NE
Suite 1400
Atlanta, GA 30326
Telephone: 470.419.6651
E-Mail: parks.stone@wilsonelser.com

## **WATSON SPENCE LLP**
Michael R. Boorman, Esq.
999 Peachtree Road, N.E.
Suite 1130
Atlanta, GA 30309
Telephone: 229.436.1545
E-Mail: mboorman@watsonspence.com

26

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**SCRUDDER, BASS, QUILLIAN, HORLOCK,
LAZARUS & ADELE LLP**
Henry E. Scrudder, Jr.
Teddy L. Sutherland
Sophia Welf
900 Circle 75 Parkway
Suite 850
Atlanta, Georgia 30339-3053
Telephone: (770) 612-9200
Facsimile: (770) 612-9201
hscrudder@scrudderbass.com
tsutherland@scrudderbass.com
swelf@scrudderbass.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson
Georgia Bar No. 935864
191 Peachtree St. NE
Suite 2900
Atlanta, GA 30303

27

Dated: Atlanta, GA
November 28, 2022

Respectfully submitted,

BY: _Maura O'Neill_

Maura O'Neill, Plaintiff
601 King Street, Suite 200-#465
Alexandria, VA 22314
moneill@rahillco.com

# EXHIBIT A

**Jurisdiction in Georgia**

NYU Langone, New York Presbyterian, and Beth Israel

| | Start Date | End Date | NY Institution | NY Investigator | Georgia Institution | Study Name |
|---|---|---|---|---|---|---|
| **NYU Langone Hospitals** | | | | | | |
| 1 | 10/8/10 | | NYU Cancer Institute at New York University Medical Center | Howard S. Hochster, MD NYU Langone Health | Veterans Affairs Medical Center - Atlanta (Decatur) | Irinotecan Hydrochloride and Cetuximab With or Without Ramucirumab in Treating Patients With Advanced Colorectal Cancer With Progressive Disease After Treatment With Bevacizumab-Containing Chemotherapy |
| 2 | 10/1/05 | | NYU Hassenfeld Center | Sharon L. Gardner, MD NYU Langone Health | Emory University | Temozolomide, Thiotepa and Carboplatin With Autologous Stem Cell Rescue Followed by 13-cis-retinoic Acid in Patients With Recurrent/Refractory Malignant Brain Tumors |
| 3 | 8/29/16 | | NYU Langone Health | Catherine Diefenbach, MDNYU Perlmutter Cancer Center | Emory University Hospital | Safety & Efficacy Study of Combination of Pembrolizumab and Lenalidomide, in Patients With Relapsed Non-Hodgkin and Hodgkin Lymphoma |
| **New York Presbyterian Hospitals** | | | | | | |
| 4 | 11/2/12 | | New York Presbyterian Hospital | | Georgia Endoscopy Center | A Study Of PF-00547659 In Patients With Moderate To Severe Ulcerative Colitis (TURANDOT) |
| 5 | 2/1/11 | | New York Presbyterian Hospital | | Atlanta Endoscopy Center | A Study To Assess The Efficacy And Safety Of PF-04236921 In Subjects With Crohn's Disease Who Failed Anti-TNF Therapy (ANDANTE) |
| 6 | 8/2/12 | | New York Presbyterian Hospital | | Emory University Hospital | A Study Of Inotuzumab Ozogamicin Versus Investigator's Choice Of Chemotherapy In Patients With Relapsed Or Refractory Acute Lymphoblastic Leukemia |
| 7 | 4/30/07 | | New York Presbyterian Hospital | | Emory Winship Cancer Institute | Dasatinib in Polycythemia Vera |
| 8 | 10/1/02 | | New York Presbyterian Hospital | | Morehouse School of Medicine | Warfarin Versus Aspirin in Reduced Cardiac Ejection Fraction (WARCEF) Trial (WARCEF) |
| 9 | 10/3/07 | | New York Presbyterian Hospital | | Emory Winship Cancer Institute | Dasatinib in Polycythemia Vera |
| 10 | 7/12/22 | | New York Presbyterian Hospital | | Emory University Winship Cancer Institute | A Study of RNK05047 in Subjects With Advanced Solid Tumors/Diffuse Large B-cell Lymphoma (CHAMP-1) |
| **Beth Israel / Mount Sinai** | | | | | | |
| 11 | 6/12/14 | | Beth Israel Hospital | | Winship Cancer Institute, Emory University | Chemoradiation or Brachytherapy for Rectal Cancer (CORRECT) |
| 12 | 12/1/09 | | Mount Sinai School of Medicine | | Emory University | Evaluation of GSK561679 in Women With Post-Traumatic Stress Disorder |
| 13 | 8/1/08 | | Mount Sinai Medical Center | | Emory University Winship Cancer Institute | Safety and Dose Determining Study of BT062 in Patients With Relapsed or Refractory Multiple Myeloma |
| 14 | 6/10/22 | | Mount Sinai Hospital | | Emory University School of Medicine | CQ for Non Europeans With Mild to Severe UC |

*Source: clinicaltrials.gov*

PRESS FIRMLY TO SEAL PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED STATES**
**POSTAL SERVICE.**

*Retail*

## US POSTAGE PAID
### $9.90
Origin: 22027
11/29/22
5193190231-02

### PRIORITY MAIL®

0 Lb 8.60 Oz

**RDC 21**

EXPECTED DELIVERY DAY:  12/01/22

C039

SHIP
TO:


75 TED TURNER DR SW
ATLANTA GA 30303-3315

**USPS TRACKING® #**



9505 5102 3307 2333 4384 26



**FLAT RATE**
ONE RATE ■ AN

**TRACKED**



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP

**PRIORITY**
★ **MAIL** ★

**UNITED STATES**
**POSTAL SERVICE** ®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


FROM:

O'Neill
600 n King St, # 201-465
Alexandria, VA 22314

CLEARED DATE

Mailing Service
Atlanta GA 30303
DEC 02 2022

**TO:**

Clerk of Court
U.S. Courthouse
75 Ted Turner Dr, SW
Atlanta, GA 30303-
3309

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE