UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAURA O'NEILL,

          Plaintiff,

      v.

NYU LANGONE MEDICAL
CENTER, NEW YORK-
PRESBYTERIAN QUEENS,
LENOX HILL HOSPITAL, GRADY
HEALTH SYSTEM, MOUNT SINAI
BETH ISRAEL, NORTHSIDE
HOSPITAL FORSYTH, and
COLLEGE PARK POLICE
DEPARTMENT,

          Defendants.

CIVIL ACTION NO.

1:22-CV-0011-SEG

## **O R D E R**

Plaintiff Maura O'Neill filed this lawsuit on January 4, 2022, against

Defendants NYU Langone Medical Center, New York-Presbyterian Queens,

Lenox Hill Hospital, Grady Health System, Mount Sinai Beth Israel,

Northside Hospital Forsyth, and College Park Police Department.  (Doc. 1.)

She brings claims of common law fraud against the defendant hospitals,

alleging they falsified her medical records, failed to provide her with medical

care, and worked to "aid and abet a sex trafficking operation" after she was

allegedly sexually assaulted on several occasions by a former co-worker,

Christopher Wilder.  Plaintiff further alleges that all defendants were acting in concert with Wilder and others in an enterprise to protect both Wilder's reputation and that of her former employer, Deutsche Bank Securities, Inc., in violation of the federal RICO statute, 18 U.S.C. § 1962(c).

This matter is before the Court on motions to dismiss filed by four of the hospital defendants (Doc. 16, 23, 24, 50), motions to set aside default filed by two of the hospital defendants (Doc. 51, 55), and motions for injunction filed by Plaintiff.  (Doc. 86, 87, 103.)  Plaintiff has also filed three requests for hearings on the various motions (Doc. 79, 87, 103) and a motion to compel (Doc. 58).  There is also a pending motion for clarification (Doc. 83) and a motion to strike (Doc. 100).

## I.     Procedural Background

The complaint was filed on January 4, 2022.  (Doc. 1.)  Both federal question and diversity jurisdiction are alleged.  (*Id*. at 14, Compl. ¶¶ 38, 39.) The complaint also alleges that because there is subject matter jurisdiction over the federal RICO claim, the Court has supplemental jurisdiction over the state law claims for fraud.  (*Id*. at 14, Compl. ¶ 39.)

The complaint brings claims against seven defendants, six of which are hospitals.  Plaintiff filed proof of service as to the six hospital defendants.[1] (Doc. 10-15.)  Three of the hospital defendants – NYU Langone Medical Center ("NYU Langone"), New York-Presbyterian Queens ("New York-Presbyterian"), and Grady Health System ("Grady") – filed motions to dismiss.  (Doc. 16, 23, 24.)  On July 20, 2022, the Clerk entered default as to two other hospital defendants, Mount Sinai Beth Israel ("Beth Israel") and Northside Hospital Forsyth ("Northside").  (Doc. 42.)  Beth Israel and Northside have since filed motions to set aside the entry of default.  (Doc. 51, 55.)  Beth Israel has provided a motion to dismiss that it requests the Court deem filed if default is set aside. (Doc. 55-3.)  Northside also filed a motion to dismiss, but as a separate docket entry.  (Doc. 50.)

Plaintiff moved for the Clerk's entry of default as to NYU Langone. (Doc. 38.)  She sought the entry of default as a sanction for NYU Langone's failure to properly serve its motion to dismiss on her.   NYU Langone rectified the service issue, and the Court afforded Plaintiff an extension of time to

---

[1] On October 11, 2022, Plaintiff voluntarily dismissed her claims against Lenox Hill Hospital.  (Doc. 89.)  The Clerk approved that notice of voluntary dismissal and terminated Lenox Hill Hospital as a defendant.

respond to the motion to dismiss.  The motion for the Clerk's entry of default as to NYU Langone was accordingly denied. (Doc. 42.)

Plaintiff and NYU Langone subsequently filed a stipulation regarding service in which they agreed to accept service of all documents in the case by email.[2]  (Doc. 57.)  Plaintiff and Beth Israel filed a similar stipulation on September 9, 2022.  (Doc. 68.)  On October 7, 2022, Beth Israel filed a motion seeking "an order clarifying all future response deadlines" after a disagreement arose concerning Beth Israel's deadline to file its reply in support of its motion to set aside the entry of default.  (Doc. 83.)  This confusion arose because of the delay between service of Plaintiff's response and the filing of the response by the Clerk.  The motion states that all defendants join in this request for clarification.  (*Id*. at 3.)

On September 9, 2022, Plaintiff filed an amended complaint which the Clerk construed as a "Notice of Filing Proposed First Amended Complaint." (Doc. 69.)  New York-Presbyterian moved to strike the amended complaint, arguing that it was filed without leave of court.  (Doc. 100.)

---

[2] As a *pro se* litigant, Plaintiff is not permitted to electronically file documents or to receive documents from the Court's electronic filing system. *See* Standing Order No. 19-01 ("Pro se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form.")

On October 6, 2022, Plaintiff filed a motion requesting a hearing on the pending motions to set aside default.  (Doc. 79.)  She also requested the issuance of a subpoena to a process server, Jason Garmon, to appear at the hearing.  (*Id*.)  A few days later, Plaintiff filed two, identical motions seeking permanent injunctions and hearings on her injunction requests.  (Doc. 86, 87.)  These motions seek to enjoin Grady and Northside from engaging in certain acts, including but not limited to, withholding Plaintiff's medical records.  Plaintiff filed a third motion for permanent injunction and hearing on October 31, 2022.  (Doc. 103.)  This motion seeks a similar injunction against the other hospital defendants – NYU Langone, New York-Presbyterian, and Beth Israel.

## II.    Status of Defendant College Park Police Department

In addition to suing six hospitals, Plaintiff also sued the College Park Police Department.  There is no indication on the docket that College Park Police Department has ever been served with the complaint.  On July 20, 2022, the Court issued an order directing Plaintiff to show cause why her claims against College Park Police Department should not be dismissed without prejudice for failure to serve the complaint within the time prescribed by Federal Rule of Civil Procedure 4(m).  (Doc. 42.)  This Rule provides that "[i]f a defendant is not served within 90 days after the

complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Plaintiff has neither responded to the show cause order nor filed proof of service as to College Park Police Department. The Court therefore DISMISSES College Park Police Department WITHOUT PREJUDICE pursuant to Rule 4(m). The Clerk is DIRECTED to terminate College Park Police Department as a defendant.

