FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 31 2023

KEVIN P. WEIMER, Clerk
By: _Kimberly Hatchel_ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| **MAURA O'NEILL,** | **CIVIL ACTION FILE NO.** |
| Plaintiff, | 2:21-CV-00125-SCJ |
| v. | |
| **NORTHEAST GEORGIA MEDICAL CENTER, INC., DENIHAN HOSPITALITY GROUP, CITY OF TALLAHASSEE,** | **MOTION FOR EXTENSION OF TIME** |
| Defendants. | |

**COMES NOW** Plaintiff Maura O'Neill ("Plaintiff"), and, pursuant to Rule 6(b)(1)(A) of the Federal Rules of Civil Procedure ("FRCP"), requests this Court grant an enlargement of time to file an Amended Complaint and opposing papers to Beth Israel until after her forthcoming Rule 60 motion, motion for injunction, and motion for clarification are decided.  In support of this request, Plaintiff states the following:

### I.  Motion to Strike / Opposing Papers for Beth Israel / Amended Complaint

On September 9, 2022, Plaintiff filed an Amended Complaint.  (Docket No. 69.)  New York-Presbyterian moved to strike the Amended Complaint,

1

stating the Amended Complaint was filed without consent or leave of court.

(Docket No. 100). Plaintiff argued in her opposing papers (Docket No. 109)

that she filed the Amended Complaint "as a matter of course" under Federal

Rule of Civil Procedure 15(a)(1), which states:

> (1) Amending as a Matter of Course. A party may amend its pleadings
> once as a matter of course within:
>
> (A) 21 days after serving it; or
>
> (B) if the pleading is one to which a responsive pleading is required,
> 21 days after service of a responsive pleading or 21 days after
> service of a motion under Rule 12(b), (e), or (f), whichever is
> earlier.

In an order dated March 14, 2023 (the "Order") (Docket No. 112), the Court

granted New York-Presbyterian's Motion to Strike even though the Court

acknowledged that the Amended Complaint was timely filed as a matter of

course with respect to Beth Israel and Northside. Specifically, the Court

stated in Footnote 5 of the Order that it:

> considered that the time for leave to amend as a matter of course with
> respect to Beth Israel and Northside had not yet passed when Plaintiff
> filed her amended complaint. (Both had the Clerk's entry of default
> entered against them at the time). In cases in which the time to amend
> as a matter of course has expired as to some but not all defendants (as
> occurred here), courts have sometimes permitted the amendment to
> proceed against some but not all defendants. *See, e.g., Jenkins v.
> McCalla Raymer, LLC*, No. 110CV03732CAPAJB, 2011 WL 13318714
> (N.D. Ga. Jan. 19, 2011) (finding that plaintiffs improperly filed the
> amended complaint "as a matter of course" as to three defendants,
> concluding that the amended complaint would not apply to these

defendants, but allowing the amended complaint to proceed as to other defendants). Here, however, the Court considers that it would create a procedural muddle to permit the amended complaint, but to deem it inapplicable to nearly all defendants. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (stating that a district court has inherent authority to manage its own docket to achieve the orderly and expeditious disposition of cases). In this case, the better approach is to grant the motion to strike and to give Plaintiff leave to amend. The Court does both in this order.

However, the Order is incorrect as a matter of law. "District courts… *must not* circumvent the Federal Rules of Civil Procedure by implementing local rules or "procedures" which do not afford parties rights that they are accorded under the Federal Rules." *Carver v. Bunch,* 946 F.2d 451, 453 (6th Cir.1991). ("[L]ocal court rules ... cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court."); *Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 678 (1st Cir.1972) ("[A] local rule cannot be applied if it is contrary to a federal statute or rule." (citing *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965))). Given even the Order entered on March 14, 2023 acknowledged that Plaintiff's Amended Complaint was properly filed against Beth Israel on September 9, 2022 (Docket No. 69) in accordance with FRCP 15(a)(1), the Court had no authority to strike Plaintiff's Amended Complaint with respect to Beth Israel. ***B. Federal Statute: Patient Self-Determination Act ("PSDA")***

Thus, the Amended Complaint should not have been stricken, and Beth Israel's Motion to Dismiss (Docket No. 113) should have been moot. In light of these circumstances, Plaintiff intends to file a motion under FRCP 60.