## III. New York-Presbyterian's Motion to Strike the Amended Complaint (Doc. 100)

On September 9, 2022, Plaintiff filed an amended complaint. (Doc. 69.) New York-Presbyterian moved to strike it as being filed without consent or leave of court. (Doc. 100.) At issue is whether Plaintiff timely filed her amended complaint "as a matter of course" under Federal Rule of Civil Procedure 15(a)(1). That rule states:

(1) Amending as a Matter of Course. A party may amend its pleadings once as a matter of course within:

(A) 21 days after serving it; or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Here, many months passed between the time Plaintiff filed and served her original complaint and the date on which she filed her amended complaint. Since amendment under Rule 15(a)(1)(A) was not timely, she could only amend as a matter of course if she satisfied Rule 15(a)(1)(B).  New York-Presbyterian argues that she does not satisfy this rule.

Plaintiff filed a response in opposition to the motion to strike, arguing that her time to amend the complaint as a matter of course under Rule 15(a)(1)(B) did not expire until Beth Israel served its motion to dismiss.  (Doc. 109 at 2-3.)  She bases this argument on decisions from outside of this circuit that hold that when a claim, such as Plaintiff's federal RICO claim, seeks to hold multiple defendants jointly liable, a responsive pleading is not deemed to have been served to the complaint until all of the defendants have answered.[3]  In this Circuit, however, the rule is that "[i]f the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those

---

[3] *See, e.g., Pallant v. Sinatra*, 7 F.R.D. 293, 300 (S.D.N.Y. 1945) ("I am of the opinion that where a claim asserted by a plaintiff is against a number of defendants jointly liable for their combined conduct or acts, that to such a claim 'a responsive pleading' is not served until all of the defendants have answered the claim, not just some of them.")

defendants that have yet to answer." *Williams v. Bd. of Regents of Univ. Sys. Of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007).[4]

Here, applying *Williams*, Plaintiff could not amend as a matter of course with respect to New York-Presbyterian, NYU Langone, or Grady, all of which filed motions to dismiss in April 2022, months before Plaintiff filed her amended complaint.  (Doc. 16, 23, 24.)  The amended complaint was thus improper as to the three defendants listed above.  *See, e.g., United States v. Dermatology & Skin Cancer Prevention Ctr., Inc.*, No. 1:12-cv-0184-SCJ, 2013 WL 12109763, at *2 (N.D. Ga. Apr. 11, 2013) (finding that a plaintiff improperly filed an amended complaint without leave because the time for matter-of-right amendments had expired against some though not all defendants); *Lipscomb v. Cronic*, No. 2:11-CV-78-RWS, 2011 WL 6755198, *4 (N.D. Ga. Dec. 22, 2011) (stating that a plaintiff's amended complaint was not "timely as an amendment as a matter of right" and that plaintiff needed

---

[4] *Williams* appears to be good law despite intervening amendment to Rule 15. *United States v. Dermatology & Skin Cancer Prevention Ctr., Inc.*, No. 1:12-cv-0184-SCJ, 2013 WL 12109763, at *2 (N.D. Ga. Apr. 11, 2013) ("While Rule 15(a), as amended on March 26, 2009, now provides a twenty-one day window following the filing of either a responsive pleading or a Rule 12(b) motion for a matter of course amendment, *Williams's* logic still applies.").

leave of court to file an amended complaint, where the time for matter-of-course amendment had passed as to some but not all defendants).

‼        Where a plaintiff no longer has the right to amend as a matter of course, the plaintiff is required to obtain either the written consent of the defendants or leave from the court before filing an amended complaint. Fed. R. Civ. P. 15(a)(2).  The Court has not granted such leave, and there is no indication that the defendants consented to the filing of the amended complaint.  Accordingly, the Court GRANTS New York-Presbyterian's motion to strike the amended complaint.  (Doc. 100).  The Clerk is DIRECTED to STRIKE the amended complaint from the record.[5]  (Doc. 69.)

---

[5] The Court has considered that the time for leave to amend as a matter of course with respect to Beth Israel and Northside had not yet passed when Plaintiff filed her amended complaint.  (Both had the Clerk's entry of default entered against them at the time).  In cases in which the time to amend as a matter of course has expired as to some but not all defendants (as occurred here), courts have sometimes permitted the amendment to proceed against some but not all defendants.  *See, e.g., Jenkins v. McCalla Raymer, LLC*, No. 110CV03732CAPAJB, 2011 WL 13318714 (N.D. Ga. Jan. 19, 2011) (finding that plaintiffs improperly filed the amended complaint "as a matter of course" as to three defendants, concluding that the amended complaint would not apply to these defendants, but allowing the amended complaint to proceed as to other defendants).  Here, however, the Court considers that it would create a procedural muddle to permit the amended complaint, but to deem it inapplicable to nearly all defendants.  *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (stating that a district court has inherent authority to manage its own docket to achieve the orderly and expeditious disposition of cases).  In this case, the

## IV.   Factual Background

### A. General Allegations

Plaintiff claims that she worked at Deutsche Bank Securities, Inc. ("Deutsche Bank") in New York from 2004 to 2007.  During this period, she alleges that she was sexually harassed by Christopher Wilder, a co-worker. (Doc. 1 at 4, Compl. ¶ 10.)  She further alleges that her employment was terminated in May 2007 after Wilder issued a "she goes or I go" ultimatum to Deutsche Bank.  (*Id.*, Compl. ¶ 11.)

Plaintiff alleges that she began working at Lehman Brothers as an investment banker in June 2007.  Wilder allegedly began to stalk Plaintiff and told others that he intended to drug and rape her.  (*Id.* at 5, Compl. ¶¶ 12, 13.)  Plaintiff alleges that on January 6, 2017, Wilder broke into her home and sexually assaulted her.  (*Id.* at 5, Compl. ¶ 15.)   He also allegedly sexually assaulted her on July 28, 2017.  (*Id.* at 17, Compl. ¶ 47.)

Plaintiff alleges that Wilder has engaged in various activities to cover up these alleged assaults, including setting up fake social media and email accounts in her name to support a false impression that they had a

better approach is to grant the motion to strike and to give Plaintiff leave to amend.  The Court does both in this order.

relationship.  (*Id*. at 6, Compl. ¶ 17.)  She further alleges that both Wilder

and Deutsche Bank have attempted to discredit O'Neill by falsely claiming

that Plaintiff experiences a mental health condition.  (*Id*. at 9, 11, 12, Compl.

¶¶ 25, 30, 31.)  According to Plaintiff, several hospitals and their staff

members have aided and abetted Wilder by including erroneous information

in her medical records, not collecting urine samples to include in her rape

kits and failing to run the correct tests on the samples they collected. (*Id*. at

12-13, Compl. ¶¶ 33, 34, 35.)

### B.  Allegations Against NYU Langone

Plaintiff alleges that she went to NYU Langone for a rape kit. (*Id*. at

50, Compl. ¶ 155.)  It is unclear from the complaint when this event occurred.

She further alleges that NYU Langone "failed to run the right tests on the

urine samples" she provided, and that as a result, the New York Police

Department "closed criminal cases under entirely false pretenses."  (*Id*. at 51-

52, Compl. ¶¶ 159, 161.)