Given the Federal Rules of Civil Procedure require Beth Israel's motion to dismiss be considered moot (Docket No. 113), and Plaintiff's Amended Complaint reinstated on the docket, it is not a good use of judicial resources to proceed with filing opposing papers to Beth Israel's current motion to dismiss until after Plaintiff's Rule 60 motion can be heard. Thus, Plaintiff requests an extension of time until after the Court can rule on Plaintiff's forthcoming Rule 60 motion.

In addition, the court's ruling on Plaintiff's Rule 60 motion regarding Beth Israel clearly has implications for the Amended Complaint O'Neill was asked to file by April 4, 2023. If the Amended Complaint O'Neill filed on September 9, 2022 (Docket No. 69) is added back to the docket as it should to comply with FRCP 15(a)(1), then adding back Docket No. 69 has implications for filing another Amended Complaint. To ensure there are no additional procedural problems with multiple versions of amended complaints, O'Neill requests that the date to file the amended complaint be moved until after the Court renders its decision on O'Neill's Rule 60 motion.

4

## II. Motion for Injunction / Amended Complaint

### A. Statutory Basis

The Health Insurance Portability and Accountability Act ("HIPAA") was passed by Congress. As stated above, District courts, "cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court." *Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 678 (1st Cir.1972) ("[A] local rule cannot be applied if it is contrary to a federal statute or rule." (citing *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965))).

In the Order (Docket No. 112), the Court denied Plaintiff's motion for injunctions (Docket Nos. 86, 87, 107), and stated, "She has received medical records from the defendants, and should this case proceed to the discovery phase, she will have an opportunity to request additional documents and information." However, the Court ruling violated HIPAA, and this Court is not allowed to make rulings that are contrary to a federal statute. *Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 678 (1st Cir.1972).

As described in Plaintiff's motions for injunctions (Docket Nos. 86, 87, 107), HIPAA gives an individual the right to access information about her healthcare, 45 CFR § 164.524, and requires healthcare organizations to disclose **all** records it used to make healthcare decisions that are part of the designated record

5

set. 45 CFR § 164.501. As stated in Plaintiff's motions for injunctions (Docket

Nos. 86, 87, 107), HIPAA states individuals have a right to access protected health

information ("PHI") in a "designated record set." A "designated record set" is

defined at 45 CFR 164.501 as a group of records maintained by or for a healthcare

provider that comprises the:

- Medical records and billing records about individuals maintained by or for a covered health care provider;

- Enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan;
- Other records that are used, in whole or in part, by or for the covered entity to make decisions about individuals. This last category includes records that are used to make decisions about any individuals, whether or not the records have been used to make a decision about the particular individual requesting access.

The term "record" means any item, collection, or grouping of information that

includes PHI and is maintained, collected, used, or disseminated by or for a

covered entity.[1] Thus, according to HIPAA, individuals have a right to a broad

array of health information about themselves maintained by or for covered entities,

including: medical records; billing and payment records; insurance information;

clinical laboratory test results; medical images, such as X-rays; wellness and

disease management program files; and clinical case notes; among other

information used to make decisions about individuals.

---

[1] www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

In 65 FR 82462-01, 2000 WL 1875566 (F.R.), the Department of Health and Human Services ("HHS") stated, "We believe individuals should have a right to access any protected health information that may be used to make decisions about them...This approach facilitates an open and cooperative relationship between individuals and covered health care providers and health plans and allows individuals fair opportunities to know what health information may be used to make decisions about them." 65 FR 82462-01, 2000 WL 1875566 (F.R.).

In addition, HHS stated, "We list certain records that are always part of the designated record set. For covered providers these are the medical record and billing record...**In addition, we include in the designated record set to which individuals have access any record used, in whole or in part, by or for the covered entity to make decisions about individuals. Only protected health information that is in a designated record set is covered. Therefore, if a covered provider has a phone conversation, information obtained during that conversation is subject to access only to the extent that it is recorded in the designated record set."** 65 FR 82462-01, 2000 WL 1875566 (F.R.). Given Grady had phone calls about Plaintiff, and information from those phone conversations is included in O'Neill's medical record, Grady was required by law to include any information used as the basis for O'Neill's medical record in the

7

designated record set 45 CFR § 164.501, and Grady was required to send that

information to O'Neill when she requested it. 45 CFR § 164.524.