### C. Allegations against New York-Presbyterian

Plaintiff alleges that on December 31, 2017, she woke up feeling

nauseous and, after seeing her primary care provider, was diagnosed with a

urinary tract infection.  (*Id*. at 28, Compl. ¶ 90.)  She called a toxicologist who

advised her to send a urine sample for testing because her symptoms "fit

those of someone who was recovering from the effects of anesthesia." (*Id*. at 29, Compl. ¶ 91.)  On January 1, 2018, Plaintiff went to New York-Presbyterian for testing to determine if she had been given a "rape drug." She alleges that hospital staff falsified a medical record to make it appear as though Plaintiff had a relationship with Wilder.  (*Id*. at 30, Compl. ¶ 94.)

### D. Allegations against Grady

Plaintiff alleges that on January 24, 2018, she flew from New York to Georgia to start work as the chief financial officer of a Georgia company.  (*Id*. at 34, Compl. ¶ 107.)  She alleges that on February 5, 2018, Wilder drugged and sexually assaulted her at an Embassy Suites hotel in Atlanta.  Plaintiff then went to Grady Hospital on February 6, 2018, for a rape kit.  (*Id*. at 35, Compl. ¶ 111.)  Grady allegedly refused to take a urine sample.  (*Id*. at 35, Compl. ¶ 113.)

### E. Allegations against Beth Israel

Plaintiff alleges that the keys to her apartment were stolen on December 9, 2017.  When she went to sleep around 1:00 AM, she was alone in the apartment and the doors were locked.  "She awoke a few hours later with pelvic pain and pain in her toe from where a needle had been inserted."  (*Id*. at 23, Compl. ¶ 69.)  She went to Beth Israel that day for a rape kit.  (*Id*. at 23, Compl. ¶ 70.)  Plaintiff alleges that "agents of Wilder" gave staff at Beth

Israel information about her, including that she had sex with Wilder and another man on December 9, 2017.  (*Id*. at 23, Compl. ¶¶ 71, 72.)   Plaintiff further states that she went to Beth Israel in February 2018 following the alleged assault at the Embassy Suites hotel.  (*Id*. at 35, Compl. ¶ 112.)

### F. Allegations against Northside Hospital

Plaintiff alleges that on January 24, 2018, the same day that she flew from New York to Georgia, Wilder stalked her to Georgia and drugged her with opiates.  (*Id*. at 34, Compl. ¶ 107.)  She then went to Northside Hospital for treatment.  (*Id*. at 34, Compl. ¶¶ 107, 108.)  Plaintiff alleges that Northside Hospital Forsyth is "vicariously liable for the intentional torts of Wilder and his agents."  (*Id*. at 54, Compl. ¶ 175.)

## V.   Motions to Set Aside Default (Doc. 51, 55)

Northside and Beth Israel filed motions to set aside the Clerk's entry of default.  (Doc. 51, 55.)  Plaintiff filed a response in opposition to each motion (Doc. 59, 74), and Defendants filed reply briefs (Doc. 70, 84).

### A. Legal Standard

Defaults are viewed with disfavor, and there is a "strong policy of determining cases on their merits."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  Federal Rule of Civil Procedure 55(c) provides that the Court may set aside an entry of default for "good cause."  What

constitutes "good cause" is not subject to a precise formula and varies from case to case. *Compania Interamericana Export-Import v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Among other things, the Court may consider (1) whether the party has a meritorious defense, (2) how promptly the party acted to cure the default, (3) whether the default was willful, and (4) whether the non-defaulting party would be prejudiced. *Id.* at 951. Ultimately, the "district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

### B. Beth Israel's Motion to Set Aside Default

Beth Israel has moved to set aside the Clerk's entry of default based on improper service. (Doc. 55.) The relevant affidavit of service filed by Plaintiff states that a person named Frite Fils-aime was served at Mt. Sinai Beth Israel, 281 First Avenue, New York City on April 4, 2022. (Doc. 13.) Beth Israel states that Mr. Fils-aime is a security guard who was on duty at the hospital entrance. (Doc. 55-1 at 2.) It explains that it implemented a process during the COVID-19 pandemic allowing security guards to receive service and to deliver the documents to the hospital's risk management department. That department then emailed a copy of the documents to the

in-house legal department for the Mount Sinai Health System, of which Beth
Israel is part.  (*Id*. at 2-3.)  Due to what Beth Israel characterizes as an
"internal misunderstanding," the service documents in this case were not
forwarded to the proper division for handling.  (*Id*. at 3.)

Beth Israel contends that default should be set aside for four reasons:
(1) this Court lacks personal jurisdiction over it; (2) there is good cause to set
aside the default because it "did not willfully disregard its obligation to
appear, and it immediately sought to remedy the issue after learning about
the entry of default" (*id*. at 9);  (3) it has a meritorious defense to Plaintiff's
claims; and (4) setting aside default would not prejudice Plaintiff.  (*Id*. at 11.)

Plaintiff opposes setting aside default, stating, among other things,
that Beth Israel's explanation about its internal misunderstanding "is not
reasonable and clearly dishonest."  (Doc. 74 at 4.)  She claims that its failure
to appear was willful because it had been colluding with Wilder's agents in
June and July 2022 to violate HIPAA [the Health Insurance Portability and
Accountability Act of 1996] to harm her; thus, it was aware of the lawsuit
before the Clerk entered default on July 20, 2022.  (*Id*.)   She argues that

setting aside the default will cause "substantial prejudice" to her, but she

does not explain why.[6] (*Id.* at 5.)

---

[6] During briefing on the motion, confusion arose between the parties concerning their response and reply deadlines. The parties have stipulated to electronic service of documents, but as a *pro se* litigant, Plaintiff cannot file her documents using the Court's electronic filing system. Beth Israel filed a motion requesting that the Court issue an order clarifying all future response deadlines. (Doc. 83.)

The motion for clarification is GRANTED insofar as it can be. Local Rule 7.1(B), NDGa, states that "[a]ny party opposing a motion shall serve the party's response . . . not later than fourteen (14) days after *service* of the motion. . ." (emphasis added). A party's response deadline is easily discernable in cases in which both sides are represented by counsel because the date of electronic *filing* and the date of electronic *service* are the same. In *pro se* cases, however, there is sometimes a gap between the date on which a *pro se* party *serves* another party with a document, and the date on which the same document is *filed* with the Clerk. The applicable local rule is admittedly confusing as applied to cases involving *pro se* litigants.

Beth Israel wants the Court to order that, going forward, all response times will run from the date of docketing, rather than from the date of service. The problem is that while the undersigned undoubtedly has authority to waive a local rule, *Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals, LLC*, No. 1:20-CV-1837-TWT, 2022 WL 252309 (N.D. Ga. Jan. 27, 2022), it is not clear that it can alter this local rule or do so for the life of a particular case. Considering the foregoing, the best the Court can do is to direct the parties to either file a motion or to contact the Courtroom Deputy Clerk for assistance in the event of future disagreement regarding deadlines. The matter will be promptly addressed by the Court.