### B. Federal Statute: Patient Self-Determination Act ("PSDA")

The Patient Self-Determination Act ("PSDA"), passed into federal law in 1990 (PL

101–508, November 5, 1990, 104 Stat 1388), requires all hospitals receiving

Medicare and Medicaid funding to:

1) provide written information to each individual concerning the individual's rights under State law to make decisions concerning medical care, include the right to accept or refuse treatment, the right to formulate advance directives and the written policies of the provider concerning the implementation of such rights;
2) **document in the individual's medical record whether or not the individual has executed an advance directive**;
3) not condition provision of services based on whether or not the individual has executed an advance directive;
4) ensure compliance with the state law on advance directives; and
5) provide for education for staff and the community on issues concerning advance directives. PL 101–508, November 5, 1990, 104 Stat 1388. (Emphasis added).

The PSDA defines the term 'advance directive' as "a written instruction, such as a

living will or durable power of attorney for health care, recognized under State law

(whether statutory or as recognized by the courts of the State) and relating to the

provision of such care when the individual is incapacitated."

The Attorney General for the State of New York defined "Advance

Directives" as "legal documents," and stated "In New York State there are three

types: Health Care Proxy form, Living Will, and Do Not Resuscitate Order

8

(DNR)."[2] Wilder has repeatedly claimed to have a "Power of Attorney" to control O'Neill's healthcare, however, since January 31, 1991, a Power of Attorney was not a legally valid document that an agent can use in the state of New York to make healthcare decision about a principal. PBH § 2981(5)(e). According to the PSDA, any legal document Wilder claimed to possess to control Plaintiff's healthcare was required by statute to be included in each and every one of O'Neill's medical records from rape exams. Yet, every single hospital failed to do so.

O.C.G.A. § 31-32-8 (1) states a complete and current copy of O'Neill's medical record would include a copy of any advance directive. In Georgia, advance directives include any healthcare proxy, healthcare directive, power of attorney, or legal document giving one party the right to make decisions about O'Neill and have access to her medical record. While HIPAA is a federal law, it can be superseded by a more stringent state law. 45 C.F.R. § 160.203(b) (explaining that if a state law is "more stringent" and more protective of the patient, then that state law takes precedence over HIPAA). Concealing a copy of any healthcare directive from O'Neill is a crime under Georgia law. O.C.G.A. § 31-32-13(1).

---

[2]https://ag.ny.gov/sites/default/files/advancedirectives.pdf

Likewise, under New York Law (N.Y. Pub. Health Law §§ 2980 et. seq.), a health care proxy is used to allow one person (the principal) to appoint another person (typically referred to as the agent) to make health care decisions, or receive protected health information, or both (N.Y. Pub. Health Law §§ 2980 and 2983(1)).[3]  Under New York law, "the health care proxy shall not be executed on a form or other writing that also includes the execution of a power of attorney." PBH § 2981(5)(e).  Thus, the Wilder team has fraudulently claimed to have a "power of attorney" to control O'Neill's healthcare, even though a Power of Attorney is not valid under New York law, and has not been valid since January 31, 1991.  Since Plaintiff did not live in the state of New York in 1991, and was a minor in 1991, clearly Plaintiff never signed a Power of Attorney or any document that would allow her healthcare to be controlled by anyone.  In fact, Plaintiff has never signed a "Power of Attorney" or healthcare proxy or any other legal document that would allow any person to make any healthcare or other decisions for her.

According to 45 CFR § 164.508 (6), "A covered entity must document and retain any signed authorization."

---

[3]*New York does not have a Psychiatric Advance Directives statute.*

### *C. Business Associate*

HIPAA requires that a healthcare provider may not deny access because a business associate of the hospital, rather than the provider itself, maintains the PHI requested by the individual (e.g., the PHI is maintained by the hospital's lawyer or related entity or is maintained by a records storage company offsite).[4] HIPAA defines a business associate as: a person or entity that performs certain functions or activities that involve the use or disclosure of protected health information on behalf of, or provides services to, a covered entity. 45 CFR § 160.103. In particular, HIPAA defines a business associate as a person who:

> "On behalf of such covered entity...creates, receives, maintains, or transmits protected health information for a function or activity regulated by this subchapter, including claims processing or administration, data analysis, processing or administration,... patient safety... practice management...or Provides...legal, actuarial, accounting, consulting, management, administrative, accreditation, or financial services to or for such covered entity,...where the provision of the service involves the disclosure of protected health information from such covered entity." 45 CFR § 160.103.