For good measure, the Court further clarifies that a document is considered filed when it is delivered to the Clerk. Fed. R. Civ. P. 5(d)(2)(B). *See also Morales v. Astrue*, No. 8:09–cv–1068–T–27TBM, 2009 WL 3697990, at *1 (M.D. Fla. Nov. 3, 2009). In contrast, e-mailing a document to the opposing party or the Courtroom Deputy Clerk does not constitute "filing" of that document.

The Court finds that there is good cause to vacate the Clerk's entry of default against Beth Israel because Beth Israel has satisfied the good cause criteria set forth above. *See Compania Interamericana Export-Import*, 88 F.3d at 95. First, the failure to timely answer Plaintiff's complaint was clearly not willful. Beth Israel states that due to the global COVID-19 pandemic, it instituted a new procedure whereby a security officer at the hospital entrance accepted service of process. This new procedure of forwarding the service documents to the appropriate department broke down in this case when an employee in one of the departments started a period of paid time off. One department mistakenly thought the documents had been forwarded to another, and neither was aware that the documents had not reached the appropriate department. Under these circumstances, the Court cannot find willfulness.

Beth Israel further promptly moved to set aside default when the failure to answer was discovered. It has also shown that it has a meritorious defense to Plaintiff's claims. "[T]o establish a meritorious defense, the moving party must make an affirmative showing of a defense that is likely to be successful." *In re Worldwide*, 328 F.3d at 1296 (internal quotation omitted). Beth Israel has submitted a proposed motion to dismiss that it asks the Court to deem filed if default is set aside. (Doc. 55-3.) This motion raises

the defenses of lack of personal jurisdiction, statute of limitations, and Plaintiff's purported failure to plead her fraud claim with particularity as required by Federal Rule of Civil Procedure 9.  The Court notes that Beth Israel is in New York, and that Plaintiff alleges that she sought treatment there on December 10, 2017, over four years before she filed her complaint, whereas the statute of limitations for Plaintiff's fraud and RICO claims is four years.  Beth Israel has meritorious defenses for purposes of Rule 55(c).

Although Plaintiff argues that granting Beth Israel's motion to set aside the default would prejudice her, she fails to explain how.  The case is still in the early stages.  The parties' discovery obligations have been stayed pending adjudication of the other defendants' motions to dismiss.  As such, setting aside default will not lead to "discovery difficulties" as Plaintiff alleges.  The absence of any demonstrative prejudice weighs in favor of setting aside default.

The Court accordingly finds good cause to set aside the default.  Beth Israel's motion is GRANTED.  The Clerk is DIRECTED to SET ASIDE the default that was entered as to Beth Israel on July 20, 2022, and to file Beth Israel's motion to dismiss (Doc. 55-3) as of the date of this order.  Plaintiff shall have until April 18, 2023, to file any response to the motion to dismiss and Beth Israel shall have until April 25, 2023, to file any reply.

### C. Northside's Motion to Set Aside Default

Northside asks the Court to set aside default because Plaintiff failed to properly serve it with the complaint. The affidavit of service on Northside states that the process server, Jason Garmon, served "Cheryl Pruitt, Secretary, Admin Office" at 200 Northside Forsyth Drive in Cumming, Georgia with the summons, complaint, and civil cover sheet on April 4, 2022. (Doc. 15.) Northside argues that this service was insufficient because Ms. Pruitt is not authorized to accept service on Northside's behalf. (Doc. 51-1 at 2.) Northside has provided an affidavit from Ms. Pruitt in which she declares that she does not recollect being served with the summons and complaint, does not have authority to accept service on Northside's behalf, and has never accepted service of a lawsuit on Northside's behalf. (Doc. 51-2 at 3.) A second affidavit, from Madison Radake, an executive assistant at Northside, declares that Ms. Pruitt "has never been authorized to accept service of legal process on behalf of Northside Hospital, Inc." (Doc. 51-3 at 3.)

Plaintiff argues in response that her process server, Mr. Garmon, is "willing to testify at a hearing that Pruitt stated she had authority to accept the summons, complaint, and civil cover sheet to initiate this action." (Doc. 59 at 3.) She further argues that the fact Ms. Pruitt is a secretary does not, by

itself, mean that service was improper.  (*Id.* at 7.)  She also contends that Northside does not have a meritorious defense.  (*Id.* at 10.)

An examination of Northside's brief and the record shows that Northside easily satisfies the Rule 55 good cause criteria discussed above.  It credibly alleges that it never received service, and that it cannot have been "willful" in failing to respond to a complaint that it did not receive.  But even if it had been properly served, good cause for setting aside default would still exist.  Northside took prompt action to address the Clerk's entry of default after it became apprised of it.  And Northside clearly wishes to defend against this lawsuit.  *See, e.g., Woodbury v. Sears, Roebuck & Co.*, 152 F.R.D. 229, 237 (M.D. Fla. 1993) ("[T]he drastic remedy of a default judgment should not be resorted to where a party has made a clear intent to defend."); *see also* 2007 Advisory Committee Notes to Fed. R. Civ. P. 55(a) (stating that "[a]cts that show an intent to defend have frequently prevented a default").[7]

---

[7] Plaintiff requested an evidentiary hearing on Northside's motion to set aside default.  (Doc. 79.)  The Court is certainly empowered to hold such a hearing.  *DIRECTV, Inc. v. Carlson*, No. 1:03CV831-T, 2004 WL 1809917, at *3 (M.D. Ala. Aug. 4, 2004).  However, no such hearing is required, and none is necessary here for the reasons discussed above.  Additionally, the parties have presented notarized affidavits from all the witnesses Plaintiff contends should testify, except Emily Rohrer.  Ms. Rohrer is a medical records representative at Northside who Plaintiff alleges lied to her and failed to respond to her June 2022 letters.  (Doc. 104 at 10.)  Plaintiff wants her to testify so that she can impeach her concerning violations of HIPAA and state

In further support of its motion to set aside default, Northside shows that it has meritorious defenses to Plaintiff's claims. In its motion to dismiss (Doc. 50), it asks the Court to find that service against it has been insufficient. It further urges the Court to find that Plaintiff's claims are time-barred and do not satisfy the heightened pleadings standards for fraud claims. The motion to dismiss is sufficient to establish that Northside has meritorious defenses to this action for purposes of Rule 55(c).

Finally, the Court finds that Plaintiff will not be prejudiced by setting aside the default. She has not moved for default judgment, and no default judgment has been entered. Discovery has not begun, and any discovery-related obligations will remain stayed pending adjudication of Beth Israel's motion to dismiss. *See, e.g., McDaniels v. EquityExperts.Org, LLC*, No. 1:18-CV-3535-TCB-JCF, 2019 WL 3526505, at *2 (N.D. Ga. May 14, 2019) (finding

---

laws. (*Id*. at 11.) The testimony of Mr. Rohrer, therefore, would have no bearing on the issue of service on Northside. Testimony from Mr. Garmon as to what Ms. Pruitt may have told him is also irrelevant to the Rule 55 analysis. The Court DENIES Plaintiff's motion for an evidentiary hearing and issuance of a subpoena to Mr. Garmon. (Doc. 79.)