Thus, under HIPAA, any lawyer that provided any services to Grady involving the disclosure of protected health information about O'Neill must send O'Neill a copy of any record the attorney maintains about O'Neill. 45 CFR § 160.103. In addition, under HIPAA, any management entity or legal entity that provided any management services to Grady involving the disclosure of protected health

---

[4]https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html

information about O'Neill must send O'Neill a copy of any record that business associate maintains about O'Neill. 45 CFR § 160.103.

### D. Ipse Dixit Medical Records

The patient-physician relationship is a relationship of trust and confidence given the patient entrusts his medical condition to the trained physician. Because of this confidential relationship, an exception arises to the requirement in typical fraud cases that defendant make some actual misrepresentation. Within the confidential relationship, silence when the doctor should speak or failure to disclose what should be disclosed constitute fraud as much as an actual misrepresentation. *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019). Thus, within the doctor-patient relationship, plaintiff need not prove actual fraud because the relationship itself creates a duty that requires the doctor to inform the patient about his condition. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 507 S.E.2d 411 (1998). In a concealment context, "there must be evidence that there was an intent to conceal by silence." *Carroll v. Piedmont Medical Care Corporation*, 352 Ga. App. 348, 834 S.E.2d 868 (2019).

The Court of Appeals found evidence of intent to conceal in the case of *Quattlebaum v. Cowart*. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987). In that case, the defendant did not advise his patient that defendant had

12

failed to connect the left hepatic duct to the small intestine. In furtherance of the fraud, the physician, prepared misleading and incorrect medical records on this point. The court found a reasonable inference of a knowing concealment and cover-up, not just a mere misstatement. *Quattlebaum v. Cowart*, 182 Ga. App. 473, 356 S.E.2d 91 (1987).

Given Grady's medical record and treatment decisions make clear Grady relied on conversations with third parties to make decisions about Plaintiff, the names of all the individuals Grady spoke to about O'Neill, and the details of Grady's conversations about O'Neill must be included in O'Neill's designated record sets. 45 CFR § 164.501. Since Grady initially refused to disclose its conflicts of interests, it is clear Grady abused O'Neill, and refused to put a urine sample in O'Neill's rape kit to aid Wilder, to ensure there was "no evidence" O'Neill was drugged even though a person commits the offense of tampering with evidence when, with the intent to prevent the apprehension…of any person or to obstruct the prosecution or defense of any person, such person knowingly destroys…physical evidence or …prepares… false evidence. O.C.G.A. § 16-10-94(a). Grady's actions are punishable by imprisonment. O.C.G.A. § 16-10-94(c).

A patient is entitled to trust her physician and rely on what he tells the patient. *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 459, 504 S.E.2d 514, 523 (1998). Yet, here, Grady's decisions to hide

information from O'Neill manifests fraud given it is clear when reading O'Neill's medical record from Grady that the medical record is based on information that is not contained in O'Neill's medical records. In fact, there is no factual support for numerous statements written in O'Neill's medical records, and it is clear that Grady's basis for several statements in O'Neill's medical records is due to conversations Grady had with various third parties about Plaintiff without O'Neill's knowledge or consent, and without giving Plaintiff an opportunity to respond to false information given to Grady about O'Neill behind her back.

The only support for the baseless opinions in O'Neill's medical records are the providers own personal judgment. Thus, O'Neill's medical records from rape exams present shining examples of *ipse dixit*--i.e., the expert claims that it is so merely because he says that it is so. Yet, without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 424 (5th Cir. 1987). "Reliability cannot be established by the mere *ipse dixit* of an expert." *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Nimely v. City of New York,* 414 F.3d 381, 396-397 (2d Cir. 2005). "'Presenting a summary of a proffered expert's testimony in the form of conclusory

14

statements devoid of factual or analytical support is simply not enough.' " *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty*, 402 F.3d 1092 (11th Cir. 2005).

Obviously, the same principles hold in cases involving medical decisions, and decisions are not valid if they are based only on unsubstantiated opinions. *Cathell v. Brown*, 8 Vet. App. 539 (1996). It is clear when reading O'Neill's medical records from Grady that her medical records are based on information that is not contained in her medical records. Instead, Grady's medical records are filled with nothing more than *ipse dixit* opinions based on false information provided to Grady about Plaintiff without O'Neill's knowledge or consent and despite the fact that a physician's recorded recollection of a patient's medical history, which contain medical opinions of third parties are inadmissible as a medical record in litigation. *Stoneridge Properties, Inc. v. Kuper, 1986*, 178 Ga.App. 409, 343 S.E.2d 424.