Plaintiff's motion also requested an evidentiary hearing on Beth Israel's motion to set aside default. Because Plaintiff's only proposed witness has already submitted an affidavit (Doc. 55-2) and Plaintiff has not sufficiently explained how live testimony would meaningfully assist the Rule 55 analysis, the motion is therefore also denied to the extent that it seeks an evidentiary hearing on Beth Israel's motion to set aside default.

that there was no prejudice to the plaintiff in setting aside the entry of default where a motion for default judgment had been filed but no evidentiary hearing on the motion had yet been held).

For the foregoing reasons, the Court finds good cause to set aside the default.  Northside's motion is GRANTED.  The Clerk is DIRECTED to SET ASIDE the default that was entered as to Northside on July 20, 2022.

## VI.   Motions to Dismiss (Doc. 16, 23, 24, 50)

Plaintiff brings claims of common law fraud against the New York hospitals (NYU Langone, Beth Israel, and New York-Presbyterian) (Count 1) and the Georgia hospitals (Grady and Northside) (Count 2).  She also brings a federal civil RICO claim against all defendants under 18 U.S.C. § 1962(c) (Count 3).  In Count 3, she alleges that the defendants were associated with a "Predator-Protection Enterprise" whose purpose "was to protect Wilder and D[eutsche] B[ank's] reputation, prevent negative public disclosures about Wilder, the Bank, and D[eutsche] B[ank]'s former employees' criminal acts, and discredit those who might accuse Deutsche Bank and the Bank's former employees of wrongdoing or expose that wrongdoing." (*Id.* at 55-56, Compl. ¶ 180.)  She seeks compensatory damages and punitive damages, as well as her fees, costs, and expenses.  (*Id.* at 60.)

The defendants filed motions to dismiss, four of which are before the Court. (Doc. 16, 23, 24, 50.) Some of the defendants' arguments for dismissal are common across the respective motions. In the interest of judicial efficiency, the Court organizes its discussion of the motions by topic below.

### A. Failure to Allege Sufficient Basis for Personal Jurisdiction

NYU Langone and New York-Presbyterian have both moved to dismiss the complaint for lack of personal jurisdiction. (Doc. 16, 23.) The Eleventh Circuit has stated:

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, we consider the jurisdictional question under the state long-arm statute. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310. 316, 66 S.Ct. 154. 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).

It is incumbent upon Plaintiff to allege facts in her pleadings that show jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182 (1936). *See also United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over

a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.")  Fed. R. Civ. P. 8(a)(1) (requiring a complaint to include a "short and plain statement of the grounds for the court's jurisdiction").

"Where, as here, a defendant moves to dismiss a complaint for lack of personal jurisdiction, the court analyzes the claim under a three-step burden-shifting process."  *Diulus v. Am. Express Travel Related Svcs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020).  First, the plaintiff has the initial burden of alleging sufficient facts in the complaint to make out a prima facie case of jurisdiction.  Second, where the complaint alleges sufficient facts and the defendant submits affidavits challenging jurisdiction, the burden shifts back to the plaintiff to produce competent evidence in support of her jurisdictional claims.  Third, where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavit evidence, the Court must construe all reasonable inferences in favor of the plaintiff.  *Id.*

### 1. Jurisdiction Under Georgia's Long-Arm Statute (State Law Claims)

New York Langone and New York-Presbyterian argue that there is no basis for the assertion of personal jurisdiction under Georgia's long-arm statute.  Georgia's long-arm statute provides for personal jurisdiction over

"any nonresident . . . as if he or she were a resident of this state, if in person

or through an agent, he or she:

> (1)    Transacts any business within this state;
> (2)    Commits a tortious act or omission within this state, except
>         as to a cause of action for defamation of character arising
>         from the act;
> (3)    Commits a tortious injury in this state caused by an act or
>         omission outside this state if the tort feasor regularly does
>         or solicits business, or engages in any other persistent
>         course of conduct, or derives substantial revenue from
>         goods used or consumed or services rendered in this state."

O.C.G.A. § 9-10-91.[8]

A review of the complaint shows that Plaintiff has not met her initial

burden to show that either of the New York hospitals transacted business in

Georgia, committed a tortious act or omission in Georgia, or committed a

tortious injury in this state caused by an act or omission outside the state.

The complaint states that NYU Langone "is a health care organization

located in New York" with six inpatient locations in New York.  (Doc. 1 at 2,

Compl. ¶ 2.)  Plaintiff alleges that she went to NYU Langone for a rape kit.

---

[8] *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249,
1263 (11th Cir. 2010) ("[C]ourts must apply the specific limitations and
requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory
examination that is independent of, and distinct from, the constitutional
analysis to ensure that both, separate prongs of the jurisdictional inquiry are
satisfied.")

(Doc. 1 at 50, Compl. ¶ 155.)  She also alleges that NYU Langone did not run certain tests on her urine sample and has refused to provide her with her medical records.  As for New York Presbyterian, the complaint states that it "is a healthcare organization located at 56-45 Main Street, Flushing, NY 11355." (Doc. 1 at 2, Compl ¶ 5.)  Plaintiff alleges that she visited New York Presbyterian on January 1, 2018 "for testing."  (*Id.* at 29-30, Compl. ¶ 92, 93.) None of these allegations come close to showing a plausible factual basis for personal jurisdiction under the long-arm statute.

In response to the motions to dismiss for personal jurisdiction, Plaintiff has submitted a spreadsheet that she created which purports to show certain clinical research studies that NYU Langone and New York-Presbyterian have conducted in Georgia.  (Doc. 92 at 31, Doc. 93 at 31.)  Plaintiff contends that this spreadsheet shows that NYU Langone and New York-Presbyterian transact business in Georgia.  The problem for Plaintiff is that she is not permitted to assert her basis for personal jurisdiction in a response brief.  It must appear in her complaint.  Having failed plausibly to assert facts showing personal jurisdiction, Plaintiff has not met her burden in step one of the three-step burden shifting process. Accordingly, neither NYU Langone nor New York-Presbyterian was required to submit rebuttal affidavit evidence to challenge jurisdiction.  *See Carmouche v. Carnival Corp.*, 36 F.

Supp. 3d 1335, 1388 (S.D. Fla. 2014) ("*Once* the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings") (emphasis supplied). [9]

Because the Court has found that the exercise of personal jurisdiction under the Georgia long-arm statute would be inappropriate, it need not determine whether the assertion of personal jurisdiction would comport with due process.  *See Life Univ., Inc. v. Brain Synergy Inst., LLC*, No. 1:13-cv-1741-SCJ, 2014 WL 12543916, at * 4 (N.D. Ga. Feb. 7, 2014) ("[T]he Court finds that Defendants are not subject to personal jurisdiction under the Georgia Long-Arm statute. It is, therefore, unnecessary to proceed to step two of the analysis and determine whether personal jurisdiction would comport with federal due process.")