Likewise, nothing in Daubert or statutes governing admission of expert testimony requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Hayward v. Kroger Co.,* 2012, 317 Ga.App. 795, 733 S.E.2d 7.  Thus, not only did Grady violate O'Neill's privacy rights, but Grady also produced *ipse dixit* records that are inadmissible in court because the statements in the records are not supported by facts contained in

the records. *Stoneridge Properties, Inc. v. Kuper*, 1986, 178 Ga.App. 409, 343

S.E.2d 424.

### *E. Order*

Thus, this court's ruling in the Order (Docket No. 112) that it could deny

O'Neill's injunction request because O'Neill, "has received medical records from

the defendants, and should this case proceed to the discovery phase, she will have

an opportunity to request additional documents and information" conflicts with

federal statutes, and is clearly in error given O'Neill's request from the motions to

enjoin were:

1. Any and all information [Defendant] used to make decisions about O'Neill's healthcare that is not included in the medical record. If [Defendant] does not have any additional records, data, or information that [Defendant] used to make decisions about Maura O'Neill that are not included in Maura O'Neill's medical records from her visit(s) to [Defendant] in 2017/2018, then [Defendant] will provide a simple plain language statement stating it does not have any additional records, data or information that [Defendant] used to make decisions about O'Neill.
2. A statement of whether it [has / does not have], and [has had since (date) / has never had], a medical release form, Power of Attorney, or other authorization on file that would allow any person or entity to speak to any person at [Defendant] about Maura O'Neill or receive any information about Maura O'Neill's medical records or have access to information about Maura O'Neill's medical care.
3. A list of names of all individuals and entities [Defendant] spoke to about O'Neill's health.
4. A detailed statement of all information procured from any third party about O'Neill's health.
5. Documentation showing whether [Defendant] [did/did not] have [an authorization] to speak with law enforcement about O'Neill

As described above, in response to those points:

16

1. In response to point 1, "Any and all information [Defendant] used to make decisions about O'Neill's healthcare that is not included in the medical record" is required to be in the designated record set 45 CFR § 164.501, and sent to O'Neill. 45 CFR § 164.524.

2. O.C.G.A. § 31-32-8 (1) and PBH § 2981(5)(e) required any advance directive, healthcare proxy, power of attorney or healthcare directive to be included in O'Neill's medical record. In addition, "A covered entity must document and retain any signed authorization." 45 CFR § 164.508 (6).

3. Given information from other individuals was included in O'Neill's designated record set 45 CFR § 164.501, that information must be sent to O'Neill. 45 CFR § 164.524.

4. A detailed statement of all information procured from any third party about O'Neill's health must be included in O'Neill's designated record set 45 CFR § 164.501, and sent to O'Neill. 45 CFR § 164.524.

5. "A covered entity must document and retain any signed authorization." 45 CFR § 164.508 (6).

Likewise, in the Order (Docket No. 112), the Court also erroneously stated

"In weighing the balance of hardships, the Court finds that requiring the defendants

to comply with Plaintiff's broad requests before discovery starts would present a

hardship for defendants." This statement is also clearly erroneous because O'Neill

is entitled under HIPAA to the files she requested, and this court has no ability to

make rulings that are contrary to a federal statute. *Coady v. Aguadilla Terminal

Inc.,* 456 F.2d 677, 678 (1st Cir.1972). The Court clearly erred since Grady and

Northside[5] are violating criminal statutes by withholding any advance directive,

---

[5]The Court also erroneously dismissed Northside from the action by stating Northside had not been properly served. However, again here, the Court violated the Federal Rules of Civil Procedure even though the court has no ability to do so. *Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 678 (1st Cir.1972). Specifically, the Court improperly imposed case law relating to service of an individual when dismissing O'Neill's claim against Northside. Since Northside is a corporation, the

and Beth Israel is violating PBH § 2981(5)(e), Recall, when state laws are more stringent than HIPAA, state law preempts HIPAA. 45 C.F.R. § 160.203(b).

Likewise, in the Order (Docket No. 112), the Court also erroneously stated, "Plaintiff has not established that she has suffered an irreparable injury" based on the Court's erroneous belief that the court had the ability to make rulings that are contrary to a federal statute. *Coady v. Aguadilla Terminal Inc.*, 456 F.2d 677, 678 (1st Cir.1972). However, in similar cases, federal district courts have held that injunctions were necessary when a defendant was withholding material information in violation of a statute from a plaintiff. *Poss v. N.L.R.B.*, 1975 WL 11999, (D.D.C. Dec. 17, 1975); *McDonnell Douglas Corp. v. N.L.R.B.*, No. CV 76-0409 R, 1976 WL 13434, (C.D. Cal. Mar. 17, 1976).