### 2. Jurisdiction Pursuant to the Federal RICO Statute's Nationwide Service of Process Provision

Plaintiff has asserted a federal RICO claim against all defendants (Count 3).  New York-Presbyterian argues that the RICO allegations are

---

[9] The Court further notes that Plaintiff's spreadsheet contains unidentified source material and hearsay.

insufficient to support personal jurisdiction pursuant to the nationwide service provision of the federal RICO statute.  The Court agrees.

The RICO statute contains a nationwide service of process provision. 18 U.S.C. § 1965(d). "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  However, "[p]rior to determining whether a plaintiff may take advantage of RICO's nationwide service of process, the Court must first be satisfied that the plaintiff's allegations give rise to a 'colorable federal claim.'" *Identity Stonghold, LLC v. Zeidner*, No. 8:16-cv-0868-MSS-AAS, 2017 WL 11616431, at *6 (M.D. Fla. Mar. 27, 2017) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941-42 (11th Cir. 1997)). *See also Courboin v. Scott*, 596 F. App'x 729, 733 (11th Cir. 2014) ("whether a basis exists for exercising personal jurisdiction under RICO depends on whether Courboin has stated a colorable RICO claim").

"To state a claim under RICO a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Furthermore, because RICO claims are a type of fraud claim,

they must be pled with specificity under Rule 9(b). *Ambrosia Coal & Constr.*

*Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

Plaintiff's complaint fails to plausibly allege a RICO claim for several

reasons.  First, Plaintiff fails to allege facts showing the existence of an

enterprise.  "As the existence of an enterprise is a central element of a

RICO claim, it must be pled with specificity under Rule 9(b)." *Almanza v.*

*United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1353 (S.D. Ga. 2016) (internal

quotation omitted).  Here, the complaint makes only a conclusory allegation

that the defendants were engaged in a "Predator-Protection Enterprise"

whose purpose "was to protect Wilder's and D[eutsche] B[ank]'s reputation,

prevent negative public disclosures about Wilder, the Bank, and D[eutsche]

B[ank]'s former employees' criminal acts, and discredit those who might

accuse Deutsche Bank and the Bank's former employees of wrongdoing or

expose that wrongdoing." (Doc. 1 at 55-56, Compl. ¶ 180.)  There are no facts

alleging how the enterprise is structured.  Plaintiff does not state how the

defendants are related to each other, nor how they work together to support

the enterprise.  Neither does the complaint explain the defendants'

relationship with Wilder, or why defendants have allegedly engaged in the

enterprise.  In short, the allegations in the complaint do not support an

inference that the defendants banded together as a cohesive unit to protect

Wilder and Deutsche Bank.  "An allegation that a group of defendants has engaged in collective or parallel conduct, by itself, does not plausibly demonstrate that those defendants ever reached an understanding that they would undertake such concerted action."  *Almanza*, 162 F. Supp. 3d at 1354.

Next, the allegations in the complaint do not plausibly allege a pattern of racketeering activity.  Plaintiff does not identify which alleged predicate acts of mail fraud were committed by each defendant, nor does the complaint specify when or how this alleged mail fraud was committed.  Simply put, the complaint does not contain "sufficient facts with enough specificity to show probable cause that the predicate acts were committed."  *In re Cascade Int'l Secs. Litigation,* 840 F. Supp. 1558, 1582 (S.D. Fla. 1993).[10]

Because the complaint fails to present a colorable RICO claim, the nationwide service of process provision in the RICO statute does not provide

---

[10] In her response to NYU Langone's motion to dismiss, Plaintiff outlines for the first time what she considers to be the predicate acts committed by this defendant. (Doc. 92 at 17-18.)  But the Court should not consider new facts raised in a response brief.  *See Joseph v. Barclays Bank Delaware*, No. 1:16-cv-00030-AT-RGV, 2016 WL 11573621, at *6-7 n.10, 11 (N.D. Ga. Aug. 5, 2016).

a basis for exercising personal jurisdiction over either New York Langone or New York Presbyterian.[11]  *See Courboin*, 596 F. App'x at 733-34.

For the reasons explained above, the Court GRANTS NYU Langone's and New York Presbyterian's motions to dismiss for lack of personal jurisdiction.  (Doc. 16, 23.)  NYU Langone and New York Presbyterian are DISMISSED WITHOUT PREJUDICE as party defendants.  Their motions to dismiss for failure to state a claim (Doc. 16, 23) are DENIED AS MOOT.  *See, e.g., Courboin*, 596 F. App'x at 735 (vacating the portion of the district court's order dismissing the complaint for failure to state a claim after the district court found no personal jurisdiction over the defendants). [12]

---

[11] In her response to New York-Presbyterian's motion to dismiss, Plaintiff states that she "can also assert RICO claims against NYPQ under Georgia's state RICO cause of action."  (Doc. 93 at 15.)  Even reading the complaint liberally, there is no Georgia RICO claim asserted in it.

[12] NYU Langone moves for a pre-filing screening that would require Plaintiff to seek leave of court before filing future litigation.  (Doc. 16-1 at 12-13.)  In support, it states that "Ms. O'Neill has filed at least eight lawsuits in Georgia and New York related to the same allegations of assault by Mr. Wilder." (Doc. 16-1 at 13.)  But it does not provide citations to these other cases, provide information about the claims raised in them, or explain why they are meritless.  On the current record, the Court declines to impose a pre-screening requirement.  *Cf. Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1318 (11th Cir. 2021) (finding a pre-screening requirement to be reasonable where plaintiff filed over 150 lawsuits in a five-year period, and where it was shown that he continued to raise certain claims although he "knew them to be objectively frivolous"); *O'Neal v. Allstate Indem. Ins. Co. Inc.*, No. 20-14712, 2021 WL 4852222, at *3-4 (11th Cir. Oct. 19, 2021) (upholding district

**B. Insufficient Service (Northside)**

Northside has moved pursuant to Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) to dismiss the complaint for insufficient service. (Doc. 50.) Courts apply a burden-shifting framework when evaluating motions to dismiss for insufficient service. The initial burden is on the defendant to challenge the sufficiency of service. *T-12 Entm't, LLC v. Young Kings Enterprises, Inc.,* 36 F. Supp. 3d 1380, 1391-92 (N.D. Ga. 2014). If the defendant meets this burden, the plaintiff must then submit evidence to rebut it. *Id*. at 1392. Where the plaintiff submits such evidence, all reasonable inferences are drawn in the plaintiff's favor. *Id*. at 1392.