### III. Motion for Injunction / Amended Complaint

As described above, O'Neill was clearly entitled to an injunction. On March 29, 2023, Plaintiff submit additional requests to Grady and Beth Israel, requesting copies of:

---

Court was required to follow the rules and case law regarding service to a corporation 4(h)(1)(B). Instead, the Court quoted the *King v. Lumpkin*, No. 1:11-cv- 0549-WSD, 2012 WL 12888676 (N.D. Ga. Feb. 13, 2012) which quotes the rules of service for an individual, not a corporation. Thus, the Court violated FRCP 4(h)(1)(B) by imposing rules for service to an individual which are clearly different in the FRCP. Likewise, FRCP 4(m) states, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Plaintiff showed good cause, but the Court ignored this requirement.

- Any and all information in O'Neill's designated record set as defined by 45 CFR § 164.501;

- Any records used to make healthcare decisions about O'Neill as defined by 45 CFR § 164.501;

- Any medical release of information or authorization Grady or Beth Israel has to speak to any third party about O'Neill;

- Records showing the name of any Business Associate as defined by 45 CFR § 160.103 that has information about O'Neill;

- Any and all records of email or any and all other records any party claims O'Neill wrote;

- Any and all records of any and all statements any third-party claims O'Neill made;

- Any and all records showing the name of any third party that spoke to Grady or Beth Israel about O'Neill.

O'Neill will file another motion for injunction as well. However, any Amended Complaint is premature because HIPAA requires Grady and Beth Israel release the information O'Neill requested on March 29, 2023, and this court has no ability to conflict with a federal statute. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

19

**IV. Motion for Clarification / Amended Complaint**

There are several statements in the Order (Docket No. 112) that are not clear to Plaintiff. Thus, O'Neill will also file a Motion for Clarification. Counsel for Beth Israel and Grady were contacted regarding this request. Neither responded.

**WHEREFORE**, Plaintiff requests the Court extend her time to file an Amended Complaint and opposing papers to Beth Israel until after her forthcoming Rule 60 motion, motion for injunction, and motion for clarification are decided.

### LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned certifies that the within and foregoing **MOTION FOR CLARIFICATION** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day caused to be served a true and correct copy of the foregoing by emailing a copy of the foregoing to Defendants at the following addresses:

**THOMAS KENNEDY SAMPSON & TOMPKINS, LLP**
Jeffrey Emery Tompkins, Esq.
Candance J. Rodgers, Esq.
3355 Main Street
Atlanta, GA 30337
Telephone: 404.688.4503
E-Mail: j.tompkins@tkstlaw.com
E-Mail: c.rodgers@tkstlaw.com

**HALL BOOTH SMITH, PC**
Tiffany R. Winks
Georgia Bar No. 626413
Austin Atkinson Georgia Bar No. 935864
191 Peachtree St. NE Suite 2900
Atlanta, GA 30303
404-954-5000
twinks@hallboothsmith.com
aatkinson@hallboothsmith.com

in accordance with Rule 5(b)(2)(E).


Dated:  Alexandria, VA          Submitted,
March 30, 2023


BY: Maura O'Neill
    Maura O'Neill, Plaintiff
    601 King Street, Suite 200-#465
    Alexandria, VA 22314
    moneill@rahillco.com

ORIGIN ID:BCBA   (754) 228-9105
MAURA O'NEILL

601 KING ST
SUITE 200-465
ALEXANDRIA, VA 22314
UNITED STATES US

SHIP DATE: 30MAR23
ACTWGT: 0.10 LB
CAD: 6992890/SSF02401

TO  **US DISTRICT COURT**
    **OFFICE OF THE CLERK**
    **75 TED TURNER DR SW**

**ATLANTA GA 30303**
(404) 215-1600      REF:
INV:                DEPT:
PO:

**FedEx**
Express

E

REL#
3705346

**FRI — 31 MAR 4:30P**
TRK# 3964 3312 9926      **STANDARD OVERNIGHT**
0201

**XG QFEA**                    **30303**
                          GA–US  **ATL**



529
527      16:30   **B**
                9926
                03.31