As explained above, Northside submitted two affidavits to establish that Ms. Pruitt was not authorized to accept service on behalf of Northside. (Doc. 51-2, 51-3.) Plaintiff argues in response that "[g]iven Pruitt is a secretary in the administration department at Northside, it was reasonable for the process server to assume that a secretary in administration would be

---

court's decision to permanently enjoin plaintiff from filing new actions without pre-filing leave of court, where district court: (1) cited 20 cases filed in its district, 39 cases filed in other federal district courts, and 29 federal appeals; (2) evaluated the merits of these cases, "finding many meritless and some incredible"; and (3) afforded plaintiff "multiple opportunities through hearings and briefs to show cause why he should not be sanctioned."). The motion for a prescreening requirement is DENIED without prejudice.

knowledgeable about the procedures followed in legal service and would have followed Northside's guidelines." (Doc. 59 at 8.)

But what the process server assumed is irrelevant. And even if Ms. Pruitt told Mr. Garmon she was authorized to accept service of process on behalf of Northside Hospital, that fact would not help Plaintiff. Federal Rule of Civil Procedure 4(h)(1)(B) provides that a corporation, partnership, or association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires." "For service of process to be proper, the agent so served must be an actual, and not simply an apparent, agent of the defendant." *King v. Lumpkin*, No. 1:11-cv-0549-WSD, 2012 WL 12888676, at *5 (N.D. Ga. Feb. 13, 2012) (internal quotation omitted).[13]

---

[13] *See also Robinson v. Peck*, No. 1:14–cv–01628–WSD, 2014 WL 5857235, at *3 (N.D. Ga. 2014) ("Whether Johnson agreed to accept service or not is not consequential. . . The determinative factor is whether the person who accepted service was the defendant's actual agent."); *Ross v. Preston*, No. 1:08-cv-1811-WSD, 2008 WL 11334499, at * (N.D. Ga. Oct. 29, 2008) (finding that although the defendants' personal assistant told the process server she was authorized to accept service, service was deficient because defendants submitted evidence the assistant did not have authority to accept service and the plaintiff did not present any evidence in rebuttal).

Given the affidavits provided by Northside, the burden has shifted to Plaintiff to show Ms. Pruitt was authorized to accept service. *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (stating that when service of process is challenged, the plaintiff has the burden of proving its validity). Plaintiff fails to provide any evidence or argument that rises above the level of pure speculation to show that Ms. Pruitt was authorized to accept service for Northside.

For the foregoing reasons, the Court determines that service on Northside was deficient, and the motion to dismiss is therefore GRANTED. The claims against Northside are DISMISSED WITHOUT PREJUDICE.

Northside has also moved pursuant to Federal Rule 12(b)(6) to dismiss the complaint for failure to state a claim. Its request would require the Court to reach the merits, which it cannot do. *See Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182-83 (11th Cir. 2007) (vacating the district court's dismissal of the claims with prejudice for failure to state a claim and remanding the case for judgment dismissing the claims without prejudice for insufficient service); *Pardazi v. Cullman Med. Center,* 896 F.2d 1313, 1317 (11th Cir.1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.") That motion is therefore DENIED.

### C. Failure to State a Claim (Grady)

Grady has moved to dismiss Plaintiff's complaint for failing to sufficiently plead her state law fraud claims. (Doc. 24.) In Georgia, the elements of fraud are: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff. *Next Century Commc'ns Corp. v. Ellis,* 318 F.3d 1023, 1027 (11th Cir. 2003).

As explained above, Federal Rule of Civil Procedure 9 requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[U]nder Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

In the complaint, Plaintiff refers to false representations she alleges that personnel at Grady made. But she does not specify the contents or dates of the statements, or even how the statements misled her. To give a few examples, she refers to:

> . . . fake information from the fake accounts set-up in messaging apps in [her] name without her knowledge or consent that [she] never used was added into her medical records along with the Trump Has Malaria Defense by hospital personnel seeking to aid and abet Wilder.  (Doc. 1 at 53, Compl. ¶171.)

She further alleges:

> The Trump Has Malaria Defense along with the fake messages from fake accounts were used as cover to ensure Defendants Grady would not collect a urine sample to include in O'Neill's rape kit. (*Id*. at 54, Compl. ¶ 173.)

Plaintiff's fraud allegations go on in this vein. Many are similarly fantastical and difficult to follow.  Put simply, the complaint fails to put defendants on notice of the nature of the fraudulent statements, who made them and when, how Plaintiff was misled, and what the hospitals gained by the alleged fraud.  !!!

Plaintiff argues that she is entitled to a relaxed pleading standard because certain information relating to this lawsuit is within the defendant's exclusive control.  *See Hill v. Morehouse Med. Assocs., Inc.*, No. 02–14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) ("Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control.")  (citations omitted).  But even if the Court were to apply a relaxed pleading standard, the fraud claim is not sufficiently pled.  In addition to the deficiencies discussed above, to the extent that Plaintiff

claims that her medical records contain fraudulent statements, her complaint makes clear that she has them in her possession.  Thus, any allegedly false representations therein are already known to her. (*Id.* at 20, 34, 40, 44, 57, Compl. ¶¶ 58, 109, 129, 139, 188.)  The Georgia fraud claim against Grady (Count 2) is insufficiently pled under either pleading standard.[14]

Grady also argues that the fraud claims are time-barred.  (Doc. 24-1 at 10.)  This argument is based on the fact that Plaintiff allegedly visited Grady's facilities on February 6, 2018, yet the summons for Grady was not issued until April 1, 2022, after the statute of limitations has expired.

In Georgia, the statute of limitations for fraud claims is four years. O.G.C.A. § 9-3-31.  *See also Willis v. City of Atlanta*, 595 S.E.2d 339, 343 (Ga. Ct. App. 2004).  "The cause of action [for fraud] accrues when a plaintiff could first institute and maintain [his] action to a successful result."  *Slade v. Chrysler Corp.*, 36 F.Supp.2d 1370, 1372 (M.D. Ga. 1998) (citing *Mobley v. Murray Cty.,* 173 S.E. 680 (Ga. 1934)).

Plaintiff bases her fraud claim not just on her February 6, 2018, visit to Grady but also on Grady's alleged falsification of her medical records.  As explained above, the date of the alleged falsification is unclear, and this

---

[14] As for the federal RICO claim against Grady, the Court has explained above that it too is not pleaded with the specificity required by Rule 9.

Court is required to construe the facts in the light most favorable to Plaintiff. Thus, the allegations as presented are insufficient for the Court to determine if the claims are time-barred.

For the reasons explained above, the Court GRANTS Grady's motion to dismiss.  (Doc. 24.)  This Court is compelled by circuit precedent, however, to afford Plaintiff an opportunity to amend her complaint, particularly because she has expressed a desire to do so.  *See, e.g., Epps v. Comm'r, Alabama Dep't of Hum. Res.*, No. 22-10857, 2023 WL 2034253, at *2 (11th Cir. Feb. 16, 2023) (stating that a *pro se* plaintiff must generally be given one chance to amend the complaint before the district court dismisses the action with prejudice); *Watkins v. Hudson*, 560 F. App'x 908, 911 (11th Cir. 2014) ("A court must therefore afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless the plaintiff expresses a desire not to amend or an amendment would be futile.").  Any amended complaint must be filed by April 4, 2023.

Plaintiff is cautioned that any amended complaint should not be what, in this circuit, is called a "shotgun pleading."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).  The current complaint has many aspects of a shotgun pleading.  The Eleventh Circuit has repeatedly held that so-called "shotgun pleadings" violate Rule 8 by "fail[ing] to one degree or another . . . to

38

give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc.*, 878 F.3d at 1295. There are four "rough types or categories" of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.  The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (internal citations omitted).  The Eleventh Circuit has advised district courts against tolerating such pleadings on several grounds, including that they make it difficult to anticipate and control the scope of discovery, and "wreak havoc on appellate court dockets." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## VII.   Plaintiff's Motion to Compel (Doc. 58)

Plaintiff has filed a motion to compel defendants to respond to various questions and produce various documents.  (Do. 58.)  Defendants filed responses in opposition, arguing that (1) the motion is premature because discovery has not yet begun and (2) the motion is procedurally improper because it seeks documents and information Plaintiff requested outside of this litigation.  (Doc. 61, 63, 64, 65, 71.)

Federal Rule of Civil Procedure 37(a)(1) provides that a party may move for an order compelling disclosure or discovery.  Motions to compel that are filed before the start of discovery are generally considered premature. *See e.g., Robinson v. Johnson*, No.: 6:19-cv-53, 2020 WL 8621521, at *1 (S.D. Ga. Sept. 9, 2020) (denying the plaintiff's motion to compel as premature and noting that the plaintiff can request production of documents and evidence after discovery starts); *Zambuto v. County of Broward*, No. 08–61561–CIV, 2009 WL 546431, at *2 (S.D. Fla. Mar. 4, 2009) (same).  Discovery has not started, and Plaintiff has not provided a sufficient reason why the requested documents are needed imminently.[15]

---

[15] Pursuant to Local Rule 26.2, NDGa, "[t]he discovery period shall commence thirty days after the appearance of the first defendant by answer to the complaint, unless the parties mutually consent to begin earlier."  No answers have been filed, and discovery has not begun.

Plaintiff's motion to compel is accordingly DENIED AS PREMATURE.

(Doc. 58.)

## VIII. Plaintiff's Motions for Permanent Injunctions (Doc. 86, 87, 103)

Plaintiff filed three motions seeking permanent injunctions against the

defendant hospitals. (Doc. 86, 87, 103.)  Two of the motions are identical.

(Doc. 86, 87.)   Those motions seek, among other things, to enjoin Grady and

Northside from withholding information from Plaintiff related to her medical

records.   Grady and Northside filed responses (Doc. 96, 97), and Plaintiff has

filed a reply (Doc. 108.)  Plaintiff's third motion for an injunction seeks to

similarly enjoin NYU Langone, Beth Israel, and New York-Presbyterian and

seeks the same information as requested in Plaintiff's motion to compel and

motion for injunction against Grady and Northside.  (Doc. 103.)

A plaintiff is entitled to a permanent injunction if it can demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) considering the balance of
> hardship between the plaintiff and defendant, a remedy in equity
> is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

*Angel Flight of Ga., Inc. v. Angel Flight of Am., Inc.*, 522 F.3d 1200, 1208

(11th Cir. 2008).  Plaintiff has not established that she has suffered an

irreparable injury.  She has received medical records from the defendants,

and should this case proceed to the discovery phase, she will have an opportunity to request additional documents and information.  In weighing the balance of hardships, the Court finds that requiring the defendants to comply with Plaintiff's broad requests before discovery starts would present a hardship for defendants.  Furthermore, many of the defendants have now been dismissed and an injunction would not serve the public interest. Plaintiff's motions for permanent injunction are DENIED.  (Doc. 86, 87, 103.) Her requests for an evidentiary hearing on the injunction motions are also DENIED.  (Doc. 86, 87, 103.)

## IX. Conclusion

The rulings in this order are summarized as follows:

- College Park Police Department is DISMISSED WITHOUT PREJUDICE pursuant to Rule 4(m).  The Clerk is DIRECTED to terminate College Park Police Department as a defendant in this case.

- New York-Presbyterian's motion to strike the amended complaint is GRANTED.  (Doc. 100).  The Clerk is DIRECTED to STRIKE the amended complaint from the record.  (Doc. 69.)

- Beth Israel's motion to set aside the Clerk's entry of default is GRANTED.  (Doc. 55.)  The Clerk is DIRECTED to SET ASIDE

the default that was entered as to Beth Israel on July 20, 2022, and to file Beth Israel's motion to dismiss (Doc. 55-3) as of the date of this order.  Plaintiff shall have until April 18, 2023, to file any response to the motion to dismiss and Beth Israel shall have until April 25, 2023, to file any reply.

- Beth Israel's motion for clarification is GRANTED. (Doc. 83.)

- Plaintiff's motion for an evidentiary hearing and issuance of a subpoena to process server Jason Garmon is DENIED.  (Doc. 79.)

- Northside's motion to set aside the Clerk's entry of default is GRANTED.  (Doc. 51.)  The Clerk is DIRECTED to SET ASIDE the default that was entered as to Northside on July 20, 2022.

- NYU Langone and New York-Presbyterian's motions to dismiss for lack of personal jurisdiction are GRANTED.  (Doc. 16, 23.) NYU Langone and New York-Presbyterian are DISMISSED WITHOUT PREJUDICE.  Their motions to dismiss for failure to state a claim are DENIED AS MOOT.  (Doc. 16, 23.)  NYU Langone's motion for a prescreening requirement is DENIED. (Doc. 16.)

- Grady's motion to dismiss the complaint for failure to state a claim is GRANTED.  (Doc. 24.)  However, because Plaintiff is *pro*

43

*se*, the Court must afford her an opportunity to amend her complaint.  Any amended complaint must be filed by April 4, 2023, and it must comply with the instructions set forth in this order.  Plaintiff is CAUTIONED that this Court will dismiss any amended complaint that fails to comply with these instructions.

- Northside's motion to dismiss for insufficient service is GRANTED.  (Doc. 50.)  The claims against Northside are DISMISSED WITHOUT PREJUDICE.  Northside's motion to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim is DENIED. (Doc. 50.)

- Plaintiff's motion to compel is DENIED AS PREMATURE.  (Doc. 58.)

- Plaintiff's motions for permanent injunction are DENIED.  (Doc. 86, 87, 103.)  Plaintiff's motions for an evidentiary hearing are also DENIED.  (Doc. 86, 87, 103.)

**SO ORDERED** this 14th day of March, 2023.

SARAH E. GERAGHTY
United States District Judge